CLERK'S OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Received: 12/14/2022

Sent to Chambers: 12/21/2022

TO:   **Judge**   Colleen Koller-Kotelly

RE:   Criminal Action No.:   USA v. Shawndate Chilcoat
22-cr-299

Please indicate on the face of **each document** whether leave to file is granted or denied.

Thank you

ANGELA D. CAESAR, Clerk of Court

By

**Attachment(s):**

Letter from defendant requiring
judge's response

<u>CO-930A</u>
(Rev. 9/2011

## LAWFUL NOTIFICATION LETTER OF ACCEPTANCE OF OATH

Shawndale D. Chilcoat

Judge Colleen Kollar-Kotelly

CASE # 22cr299

LEAVE TO FILE GRANTED

Judge C Kollar-Kotelly
12/22/2022
recie'd
Chambers 12/14/2021

This letter is a lawful notification letter to you, Colleen Kollar-Kotelly. This notification requires your written response, specific to the subject-matter.

Notification of legal/lawful responsibility is the first essential of due process of law. As silence is acquiescence under the law, silence can only be equated with fraud where there is legal or moral duty to speak, or where an inquiry left unanswered would be misleading, whether intentionally or not. Responses that are immaterial or irrelevant to the subject matter, or that are generally non-substantive, will be treated merely as a provision of information, and legally as a non-response, with willful intent to defraud.

In order to ensure unequivocal clarity, and to effect the removal of any and all assumptions and presumptions, you are hereby put on notice that this notification is not directed to the legal fictional person, COLLEEN KOLLAR-KOTELLY, but to you Colleen Kollar-Kotelly, in your private capacity as a non-fictional entity who has sworn an Oath of Office, and who, by virtue of that Oath, has a mandate to serve the People that are of the Public.

The People's contracts, being the Ancient Charters and Statues confirming the liberties of the subjects (Biblical Law), Treaty of Paris 1783, the Maxims of Common Law, the Constitution of the united States of America with the Bill of Rights, the Constitution of the State of Ohio, and every additional ordinance of man that inherently recognizes the supremacy of God and of the pre-eminence of His Law, together with the mandated Oath of Office of the above named PUBLIC SERVANT, Constitutes an irrevocable and unconditional offer of intent by the respective and adoptive governments and their officers to act, or refrain from acting in a specified way toward private Citizens, and is binding upon those who choose to be subject to it, as your Oath of Office has so bound you, as a PUBLIC SERVANT of our government.

Be it therefor known by these presents, that I, Shawndale D. Chilcoat, a competent natural born woman upon the land, do hereby and herein give formal Notice of Acceptance of the mandated Oath of Office and the above named PUBLIC SERVANT, Colleen Kollar-Kotelly. The said Oath of Office being your open and binding and irrevocable offer, to which my acceptance does hereby ratify into a firm and binding, private, bilateral contract between us, by which you agree to uphold the Supreme Law of the Land, also known as the Constitution of the united States of America, with the Bill of Rights, and to perform all of your duties as a PUBLIC SERVANT, and to uphold and to protect all of my rights, by which I agree to receive the said, and implied protections and provisions of that law, and of my rights, both as and of the services of your office, as the valuable consideration passing between us that consummates the acceptance of the contract as it was offered.

This, my Notice of Acceptance of your Oath of Office is made in good faith and explicitly without recourse. The contract now between us, now irrevocably consummated, pertains to your having knowledge of the law, and having the power to stop a wrong, and thus the duty to stop a

Mail Room

DEC 14 2022

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

UNITED STATES DISTRICT COURT

For the District of Columbia

| | | |
|---|---|---|
| United states of America | ) | **MEMORANDUM AND** |
| Plaintiff, | ) | **MOTION TO DISMISS** |
| Shawndale D. Chilcoat | ) | **FOR LACK OF** |
| Donald E. Chilcoat, | ) | **SUBJECT MATTER** |
| Accused, | ) | **JURISDICTION** |
| | ) | **Court Case No: 22cr299** |

COMES NOW THE ACCUSED, denying and challenging the jurisdiction of the above-named court over the subject matter in the above-entitles cause, for the reasons explained in the following memorandum:

## MEMORANDUM OF LAW

### I. The Nature of the Subject Matter Jurisdiction.

The jurisdiction of a court over the subject matter has been said to be essential, necessary, indispensable and an elementary prerequisite to the exercise of judicial power. 21 C.J.S., "Courts" 18, p. 25.  A Court cannot proceed with a trial or make a judgment without such jurisdiction existing.

> It is elementary that the jurisdiction of the court over the subject matter of the action is the most critical aspect of the court's authority to act.  Without it the court lacks any power to proceed; therefore, a defense based upon this lack of cannot be waived and may be asserted at any time.  Matter of Green, 313 S.E.24 193 (N.C. App. 1984).

Subject matter jurisdiction cannot be conferred by waiver or consent, and may be raised at any time. Rodrigues v. State, 441 So.2d 1129 (Fla.App. 1983).  The Subject matter jurisdiction of a criminal case is related to the cause of action in general, and more specifically to the alleged crime or offense which creates action.

> The subject matter of a criminal offense in the crime itself. Subject matter in its broadest sense means the cause; the object; the thing in dispute. Stillwell v. Markham, 10 P. 2d.

An indictment or a complaint in a criminal case is the main means by which a court obtains subject matter jurisdiction, and is "the jurisdictional instrument upon which the accused stand trial. "State v. Chatman, 671 P.2d 531, 538 (Kan. 1983).  The complaint is the foundation of the

wrong from being done, particularly where such a wrong results in, or causes any derivations to my religious freedoms and/or my civil rights, and/or my natural rights and liberties, the deprivation of which in the whole or part, shall be deemed a breach of contract, a violation of substantiative due process, a breach of public trust, and a breach of fiduciary duty, all or any of which you shall be held liable for, without recourse and without further notice. The following is to ensure due process:

1. Did Colleen Kollar-Kotelly, instruct Steven Kiersh, to enter a plea for Shawndale Chilcoat on September 26, 2022, after Shawndale Chilcoat fired Steven Kiersh on September 14, 2022?
2. Did Colleen Kollar-Kotelly, hear in court on September 26, 2022, from Shawndale Chilcoat, that she did not trust Steven Kiersh, and did not want him as an attorney before Colleen Kollar-Kotelly, instructed Steven Kiersh, to enter a plea for Shawndale Chilcoat?
3. Did Colleen Kollar-Kotelly, order Steven Kiersh, to stay as Shawndale Chilcoat's attorney to ensure the media could not contact Shawndale Chilcoat?
4. Did Colleen Kollar-Kotelly, hear in court on September 26, 2022, that Steven Kiersh, called Shawndale Chilcoat, before being appointed as counsel by a Washington DC magistrate judge, stating he was part of a January 6th panel of lawyers?
5. Did Shawndale Chilcoat document with the court, the bar complaint along with an email stating she did not want Steven Kiersh as an attorney before the September 26, 2022, court date?
6. Did Colleen Kollar-Kotelly, instruct Steven Kiersh to get a speedy trial waiver from Shawndale Chilcoat after the firing of Steven Kiersh, on September 14, 2022, as stated in Mr. Kiersh's and Shawndale Chilcoat's emails, that are documented with the court?
7. Is there a lawful cause for action/warrant to the search and seize initially, in this case #22cr299?

Before me a Notary Public duly authorized by the _____, personally appeared Colleen Kollar-Kotelly, who has sworn to and subscribed in my presence, the foregoing document, on this _____ day of _____, in the year of Our Lord 2022.

_____
Colleen Kollar-Kotelly

_____
Notary Public

jurisdiction of the magistrate or court. Thus if these charging instruments are invalid, this is a lack of subject matter jurisdiction.

Without a formal and sufficient indictment or information, a court does not acquire        subject matter jurisdiction and thus an accused may not be punished for a crime. Honomichl v. State, 333 N.W. 2d 797, 798 (S.D. 1983).

A formal accusation is essential for every trial of a crime. Without it the court acquires        no jurisdiction to proceed, even with eh consent of the parties, and where the indictment        or information is invalid, the court is without jurisdiction. Ex parte Carlson, 186 N.W.        722, 725, 176 Wis. 538 (1992).

Without a valid complaint any judgment or sentence rendered is "void ab initio" Ralph v. Police Court of El Cerrito, 190 P.2d 632, 634,   84 Cal, App.2d 257 (1948).

Jurisdiction to try and punish for a crime cannot be acquired by the mere assertion of it,   or invoked otherwise than in mode prescribed by law, and if it is not so acquired or   invoked any judgement is nullity. 22 C.J.S., "Criminal Law," 167, p. 202.

The charging instrument must not only be in the particular mode or form prescribed by the constitution and statute to be valid, but it also must contain reference to valid laws. Without a valid, the charging instrument is insufficient, and no subject matter jurisdiction exists for the matter to tried.

Where an information charges no crime, the court lacks jurisdiction to try the accused.   People v. Hardiman, 347 N.W.2d 460, 462,   132 Mich.App. 382 (1984).

Whether or not the complaint charges an offense is a jurisdictional matter. Ex parte        Carlson, 186 N.W. 722, 725,   176 Wis. 538 (1992).

An invalid law charged against one in a criminal matter also negates subject matter jurisdiction by the sheer fact that it fails to create a cause of action. "Subject matter is the thing in controversy. "Holmes v. Mason, 115 N.W. 770, 80 Neb. 454, citing Black's Law Dictionary. Without a valid law, there is no issue or controversy for a court to decide upon. Thus, where a law does not exist or does not constitutionally exist, or where the law is invalid, void or unconstitutional there is no subject matter jurisdiction to try one for an offense alleged under such a law.

If a criminal statute is unconstitutional, the court lacks subject-matter jurisdiction and        cannot proceed to try the case. 22 C.J.S. "Criminal Law," 157, p. 189; citing People v.   Katrinak, 185 Cal.Rptr 869,   136 Cal.App.3d 145 (1982).

Where the offense charged does not exist, the trial court lacks jurisdiction. State v.        Christensen, 329 N.W. 24 382, 383,   110 Wis.2d 538 (1983).

As independent sovereignty, it is States province and duty to forbid interference by another state or foreign power with status of its own citizens. Roberts v Roberts (1947) 81 CA2d 871, 185 P2d 381. [Black's Law Dictionary, 4th Ed., p 1300] Redding v Los Angeles, 81 CA.2d.

Suits have to be in like kind, I am man the U.S Government is and entity/Corporation (Title 28 USC 3002 Section 15 – States That THE UNITED STATES is a CORPORATION and Not a Government _ "HNN – Higgins News Network")

The People cannot consent to statutes which are the color of law "bills of attainer" which are strictly prohibited "Article 1 Section 9" to the federal "Article 1 Section 10" to the states. Government is not allowed to pass legislation that prescribes punishment, that has the force and effect of law on The People, by passing the right to due process of the law depriving The People of their fundamental rights, government does not have that authority. Congress nor the legislature have the authority to alter the fundamental law, that power was not delegated and was not given consent.

Unlawful detention or deprivation of liberty is the basis of an action for the tort of false imprisonment. Actual seizure or the laying on of hands is not necessary to constitute an unlawful detention are: (1) Detention or restraint against ones will; and (2) The unlawfulness of such detention or restraint. (Hanser v. Bieber, (1917) 271 Mo.)

Cannot subvert the Common Law (title 18 subsection 2381-2384), executive power is limited and guided by the law of the land or due process of law. Suits at Common Law is process.

You have to have a Right, to claim a Right (Constitution Article 5), only an injured party can claim a Right to cause of action.

The People make demands to know the name of the man claiming a Right to a cause of action, what is his choice of law, what is his choice of jurisdiction? If you don't have an affidavit of truth from the moving party signed under penalty and perjury to know exactly what rights that you trespassed upon, to know what injury and harm was caused to them, then there is no standing in law.

You cannot extend admiralty jurisdiction into the land and subvert the law, that's not the way our founders set up our form of Government (Const. Article 3)

Suits have to be in like kind, I am man the U.S Government is and entity/Corporation (Title 28 USC 3002 Section 15 – States That THE UNITED STATES is a CORPORATION and Not a Government _ "HNN – Higgins News Network")

It is manifest it was not left to the legislative power to exact any process which might be devised. The [due process] article is a restraint on the legislative as well as on the executive and judicial powers of government and cannot be so construed as to leave congress free to make any process "due process of law," by its mere will. Murray's Lessee v. Hoboken Imp. Co., 18 How. (59 U.S.) 272,276 (1855).

The expressions 'due process of law' and 'law of me land' have me same meaning ...... The 'law' intended by the constitution is the common law that had come down to us from our forefathers, as it existed and was understood and administered when that instrument was framed and adopted. State v. Doheny, 60 Maine 504. 509 (1872). In interpreting what due process of law is, it has been held that " none of our liberties are to be taken away except in accordance with established principles" Ekern v. McGovern, 154 Wis. 157, 142 N.W. 595, 620 (1913).

Cannot subvert the Common Law (title 18 subsection 2381-2384), executive power is limited and guided by the law of the land or due process of law. Suits at Common Law is process.

You have to have a Right, to claim a Right (Constitution Article 5), only an injured party can claim a Right to cause of action.

# – 1 –

# Some Facts About Law

### What is Law?

Law is a concept that we are exposed to all of our lives, and which affects our lives and the things around us.  Law is as essential to a well ordered universe as it is to a stable and just civil or jural society, or a properly kept family unit.  That we might better understand how law relates to us we need to define what it is or should be.  The following is a definition of law from *Black's Law Dictionary:*

1. That which is laid down, ordained, or established.
2. A system of principles and rules of human conduct.
3. A rule of civil conduct.
4. A law is a general rule of human action.
5. A law is a command which obliges a person or persons.[1]

Law is basically a rule that guides, directs or limits the conduct or action of something or someone, which is declared by some authority.  The physical laws of nature guide, direct and limit the action of matter and energy.  There thus are laws of thermodynamics, electricity, pressure, light, magnetism, gravity, chemistry and other physical laws.  Our concern with law is its application to ourselves as a rule which guides and directs our action or conduct.  A set of such laws establishes a jural system or order.

A law that regulates human conduct has attributes similar to physical laws.  But laws regulating human conduct are distinguished from physical laws in that they are not self-executing, as are physical laws.  Such laws usually need an outside force to assure they are executed.  Also, a law which regulates human conduct is not always of effect or enforceable, as it is limited or controlled by other laws and conditions. Where a conflict of laws exists,  the superior law prevails.  Also, a law for human conduct cannot be enforced where the right of a person to act differently exists.  When the proper law is enforced or upheld, it is regarded as justice or doing that which is right and just.

Law then must have a binding legal force, and an appropriate means for its enforcement or execution to be of any use or importance in human affairs.  This is because the concept of law implies a command, not an opinion or suggestion.  Certainly no law would exist, or need to exist, if there were not those who are required to follow or obey it.

A law regulating human conduct can be of two types.  It can be *negative* by prohibiting an act or declaring that it shall not be done, or it can be *affirmative* by commanding or requiring an action to be done.  Most law is of a negative nature.  Law can also be written or positive, such as a statute or constitution, or it can be unwritten, such as common law, natural law, or international law.  We will find that what we are subject today are not constitutions or even legislative statutes directly, but a type of unwritten law.

If one is obliged or required to obey a law, there must of necessity be an authority for the law to exist.

> Law in the sense in which courts speak of it today, does not exist without some definite authority behind it.[2]

---

1 *Black's Law Dictionary,* 2nd Edition, p. 700.

2 *Black & White Taxi Transfer Co. v. Brown & Yellow Taxi Transfer Co.,* 276 U.S. 518, 533 (1927).

The question we should be asking or looking into regarding all the oppressive and what appears to be unconstitutional law is, what is the authority behind this law?  The answer to this primarily depends upon the source of the law and our relationship to that source.

### The Source of a Law

We generally understand that all laws which regulate human conduct are either human or divine according to whether they have man or God for their author or source. Under Anglo-Saxon jurisprudence, the law of God has always stood in pre-eminence in relation to human law.

> Man's laws are strengthless before God's laws, consequently a human law, directly contrary to the law of God, would be an absolute nullity.[3]

While this proposition is quite true and important, it also acknowledges that man is a source of law. Actually, God has in many instances recognized that this ability or power for human law does exist, as with kings, patriarchs or heads of a house.

For something to be regarded as a law, it must come from a source which has authority to enact the law.  If a person is required to follow a law of another person or entity, then that person must in some manner or degree be subject to the law making entity.  Thus the authority for a law depends on the source of the law, and the relationship between that source and the one obligated to follow the law.  Let us look at some examples of this concept.

The prime example of a law making authority is God.  We readily acknowledge that God can enact laws which we are obligated to follow.  But what is His authority to do so? Why are we required to follow laws of God? Is it because God is all powerful, or all knowing or because He is eternal?  No it is not.  God's authority to place law over us lies not in the fact that He is omnipotent or a Supreme Being, but rather in our relationship to God. That relationship lies in the fact that God is our Creator and provider.  Sir William Blackstone expressed this relationship in his discussion on "the nature of laws," as follows:

> Man, considered as a creature, must necessarily be subject to the laws of his Creator, for he is entirely a dependent being. A being, independent of any other, has no rule [law] to pursue, but such as he prescribes to himself; but a state of dependence will inevitably oblige the inferior to take the will of him, on whom he depends, as the rule of his conduct. . . . And consequently, as man depends absolutely upon his Maker for everything, it is necessary that he should in all points conform to his Maker's will.[4]

God has the authority to make law we are subject to because we are His creatures and because of our dependence upon Him for necessities of life. These things establish a relationship between us and God, making us legally obligated to Him.  Thus, because of these relationships God has authority to make laws we must follow.

Similar to this is the authority of a parent to make laws which a child must follow.  A parent is a law making authority over a child not because the parent is stronger or bigger or even more intelligent than the child, but because of the relationship between parent and child.  The child was produced by the parent and is dependent upon the parent, thus when laws come from that source, the child's parent, the child is bound to obey. The parent has authority over the child because of the relationship that exists between them.  But that same parent does not have authority to prescribe rules of conduct for another child as no legal relationship exists between them. The superior strength and knowledge of that parent does not give him the right to make law for any child he thinks needs correction but his own

---

3  *Borden vs. State,* 11 Ark. 519, 526 (1851).

4  1 *Blackstone's Commentaries,* § 38, p. 39.

An employer and employee have a legal relationship between them that gives the employer an authority to prescribe certain rules of conduct or laws that the employee must follow. The employer has authority to make such rules not because it has more wealth and assets than the employee, but because the employee has entered into a legal agreement with that employer. The same is true with the legal relationship between a master and servant. The servant is legally bond to follow the commands of his master, but not those of another master.

A colonel in the military has the authority to make commands or laws that majors, lieutenants, and privates must obey and follow. There is a legal relationship between them since they each have placed themselves under a Military Code and the Articles of War which require them to obey all lawful orders of a superior officer. However, a private in the American army is not required to obey the orders of a colonel from the German army as there is no legal relationship between them. There thus is no authority for a German colonel to give him laws or orders to follow.

A King has the authority to give laws and commands which his subjects must follow because of their relationship to the king as subjects of his kingdom. The king has control over the land and also provides protection for the people of his kingdom, creating a legal relationship between him and the subject.

We thus see that there are many valid sources of a law, but the authority that is needed for one to obey a law or be subject to a law from a particular source depends upon one's relationship to that source. If there is no legal relationship, there can be no authority for a law. A king cannot make people of another land or kingdom subject to his laws. A general from England cannot give commands to a buck private in the American army because there is no common relationship between them. The president of General Motors has no authority to make rules for an employee of Joe's auto body shop. In each case there is no legal relationship between the two parties.

Also, according to this principle of authority and law, is the fact that true lawful authority is not derived from force or power or wealth, but from a legal relationship between the two parties involved. When laws exist because of force or power, it is despotism or tyranny, not authoritative law. Many despotic governments have existed throughout history because they were based upon the concept of "might makes right." Force and power are not a substitute for a lawful relationship. God could certainly play the despot and compel obedience by force, since He has the power to do so. But that is not the way God works. His authority comes from legal and spiritual relationships between Him and His people.

## Legislative Authority

Today we have the situation of legislative bodies, such as the State Legislature or Congress, existing as a source for making laws. The question we face is what is the authority for these legislative bodies to make laws we are subject to? This can only be answered by determining the relationship we have with the legislative body in question.

The fundamental concept of American government is that all political power which exists resides in the people.

**The Constitution of Virginia, 1776,** Sec. 2. That all power is vested in, and consequently derived from the people; that magistrates are their trustees and servants, and at all times amenable to them.

**Constitution of Massachusetts — 1780.** All power residing originally in the people, and being derived from them, the several magistrates and officers of government, vested with authority, whether legislative, executive, or judicial, are their substitutes and agents, and are at all times accountable to them.[5]

These declarations reveal the concept of delegation of powers. The people had political power or authority and delegated some of it to the legislature by declaring in their written Constitution—*"The legislative authority shall be vested in a General Assembly, which shall consist of a Senate, and House of Representatives."* This entity thus became a source of legislative authority. The people in effect said that this body of men can enact laws for specific purposes—i.e., the promotion of health, safety, morals and good order of the people or society. The U.S. Constitution enumerates specific topics that can be legislated upon—i.e., regulate foreign and interstate commerce, enact certain taxes, establish standards, etc. Thus the legislative bodies "derived" certain powers from the people.

The above declarations also reveal the nature of the legal relationship that exists between the people and those in government. Government employees are the "substitutes" or "agents" or "servants" of the people. Thus it is a contractual relationship which exists between the people and the Legislature. The people have in effect hired or commissioned certain individuals to occupy and to perform certain duties and functions within the offices and departments named in the Constitution. In performing these duties and functions they are to conform to fundamental law, rights and common law concepts, such as due process, and the things prescribed in the written Constitution.

We thus are bound to the valid laws of the legislative bodies named in a constitution or city charter. We are not bound to the legislature by its terms, but by our own terms, as Justice Wilson of the U.S. Supreme Court said:

> The only reason, I believe, why a freeman is bound by human laws, is that he binds himself.[6]

Thus the legislative bodies are given certain powers to enact certain laws within the confines of certain limitations which the people have agreed to be bound by. Whether we regard this as good or bad, wise or unwise, or that too much or too broad of powers were granted, is rather academic at this point. The fact remains that this is the way things are. The State Legislature or Congress can make laws that we the people are subject to, as there is a legal relationship between them.

Yet the evidence is clear today that our country has been invaded by a hostile, alien people who promote a law and religion that is contrary to the fundamental law and Christian foundations originally established in this land. They can be called socialists, communists, globalists, anti-Christs, and subversives, but their objectives are to enrich themselves by controlling your life, liberty and property. Their agenda and objectives cannot be implemented within the established frame of constitutional government. Thus they have laws enacted which are oppressive, contrary to individual rights, and which build up a socialistic type of government.

These subversive, anti-Christian people knew they could not gain control of the country by force or revolution as they did in Russia and France. They had to find a legal means to recreate or re-establish government, but done in such an indirect and clandestine manner so that no one would detect the change. The result of their actions is a government that is corrupt, arbitrary and oppressive but without being "unconstitutional." A necessary step in achieving this objective was their restructuring of the entire economic system of the country by the Federal Reserve Banking system, a system which they essentially own.

The established legislative bodies posed several obstacles and limitations on the plans

---

5   Thorpe, *The Federal and State Constitutions*, Washington, 1901, 7 vol.

6   *Chisholm v. Georgia*, 2 Dallas (2 U.S.) 419, 456 (1793).

of these subversives, and thus could not be directly used by them as a lawmaking source. This is because these legislative bodies were; 1) agents of the people and "answerable" to them; 2) subject to the limitations set forth in the constitution; 3) unable to violate the fundamental rights which the constitution was formed to protect; 4) forced to conform to due process as it existed under the Anglo-Saxon common law; and 5) only able to enact laws in the manner and process prescribed by the Constitution.

These legislative limitations posed some severe problems for the corrupt, power elite who wished to control the life, liberty and property of the people of this country. In order to get the oppressive, totalitarian type of laws enforced upon the people of America they needed to get laws passed by another source other that the State Legislature or Congress; but at the same time make it appear as though the laws were actually laws of the State Legislature and Congress.

Since they could not directly use the current legislative bodies to do things their way, they used them as an indirect means to create not only a new source of laws, but to create new executive and judicial functions as well. This was done by getting the current legislative bodies to create artificial legal entities —boards, commissions, bureaus, agencies, and trusts, which exist by statute instead of by the constitution or common law. The intent was to have these legal entities assume the role of governmental functions, or financial ones as was done with the Federal Reserve Board in 1913, or educational functions as was done with the NEA.

These subversive forces in our midst thus got the legislatures to recreate a new judicial system. We thus have courts that have been established or reorganized by legislative statute. They create new courts, and endow them with their judicial "powers." Sometimes these courts will be called by the same names

as used in constitutions to mislead people into thinking they are constitutional courts which the people endowed with power. The court exists by "statute" or grant of the legislature just as a corporation exists by statute.

The legislatures have also created an executive body to enforce the corrupt and oppressive laws. We thus have police, highway patrol, Federal marshals, ATF agents, etc., which exist by a commission or agency and whose powers come from "statutes" not the constitution or common law. To make matters worse, somehow the subversive elements in our land have established a new source of law other than the State Legislature and Congress.

The cause or reason for how this all came about is actually a theological issue and not a legal issue. God certainly does allow or cause oppression to come upon a people for the purpose of testing them, or as just punishment. In doing so it becomes necessary that the people turn to God and rely on Him for deliverance from such oppression. The complexity and intricacies of the legal, political and economic problems we face today could not have been the sole work of human design and effort. The subverters could not possibly be behind every unlawful act and control all the things that have made up the current corrupt legal system. Such a feat could only come about by the providence of God.

A legal explanation can help to clarify the nature of things, and what has or has not happened to make things unlawful, but the cause is a spiritual question which is not within the scope of this material. This material shows the debauched and illegal nature of the laws used in criminal proceedings today. This was legally done by creating commissions to "revise," "codify" and rewrite the laws of the legislature, and pass them off as being laws of the State or Congress. We thus need to look into these "codes" and "revisions" of statutes to see their true nature in light of fundamental law and the Constitution.

– 2 –

# Codes & Revised Statutes

During the 19th century, the concept of "codes" was introduced as a means to classify and organize a group of laws related in subject matter into one published volume. These codes included such things as a code of civil procedure, a code of criminal procedure, a penal code, a code of probate courts, a building code, a private corporations code, etc. Each of these codes covered one specific subject or subject area.

As these codes became more widely used, there resulted considerable debate over their validity and usefulness. A summation of the arguments for and against these codes is listed in *West's Annotated Californian Codes,* vol. 1, in which it discusses the "Development of the Law in California." It mentions the objects of modern codification as laid down by David Dudley Field, who was the pioneer advocate of codification. His views on codification, as expressed in 20 *Amer. Law. Rev.* 1, 1886, were that codes would make it easier to find the law and would keep judges from making laws ("bench law"). But the writers of this annotation did not see these objectives being fulfilled in modern times:

> The history of lawmaking in California demonstrates, that the hopes expressed by David Dudley Field have not been fully attained even in our comprehensive program of codification; judges still engage in the making of law; the ordinary citizen is still lost and often bewildered among the myriad of laws; and finding the law is yet often a laborious process for even the experienced practitioner.

Many debates also existed regarding the legality or constitutionality of such codes. An Alabama court stated that the criminal code enacted in its state was "not within the letter or spirit of the mandate of the constitution, * * * nor can it be supposed that it was within the contemplation of the framers of the constitution."[1] The Court also said that the code was done for the sake of "convenience."

Whatever has been said or could be said of these specific-subject codes in a negative sense, much more could be said of the modern-day comprehensive codes or revisions. These works are a revision of all the statutes of the state or nation, and thus embrace every subject in a multi-volume publication.

To understand the nature and validity of today's modern codes and revisions, we need to understand the established or constitutional method of enacting and publishing laws. When laws are passed by both houses of a legislative body, the bill is sent to the governor or president to sign. If it is signed the enacted bill goes to the office of the Secretary of State, who is the keeper of all official government documents and records. The Secretary of State is the official who possesses the state seal (or national seal), and affixes that seal to the true and valid documents and records that come to his office. Most State Constitutions prescribe these facts. Thus the laws passed by the legislature which are generally recognized as such are those that are issued or published by the Secretary of State:

> We consider that the Secretary of State has an indisputable legal duty to publish validly enacted laws; a duty imposed upon him by Article IV, Section 4(b) of the Florida

---

[1] *Ex parte Thomas,* 21 So. 369, 370 (Ala. 1897).

8

Constitution, requiring him to "keep the records of the official acts of the legislative and executive departments."[2]

As to whether a bill has become a law or not, the fact that the publication was verified by the Secretary of State is proof that it has:

> The publication of an act in the volume of session laws of the year in which it purports to have been approved and verified by the secretary of state, creates a presumption that it became a law pursuant to the requirements of the constitution.[3]

As more laws became enacted, the usual or traditional mode of recording and publishing them gradually underwent a change:

> The acts passed by each legislative session of Congress or of a state legislature are compiled at the end of the session in what is known as the "Statutes at Large" in the national government, or as "Session Laws" in the states. After a few years it becomes very difficult for judges, attorneys and the general public to know what the law is. Amendments have been made, many sections have been repealed, and even the legislators are often at a loss. At such time a compilation may be made. This is simply a gathering together, usually into a single volume, of all the laws in effect in a given jurisdiction. Changes in punctuation and spelling may be made, and repealed and unconstitutional laws eliminated, but little more. If a more constructive result is desired, a revision or codification may be ordered.[4]

So the laws of the state have traditionally been published by the Secretary of State in a book titled "Session Laws" (or in some cases "Acts" or Resolves" of the State), while the acts of Congress were always published in the "Statutes at Large." But the law-making factories of the State Legislatures and Congress had created a problem with the mass of laws they enacted. It became difficult to keep track of all these laws, so it was decided that a new

method of simplifying the way they were published needed to be devised. Thus sometimes the laws were reorganized and recompiled into other books to get rid of the repealed and unconstitutional laws. These compilations were usually done by the Secretary of State since all the records were in his office.

The Statutes at Large and Session laws are themselves a compilation of laws. But a "revision" or "codification" is very different from a mere compilation. They are different because they are written or drafted by a commission or committee or some non-legislative source. Further, the laws are not just compiled together, they are altered and modified along with additions or deletions made to the contents. They then are passed off as the laws of the Legislature.

In a case in Kentucky we have an example of this change in the publication of laws. In 1894 the "first compilation" of the laws was conducted by "private editors." This was just a reorganization of the existing laws. This type of compilation continued up to 1935. In 1936 the legislature "directed and empowered the Governor to appoint a committee, selected from a list submitted by the Board of Commissioners of the Kentucky Bar." This committee of lawyers then "revised, codified, annotated and published" their work, calling it "the Statute law of Kentucky." But this work was not much more than a compilation since the act authorizing it provided that the Committee "should not alter the language or sense of any act of the General Assembly." In 1943, this provision was removed and the Legislature called for a "definite plan for revision and publication of the statutes."

Thus, the Legislature was getting away from the idea of a mere compilation. It

---

2  *Florida Optometric Ass'n v. Firestone,* 465 So.2d 1319, 1321 (1985).

3  *Bound v. The Wisconsin Cent Ry. Co.,*  45 Wis. 543 (1878).

4  Harvey Walker, *Law Making in the United States,* N.Y., 1934, p. 268.

empowered the Committee to prepare and submit a complete revision, broader in its scope and more comprehensive in its purpose.[5]

The Legislature was giving more power and authority to this committee it had commissioned to "revise" the laws of the state. This change was noted by state Supreme Court:

> The Kentucky Revised Statutes were, therefore, enacted as the law of the Commonwealth and not adopted as a compilation. The distinction is important. A compilation is merely an arrangement and classification of the legislation of a state in the exact form in which it was enacted, with no change in language. It is merely a bringing together in a convenient form of the various acts of legislation enacted over a period of time. It does not purport to restate the law or to be a substitute for prior laws. It does not require any legislative action in order to have the effect it is intended to have. * * * A revision, on the other hand, contemplates a redrafting and simplification of the entire body of statute law. * * * A revision is a complete restatement of the law. It requires enactment by the legislature in order to be effective and upon enactment it becomes the law itself, replacing all former statutes.[6]

We thus have a committee of lawyers re-creating the laws of the state. Such committees have become the new source of law in the nation. While the legislature will "enact the revision into law," this is no different than when the legislature approves the by-laws of a corporation. The laws of the corporation do not become laws of the legislature because of this. Rather, they are laws of the artificial legal entity (or corporation) which the legislature created, just as the "Revised Statutes of Kentucky" are laws of the artificial legal entity or commission that the legislature created.

This process is also no different than when the Legislature authorizes the laws of a city, or approves a city charter. The laws and charter are not regarded as those of the Legislature, or as laws of the State. While the laws which the "committee" drafts are based upon original statutes of the Legislature, they are a complete restatement of them. New material is added, items are removed, provisions are modified. The results are, in legal parlance, laws that are of this artificial legal entity known as "The Commission on Revising Statutes" or "Reviser of Statutes." This legal entity is no different than a corporation or any other legal entity which the legislature created or commissioned.

The laws which this entity writes cannot be deemed the lawful statutes of the State. This is especially so since the various Constitutions of the land specify how each law is to come into being. It was never the intent that such a comprehensive mass of legislation containing every law of the State, and passed in one act, would be the mode for making laws. There are inherent problems associated with this method, as explained by one legal writer:

> The usual practice is to introduce the revision [of statutes] as a single bill, sending it through the same process as any other bill. Obviously, however, the members of the legislature cannot give such a comprehensive measure adequate consideration. It is almost as difficult for a committee to do so.[7]

When the mass of laws from the committee is complete, the legislature is to approve it as a single statute, but because it is so massive not one single legislator will read the new body of law. There are no discussions in the legislature on any of the hundreds of new or revised laws of the committee. Further, it is required by fundamental law and constitutional mandates that a bill be read on three separate days in the legislature. This is impossible with the comprehensive codes that have been adopted in modern times. There thus is no real

---

5  *Fidelity & Columbia Trust Co. v. Meek*, 171 S.W.2d 41, 43, 44 (1943).

6  Ibid., p. 44.

7  Walker, *Law Making in the United States*, p. 272.

opportunity for citizens to raise questions or objections in the legislature to the numerous laws they will be subject to. No one knows what is contained in the revision of laws. The unknown contents are revealed by the textual errors discovered afterwards; as Walker states:

> Many revised statute bills are voted through only for the members to find later numerous 'jokers' and unwise provisions which must then be repealed or amended—and the process of change goes on.

Again we have to ask, is this the mode and process intended by the framers of the Constitution for laws to come into existence? That this is a highly questionable process is revealed by the fact that several states have passed amendments to the State constitutions which allow for a "codification of laws." This indicates that neither this procedure nor the basic concept are not in line with traditional constitutional methods for enacting laws.

According to the Constitution, enacting and changing laws for a state falls upon the legislative branch of government, and that branch cannot delegate the power to any other. The "Code Commissioners" or "Revising Committee" may be composed of some members of the Legislature, but it is also composed of lawyers, judges and private persons. It thus has been noted that "revisers have no legislative authority, and are therefore powerless to lessen or expand the letter or meaning of the law."[8]

Therefore the work of these committees cannot be regarded as law pursuant to the Constitution. The law they produce is another manner of law coming from a source other than the Constitutionally authorized source. These comprehensive revisions or codifications are like a private law approved by the legislature.

Governments, like individuals, tend to do things because they are convenient and easy, such as with codes. But whenever governments do things for convenience sake, they usually transcend constitutional limitations or trespass on individual rights. The desire to have easy arrests without the need of a warrant is one area in which government has done things which are more convenient, but are unlawful.

The completely comprehensive revisions which embrace every law of the state first appeared in the 1940's. Walker states that at the time of his writing (1934), "No American state has a complete code."[9] That is, no state had yet adopted a comprehensive revision of all statutes. We saw that Kentucky adopted its comprehensive revised statutes in 1943. Minnesota adopted a revision in 1945, Illinois and Missouri in 1939, and Virginia in 1950.

The mass of laws written by revisers and codifiers is not the law of the legislature, even when approved by it. They were not enacted in the mode intended by the terms of the Constitution. Also, since we have no legal relationship to the commission or committee that drafted the code or revised statutes, it would seem the laws they write have no authority over us. This is made clear by the fact that these comprehensive codes and revisions have no sign of authority which all law is required to have.

When we look at the specific-subject codes, or the ancient codes of the past, such as the Code of Justinian, the Roman Twelve Tables, or the Napoleonic Civil Code, we find in their contents or on their face the authority by which they existed or were promulgated. The specific-subject codes had what is called an "enacting clause" which is an official declaration of authority and authenticity. The modern day codes have no such declaration of authority on their face or contents. We *thus* need to look further into this key issue of authority by way of an enacting clause.

---

8  *State v. Maurer*, 164 S.W. 551, 552, 255 Mo. 152 (1914).

9  Walker, *Law Making in the United States*, p. 272.

# – 3 –

# The Enacting Clause

## Constitutional Requirements of Laws

All written constitutions prescribe the mode and process of making laws. This includes the reading of the bill on three different days in each house, that if passed it is to be signed by the speaker of the house and by the president of the senate, the recording of the votes upon the journal, being signed by the governor or president, and other such procedures.

But the constitutions also regulate the *form* and *style* in which laws are to be enacted to make them laws of the State. The form and style are regarded as essential parts of the law and thus must be included at all times with the law to make it a valid law. Laws or statutes traditionally have had three main parts:

> The three essential parts of every bill or law are: (1) the title, (2) the enacting clause, and (3) the body.[1]

The title and enacting clause of a law are two aspects of its *form* and *style* which are necessitated by both fundamental law and constitutional mandate. Titles and enacting clauses have been used in the process of making laws long before America was a country. But when the comprehensive "Revised Statutes" started to be used, the titles and enacting clauses disappeared from the records and publications of the laws. A look at any modern Revised or Codified State Statute book or the United States Code will reveal that the laws within them have neither titles nor enacting clauses. What does this mean? We have to look at these areas specifically to see the ramifications they have on the authority of law as found in these codes and revisions. We will first examine the enacting clause as this is the main item that directly relates to authority of law.

An enacting clause, sometimes called an enacting style or enacting authority, is that part of a law which usually comes after the title and before the body of the law. The following shows the manner in which this provision is prescribed in some of our state constitutions:

**CONSTITUTION OF CALIFORNIA—1879**
SECTION 1. The enacting clause of every law shall be as follows: "The People of the State of California, represented in Senate and Assembly, do enact as follows."

**CONSTITUTION OF INDIANA—1851**
SECTION 1. The style of every law shall be, "Be it enacted by the General Assembly of the State of Indiana."

**CONSTITUTION OF TEXAS—1876**
SEC. 29. The enacting clause of all laws shall be, *"Be it enacted by the legislature of the State of Texas."*

**CONSTITUTION OF NORTH CAROLINA—1876**
SEC. 21. The style of the acts shall be: "The General Assembly of North Carolina do enact."

The Constitution for the United States does not prescribe an enacting clause, but Congress has from the beginning used such a clause on all congressional laws. The style which has preceded all laws of Congress is, *"Be it enacted by the Senate and House of Representatives of the United States of America."* The Supreme Court of Georgia in 1967, said that "the constitutions of 46 states specify the form of

---

1  H. Walker, *Law Making in the United States*, p. 316.   Some laws also have an optional "preamble" after the title.

12

the enacting clause. Only the constitutions of Delaware, Georgia, Pennsylvania and Virginia, as well as the Constitution of the United States, are silent on the point.'' The Court also stated the function and purpose of such a provisions:

> The enacting clause is that portion of a statute which gives it jurisdictional identity and constitutional authenticity. * * * The purpose of an enacting clause is to establish the act; to give it permanence, uniformity and certainty; to afford evidence of its legislative, statutory nature, and thus prevent inadvertence, possible mistake, and fraud.''[2]

The enacting clause gives a statute its ''constitutional authenticity,'' which makes its use essential since the constitution is the source of the legislature's authority for enacting laws. A law cannot be regarded as coming from a constitutionally authorized source if it does not have an enacting clause. The enacting clause provides evidence that the law which follows is of the proper legislative source or jurisdiction. This function and purpose of such a constitutional provision has often been expressly stated:

> What is the object of the style of a bill or enacting clause anyway? To show the authority by which the bill is enacted into law; to show that the act comes from a place pointed out by the Constitution as the source of legislation.[3]

> The enacting clause is a short formal statement, appearing after the title, indicating that all which follows is to become law, and giving the authority by which the law is made. There is no excuse for not using it.[4]

> The enacting clause is the section of a bill or statute which establishes the whole document as a law.[5]

> The enacting part of a statute is that which declares its enactment and identifies it as an act of legislation.[6]

Since the Legislature, and not any other body or agency, is given certain law making authority, an enacting clause is necessary to show that the law in question comes from that duly assembled Legislature. If any law is to have authority behind it, it must have an enacting clause preceding it, as is required by the constitution and fundamental law.

### Historical Usage of An Enacting Clause

An enacting clause of some sort has long been used to preface a law, order or command, so as to declare or make known to all concerned the source of the law, and thereby the authority for that law or order to exist. It is in effect a statement of the name of the authority that enacted the law affixed to the law, or on its face, to make it clear that all which follows is to be law from that authority so named.

> The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority. The purpose of an enacting clause of a statute is to identify it as an act of legislation by expressing on its face the authority behind the act.[7]

The use of an enacting clause is one of the oldest concepts used in the process of issuing or enacting laws, edicts and commands, to identify the source and authority for the law. It was perhaps first used by God Himself when He issued a command, directive or law. Thus when God gave Israel the Ten Commandments it was made known to Israel the source and authority of these laws:

---

2  *Joiner v. State,* 155 S.E.2d 8, 10, 223 Ga. 367 (1967).

3  *Ferrill v. Keel,* 151 S.W. 269, 272, 105 Ark. 380 (1912).

4  Harvey Walker, *The Legislative Process,* N.Y., Ronald Press Co. (1948), p. 346.

5  *Pearce v. Vittum,* 61 N.E. 1116, 1117, 193 Ill. 192 (1901).

6  *State v. Reilly,* 95 Atl. 1005, 1006, 88 N.J. Law 104 (1915).

7  73 *American Jurisprudence* 2d, ''Statutes,'' § 93.

*I am the LORD thy God, which brought you out of the land of Egypt, from the house of bondage.*

Thou shalt have no other gods before me.

Thou shalt not make for yourself any graven image.

Thou shalt not take the name of the LORD thy God in vain

Keep the Sabbath day to sanctify it. . . [8]

That which is italicized is essentially the enacting clause for the Ten Commandments. It states or identifies the source of the laws that follow. They came not from just any god, but from the God which brought Israel out of Egypt. That which follows the statement of authority is the body of the law. When additional laws were given by Moses, he made a statement of the authority for the laws:

Now these are the commandments, the statutes, and the judgments, which the LORD your God commanded to teach you, that you might do them in the land where you go to possess it. [9]

And Moses gathered all the congregation of the children of Israel together, and said to them, These are the words which the LORD has commanded, that you should do them. [10]

And Moses said to the Congregation, This is the thing which the LORD commanded to be done. [11]

These were all enacting clauses for the commandments and laws which followed. Through these statements Israel knew the authority behind the laws. They were not just something Moses made up. They did not come from Pharaoh or the king of Mesopotamia. They were not laws of the Baal god. They came from Jehovah God.

Sometimes such statements also appeared after the laws of God were read or stated, as with the food laws which concluded, "For I am the LORD your God" (Lev. 11:44; see also the laws in Lev. 19). But in any case, Israel always knew by what authority the laws they were to follow were enacted. Even before this time, when God dealt with the patriarchs, we see God making a formal declaration of His identity, and thus authority:

And when Abram was ninety-nine years old, the LORD appeared to Abram, and said to him, I am the Almighty God; walk before me, and be thou perfect. [12]

At the outset of his communication with Abraham, God makes a statement of His identity. Thus it was known to Abraham and to all of us who read Scripture that the terms of the covenant that followed were by the authority of "Almighty God," and not of any man or king or government.

This concept of an enacting authority was used by every king and ruler when issuing their laws, decrees or proclamations. We thus see that when Cyrus, king of Persia, issued his written proclamation for the return of the Israelites back to Jerusalem and the rebuilding of the Temple, he prefaced the proclamation with these words: "Thus says Cyrus king of Persia." [13]

We again see a type of enacting clause in the letter of king Artaxerxes to Ezra authorizing him to bring the people of Israel to Jerusalem, and directing what should be done and observed. The letter starts as follows:

"Artaxerxes, king of kings, To Ezra the priest, . . . I issue a decree that all those of the people of Israel. . ." (Ezra 7:12,13).

---

8 Exodus 20:2-8; Deuteronomy 5:6-12.

9 Deuteronomy 6:1

10 Exodus 35:1

11 Leviticus 8:5.

12 Genesis 17:1

13 Ezra 1:2;  2 Chronicles 36:23

14

The Caesars and Emperors of the Roman Empire had always prefaced their edicts and commands with a statement containing their name to show the source and authority for the law. Thus when Constantine issued his edict to suppress soothsayers, it started by stating:

> The Emperor Constantine Augustus to Maximus. No soothsayer may approach his neighbor's threshold, even for any other purpose.[14]

In the early middle ages in Europe (476-1000 A.D.), the Merovingian and the Carolongian kings would often form councils to help regulate civil or ecclesiastical matters. The decrees would often name the king and council, and state, "We do ordain . . ."

A statement of enacting authority was always used in the royal decrees and commands of the kings of England. Thus *Magna Carta* (1215), begins with the name of the authority which adopted and issued it:

> "JOHN, by the grace of God, king of England, lord of Ireland, duke of Normandy. . ."

The *Statutes of Westminster,* which were issued in 1275 by king Edward I, begins: "These be the acts of king Edward, son to king Henry, made at Westminster. . ." In the *Ordinance of the Staples* (1353) by Edward III, the decree begins:

> EDWARD by the grace of God, king of England and of France, and lord of Ireland, to all sheriffs, mayors, bailiffs, ministers, and other our faithful people to whom these present letters shall come, Greeting: Whereas, . . .[15]

In the *Letters of Patent to John Cabot* (1496), granting the use and specifying the conditions for certain lands discovered in America, it states:

HENRY, by the grace of God, king of England and France, and lord of Ireland, To all to whom these presents shall come, Greeting.[16]

When one would read these documents it was immediately known from what source the orders or laws came from, and thus what was the authority behind them. When Parliament developed into a true law-making body around 1440, their use of an enacting clause became a regular part of English statutes to this day. A typical act of Parliament from the reign of King George III, about 1792, reads as follows:

> Be it enacted by the King's most Excellent Majesty, by and with the Advice and Consent of the Lords Spiritual and Temporal, and Commons, in this present Parliament assembled, and by the Authority of the same, That, there shall be no Drawback or allowance paid on the Exportation. . . "[17]

This enacting clause made it known to all by what authority the law before them was enacted. The American colonists were, of course, well familiar with Parliamentary forms and procedure in passing laws. When self-representative bodies started to appear in America, an enacting style was also used by them. The first Assembly of Virginia was convened July 30, 1619 by Governor Yeardley, under the authority of the Virginia Company, and marks the beginning of representative government in America. The Assembly framed the *Ordinance For Virginia,* July 24, 1621, which starts with these words:

> An ordinance and Constitution of the Treasurer, Council, and Company in England, for a Council of State and General Assembly. . . To all people, to whom these Presents shall come, be seen, or heard. . .[18]

The document thus starts off by declaring the authority for the law which follows. In

---

14  Henry Bettenson, *Documents of the Christian Church,* 2nd edition, Oxford University Press, 1963, p. 25.

15  *Select Documents of English Constitutional History,* edited by G. Adams & H. Stephens, Macmillan Co., London, 1926, pp. 68, 124.

16  Thorpe, *Federal and State Constitutions,* Washington, 1909, vol. I, p. 46.

17  32 George III. c. 60.

another famous document of self-government, the *Mayflower Compact,* begins as follows:

> IN The Name of God, Amen.  We, whose names are underwritten, . . .Do by these Presents, solemnly and mutually in the Presence of God and one another, covenant and combine ourselves together into a civil Body Politick, . . .

The compact sets forth some general principles that are to constitute a government in the colony, which those of that colony are to be under and follow.  As to the authority by which this is established, it states, "we whose names are underwritten."

In 1692, the Massachusetts Bay province enacted a law for the punishing of various capital laws, which included idolatry, witchcraft, blasphemy, high treason, murder, poisoning, sodomy, bestiality, rape, arson, and piracy.  The act, as found in the original statute book, reads as follows:

CHAPTER 19.

AN ACT FOR THE PUNISHING OF CAPITAL OFFENDERS.

*Be it ordained and enacted by the Governor, Council and Representatives in General Court assembled, and by the authority of the same,*

> That all and every of the crimes and offenses in this present act hereafter mentioned be and hereby are declared to be felony; and every person or persons committing any of the said crimes or offenses, being thereof legally convicted, shall be adjudged to suffer the pains of death.[19]

The enacting clause appeared right after the title, but before the body of the law.  All laws from the Assembly were prefaced with such an enacting clause.  Thus every person reading them knew from what source the laws came and by what authority they existed.  Likewise, an act regulating marriages in the colony of Carolina in 1715, had this enacting style:

> *Be it Enacted by the Plantation & Lords Proprietors of Carolina, by & with the consent of this present Grand Assembly and the authority thereof,* that any two persons desirous to be joined together in the Holy Estate of Matrimony, . . .[20]

In the *Pennsylvania Charter of Privileges* (1701), the document starts out by declaring the source and authority for the provisions of the charter: "William Penn, Proprietary and Governor of the Province of Pennsylvania and Territories."[21] Nearly all the various colonial assemblies, proprietors, governors, and councils which established laws, charters and governments declared their authority in their decrees.

At the time of the American Revolution the colonists, regarding themselves as free and independent, formed governments for themselves.  So, just like the *Mayflower Compact,* we also find some statement of authority for the people to ordain a government in a type of enacting clause, as used in the U.S. Constitution: "We the people of the United States."  The same concept is found in every state constitution: "We, therefore, the representatives of the people, . . . do ordain and declare," (Const. of Georgia, 1777); or, "We, the people of the State of Alabama, in order to establish justice. . ." (Const. of Alabama, 1901).

All state constitutions now start with an enacting statement that identifies the authority for their existence.  Consequently, the framers of these constitutions required that the laws of the legislature also be prefaced with an enacting clause, to show the authority for its laws, as has been done throughout history:

---

18 *Documents of American History,* edited by Henry S. Commager, Appleton, New York, 1949, p. 13.

19 *The Acts and Resolves of the Province of the Massachusetts Bay,*  Wright & Potter, Boston, 1869, vol. I, p. 555.

20 *The State Records of North Carolina,* edited by Walter Clark, Nash Brothers, Goldsboro, 1904, vol. XXIII, p. 1.

21 Commager, op. cit.,  p. 40.

**16**

By an enacting clause, the makers of the Constitution intended that the General Assembly should make its impress or seal, as it were, upon each enactment for the sake of identity, and to assume and show responsibility. While the Constitution makes this a necessity, it did not originate it. The custom is in use practically everywhere, and is as old as parliamentary government, as old as king's decrees, and even they borrowed it. The decrees of Cyrus, King of Persia, which Holy Writ records, were not the first to be prefaced with a statement of authority. The law was delivered to Moses in the name of the Great I Am, and the prologue to the Great Commandments is no less majestic and impelling. But, whether these edicts and commands be promulgated by the Supreme Ruler or by petty kings, or by the sovereign people themselves, they have always begun with some such form as an evidence of power and authority.[22]

Much of what is often regarded as law, or common law, depends upon what has proven to be legally soundly and commonly used in history. Thus many legal authorities have recognized the historical legacy of using an enacting clause, thus indicating it is a concept of fundamental law.

Written laws, in all times and all countries, whether the edicts of absolute monarchs, decrees of King and Council, or the enactments of representative bodies, have almost invariably, in some form, expressed upon their face the authority by which they were promulgated or enacted. The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority.[23]

The propriety of an enacting clause in conformity to this ancient usage was recognized by the several states of the Union after the American Revolution, when they came to adopt Constitutions for their government, and without exception, so far as we can ascertain, express provision was made for the form to be used by the legislative department of the state in enacting laws.[24]

Laws, whether by God or man, have at all times in history used an enacting statement to show the source and authority of the law enacted.

### Mandatory Requirement of an Enacting Clause

The question has often been raised as to whether constitutional provisions that call for a particular form and style of laws, or procedure for their enactment, are to be regarded as directory or mandatory. The question is critical since its use will have an affect on the *validity* of a statute or law. If such provisions are directory, then they are treated as legal advice which those in government can decide whether or not to follow. But if mandatory such provisions must be strictly followed or else the resulting act or law is unconstitutional and invalid.

While a few courts at an early period held that such provisions were merely directory, the great weight of authority has deemed them to be mandatory. In speaking on the mandatory character of enacting clause provisions one legal textbook states:

[T]he view that this provision is merely directory seems to conflict with the fundamental principle of constitutional construction that whatever is prohibited by the constitution, if in fact done, is ineffectual. And the vast preponderance of authority holds such provisions to be mandatory and that a failure to comply with them renders a statute void.[25]

---

22 *Commonwealth v. Illinois Cent. R. Co.,* 170 S.W. 171 175, 160 Ky. 745 (1914).

23 *Sjoberg v. Security Savings & Loan Assn,* 73 Minn. 203, 212, 213 (1898); *State v. Kozer,* 239 Pac. 805, 807, (Ore. 1925); *Joiner v. State,* 155 S.E.2d 8, 9, 223 Ga. 367 (1967); 25 *Ruling Case Law,* "Statutes," § 22, p. 775, 776; *City of Carlyle v. Nicolay,* 165 N.E. 211, 216, 217 (Ill. 1929); *Joiner v. State,* 155 S.E.2d 8, 9, 223 Ga. 367 (1967).

24 *State v. Burrow,* 104 S.W. 526, 529, 119 Tenn. 376 (1907).

25 *Ruling Case Law,* vol. 25, "Statutes," § 84, p. 836.

When something is "directory" its usage is only an advisable guide, and can be ignored. But the requirement of an enacting clause is based upon its ancient usage in legislative acts.

> A declaration of the enacting authority in laws is a usage and custom of great antiquity, * * * and a compulsory observance of it is founded in sound reason.[26]

The Supreme Court of Illinois had under consideration an ordinance with no enacting clause. The Court expounded upon why the lack of the clause invalidated the law:

> Upon looking into the constitution, it will be observed that "The style of the laws of this State shall be: '*Be it enacted by the People of the State of Illinois, represented in the General Assembly.*'" (Art. 4 § 11). * * * The forgoing sections of articles 3, 4, and 5, of the Constitution, are the only ones in that instrument proscribing the mode in which the will of the people, acting through the legislative and executive departments of the government, can become law. * * * That these provisions, giving the form and mode by which, * * * valid and binding laws are enacted, are, in the highest sense mandatory, cannot be doubted. * * * Then it follows that this resolution cannot be held to be a law. It is not the will of the people, constitutionally expressed, in the only mode and manner by which that will can acquire the force and validity, under the constitution, of law, for this legislative act is without a title, has no enacting clause, * * * and is sufficient to deprive this expression of the legislative will of the force and effect of law; and the same did not become, therefore, and is not, legally binding and obligatory upon the respondents.[27]

The Court concluded that the constitutional provisions regulating the form and mode of laws, such as the enacting clause and title, are "essential and indispensable parts" of the process of making laws.

The Supreme Court of Arkansas, on several occasions, ruled on the necessity of an enacting clause:

> As long ago as 1871, this court, in Vinsant v. Knox, 27 Ark. 266, held that the constitutional provision that the style of all bills should be, "Be it enacted by the General Assembly of the state of Arkansas," was mandatory, and that a bill without this style was void, although otherwise regularly passed and approved.[28]

In a case in Nevada a law passed the legislature without a proper enacting clause, raising the question of whether the constitutional enacting clause was a requisite to a valid law. The Court said it was because the provision was mandatory:

> [T]he said section of the Constitution is imperative and mandatory, and a law contravening its provisions is null and void. If one or more of the positive provisions of the Constitution may be disregarded as being directory, why not all? And if all, it certainly requires no argument to show what the result would be. The Constitution, which is the paramount law, would soon be looked upon and treated by the legislature as devoid of all moral obligations; without any binding force or effect; a mere "rope of sand," to be held together or pulled to pieces at its will and pleasure. We think the provisions under consideration must be treated as mandatory.

> Every person at all familiar with the practice of legislative bodies is aware that one of the most common methods adopted to kill a bill and prevent its becoming a law, is for a member to move to strike out the enacting clause. If such a motion is carried, the bill is lost. Can it be seriously contended that such a bill, with its head cut off, could thereafter by any legislative action become a law? Certainly not.[29]

This case was cited and approved by the Supreme Court of Michigan, which also stated:

---

26  *Caine v. Robbins*, 131 P.2d 516, 518 61 Nev. 416 (1942).

27  *City of Carlyle v. Nicolay*, 165 N.E. 211, 215, 216 (Ill. 1929);  affirmed, *Liberty Nat. Bank of Chicago v. Metrick*, 102 N.E.2d 308, 310,  410 Ill. 429 (1951).

28  *Ferrill v. Keel*, 151 S.W. 269, 273,  105 Ark. 380 (1912).

29  *Nevada v. Rogers*, 10 Nev. 250, 255, 256 (1875); approved in *Caine v. Robbins*, 131 P.2d 516, 518, 61 Nev. 416 (1942).

18

It will be an unfortunate day for constitutional rights when courts begin the insidious process of undermining constitutions by holding unambiguous provisions and limitations to be directory merely, to be disregarded at pleasure.[30]

In Montana a case arose that involved a statute with a "defective enacting clause." The Supreme Court of Montana, after quoting the constitutional section relating to the enacting clause, held that:

These provisions are to be construed as mandatory and prohibitory, because there is no exception to their requirements expressed anywhere in the Constitution. * * * We think the provisions of the Constitution are so plainly and clearly expressed and are so entirely free from ambiguity that there can be no substantial ground for any other conclusion than that Chapter 199 was not enacted in accordance with the mandatory provisions of that instrument, and that the Act must be declared invalid.[31]

In affirming this decision in a later case, the same Court said that "the enacting clause of a bill goes to the substance of that bill; it is not merely procedural."[32]   The Court also said that a resolution could not be regarded as a law because, "It had no *enacting clause* without which it never could become a law."[33]

The Court of Appeals of Kentucky held a statute void for not having an enacting clause, holding that all constitutional provisions are mandatory:

Certainly there is no longer room for doubt as to the effect of all provisions of the Constitution of this state.   By common consent they are deemed mandatory. * * * No creature of the Constitution has power to

question its authority or to hold inoperative any section or provision of it. * * * The bill in question is not complete, it does not meet the plain constitutional demand. Without an enacting clause it is void.[34]

The mandatory character of laws was examined by the Supreme Court of Tennessee, which reviewed many other cases and concluded the following:

The provision we are here called upon to construe is in plain and unambiguous words. The meaning of it is clear and indisputable, and no ground for construction can be found. The language is: "The style of the laws of this state shall be," etc. The word "shall," as used here, is equivalent to "must."   We know of no case in which a provision of the Constitution thus expressed has been held to be directory.   We think this one clearly mandatory, and must be complied with by the Legislature in all legislation, important or unimportant, enacted by it; otherwise it will be invalid.[35]

This case was quoted by the New Jersey Superior Court which cited the following from the case:

The provisions of these solemn instruments (constitutions) are not advisory, or mere suggestions of what would be fit and proper, but commands which must be obeyed.[36]

The Supreme Court of Minnesota, in one of the landmark cases on this subject, held the following regarding the enacting clause provision in its Constitution:

Upon both principle and authority, we hold that article 4, § 13, of our constitution, which provides that "the style of all laws of this state shall be, 'Be it enacted by the legislature of the state of Minnesota,' " is mandatory.

30 *People v. Dettenthaler,* 77 N.W. 450, 453, 118 Mich. 595 (1898).
31 *Vaughn & Ragsdale Co. v. State Bd. of Equalization,* 96 P.2d 420, 423, 424, 109 Mont. 52 (1939).
32 *Morgan v. Murray,* 328 P.2d 644, 654 (Mont. 1958).
33 *State v. Highway Patrol Board,* 372 P.2d 930, 944 (Mont. 1962).
34 *Commonwealth v. Illinois Cent. R. Co.,* 170 S.W. 171, 175, 160 Ky. 745 (1914); *Louisville Trust Co. v. Morgan,* 203 S.W. 555, 180 Ky. 609 (1918)..
35 *State v. Burrow,* 104 S.W. 526, 529, 119 Tenn. 376 (1907); *Biggs v. Beeler,* 173 S.W.2d 144, 146 (Tenn. 1943).
36 *Village of Ridgefield Park v. Bergen Co. Bd. of Tax.,* 162 A.2d 132, 134, 62 N.J. Super. 133 (1960).

and that a statute without any enacting clause is <u>void</u>. <u>Strict conformity</u> with the constitution ought to be an axiom in the science of government.[37]

Section 45 of the Constitution of Alabama prescribes that, "the style of laws of this state shall be, *'Be it enacted by the Legislature of Alabama.'*" In determining the nature and purpose of this section the Federal Circuit Court of Alabama stated:

> Complainant correctly urges that this section is <u>mandatory</u>, and not directory; that no equivalent words will suffice; and that any departure from the mode prescribed is fatal to the enactment, since, if one departure in style, however slight, is permitted, another must be, and the constitutional policy embodied in the section would soon become without any force whatever.[38]

The Supreme Court of Georgia said the use of an enacting clause is "essential," and that without it the Act they had under consideration was "a nullity and of <u>no force and effect as law</u>."[39] This decision was based upon the traditional use of an enacting clause by Georgia's Generally Assembly. In an earlier decision the Court held that a measure containing no enacting clause had no effect as intended in a legal sense.[40]

The Supreme Court of North Carolina held that an act prohibiting the sale of spirituous liquors is inoperative and void for want of an enacting clause as prescribed by the Constitution:

> The very great importance of the constitution, as the organic law of the state

and people, cannot be overstated. * * * It is not to be disregarded, ignored, suspended, or broken, in whole or in part. * * * When it prescribes that a particular act or thing shall be done in a way and manner specified, such direction must be <u>treated as a command</u>, and an observance of it essential to the effectiveness of the act or thing to be done. Such act cannot be complete, such thing is not effectual, until done in the way and manner so prescribed.[41]

This case was later approved by the Court holding that an enacting clause is "mandatory," and thus the act under consideration which had no enacting clause "must be regarded as inoperative and void." It further said:

> To be valid and effective the Acts of the General Assembly must be enacted in conformity with the Constitution.[42]

The Supreme Court of Missouri held that constitutional requirements, such as that for an enacting clause, "are mandatory and not directory." The case involved an initiative measure by the people which was without an enacting clause as required by the constitution. The Court said that, "under such a requirement the omission of an enacting clause in a proposed initiative measure renders it void."[43] Earlier the Court held that where a law fails to conform to such provisions "there is no other alternative but to pronounce it invalid."[44]

In a similar case in Arkansas, a legislative initiative under the state constitution required to have a specific enacting clause, but the initiative involved had no such clause. The Court held:

37 *Sjoberg v. Security Savings & Loan Assn*, 75 N.W. 1116, 73 Minn. 203, 212 (1898); affirmed in *Freeman v. Goff*, 287 N.W. 238, 241 (Minn. 1939); *State v. Naftalin*, 74 N.W.2d 249, 262 (Minn. 1956); *State v. Zimmerman*, 204 N.W. 803, 812 (Wis. 1925).

38 *Montgomery Amusement Co. v. Montgomery Traction Co.*, 139 Fed. 353, 358 (1905), affirmed, 140 Fed. 988.

39 *Joiner v. State*, 155 S.E.2d 8, 10, 223 Ga. 367 (1967).

40 *Walden v. Town of Whigham*, 48 S.E. 159, 120 Ga. 646 (1904).

41 *State v. Patterson*, 4 S.E. 350, 351, 98 N.C. 660 (1887).

42 *Advisory Opinion In Re House Bill No. 65*, 43 DE.2d 73, 76, 77 (N.C. 1947).

43 *State ex rel Scott v. Kirkpatrick*, 484 S.W.2d 161, 163 (Mo. 1972).

44 *The State of Missouri v. Miller*, 45 Mo. 495, 498 (Mo. 1870).

This constitutional requirement, that the measure sought to be initiated shall have an enacting clause, is <u>mandatory</u>. There is absolutely no enacting clause in the measure here involved; and therefore, the petition is not legally sufficient. The absence of the enacting clause is a fatal defect.[45]

The dangers of not treating such provisions as mandatory have been noted:

> It seems to us that the rule which gives to the courts and other departments of the government a discretionary power to treat a constitutional provision as directory, and to obey it or not, at their pleasure, is fraught with great danger to the government. We can conceive of no greater danger to constitutional government, and to the rights and liberties of the people, than the doctrine which permits a loose, latitudinous, discretionary construction of the organic law.[46]

That an enacting clause provision is mandatory and not directory, and that its absence renders a law invalid, was also held by the Supreme Court of South Carolina,[47] and the Supreme Court of Indiana.[48] These provisions relating to the mode of enacting laws "have been repeatedly held to be mandatory, and that any legislation in disregard thereof is unconstitutional and void."[49]

Thus laws which fail to adhere to the fundamental concept of containing an enacting clause lose their authority as law. It thus would seem quite clear that the lack of enacting clauses on the laws used in Revised Statutes or the U.S. Code have no sign of authority and are void as laws. It was not a choice of Congress or the Legislature to approve of laws which have no enacting style. The use of such form and style for all laws is mandatory, and any failure to comply with it for any reason, such as for convenience, renders the measure void.

## The Absence of an Enacting Clause Provision in a Constitution

While the U.S. Constitution and a few State constitutions do not specifically prescribe that all laws use an enacting style, its use is nonetheless required by our unwritten constitution. The use of an enacting clause and even a title exists by fundamental law; they are common law concepts.

Like many other old and well established concepts of law and procedure, the framers of the U.S. Constitution did not feel it necessary to write into it the requirement of an enacting clause or titles on all laws. There are so many of these fundamental concepts that it would be impractical to list them all in a constitution. But that does not mean they don't exist, just like the rights enumerated in the Bill of Rights were not originally written into the Constitution because they were recognized to be so fundamental it would be superfluous to list them.

That the use of an enacting clause is necessary or required despite its failure to be prescribed in a constitution has been often recognized. Several legal authorities have cited with approval Mr. Cushing, in his *Law & Practice of Legislative Assemblies* (1819) § 2102, where he states:

> (1) Where enacting words are prescribed, nothing can be a law which is not introduced by those very words, even though others which are equivalent are at the same time used.

> (2) Where the enacting words are not prescribed by a constitutional provision, the enacting authority must notwithstanding be stated, and any words which do this to a common understanding are doubtless sufficient, or the words may be prescribed

---

45 *Hailey v. Carter*, 251 S.W.2d 826, 828 (Ark. 1952).

46 *Hunt v. State*, 3 S.W. 233, 235,  22 Tex. App. 396 (1886).

47 *Smith v. Jennings*, 45 S.E. 821, 67 S.C. 324 (1903).

48 *May v. Rice*, 91 Ind. 546 (1883).

49 *State v. Burlington & M. R.R. Co.*, 84 N.W. 254, 255,  60 Neb. 741 (1900).

by rule.  In this respect much must depend upon usage.[50]

The usage of an enacting clause is thousands of years old, and every state and the United States have followed this custom from the beginning.  Thus for something to be regarded as a true and valid law it is logical that one would expect to see an enacting clause on its face.

One of the leading cases on this issue was from the Supreme Court for the Territory of Washington.  The validity of an act of the Territorial Legislature that would move the seat of the government was in question.  The act had no enacting clause, and the territory had no constitution of its own requiring one, as it was generally governed by the U.S. Constitution.  The Court held the law invalid stating:

Strip this act of its outside appendages, leave it "solitary and alone," is it possible for any human being to tell by what authority the seat of government of Washington Territory was to be removed from Olympia to Vancouver?

The staring fact that the constitutions of so many states, made and perfected by the wisdom of their greatest legal lights, contain a statement of an enacting clause, in which the power of the enacting authority is incorporated, is to our minds a strong, and powerful argument of its necessity.  It is fortified and strengthened by the further fact that Congress, and the other states, to say nothing of the English Parliament, have, by almost unbroken custom and usage, prefaced all their laws with some set form of words, in which is contained the *enacting authority*.  Guided by the authority of such eminent jurists as Blackstone, Kent, and Cushing, and the precedents of national and state legislation, the Court arrives with satisfaction and consciousness of right in

declaring, that where an act like the one now under consideration, is wanting in the essential formalities and solemnities which have been mentioned, it is inoperative and void, and of no binding force or effect.[51]

The Court here judged the validity of the law based upon fundamental law, rather than any specific constitutional provision.    This case has been cited quite frequently by various legal texts and courts and always in a favorable or approving manner.

Various law textbooks in the discussion of statutes have clearly stated the need for an enacting clause despite the lack of a constitutional provision for one:

Although there is no constitutional provision requiring an enacting clause, such a clause has been held to be requisite to the validity of a legislative enactment.[52]

In recognition of this custom [of using an enacting clause], it has sometimes been been declared that an enacting clause is necessary to the validity of a statute, although there is no provision in the fundamental law requiring such a clause.[53]

In 1967, the Supreme Court of Georgia held that a law without an enacting clause was null and void, even though their State constitution had no provision requiring one.  They based their decision on the long standing custom of its usage.[54]

The requirement that all laws contain an enacting style or clause is deeply rooted in precedent and the common law.   There thus need not be any constitutional provision for an enacting clause to make its usage mandatory.  If it is not used the law in question is not valid and carries no obligation to be followed.

50 *Smith v. Jennings*, 45 S.E. 821, 824, 825,  67 S.C. 324 (1903); *Commonwealth v. Illinois Cent. R. Co.*, 170 S.W. 171, 173, 160 Ky. 745 (1914); State of *Nevada v. Rogers*, 10 Nev. 250, 256, 257 (1875); *Sjoberg v. Security Savings & Loan Assn*, 73 Minn. 203, 211, 75 N.W. 1116 (1898).

51 *In re Seat of Government*, 1 Wash. Ter. 115, 123 (1861).

52 82 *Corpus Juris Secundum*, "Statutes," § 65, p. 104.

53 *Ruling Case Law*, vol. 25, "Statutes," § 22, p. 776.

54 *Joiner v. State*, 155 S.E.2d 8, 10,  223 Ga. 367 (1967).

# – 4 –

# Enacting Clauses in the Publication of Statute Books

While it has been well decided that the passage of a bill in the legislature without an enacting clause on the bill renders it void as a law, we need to consider the result of not using an enacting clause after it leaves the legislature. This is the important question today in light of the fact that the state "Codes" and "Revised Statutes" and the "U.S. Code" are publications which purport to be law, but which use no enacting clauses. Is a publication of a law without an enacting clause a valid and lawful law?

If laws are only required to have an enacting clause while in the legislative system, only to be thereafter removed, then what is their value and purpose to the public? If they are to serve as evidence of a law's legislative nature, and as identification of its source and authority as a law, what good does that function do only for the legislators? The vast majority of the public never sees the bill under consideration until it passes and is printed in public records or statute books. They generally only see the finished "law."

When we read the provisions which require an enacting clause, they say that "all laws shall . . .", or "the laws of this State shall . . ." They do not say "all bills shall . . ." The terms "bill" and "law" are clearly distinguished from one another in most constitutions in prescribing the procedure of the legislative process, such as:

"No *law* shall be passed except by *bill*"

"No *bill* shall become a *law* except by a vote of a majority."

"Every *bill* which shall pass both houses shall be presented to the governor of the State; and every *bill* he approves shall become a *law*."

A bill is a form or draft of a law presented to a legislature. "A bill does not become a law until the constitutional prerequisites have been met."[1] Thus a bill is something that becomes a law. Laws do not exist in the legislature, rather only bills do. Laws exist only when the legislative process is followed and completed as prescribed in the constitution.

Clearly, the legislature cannot enact a law. It merely has the power to pass bills which may become laws when signed by the presiding officer of each house and are approved and signed by the Governor. [2]

Since all constitutional provisions place the requirement of an enacting clause on "laws" it includes the statute as it exists outside the legislative process, that is, as it is published in statute books. We have to also regard the fundamental maxim which states: "A law is not obligatory unless it be promulgated."[3] An act is not even regarded as a law, or enforceable as a law, unless it be made publicly known. This is usually done through a publication by the proper public authority such as the Secretary of State. But a law is not properly

---

1   *State v. Naftalin*, 74 N.W.2d 249, 261, 246 Minn. 181 (1956).

2   *Vaughn & Ragsdale Co. v. State Bd. of Eq.*, 96 P.2d 420, 423 (1939).

3   *Black's Law Dictionary*, 2d edition, p. 826.

or lawfully promulgated without an enacting clause or title published with the law.

Since the constitution requires "all laws" to have an enacting clause, it makes it a requirement on published laws as well as on bills in the legislature.  If the constitution said "all bills" shall have an enacting clause, then their use in publications would not be required.

That published laws are to have an enacting clause is made clear by the statement commonly used by legal authorities that an enacting clause of a law is to be **"on its face."**  To be on its face means to be in the same plain of view.

Face has been defined as the surface of anything; especially the front, upper, or outer part or surface; that which particularly offers itself to the view of a spectator.[4]

The face of an instrument is that which is shown by the language employed without any explanation, modification or addition from extrinsic facts or evidence.[5]

For the enacting clause to be of any use it must appear with a law, that is, on its face,  so that all who look at the law know that it came from the legislative authority designated by the Constitution.  The enacting clause would not serve its intended purpose if not printed in the statute book on the face of the law.

The purpose of an enacting clause in legislation is to express on the face of the legislation itself the authority behind the act and identify it as an act of legislation.[6]

The purpose of provisions of this character [enacting clauses] is that all statutes may bear upon their faces a declaration of the sovereign authority by which they are enacted and declared to be the law, and to promote

and preserve uniformity in legislation.  Such clauses also import a command of obedience and clothe the statute with a certain dignity, believed in all times to command respect and aid in the enforcement of laws.[7]

It is necessary that every law should show on its face the authority by which it is adopted and promulgated, and that it should clearly appear that it is intended by the legislative power that enacts it that it should take effect as a law.[8]

The enacting clause, sometimes referred to as the commencement or style of the act, is used to indicate the authority from which the statute emanates.  Indeed, it is a custom of long standing to cause legislative enactments to express on their face the authority by which they were enacted or promulgated.[9]

A law is "promulgated" by its being printed and published and made available or accessible by a public document such as an official statute book.  When this promulgation occurs, the enacting clause is to appear "on the face" of that law, thus being printed in that statute book along with the law.

Enacting clauses traditionally appear right after the title and before the body of the law, and when so printed, whether on a bill or in a statute book, it is then regarded as being on the face of the law.  It cannot be in some other record or book, as stated by the Supreme Court of Minnesota:

If an enacting clause is useful and important, if it is desirable that laws shall bear upon their face the authority by which they are enacted, so that the people who are to obey them need not search legislative and other records to ascertain the authority, then it is not beneath the dignity of the framers of a

---

4  *Cunningham v. Great Southern Life Ins. Co.,* 66 S.W.2d 765, 773 (Tex. Civ. App.).

5  *In re Stoneman,* 146 N.Y.S. 172, 174.

6  *Preckel v. Byrne,* 243 N.W. 823, 826, 62 N.D. 356 (1932).

7  *State v. Burrow,* 104 S.W. 526, 529,  119 Tenn. 376 (1907).

8  *People v. Dettenthaler,* 77 N.W. 450, 451,  118 Mich. 595 (1898); citing *Swan v. Buck,* 40 Miss. 268 (1866).

9  Earl T. Crawford, *The Construction of Statutes,* St. Louis, 1940, § 89, p. 125.

24

constitution, or unworthy of such an instrument, to prescribe a uniform style for such enacting clause.[10]

This case dealt with "the validity of Laws 1897, c. 250," and it was held that "Law 1897, c. 250, is void." While the court mainly decided this because the law had no enacting clause when signed by the governor, it clearly expressed that if laws are to be regarded as valid laws of the state, they "must express <u>upon their face</u> the authority by which they were promulgated or enacted." The law was published in the statute book without an enacting clause (see Fig. 1). The law was thus challenged as being "unconstitutional" because it "contains no enacting clause whatever."

The enacting clause must be readily visible on the face of the statute so that citizens don't have to search through the legislative journals or other records or books to see if one exists. Thus a statute book without the enacting clause is not a valid publication of laws. In regards to the validity of a law that was found in their statute books without an enacting clause, the Supreme Court of Nevada held:

Our constitution expressly provided that the enacting clause *of every law* shall be, "The people of the state of Nevada, represented in senate and assembly, do enact as follows." This language is susceptible of but one interpretation. There is no doubtful meaning as to the intention. It is, in our judgment, an imperative mandate of the people, in their sovereign capacity, to the legislature, requiring that all laws, to be binding upon them, shall, <u>upon their face</u>, express the authority by which they were enacted; and, since this act comes to us without such authority appearing <u>upon its face</u>, it *is not a law*."[11]

The manner in which the law came to the court was by the way it was found in the statute book, cited by the Court as "Stat. 1875, 66,"

and that is how they judge the validity of the law. Since they saw that the act, as it was printed in the statute book, had an insufficient enacting clause on its face, it was deemed to be "not a law." It is only by inspecting the publicly printed statute book that the people can determine the source, authority & authenticity of the law they are expected to follow.

The Supreme Court of Arkansas, in construing what are the essentials of law making, and what constitutes a valid law, stated the following:

[A] legislative act, when made, should be a written expression of the legislative will, in evidence, not only of the passage, but of the authority of the law-making power, is nearly or quite a self-evident proposition. Likewise, we regard it as necessary that every act, thus expressed, should show <u>on its face</u> the authority by which it was enacted and <u>promulgated</u>, in order that it should clearly appear, <u>upon simple inspection of the written law</u>, that it was intended by the legislative power which enacted it, that it should take effect as law. These relate to the legislative authority as evidence of the authenticity of the legislative will. These are features by which courts of justice and <u>the public</u> are to judge of its <u>authenticity and validity</u>. These, then, are essentials of the weightiest importance, and the requirements of their observance, in the enacting and <u>promulgation of laws</u>, are absolutely <u>imperative</u>. Not the least important of these essentials is the style or enacting clause.[12]

The common mode by which a law is "promulgated" is by it being printed and published in some authorized public statute book. Thus that mode of promulgation must show the enacting clause of each law therein on its face, that is, on the face of the law as it is printed in the statute book. This is the only way that the "courts of justice and the public are to judge of its authenticity and validity."

10 *Sjoberg v. Security Savings & Loan Assn*, 73 Minn. 203, 213, 75 N.W. 1116 (1898).

11 *State of Nevada v. Rogers*, 10 Nev. 120, 261 (1875); cited with approval in: *People v. Dettenthaler*, 77 N.W. 450, 452, 118 Mich. 595 (1898); *Kefauver v. Spurling*, 290 S.W. 14, 15, 154 Tenn. 613 (1926).

12 *Vinsant, Adm'x v. Knox*, 27 Ark. 266, 284, 285 (1871).

460          GENERAL LAWS          [Chap.

street, road, sidewalk, park, public ground, ferry boat, or public works of any kind in said city, village or borough, or by reason of any alleged negligence of any officer, agent, servant or employe of said city, village or borough, the person so alleged to be injured, or some one in his behalf, shall give to the city or village council, or trustees or other governing body of such city, village or borough, within thirty days after the alleged injury, notice thereof; and shall present his or their claim to compensation to such council or governing body in writing, stating the time when, the place where and the circumstances under which such alleged loss or injury occurred and the amount of compensation or the nature of the relief demanded from the city, village or borough, and such body shall have ten days' time within which to decide upon the course it will pursue with relation to such claim; and no action shall be maintained until the expiration of such time on account of such claim nor unless the same shall be commenced within one year after the happening of such alleged injury or loss.

Sec. 2.  This act shall take effect and be in force from and after its passage.

Approved April 23, 1897.

_____

CHAPTER 249.

*An act to amend section two thousand eight hundred and six (2806) of the general statutes of one thousand eight hundred and ninety-four (1894), relating to the capital stock of manufacturing corporations.*

Be it enacted by the Legislature of the state of Minnesota:

Section 1.  That section two thousand eight hundred and six of the general statutes of one thousand eight hundred and ninety-four be amended so as to read as follows:

Sec. 2806.  The amount of capital stock of every such corporation shall be fixed and limited by the stockholders in their articles of association and shall be divided into shares of not less than ten and not more

250.]          OF MINNESOTA FOR 1897.          461

Sec. 2.  This act shall take effect and be in force from and after its passage.

Approved April 23, 1897.

_____

CHAPTER 250.

*An act to amend section twenty (20) of chapter one hundred and thirty-one (131) of general laws of Minnesota for one thousand eight hundred and ninety-one (1891), relating to building, loan and savings associations doing a general business.*

Section 1.  That section twenty (20) of chapter one hundred and thirty-one (131) of the general laws of one thousand eight hundred and ninety-one (1891) is hereby amended to read as follows:

Sec. 20.  If it shall appear to said public examiner from any examination made by him, or from any report of any examination made by him, or from any annual or semi-annual report aforesaid, that any corporation governed by this act is violating its charter, or the law, or that it is conducting business in an unsafe, unauthorized, or dishonest manner, he shall, by an order under his hand and seal of office addressed to such corporation, direct conformity with the requirements of its charter and of the law; and whenever such corporation shall refuse or neglect to make such report or account as may be lawfully required, or to comply, with such order aforesaid within thirty days from the date thereof, or if it has become apparent that there is such a deficiency in its assets that the purpose for which the association was organized cannot be carried out, the public examiner may, if such corporation be organized under the laws of the state of Minnesota, forthwith take possession of the books, records and the assets of every description of such corporation and shall at once proceed to make a careful and detailed examination of the condition of the affairs of such corporation; and the books, records and assets of such corporation so held by him shall not be subject to levy or attachment or garnishment at any time while under his control.  If at the close of such examination it shall appear to the public examiner that such corporation is able to complete

Fig. 1 — An excerpt from, *General Laws of the State of Minnesota, 1897.*  Chapter 250 appears in this statute book without an enacting clause, which resulted in it being declared "void" in *Sjoberg v. Security Savings & Loan Assn.*, 73 Minn. 203.  Note that the law on the adjacent page (Chapter 249) has the required enacting clause.

**26**

The decision in the *Vinsant* case was later approved by the Court in a case where a man was convicted of failing to follow an animal health law—"The Tick Eradication Law." He appealed by demurrer on the basis that the law claimed violated in the indictment did not have an enacting clause as found in the statute book. The Court said:

> The appellant demurred to the indictment on the ground that the facts stated do not charge a public offense. The appellant contends that Act 200 of the Acts of 1915, p. 804, providing a method for putting in operation the tick eradication law in Pike county, was void because it has no enacting clause. Appellant is correct in this contention. The act contains no enacting clause, and, under the decisions of this court, such defect <u>renders it a nullity</u>. Article 5, § 19, and article 29, amend. 10, Const. 1874; Vinsant, Adm'x v. Knox, 27 Ark. 266.[13]

The section of the state Constitution cited by the Court (Art. 5, § 19) states: "The style of the <u>laws</u> of the State of Arkansas shall be: *'Be it enacted by the general assembly of the State of Arkansas'.*" The laws of the State are to bear this enacting style, otherwise they are not valid laws. The law in this case was missing this constitutional prerequisite of an enacting clause as printed in the statute book (see Fig. 2). As such it carried no force and effect as a law. Thus laws, as they are taken or cited from statute books, which have no enacting clause cannot be used to charge someone with a public offense because they are not valid laws.

In a case in Kansas, a man was indicted for violating a law making it unlawful to print and circulate scandals, assignations, and immoral conduct of persons. He was arrested upon an indictment and applied for his discharge upon *hapeas corpus* alleging that the act of the legislature was not properly published. The act had been published several weeks before the indictment, "which publication omitted an essential part of said act, to-wit, the enacting clause." The Court held that the act was not properly and legally published at the time the indictment was found, thus the act was not in force at the time the indictment was brought against the petitioner. The Court also held:

> The <u>publication</u> of an act of the legislature, <u>omitting the enacting clause</u> or any other essential part thereof, is no publication in law. The law not being in force when the indictment was found against the petitioner, nor when the acts complained of therein were done, the petitioner could not have been guilty of any crime under its provisions, and is therefore, so far as this indictment is concerned, entitled to his discharge.[14]

There was no question involved here of whether an enacting clause was used on the bill in the legislature. The fact that the law was published without one was sufficient to render it void or invalid. Thus a publication of an act omitting the enacting clause <u>is not a valid</u> publication of the act. If the required statement of authority is not *on the face* of the law, it is not a law that has any force and effect. Such a published law cannot be used on indictments or complaints to charge persons with a crime for its violation. This decision was upheld and affirmed by the Court in 1981, when it said:

> In [the case of] *In re Swartz, Petitioner,* 47 Kan. 157, 27 P. 839 (1891), this court found the act in question was invalid because it had been mistakenly published without an enacting clause. We again adhere to the dictates of that opinion.[15]

Thus whatever is published without an enacting clause is void, as it lacks the required evidence or statement of authority. Such a law lacks proof that it came from the authorized source spelled out in the constitution, and thus is not a valid publication to which the public is obligated to give any credence.

---

13 *Palmer v. State,* 208 S.W. 436, 137 Ark. 160 (1919).

14 *In re Swartz,* 27 Pac. 839, 840, 47 Kan. 157 (1891).

15 *State v. Kearns,* 623 P.2d 507, 509, 229 Kan. 207 (1981).

804     ACTS OF ARKANSAS.     [ACT 200

## ACT 200.

AN ACT for a tick eradication law in the counties of Howard, Pike, Little River, Clark, Miller and La-Fayette counties.

SECTION 1. At the general election held in the State of Arkansas in the year 1916, at which the members of the Forty-first General Assembly of the State of Arkansas are to be voted for and every two years thereafter in each separate county until the tick eradication is adopted in that county, when the tick eradication law is adopted by a majority of the votes of any

---

ACT 277]     ACTS OF ARKANSAS.     1031

## ACT 277.

AN ACT making appropriation for the expenses of the executive and judicial departments of the State Government.

*Be It Enacted by the General Assembly of the State of Arkansas:*

SECTION 1. That the following named sums of money be, and the same are hereby appropriated for the object hereinafter expressed, for the fiscal years

**Fig. 2** — Excerpt from, *Public and Private Acts of the State of Arkansas, 1915.* Act 200 (above) was published without an enacting style, and was thus declared to be a "nullity" in *Palmer v. State,* 137 Ark. 160. Act 277 (below) from the same statute book displays an enacting style.

---

176     ACTS OF THE GENERAL ASSEMBLY

## CHAPTER 68.

AN ACT to establish and regulate the maximum rate of charges for the transportation of passengers by corporations or companies operating or controlling railroads within the boundaries of this State in part or in whole.

§ 1. That it shall hereafter be unlawful for any common carrier earning as much or more than $4,000.00 per year per mile gross, from all sources on its said road, and engaged in the carriage of

---

COMMONWEALTH OF KENTUCKY.     169

## CHAPTER 65.

AN ACT to further regulate tobacco warehouse companies in the State of Kentucky.

*Be it enacted by the General Assembly of the Commonwealth of Kentucky:*

§ That on and after the first day of August, 1914, every individual, firm, company or corporation conducting a warehouse business in Kentucky where tobacco is sold at public auction, either prized in hogsheads or sold in the hands loose, shall keep a correct account of the number of pounds of leaf tobacco sold upon the floor of his house daily. On or before the 5th day of each succeeding month the proprietor of the said warehouse shall make a statement under oath of all of the tobacco so sold

**Fig. 3** — Excerpt from, *Acts of the General Assembly of the Commonwealth of Kentucky, 1914.* Chapter 68 (above) has no enacting clause and thus was pronounced "void" in *Commonwealth v. Illinois Cent. R. Co.,* 160 Ky. 745. Chapter 65 (below) has an enacting clause.

27

28

In the law text, *Ruling Case Law,* is a section that deals with the requirements of statutes, and under the subheading, "Publication of Statutes," it says:

> The publication of a statute without the enacting clause is <u>no publication</u>.[16]

A publication of a statute book without the title and enacting clause on the laws therein is an incomplete or invalid publication, just like a publication of a book or magazine article is incomplete without the title and author's name, it is just a nameless body of words.

When a law in Kentucky was claimed to be void because it was found to have no enacting clause, the Court of Appeals of Kentucky read the entire law (Chapter 68) from the statute book and then said:

> It will be noticed that the act does not contain an enacting clause. * * * The alleged act or law in question is unnamed; it shows <u>no sign of authority</u>; it carries with it no evidence that the General Assembly or any other lawmaking power is responsible or answerable for it.[17]

The law was thus declared "void" because of the fact that the act appeared in the statute book without an enacting clause (see Fig. 3). Likewise, the alleged laws in the U.S. Code or the state Revised Statutes are "unnamed," they show "no sign of authority" on their face, there is no evidence that they came from Congress or a State Legislature. The enacting clause has been deliberately removed from these "laws" and they thus are only nameless decrees without authority. The Supreme Court of South Carolina said that in order for bills to "have the force of *law,*" they "must have an enacting clause showing the authority by which they are *promulgated.*"[18] Thus the publication of a law <u>must display its enacting authority</u>.

The Kentucky case above was cited later by the same Court when it was found that an enacting clause was missing from "chapter 129, p. 540, of the Session Acts" for 1934. Regarding this omission the Court said:

> By oversight and mistake the constitutionally required enacting clause was omitted from the act, thereby rendering it illegal and invalid.[19]

The law in question, which was to "consolidate the county offices of sheriff and jailer," was deemed to be "ineffectual" in accomplishing its objective because it was published without an enacting clause for some unknown reason (see Fig. 4).

In a case in Montana, the validity of a statute in its statute book (Chapter 199, Laws of 1937) was being questioned because it had a faulty or insufficient enacting clause. The State Supreme Court held the law invalid stating:

> The measure comes before this court in the condition we find it in the duly authorized volume of the Session Laws of 1937, and in determining whether Chapter 199 is invalid or not we are confronted with a factual situation. It is entirely immaterial how the defective enacting clause happens to be a part of the measure.[20]

Here again the invalidity of the law, due to its "defective" enacting clause, was judged by its condition as it was published in the statutes books of the State (see Fig. 5). The law had the enacting clause, "Be it enacted by the people of Montana." But this style was only to be used for measures initiated by the people. Laws passed by the Legislature were to have a different enacting clause—"Be it enacted by the Legislative Assembly of the State of Montana." As this was a legislative enactment, it was void for having the wrong enacting clause.

---

16 *Ruling Case Law,* vol. 25, "Statutes," § 133, p. 884 ; citing L.R.A.1915B, p. 1065.

17 *Commonwealth v. Illinois Cent. R. Co.,* 170 S.W. 171, 175, 160 Ky. 745 (1914).

18 *Smith v. Jennings,* 67 S.C. 324, 45 S.E. 821, 824 (1903).

19 *Stickler v. Higgins,* 106 S.W.2d 1008, 1009, 269 Ky. 260 (1937).

20 *Vaughn & Ragsdale Co. v. State Board of Equalization,* 96 P.2d 420, 422 (Mont. 1939).

540     ACTS OF THE GENERAL ASSEMBLY

---

### CHAPTER 129.

AN ACT providing for the consolidation of the office of jailer with that of sheriff in each county of the State.

§ 1. The office of jailer is hereby consolidated with that of sheriff, in each county of the state, under the provisions of Section 105 of the Constitution. There are hereby transferred to and vested in the sheriff, all the powers and duties heretofore authorized by law to be exercised or performed by the jailer. Wherever in any law of the State, reference is made to the jailer, such reference shall be deemed to apply to the sheriff, except where the context requires otherwise.

---

CHAPTER 144       579

---

### CHAPTER 144.

AN ACT to regulate, control and fix standard weights of wheat flour and the size of packages containing same; and to provide penalties for the violation of this Act.

*Be it enacted by the General Assembly of the Commonwealth of Kentucky:*

Each package shall have the net weight printed or plainly marked on it.

---

**Fig. 4** — Excerpt from, *Acts of the General Assembly of the Commonwealth of Kentucky, 1934.* Chapter 129 (above) was published with no enacting clause and was thus declared "invalid" in *Stickler v. Higgins,* 269 Ky. 260. Chapter 144 (below), from the same statute book, shows the constitutionally required enacting clause.

---

CHAPTERS 198-199       SESSION LAWS

### CHAPTER 199

An Act Requiring Licenses for the Operation, Maintenance, Opening or Establishment of Stores in This State, the Classifying of Such Stores, Prescribing the License and Filing Fees to Be Paid Therefor and the Disposition Thereof, and the Powers and Duties of the State Board of Equalization in Connection Therewith; and Prescribing Penalties for the Violation Thereof and Repealing Sections 2420.1, 2420.2, 2420.3, 2420.4, 2420.5, 2420.6, 2420.7, 2420.8, 2420.9, 2420.10, 2420.11, Revised Codes of Montana, 1935.

*Be It Enacted by the People of the State of Montana:*

Section 1. That from and after the first day of January A. D. 1938, it shall be unlawful for any person, firm, corporation, association or co-partnership, either foreign or domestic, to open, establish, operate or maintain any

---

TWENTY-FIFTH LEGISLATIVE ASSEMBLY

---

### CHAPTER 202

An Act Providing the Method for Computing Certain Deductions Allowable on Mine Taxes in the Production of Petroleum and Natural Gas in Montana.

*Be it enacted by the Legislative Assembly of the State of Montana:*

Section 1. The state board of equalization in computing the deductions allowable for expenditures under Section 2690 of the Revised Codes of the State of Montana on petroleum and natural gas production, shall compute and allow deductions for any such expenditures

---

**Fig. 5** — Excerpt from, *Laws, Resolutions and Memorials of the State of Montana, 1937.* Chapter 199 was published with the wrong type of enacting clause and thus held "invalid" by the State Supreme Court in the *Vaughn* case, 109 Mont. 52. Chapter 202 (below) shows the proper style of an enacting clause for a law of the State.

30

In North Carolina a legislative enactment for the incorporation of a town and the regulation of spirituous liquors therein was challenged because it had no enacting clause. The law was cited from the statute book as "Priv. Acts 1887, c. 113, § 8" (see Fig. 6). A man was indicted with the offense of selling spirituous liquors in the town and there was a verdict of guilty. On appeal the State Supreme Court said there was "error" in the judgment because the law charged against the man was void, stating:

> In the case before us, what purports to be the statute in question has no enacting clause, and nothing appears as a substitute for it. * * * The constitution, in article 2, in prescribing how statutes shall be enacted, provides as follows:
>
> "Sec. 23. The style of the acts shall be: '*The General Assembly of North Carolina do enact.*"
>
> It thus appears that its framers, and the people who ratified it, deemed such provisions wise and important; the purpose being to require every legislative act of the legislature to purport and import <u>upon its face</u> to have been enacted by the general assembly.
>
> We are therefore of the opinion that the supposed statute in question has <u>not been perfected</u>, and is not such in contemplation of the constitution; that it is wholly inoperative and void.[21]

This alleged law could not be called a law pursuant to the constitution, because it existed in the statute books without an enacting clause on its face.

In a case in Louisiana, a law was claimed to be unconstitutional based on the fact that it had no enacting clause as it existed in statute book (see Fig. 7). The main evidence that the court used in holding the act unconstitutional was its status as found within the printed statute book.

The contention that the statute of 1944 is unconstitutional is based upon the fact that it contains no enacting clause. The State Constitution of 1921, in section 7 of Article 3, provides that:

"The style of the laws of this State shall be: 'Be it enacted by the Legislature of Louisiana.'"

A mere glance at an official volume of the acts of 1944, discloses that the statute in question, Act 303 of 1944, contains no such enacting clause nor any part thereof. * * * And from the fact that it does not appear in the printed volume of acts, we conclude that the act was originally and finally defective.[22]

It could not be deduced exactly how the law came to be with no enacting clause. An examination of the original journal of the proceedings of each house could not disclose whether the enacting clause was present when the act was passed. The Court thus relied upon the status of the law in the printed statute book as proof of the overall status of the law. Thus the law was said to be "originally" defective because it was deduced that there was no enacting clause when the act was passed, and it was "finally" defective because it was printed in the volume of the acts without an enacting clause.

In a later case, this same court upheld this decision in declaring that a law was void because it too was recorded or printed in the statute books without an enacting clause:

> [T]he state statute on which both plaintiff and defendant rely cannot be given effect. What is reported in La.Acts 1968, Ex. Sess., as Act No. 24 is not law because it does not contain the enacting clause which La.Const. art. 3, § 7 requires to distinguish legislative action as law rather than mere resolution or some other act. Complete absence of the enacting clause renders the statute invalid.[23]

Again the invalidity of the law was deduced by the manner in which it was published (see

---

21 *State v. Patterson,* 4 S.E. 350, 352, 98 N.C. 660 (1887).

22 *O'Rourke v. O'Rourke,* 69 So.2d 567, 572, 575 (La. App. 1954).

23 *First Nat. Bank of Commerce, New Orleans v. Eaves,* 282 So.2d 741, 743, 744 (La.App. 1973).

1008        1887.—PRIVATE—CHAPTER 112—113.

### CHAPTER 112.

**An act supplemental to an act to incorporate the town of Charleston in Swain County.**

*The General Assembly of North Carolina do enact:*

SECTION 1. That after the authorities of the town of Charleston shall have prepared suitable and convenient places for hitching horses, that hitching horses to gates and fences belonging to individuals in said town shall be construed a nuisance, and the authorities of said town are authorized to abate such nuisance, and are authorized to impose such fines and penalties as will abate them. Hogs running at large shall also be construed a nuisance.

SEC. 2. This act shall be in force from and after its ratification.

In the general assembly read three times, and ratified this the 7th day of March, A. D. 1887.

---

### CHAPTER 113.

**An act to incorporate the town of Forest Hill.**

SECTION 1. That the town of Forest Hill, in Cabarrus county, be and the same is hereby incorporated, by the name and style of the town of Forest Hill, and it shall enjoy all the rights and privileges of incorporated towns and be subject to all the provisions of law now existing in reference to incorporated towns.

SEC. 2. That the corporate limits of said town shall be as follows: beginning opposite the old cotton mill on the line of Concord corporate line, and running north with said line fifty-three and one half degrees east one half mile to a stone, thence north forty-eight and one-half degrees west one half mile to a stake, thence south fifty-three and one-half degrees west one mile to a stone, thence south fifty-three and one half degrees east one half mile to a stone, thence north fifty-three and one-half degrees east to the beginning.

SEC. 3. That the officers of said town shall consist of a mayor, four commissioners and a constable, and the commissioners shall have power to elect a secretary and treasurer, and to elect the constable.

---

**Fig. 6** — Excerpt from, *Laws and Resolutions of the State of North Carolina, 1887.* Chapter 113 (below) was published with no enacting clause, and thus was "void," *State v. Patterson,* 98 N.C. 660. The preceding law, Chapter 112, was published with an enacting clause.

---

### ACT No. 303.

House Bill No. 872.        By Mr. Fernandez, Chairman of Committee on Public Health and Quarantine (Substitute for House Bill No. 405 by Messrs. Fernandez and Landry).

#### AN ACT

To provide for the discovery and treatment of mental disorders; to define and interpret certain terms used herein; to designate institutions and places for mental patients; to provide for the examination, admission, commitment and detention of mental patients and their transfer, discharge, leave of absence, boarding out, return of escaped patients and interstate rendition and deportation; to provide for the assessment, imposition and collection of costs, fees and expenses incidental to carrying out the provisions of this Act; to grant certain rights to patients committed under this Act.

#### ARTICLE I.

Short Title, Interpretations and Definitions.

Section 1.  Short Title:  This Act shall be known as the Mental Health Act of 1944.

---

### ACT No. 284.

House Bill No. 670.        By Messrs. Martinez and Picciola.

#### AN ACT

To amend and re-enact the Title and Sections 1, 2 and 3 of Act 309 of 1938, entitled: "To create and establish a trades school for the education of white people of the State of Louisiana, in Thibodaux, Lafourche Parish, Louisiana, under the supervision of the State Board of Education, and to provide for the building, equipping and maintenance of said institution."

Section 1.  Be it enacted by the Legislature of Louisiana, That the title of Act 309 of 1938 is hereby amended and re-enacted so as to read as follows:

---

**Fig. 7** — Excerpt from, *Acts passed by the Legislature of the State of Louisiana, 1944.* Act 303 (above) was held "defective" as it had no enacting clause. *O'Rourke v. O'Rourke,* 69 So.2d 567. Act 284 (below) has an enacting clause in Section 1 where the body of the law starts.

32

Fig. 8). This decision raises another reason why the enacting clause must be printed in the public law book. It is so that citizens can identify it as a public law as opposed to a resolution, proclamation, executive order, or administrative rule. The enacting clause distinguishes a true public law from these other type of acts.

An enacting style of a law generally reads, "Be it enacted," while the style of a resolution usually reads, *"Be it resolved,"* or *"Resolved, that."* Most state constitutions make a distinction between a law and a resolution. The Constitution for the United States distinguishes a "resolution" and "order" from a "bill" which can "become a law" (Art. 1, Sec. 7). They each go through the same basic formalities with respect to vote and procedure in Congress, but they are not the same thing.

When we look at the "laws" in the "United States Code," how do we know that they are public laws passed by Congres? For all we know they could be "mere resolutions," which carry no force and effect as laws. When we are charged with a violation of a law from the "Oregon Revised Statutes," how do we know that this is a law from the legislature of Oregon, as authorized by the Constitution of Oregon? There is no enacting clause on the face of the law to indicate whether it is a law, a resolution, an order, or an administrative rule. What then is a resolution?

RESOLUTION. The term is usually employed to denote the adoption of a motion, the subject-matter of which would not properly constitute a statute; such as a mere expression of opinion; an alteration of the rules; a vote of thanks or of censure, etc.[24]

A resolution or order is not a law, but merely the form in which the legislative body expresses an opinion. [25]

The general rule is that a joint or concurrent resolution adopted by the legislature is not a statute, does not have the force or effect of law, and cannot be used for any purpose for which an exercise of legislative power is necessary.[26]

In Indiana, a joint resolution was passed for the appropriation of money, which used the enacting style: *"Be it Resolved by the General Assembly of the State of Indiana."* The State Constitution allows for the appropriation of funds to be made only by law. The State Supreme Court said "the resolution is not law," as laws for the appropriation of money "cannot be enacted by joint resolution."[27]

That which is printed in the Revised Statute books and the U.S. Code could just as well be resolutions, which carry no force of law. If these statutes had enacting clauses, all would know what they were, the authority for their existence, and how they affect their rights and obligations. But they have no enacting clauses, and thus these publications are not legitimate publications in law which can be used to charge citizens with a crime. No enacting clause has been published with these "laws." They are only words of some committee, and thus are not constitutionally authorized laws which citizens are obligated to follow or obey.

So we must confront those in government who try to accuse us of violating a law published in some code, and ask them what is the authority for this law to exist? Where is its enacting authority on its face that identifies it as a law of the legislature? A law exists not only in the manner in which it was enacted, but also in the manner in which it is promulgated or published. A law cannot validly exist in printed form without the constitutionally required enacting clause.

---

24 *Black's Law Dictionary*, 2nd edition, p. 1027.

25 *Chicago & N.P.R. Co. v. City of Chicago*, 51 N.E. 596, 598 (Ill. 1898);  *Village of Altamont v. Baltimore & O.S.W. Ry. Co.*, 56 N.E. 340, 341, 184 Ill. 47;  *Van Hovenberg v. Holeman*, 144 S.W.2d 718, 721, 261 Ark. 370 (1940).

26 73 *American Jurisprudence*, 2nd, "Statutes," § 3, p. 270;  cases cited.

27 *May v. Rice*, 91 Ind. Rep. 546 (1883).

ACT No. 21

Senate Bill No. 20.                    By: Mr. Mouton.

### AN ACT

To amend and reenact Subsection A of Section 272 of Title 17 of the Louisiana Revised Statutes of 1950 as enacted by Act 408 of the 1968 Regular Session, to provide with respect to teaching French and the culture of Louisiana in the public elementary and high schools in the state.

Be it enacted by the Legislature of Louisiana:

Section 1. Subsection A of Section 272 of Title 17 of the Louisiana Revised Statutes of 1950 as enacted by Act 408 of the 1968 Regular Session is hereby amended and reenacted to read as follows:

§ 272. French language and culture; teaching in public schools

A. The French language and the culture and history of French populations in Louisiana and elsewhere in the Americas shall be taught for a sequence of years in the public elementary and high school systems of the state, in accordance with the following general provisions:

(1) As expeditiously as possible but not later than the beginning of the 1972-1973 school year, all public elementary schools shall offer at least five years of French instruction starting with oral French in the first grade; except that any parish or city school board, upon request to the State Board of Education, shall be excluded from this requirement, and such request shall not be denied. Requests already received from school boards for exclusion from the provisions of Act 408 of 1968 shall also be valid for exclusion from the provisions of this Act unless individual school boards deem otherwise. School boards which have not already requested exclusion may do so at any time between July 1, 1971, and the beginning of the 1972-1973 school year. The fact that any board is excluded, as here provided, from participation in the program established by this section shall in no case be construed to prohibit such school board from offering and conducting French courses in the curriculum of the schools it administers. In any school where the program provided for herein has been adopted the parent or other person legally

---

ACT No. 24

Senate Bill No. 27.        By: Messrs. Mouton and O'Keefe.

### AN ACT

To regulate loans and advances of credit by banks under revolving loan plans and to provide for interest and other charges thereunder; to provide for penalties; and to repeal all conflicting laws.

### TITLE I - REVOLVING LOAN PLANS

Section 1. Definitions:

(a) The term "revolving loan" means an arrangement, including by means of a credit card, between a lender and a debtor pursuant to which it is contemplated or provided that the lender may from time to time make loans or advances to or for the account of the debtor (1) through the means of checks, drafts, items, invoices for the purchase of goods, orders for the payment of money, evidence of debt or similar written instruments or requests whether or not negotiable, endorsed or signed by the debtor or by any person authorized or permitted to do so on behalf of the debtor or (2) through the means of any other direction to pay by the debtor for loans or advances or charges to an account in respect of which account the lender is to render bills or statements to the debtor at regular intervals (hereinafter sometimes referred to as the "billing cycle"), the amount of which bills or statements is payable by and due from the debtor on a specified date stated in such bill or statement or at the debtor's option may be payable by the debtor in installments.

(b) Credit cards - The term "credit card" as used herein means an identification card, credit number, credit device or other credit document issued to a person, firm or corporation by a lender which permits such persons, firm or corporation to purchase or obtain money, goods, property. or services on the credit of the issuer.

(c) "Lender" means a bank chartered or licensed by state or federal authorities and authorized to do business and doing business in this state.

Section 2. Revolving Loan Interest Charge, Separate Charge Statement

---

Fig. 8 — An excerpt from, *Louisiana Acts* 1968, Extra Session, 1968 (bound in "*Acts of the Legislature*" Regular Session, 1969). Act 24 (right) was declared to be "null" and without effect because of the manner in which it was printed or reported in the statute book without an enacting clause, *First Nat. Bank of Commerce, New Orleans v. Eaves,* 282 So.2d 741. A preceding law, Act 21 (left), shows proper use of the enacting clause on the face of the law.

33

– 5 –

# Federal Laws and Crimes

The issues of authority and law are especially critical in understanding the trend that has developed in the Federal arena, with its communistic income tax, oppressive laws, and activities that invade the domain of the states. While many of the basic concepts dealing with the states on this subject are applicable to the Federal government, there also are some aspects unique to the Federal issues. Many of the problems today may not truly be usurpation or unconstitutional acts, but are due to a different source of law and thus a different jurisdiction than what the Constitution for the United States established. First we need to understand some basic facts about the manner of government and jurisdiction that originally existed.

## Federal Criminal Jurisdiction

Jurisdiction, in a governmental sense, is the authority to apply law over certain objects and certain acts of persons. Jurisdiction gives a government the right to use force in applying this law to bring about its objective. Under the American system that objective is generally to exact justice through certain courts pursuant to constitutional authority, the law of God, and our common law concepts of right and wrong.

The Constitution for the United States created a government which has jurisdiction over certain enumerated subject matter. It is only in these areas that Congress can enact laws, and when they do, the Federal Courts are to enforce the law. But when laws do not come from an enumerated power, the Federal Courts are to prevent the U.S. Government or Congress from applying them.

The U.S. Constitution prescribes what the "jurisdiction" of the Federal government is by the enumerated powers. That government can regulate foreign and interstate commerce, fix the standards of weights and measurements, establish rules of naturalization, establish uniform laws on bankruptcies, coin money and provide for the punishment of counterfeiting of the coins and securities of the United States, protect the arts and sciences by copyrights and patents, punish for piracies and felonies committed on the high seas, raise and support an army and navy, and lay and collect direct taxes by apportionment, and indirect taxes by excises, duties, or imposts.

This is about the extent of the jurisdiction of the United States government. It is only in these areas that a "crime (or offense) against the United States" can exist, and this is so only when Congress actually passes a law in one of these areas.

> But an act committed within a State, whether for good or a bad purpose, or whether with honest or a criminal intent, cannot be made an offense against the United States, unless it have some relation to the execution of a power of Congress, or to some matter within the jurisdiction of the United States.[1]

> [T]he courts of the United States, merely by virtue of this grant of judicial power, and in the absence of legislation by Congress, have no criminal jurisdiction whatever. The criminal jurisdiction of the courts of the United States is wholly derived from the statutes of the United States.[2]

---

1   *United States v. Fox*, 95 U.S. 670, 672 (1877).

2   *Manchester v. Massachusetts*, 139 U.S. 240, 262 (1890); *United States v. Flores*, 289 U.S. 137, 151 (1932). .

Acts of Congress, as well as the constitution, must generally unite to give jurisdiction to a particular court.[3]

The Federal Courts only have jurisdiction in matters involving an "offense against the United States," and nothing can be an offense against the United States unless it is made so by Congressional act pursuant to the U.S. Constitution.  There is no other source from which Congress can get authority to make law, including the Common Law.  Thus it has been said that, "There is no Federal Common Law."  But the better way of stating this is to say, "There are no common law offenses (or crimes) against the United States,"[4]  In other words, the common law is not a source for criminal jurisdiction as it is in the states.

> There is no federal common law.  There are no offenses against the United States, save those declared to be such by Congress. * * * Only those offenses are to be proceeded against by information or are indictable in the federal courts which are specifically made so by acts of Congress, since the common law crime of itself has no existence in the federal jurisdiction.[5]

By "jurisdiction" is meant the authority of the Federal courts to hear and decide a matter.  Thus it is even more correct to say that, "The federal courts have no jurisdiction of common law offenses, and there is no abstract pervading principle of the common law of the Union under which we (the Federal courts) can take jurisdiction."[6]  Thus where one was charged for libel on the President and Congress of the United States, it was held that the Federal Circuit Court had no common law jurisdiction in the case and the act was not a crime.[7]

If Congress tries to make a common law offense a crime (such as libel, theft, burglary, murder, kidnapping, arson, rape, sodomy, abortion, assault, fraud, etc.), having no relation to an enumerated power, it would simply be an "unconstitutional" act. Congress can declare nothing to be a crime except where it is based upon a delegated power.  Thus the only thing that can be a crime against the United States (a Federal crime) is that which comes from the U.S. Constitution.  These concepts were early stated by the U.S. Supreme Court:

> In relation to crimes and punishments, the objects of the delegated power of the United States are enumerated and fixed.  Congress may provide for the punishment of counterfeiting the securities and current coin of the United States, and may define and punish piracies and felonies committed on the high seas, and offenses against the law of nations. Art. s. 8. * * * But there is no reference to a common law authority:  Every power is [a] matter of definite and positive grant; and the very powers that are granted cannot take effect until they are exercised through the medium of a law.[8]

The United States courts are governed in the administration of the criminal law by the rules of the common law.[9]  Thus the common law is not a source of power, but is the means or instrument through which it is exercised. In civil matters where general common law rights of an individual are concerned, the federal courts are to apply the common law in the state in which the controversy originated.[10]

---

3  *U.S. v. Bedford*, 27 Fed. Cas., page 91, 103, Case No. 15,867 (1847).

4  *United States v. Britton*, 108 U.S. 199, 206 (1882); *United States v. Eaton*, 144 U.S. 677, 687 (1891);  *United States v. Gradwell*, 243 U.S. 476, 485 (1916); *Donnelley v. United States*, 276 U.S. 5\05, 511 (1927);  *Jerome v. United States*, 318 U.S. 101, 104 (1942);  *Norton v. United States*, 92 Fed.2d 753756 (1937).

5  *United States v. Grossman*, 1 Fed.2d 941, 950, 951 (1924).

6  *State of Pennsylvania v. The Wheeling &c. Bridge Co.*, 13 Howard (54 U.S.) 518, 563 (1851).

7  *United States v. Hudson*, 7 Cranch (11 U.S.) 32 (1812).

8  *The United States versus Worrall*, 2 Dallas (2 U.S.) 384, 391 (1798).

9  *Howard v. U.S.*, 75 Fed. 986 (1896).

10  *Wheaton v. Peters*, 8 Peters (33 U.S.) 591, 658 (1834); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1937).

While these concepts of jurisdiction are basic, and ones which were generally followed for about 140 years, it is apparent that since the 1930s, there has been a gradual departure from them. As a result, the jurisdiction of the Federal Government seems almost without bounds today, as it legislates and judicates on every subject under the sun, many of which are blatantly and obviously not from an enumerated power under the U.S. Constitution.

In light of such Federal action the question of authority comes again to the forefront. What was it that changed our system of Federal jurisprudence? Was something new or different introduced into the judicial process that could explain the change? One thing that was introduced into the system was the use of the United States Code.

## The Change from Statute to Code

The laws of the United States as passed by Congress were from the very beginning published in a series of books called "United States Statutes at Large." The first Congress under the U.S. Constitution convened in New York City from March 4, 1789, to September 29, 1789, during which time Congress passed 27 separate acts. These Acts are recorded in volume one of the Statutes at Large. This publication was issued by the Secretary of State and the Government Printing Office. These books were regarded as the official source for all public and private laws, resolutions, treaties, and proclamations.

Through the course of time many volumes of the Statutes at Large were published, which contained not only new laws but repeals of old laws. It became more difficult to ascertain what the law was on a given matter. As early as 1866 Congress authorized a consolidation of all laws arranged by subject matter. The first edition of a "Revised Statutes" was produced in 1872, but was not favored by Congress so it was revised in 1875, but that edition contained many "errors." Another edition of the

Revised Statutes was published in 1878. These works were rarely cited as most courts and lawyers continued to use the Statutes at Large.

In 1924, a bill to revise all the laws of the United States that were enacted up to that time passed the House but was defeated in the Senate. The Senate then appointed a committee to inspect the bill (which contained over two million words) and this group recommended that a commission be appointed to do the work over. The commission was formed and the revision of laws, called "The United States Code" was finally approved by an act of Congress on June 30, 1926 (44 Stat. Part 1).

The Code was divided into 50 Titles or subject headings, under which the revised laws were listed. The U.S. Code has, since 1926, been periodically compiled by a standing committee appointed to revise the laws.

The Code is assembled and revised under the supervision of "the Committee on the Judiciary of the House of Representatives." The main work of revision is done by a subcommittee or office of this committee called "the Office of the Law Revision Counsel of the House of Representatives." It consists of an appointed supervisor, some members of Congress, some volunteer lawyers, and persons from West Publishing of St. Paul, Minnesota.

At first the Code was generally ignored, as everyone was used to using the Statutes at Large. In most cases where laws, including "New Deal" laws, were held to be unconstitutional, the indictments and court records had generally used the Statutes at Large citation. For instance, in the case of *Carter v. Carter Coal Co*, 298 U.S. 238 (1936), involving the Bituminous Coal Conservation Act, it was cited as "C. 824, 49 Stat. 991." Only a few cases used the U.S. Code citation and then only along with the Statutes at Law citation.

One case in which the U.S. Code was used is *Steward Machine Co. v. Davis*, 301 U.S. 548 (1937), which involved the Social Security Act.

While the Statute at Large was cited, the U.S. Code was also included – "42 U.S.C., c. 7 (Supp.)." This case was the turning point of our judicial system, at least in regards to criminal matters. The decision was perhaps by the narrowest margin ever. The Chief Justice Charles E. Hughes had been against the New Deal legislation of Roosevelt and his socialists friends. But when Roosevelt came out with his outlandish antics to "pack the court" with his cronies, the act became an embarrassment to the court and to Hughes. Even though Hughes let it be known he was against the Social Security Act, he withheld making a definite vote. The vote was 4 to 4 on the matter. But the Jewish justice, Cardozo, took hold of the case and claimed the Act was constitutional. Chief Justice Hughes apparently did not say anything, probably to avoid further embarrassment.

Technically, the Social Security Act was held by the majority of the Supreme Court to be unconstitutional, or at most was a 4 to 4 tie. But nonetheless this decision paved the way for more socialistic legislation, and on all indictments charging a violation of these laws appeared the U.S. Code, not the Statutes at Large. By the 1940s, the Code effectively replaced the Statutes at Large in all criminal proceedings and indictments.

### The Nature and Status of the U.S. Code

With the U.S. Code, the laws of the Statutes at Large were not only "revised" in content, but in form and style. When incorporated into the U.S. Code all titles and enacting clauses were removed, making the nature of the laws and their source of authority unknown.

Laws within the Statutes at Large were identified as being either public or private laws.

Acts which were laws, resolutions, or proclamations were so designated by their identifying enacting clauses and titles. But no one can tell the nature of the "laws" in the U.S. Code.

When the U.S. Code was first published, it never was stated to be the official laws of the United States. Rather, it was stated that the Code was a "restatement" of law; or was only "prima facie evidence of the laws of the United States."[11] On this matter one Court stated:

> The United States Code was not enacted as a statute, nor can it be construed as such. It is only a prima facie statement of the statute law. * * * If construction is necessary, recourse must be had to the original statutes themselves.[12]

This tells us that the United States Code, as originally established, was not on an equal plain with the "original statutes" or the Statutes at Large. The evidence of a thing is not the thing itself. Thus the Code was not true law.

With the start of regular use of the U.S. Code, numerous problems arose in that it contained mistakes, errors and inconsistencies as compared to the Statutes at Large. Thus in 1947, Congress enacted several of the Titles into "positive law," such as the act: "To codify and enacted into positive law, Title 1 of the United States Code." In doing so they devised some new terminology:

> United States Code.— The matter set forth in the edition of the Code of Laws of the United States current at any time shall, together with the then current supplement, if any, establish prima facie the laws of the United States, general and permanent in their nature, in force on the day preceding the commencement of the session following the last session the legislation of which is included: *Provided, however,* That whenever titles of such Code shall have been enacted into positive law the text thereof shall be

11 *Five Flags Pipe Line Co. v. Dept. of Transportation,* 854 F.2d 1438, 1440 (1988); *Stephan v. United States,* 319 U.S. 415, 426 (1943); 44 Statutes at Large, Part 1, preface.

12 *Murrell v. Western Union Tel. Co.,* 160 F.2d 787, 788 (1947); also, *United States v. Mercur Corporation,* 83 F.2d 178, 180 (1936).

38

legal evidence of the laws therein contained, in all the courts of the United States, the several States, and the Territories and insular possessions of the United States.[13]

Note the new term, "legal evidence." But what are these titles legal evidence of? It does not say these Titles of the Code are legal evidence of the statutes of Congress, or of the laws of the United States. They are "legal evidence of the laws therein contained." In other words, the fact that the laws are in the Code, is in itself legal evidence that they exist. So what! Such a statement really says nothing at all about the legal nature of those laws. It doesn't explain anything about its nature or its legal status other than its own existence.

This is like saying if a hammer is in your hand, then that hammer in your hand stands as legal evidence of the hammer in your hand. But it doesn't say anything about the legal nature of the hammer. Is it your hammer, or is it borrowed, stolen or lost? Is it the property of the government, or Joe Smith, or the XYZ corporation? Likewise, saying that the laws in a book are evidence of those laws in the book, says nothing at all about their nature. Are they Acts of Congress, or of the State of Florida, or of the United Nations? It does not say, but only makes the generalized remark that they are laws. It obviously does not mean that these laws are constitutionally enacted or exist constitutionally.

Congress, or lawyers in Congress, have made this statement to make it appear that there is a difference between the Code as it was, from the titles that have been enacted into positive law. There really is no significant difference between prima facie evidence and legal evidence. Prima facie evidence *is* legal

evidence, just as "circumstantial evidence is legal evidence."[14] Even hearsay evidence when relevant to an issue can be treated as "legal evidence."[15] The term legal evidence is just a more general term for most types of evidence.

**Legal evidence.** A broad general term meaning all admissible evidence, including both oral and documentary.[16]

Whether Congress has enacted a title into positive law is irrelevant, as it does not change it into a law of the United States. One Federal Court said that "Congress's failure to enact a title into positive law has only evidentiary significance."[17] In other words, it does not affect the nature of what it is legally. The Court further said, "Like it or not, the Internal Revenue Code is the law." It can indeed be called law, but what manner of law is it? Why did the court not say that it is an act of Congress? or a law under the Constitution? Another court said regarding the Code that, "Enactment into positive law only affects the weight of evidence."[18] This is because the Title has gone though extra proofreading and checking to remove the errors and inconsistencies. This measure does not change the legal nature of the Title of the Code, such as occurs with a bill when it is enacted into law.

The words "legal evidence" were used to convince people that some change occurred when in fact it is just a lot of double talk and does not change the nature of what the U.S. Code really is. It really makes no difference if a Title has been enacted into positive law, for its contents cannot be regarded as acts of Congress because they have no evidence of being such by way of enacting clauses. The greatest evidence of true law is that which bears an enacting clause. A Federal law requires an

---

13  61 Statute at Large 633, 638;  1 U.S.C. § 204(a).

14  *Hornick v. Bethlehem Mines Corp.*, 161 Atl. 75, 77, 307 Pa. 264.

15  *Oko v. Krzyzanowski*, 27 A.2d 414, 419, 150 Pa. Sup. 205.

16  *Black's Law Dictionary*, 2nd edition, p. 448.

17  *Ryan v. Bilby*, 764 F.2d 1325, 1328 (1985).

18  *United States v. Zuger*, 602 F.Supp 889, 891 (1984).

enacting clause to make it a law coming from the authorized source—Congress.

> The object of an enacting clause is to show that the act comes from a place pointed out by the Constitution as the source of power.[19]

The laws in the U.S. Code are unnamed; they show no sign of authority; they carry with them no evidence that Congress or any other lawmaking power is responsible for them. They lack the essential requisites to make them a law authorized under article 1 of the Constitution for the United States.

Look back at the cases cited which stated that the criminal jurisdiction of the United States exists only by acts of Congress pursuant to the Constitution. If the question is put forth to a Federal Court whether the Code cited in an indictment is an act of Congress, they could not rightfully say it is. If the court says it is, it should be asked, where is the congressional enacting clause for that law as required by 61 Statutes at Large 633, 634, § 101?[20] If no such clause appears *on the face* of the law, it is not an act of Congress. No criminal jurisdiction exists without a bona fide act of Congress. The argument in such a case is that the indictment does not set forth a case arising under the Constitution, as there is no act of Congress with a duly required enacting clause. Thus there is no subject matter jurisdiction pursuant to the federal judicial power defined in Art. III, § 2.

Nowhere does it say in the Code, or in pronouncements by Congress or the courts, that the laws in the U.S. Code are acts of Congress. In fact, the Code is always regarded as something different from the Statutes at Large:

> But no one denies that the official source to find United States laws is the Statutes at Large and the Code is only prima facie evidence of such laws.[21]

STATUTE. State laws are generally called Session Laws (occasionally Acts); while federal laws are called Public Laws such as *Public Law* 89-110 which is the Voting Rights Act of 1965 and which can be found in 79 *Statutes at Large* 437 (1965), the latter being the official and preferred citation.[22]

The Statutes at Large are recognized by everyone to be the "official" publication of Federal laws. Why is not the U.S. Code, even when enacted into "positive law," ever called the "official source of United States laws?" Could it be because the "laws" in the Code are only the decrees of some committee?

### Positive Law

The term "positive law" is also misleading. Positive law is a general designation for a "law that is actually ordained or established, under human sanctions, as distinguished from the law of nature or natural law."[23] Any rule or law established and written out by human agency is positive law. In this sense the U.S. Code was from the beginning a type of positive law, being written and established by human sanctions—i.e., the Committee of the House of Representatives.

The U.S. Code is also declared to be a codification of "all the general and permanent laws of the United States." But the articles of war, a treaty, or an executive order can also be called "general and permanent laws of the United States," or "positive law." They are laws that exist under the United States, but they are clearly of a different nature than acts of Congress which a citizen can be indicted for violating. We thus come again to the question of authority. What is the authority for citizens to follow the "laws" in the U.S. Code? None legally exists unless one acquiesces to such law.

---

19 *Ferrill v. Keel,* 151 S.W. 269, 272, 105 Ark. 380 (1912).

20 In § 102, Congress also established the "resolving clause" style that is to be used on all joint resolutions.

21 *Royer's, Inc. v. United States,* 265 F.2d 615, 618 (1959).

22 Edward Bander, *Dictionary of Selected Legal Terms and Maxims,* 2nd edition, Oceana Publications, 1979, p. 78.

23 *Bouvier's Law Dictionary,* Banks-Baldwin Law Pub., Cleveland, 1948, p. 955.

40

When Congress enacts sections of the Code into positive law they do so by passing a law, as they did with Title 18, stating to the effect:

> That Title 18 of the United States Code, entitled "Crimes and Criminal Procedure", is hereby revised, codified, and enacted into positive law, and may be cited as "18 U.S.C., § __", as follows:[24]

The text of Title 18 then follows. The measure does not really change anything since this Title had already become positive law just as it had already been codified. The State Legislatures often do the same thing with their Revised Statutes. They pass a law saying that the material in a certain collection of books is law. But it is fundamental that nothing can become a law just because the legislature says it is law.

> [N]othing becomes a law simply and solely because men who possess the legislative power will that it shall be, unless they express their determination to that effect, in the mode pointed out by the instrument which invests them with the power, and under <u>all the forms</u> which that instrument has rendered essential.[25]

The "forms" of legislation include the title and enacting clause, which are both essential aspects of a law. This excerpt was quoted by the Supreme Court of Arkansas, who also said:

> All those rules and <u>solemnities</u>, whether derived from the common law or prescribed by the Constitution, which are of the <u>essentials of law making</u>, must be observed and complied with, and, without such observance and compliance, the will of the Legislature can have no validity as law.[26]

The U.S. code has none of the forms and solemnities that are essential to make it law which citizens in America are subject to, and Congress cannot make it law by its say-so.

It might be argued that the U.S. Title in question has an enacting clause and title as it exists in the Statutes at Large, and this is sufficient for the text of the entire Title of the Code. In the past some courts did hold that the titles on the specialized codes were sufficient for the entire code. Title 18 thus could only be called valid laws of the United States if its contents are cited from the Statutes at Large. But the government never cites Title 18 from the Statutes at Large on indictments, it only cites it as published in the U.S. Code, which has absolutely no enacting clauses on its face. It is always 18 U.S.C. § 1951, instead of the 62 Stat. Lg. 1084. The difference is critical.

The U.S. Code is not law of Congress, but it has fooled everyone because the laws used in it by the committee were based upon laws once passed by Congress. If Congress passed some laws which were then codified by the Russian government, which code was later recognized by Congress, no one would accept laws cited from the Russian code as valid law of Congress. A Russian law against forgery cannot be charged against us just because an identical law exists in our State. Now suppose, for instance, I listed some laws for you to follow such as:

- You shall not steal.
- You shall not murder anyone.
- You shall not kidnap anyone.
- You shall not commit adultery.

Now let me ask you, is there any authority behind these laws I have written and declared? Nearly everyone would say there is because they recognize that God issued similar laws, and thus there is authority behind them. But God did not issue these laws or enact them as law, I did. I never said they are laws of God but are my laws. They thus have no authority as law because I am not a source of law to which you are subject. There is no legal relationship between you and myself, just as there is no legal relationship between you and the "Law Revision Counsel" that drafted the U.S. Code.

---

24  62 *Statutes At Large*, 683, June 25, 1948.

25  *Caine v. Robbins*, 131 P.2d 516, 518 (Nev. 1942), citing *Cooley's Constitutional Limitations*, 6th Ed., p. 155.

26  *Vinsant, Adm,x v. Knox*, 27 Ark. 266, 277 (1871).

# – 6 –

# Procedure, Jurisdiction & Arguments

Now that this material of law has been presented, we next need to know how to properly use it in court or against government encroachment. Since this information can have a devastating affect on the very foundation of the current corrupt legal system, just arguing that the laws used against a person are not valid will not be very effectual. Even though there is no argument that can be raised against this material, judges will be motivated to set it aside or rule against it because their love of money is greater than their love of law and justice.

This material, however, can be used in different ways which will force bureaucrats and judges to accept it, or commit obvious acts of usurpation and corruption. The material can be used or presented by way of affidavit, abatement, habeas corpus, memorandum and motion to dismiss, or demurrer. In each case the main issues are that of no valid law, fraud, and lack of subject matter jurisdiction. It is important to understand how this material directly affects the jurisdiction of the court.

There have been, of course, many wrong and erroneous arguments upon the subject of jurisdiction. Most people readily see the results of a corrupt and spiritually debauched society, economy and government, and want nothing to do with it, so they make up some jurisdictional argument to "get out of the system." While the general concept seems right, the arguments about jurisdiction have not been legally sound. So we need to accurately understand the matter of jurisdiction in the criminal system.

## Criminal Jurisdiction

Jurisdiction, in terms of the authority of a court, is of two main types, as Judge Cooley states:

> The proceedings in any court are void if it wants jurisdiction of the case in which it has assumed to act. Jurisdiction is, *first,* of the subject-matter; and, *second,* of the persons whose rights are to be passed upon.[1]

Both types of jurisdiction are required in criminal matters.

> To try a person for the commission of a crime, the trial court must have jurisdiction of both the subject matter and the person of the defendant.[2]

Personal jurisdiction, or the authority to judge a person, is primarily one of venue or procedure. Generally, if one is standing in a court, it has some degree of jurisdiction over that person. Thus if one is named in a suit, but is "absent" from court by being "either in prison or by escape, there is a want of jurisdiction over the person, and the Court cannot proceed with the trial."[3] In some cases certain irregularities in procedural matters, such as not having a complaint or affidavit signed, or failure to apprise the defendant of the nature and cause of the accusation, can affect personal jurisdiction. But such irregularities in obtaining personal jurisdiction may be "waived." Thus, "jurisdiction of the person may be conferred by consent and by pleading to the merits of this case."[4] Also, "any lack of jurisdiction over the person is waived by his

1   Thomas M. Cooley, *A Treatise on the Constitutional Limitations,* Little, Brown, & Co., Boston, 1883, p. 493.
2   21 *American Jurisprudence,* "Criminal Law," § 338, p. 588.
3   *State v. Brown,* 64 S.W.2d 841, 849 (Tenn. 1933).

42

appearance through counsel."[5] It is also true that any irregularities in procedural matters which might inhibit personal jurisdiction can be corrected and the case retried.

The jurisdictional arguments most patriots have been raising in recent times deal with personal jurisdiction, that is, they claim the court has no jurisdiction to try them personally. But one can not simply claim a lack of personal jurisdiction without any legal grounds and then expect the court to just dismiss the matter.

In summary, it is rare to have an issue regarding personal jurisdiction that will completely stop proceedings or end the action against a person. One of the few exceptions is if the person is a foreign ambassador or dignitary with diplomatic immunity, in which a treaty exists with his country.

Some have asserted that they are a "non-resident" or a "non-resident alien" and thus do not come under the jurisdiction of the courts or laws of Congress or the State. But it matters not where one lives or if he is a citizen or alien, for all in the land are subject to the laws of the nation. Aliens cannot come to this country and violate laws with impunity and then claim our courts are powerless to try and punish them for their acts. The courts do have jurisdiction over aliens. If you go to Mexico and break their laws and claim that you are a nonresident alien or America citizen it isn't going to hold any water. If that is your only defense you will end up in a Mexican prison.

Jurisdictional arguments, to be of any merit, even in the present day *de facto* courts, have to be based upon some concept of law that would have had merit 150 years ago. All of the popular jurisdictional arguments used today fail this test. But by Divine Providence a flaw has been placed within the current corrupt legal system, one which causes it to exist and operate without any actual jurisdiction to which citizens are subject. This flaw relates to subject matter jurisdiction, not personal jurisdiction. The system that has grown up around us has a defect which causes a lack of subject matter jurisdiction in the courts, which means that no criminal case can be lawfully tried.

But it is important that one know of this defect so it can be asserted against officials or in court, for if it is not, then it is as though the defect doesn't exist. The key then lies in understanding subject matter jurisdiction.

### Subject Matter Jurisdiction

Jurisdiction of the subject matter involves the actual thing involved in the controversy. In civil matters it is usually some property or money in dispute, or it might be the tort or wrong one committed against another, or it might be a contract, marriage, bankruptcy, lien, or will that is in dispute. If the property or thing in dispute never existed there would be no subject matter jurisdiction.

In criminal proceedings the thing that forms the subject matter is the crime or public offense that is allegedly committed.

> The subject-matter of a criminal offense is the crime itself. Subject-matter in its broadest sense means the cause; the object; the thing in dispute.[6]

Most cases in which there would be a want of subject matter jurisdiction are self evident. If a subject matter or crime is outside the territorial jurisdiction of the court, then the court would not have jurisdiction over the thing or crime involved. Also, certain types of courts are given the authority, either by constitutional grant or statute, to hear certain types of cases. A federal tax court has subject matter jurisdiction over federal tax matters, not

---

4   *Smith v. State*, 148 S. 858, 860 (Ala. App. 1933).

5   *State v. Smith*, 70 A.2d 175, 177, 6 N.J. Super. 85 (1949).

6   *Stilwell v. Markham*, 10 P.2d 15, 16 (Kan. 1932).

over state tax matters or over bankruptcy cases. A probate court has jurisdiction over a will, but has no subject matter jurisdiction over the crime of burglary. A Justice of the Peace who is given authority to hear misdemeanor cases, has no subject matter jurisdiction to hear any felony cases.

It thus is said in a general sense that subject matter jurisdiction refers to the power of the court to hear and decide a case, or a particular class of cases; this is because jurisdiction of a court is derived from law (constitution or statute), and cannot be conferred by consent.

> The law creates courts and defines their powers. Consent cannot authorize a judge to do what the law has not given him the power to do. [7]

Because subject matter jurisdiction is a matter of law and authority of the court to hear a matter, the accused can not waive the lack of it, or even give his consent to it if it does not exist. Thus, the issue of subject matter jurisdiction can be raised at any time during the case, even after a plea has been entered.

> Jurisdiction of the subject matter is derived from the law. It can neither be waived nor conferred by consent of the accused. Objection to the court over the subject matter may be urged at any stage of the proceedings, and the right to make such an objection is never waived. However, jurisdiction of the person of the defendant may be acquired by consent of the accused or by waiver of objections. [8]

> [I]t is everywhere held that jurisdiction over subject matter or cause of action cannot be conferred upon a Court by consent or waiver, but may be questioned at any stage of the proceedings. [9]

Even if one fails to raise the issue of the lack of subject matter jurisdiction at trial, he can still raise the issue upon appeal.

> It is elementary that the jurisdiction of the court over the subject matter of the action is the most critical aspect of the court's authority to act. Without it the court lacks any power to proceed; therefore, a defense based upon this lack cannot be waived and may be asserted at any time. Accordingly, the appellants may raise the issue of jurisdiction over the matter for the first time on appeal although they initially failed to raise the issue before the trial court. [10]

> A reviewing court is required to considered the issue of subject matter jurisdiction even where it was not raised below in order to avoid an unwarranted exercise of judicial authority. [11]

There is nothing that one can do, or fail to do, that would cause the issue of subject matter jurisdiction to be lost. Even if a person pleads guilty he can raise the issue later on if the subject matter jurisdiction never existed.

> Subject matter jurisdiction cannot be conferred by a guilty plea if it does not otherwise exist.

> The guilty plea must *confess* some punishable offense to form the basis of a sentence. The effect of a plea of guilty is a record admission of whatever is well alleged in the indictment. If the latter is insufficient the plea confesses nothing. [12]

In this case a man was charged with a "felony-theft charge" to which he entered into a plea bargain and pleaded guilty. But the facts alleged in the indictment did not constitute the offense charged. There thus was no subject matter jurisdiction, and the conviction was void.

---

7   *Singleton v. Commonwealth,* 208 S.W.2d 325, 327,  306 Ky. 454 (1948).

8   21 *American Jurisprudence,* 2nd, "Criminal Law," § 339, p. 589.

9   *Harris v. State,* 82 A.2d 387, 389, 46 Del. 111 (1950).

10  *Matter of Green,* 313 S.E.2d 193, 195 (N.C.App. 1984).

11  *Honomichl v. State,* 333 N.W.2d 797, 799 (S.D. 1983).

12  *People v. McCarty,* 445 N.E.2d 298, 304,  94 Ill.2d 28 (1983), cases cited.

44

There are many cases where a person was convicted and put into prison, then upon discovery of a lack of subject matter jurisdiction, submitted a *habeas corpus* based upon the jurisdictional defect, and was released.

Subject matter jurisdiction involves more than having the right offense for the right court. Even if the court has jurisdiction over the type, class or grade of crime committed, it will still lack subject matter jurisdiction if the law which the crime is based upon is invalid, void, unconstitutional, or nonexistent.

> Jurisdiction over the subject matter of action is essential to power of court to act, and is conferred only by constitution or by valid statute.[13]

The court must be authorized to hear a crime, and have a valid law that creates a crime. Thus the crux of subject matter jurisdiction is always the crime or offense. If a law is invalid there is no crime; if there is no crime there is no subject matter jurisdiction.

> If a criminal statute is unconstitutional, the court lacks subject-matter jurisdiction and cannot proceed to try the case.[14]

In a case where a man was convicted of violating certain sections of some laws, he later claimed that the laws were unconstitutional which deprived the county court of jurisdiction to try him for those offenses. The Supreme Court of Oregon held:

> If these sections are unconstitutional, the law is void and an offense created by them is not a crime and a conviction under them cannot be a legal cause of imprisonment, for no court can acquire jurisdiction to try a person for acts which are made criminal only by an unconstitutional law.[15]

In Wisconsin a case involved a charge for violating a law which had actually been repealed. There was a motion hearing on the issue of whether the court had subject matter jurisdiction, and the Supreme Court held:

> Where the offense charged does not exist, the trial court lacks jurisdiction.[16]

In a case in Minnesota, a man was charged with the offense of "Being an Habitual Offender." But the statute did not make this a crime it only increased the punishment for a crime. The State Supreme Court said the man could not be convicted of a crime because the statute used did not state an offense, which meant the "court was without subject matter jurisdiction."[17]

An invalid, unconstitutional or non-existent statute also affects the validity of the "charging document," that is, the complaint, indictment or information. If these documents are void or fatally defective, there is no subject matter jurisdiction since they are the basis of the court's jurisdiction.

> When a criminal defendant is indicted under a not-yet-effective statute, the charging document is void.[18]

The indictment or complaint can be invalid if it is not constructed in the particular mode or form prescribed by constitution or statute (42 C.J.S., "Indictments and Informations," § 1, p. 833). But it also can be defective and void when it charges a violation of a law, and that law is void, unconstitutional or non-existent. If the charging document is void, the subject matter jurisdiction of a court does not exist.

> The want of a sufficient affidavit, complaint, or information goes to the jurisdiction of the

---

13 *Brown v. State,* 37 N.E.2d 73, 77 (Ind. 1941).

14 22 *Corpus Juris Secundum,* "Criminal Law," § 157, p. 189; citing *People v. Katrinak,* 185 Cal.Rptr. 869, 136 Cal.App.3d 145 (1982).

15 *Kelley v. Meyers,* 263 P. 903, 905 (Ore. 1928).

16 *State v. Christensen,* 329 N.W.2d 382, 383, 110 Wis.2d 538 (1983).

17 *State ex rel. Hansen v. Rigg,* 104 N.W.2d 553, 258 Minn. 388 (1960).

18 *State v. Dungan,* 718 P.2d 1010, 1014, 149 Ariz. 357 (1985).

court, * * * and renders all proceedings prior to the filing of a proper instrument void ab initio.[19]

Jurisdiction then is brought to a court by way of a complaint, information or indictment. If these instruments fail to charge a crime, there can be no subject matter jurisdiction.

> The allegations in the indictment or information determines the jurisdiction of the court.[20]

> Where an information charges no crime, the court lacks jurisdiction to try the accused, and a motion to quash the information or charge is always timely.[21]

> Without a formal and sufficient indictment or information, a court does not acquire subject matter jurisdiction and thus an accused may not be punished for a crime.[22]

One way in which a complaint or indictment fails to charge a crime, is by its failure to have the charge based upon a valid or existing law. Complaints or indictments which cite invalid laws, or incomplete laws, or nonexistent laws are regarded as being invalid on their face. Thus they are said to be "fatally defective" or "fatally bad." Usually when such matters occur the accused would have the complaint or indictment set aside either by a "motion to quash," or a "demurrer." But with today's system, if they are not based on the jurisdictional question, such a motion can be easily denied.

The crux then of this whole issue of jurisdiction revolves around law, that is, the law claimed to be violated. If one is subject to a law, they are then under the jurisdiction of some authority. If a king passes a law then those who are subject to the law are under his jurisdiction, and they can be judged for the violation of the law by the king or one of his ministers. When a person is outside the king's jurisdiction, there is no law he is subject to. But the reverse of this is also true, that being, if there is no law of the king, then there is no jurisdiction or authority to judge the person, even if he is the king's subject.

If a crime is alleged but there is no law to form the basis of that crime, there is no jurisdiction to try and sentence one even though they are subject to the legislative body and the court. There has to be a law, a valid law, for subject matter jurisdiction to exist.

The current corrupt legal system has in effect sown its own seeds of destruction by arbitrarily forming codes and revised statutes. All complaints or indictments today cite laws from these codes or revised statute books which contain no enacting clauses. Laws which lack an enacting clause are not laws of the legislative body to which we are constitutionally subject. Thus if a complaint or information charges one with a violation of a law which has no enacting clause, then no valid laws is cited. If it cites no valid law then the complaint charges no crime, and the court has no subject-matter jurisdiction to try the accused.

No complaint or indictment can allege that a criminal act has been committed when there is no law which makes the act a crime. When common law crimes were prosecuted in state courts, there were many cases that arose where the accused claimed the act was not a crime at common law. Thus when issued a complaint or indictment, the accused would, before trial, demurrer to the complaint or file a motion to quash the complaint based on the fact that the complaint failed to cite anything that was a crime. It therefore might be held that the act

19 *22 Corpus Juris Secundum,* "Criminal Law," § 324, p. 390.

20 *Ex parte Waldock,* 286 Pac. 765, 766 (Okla. 1930).

21 *People v. Hardiman,* 347 N.W.2d 460, 462, 132 Mich.App. 382 (1984); *22 Corpus Juris Secundum,* "Criminal Law," § 157, p. 188; citing, *People v. McCarty,* 445 N.E.2d 298, 94 Ill.2d 28.

22 *Honomichl v. State,* 333 N.W.2d 797, 798 (S.D. 1983).

46

was not a crime at common law, and since there was no law, the court had no jurisdiction over the subject matter.

The legal system today does not recognize common law crimes, and thus the only thing that is a crime is made so by statute. If there is no statute or law for the crime alleged, there can be no crime, and if there is no crime, there is no subject matter jurisdiction. If a law does not exist, or is not constitutional, the complaint is void and it cannot give subject-matter jurisdiction to the court.

### Error Versus Usurpation

To better understand why this must be an issue of subject matter jurisdiction, we need to understand the powers and limitations placed upon a court by fundamental law.

The jurisdiction of a court is in essence its authority to hear and decide a matter. But a court or a judge is in actuality a human agency, and as such is liable to make a mistake or "error" on some issue he decides. All of history is replete with examples of such error occurring. It is universally recognized that a court, which has proper jurisdiction, has the right to be wrong in its judgment.

> The jurisdiction and authority to enter a judgment includes the power to decide a case wrongly.[23]

> Jurisdiction, it is agreed, includes the power to determine either rightfully or wrongfully. It can make no difference how erroneous the decision may be.[24]

> Jurisdiction to decide is jurisdiction to make a wrong as well as a right decision.[25]

It matters not how unconstitutional a law is, it matters not how much your rights are violated, it matters not how arbitrary government has been in violating due process of law, a court can rule against you and it is only regarded as "error" or a wrong decision. The judge can give the most incorrect, erroneous or illogical decision and it is binding until it is reversed by a higher court.

> The power of a court to decide includes the power to decide wrongly. An erroneous decision is as binding as one that is correct until it is set aside or corrected in a manner provided by law.[26]

It may be hard for many to accept this concept, especially in light of the corrupt courts that exist today. But it would not be a problem if judges and other leaders were godly men as prescribed by the Bible:

> Moreover you shall select from all the people able men, such as fear God, men of truth, hating covetousness; and place such over them to be rulers (Exod. 18:21).

There was a time in this country that when a man was elected to office he had to take an oath that he believed in God and believed in a future state of rewards and punishments. But the spiritual condition of the nation has taken on an evil disposition, which has a definite affect on the nature of the legal system. The result has been courts which defy the law of God, uphold unconstitutional laws, support abortion, allow property to be taken without due process, and make other "wrong" decisions.

The key then is not to find the right law or argument to present in court, but to somehow remove the jurisdiction of the court so that the right to decide wrongly does not exist. This can be done by showing that there are no valid laws charged against you because they do not have enacting clauses or titles. Without valid laws there is no subject matter jurisdiction and any decision rendered is void. There can be no

23 *Provance v. Shawnee Mission Unified School*, 683 P.2d 902, 235 Kan. 927 (1984).

24 *Garcia v. Dial*, 596 S.W.2d 524, 528 (Tex.Cr.App. 1980); *Olson v. Cass County*, 253 N.W.2d 179, 183 (N.D. 1977).

25 *Pope v. United States*, 323 U.S. 1, 65 Sup. Ct. Rep. 16, 23 (1944), cases cited.

26 *Mayhue v. Mayhue*, 706 P.2d 890, 893, note 7 (Okla. 1985).

valid judgment, either right or wrong, without this type of jurisdiction.

[N]o authority need to be cited for the proposition that, when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable, * * * and without any force or effect whatever.[27]

Where judicial tribunals have no jurisdiction of subject matter, the proceedings are void.[28]

Where subject matter jurisdiction does not exist, any bad, wrong or corrupt decision is *void,* but if the jurisdiction exists, a wrong or erroneous decision is only *voidable* by appeal.

The test of jurisdiction is the right to decide, not right decision. Judgments of courts, which at the time the judgments were rendered had no jurisdiction, * * * are absolutely void, and may be attacked and defeated collaterally. On the other hand, judgments of courts empowered to hear and determine issues related to the subject matters and persons, although such judgments may be illegal and wrong, are simply voidable and are not open to collateral attack.[29]

The only remedy to correct an error or illegal decision is by appeal. But the judges of the appeals court also have the right to make error or be wrong, and can thus support the illegal decision of the trial court. But if the trial court decision was void for lack of jurisdiction, it cannot be made valid by an appeal decision.

Even though a void judgment is affirmed on appeal, it is not thereby rendered valid.[30]

When jurisdiction is lacking, the court can do nothing except dismiss the cause of action. Any other court proceeding is usurpation.

*Lack of jurisdiction* and the *improper exercise of jurisdiction* are vitally different concepts.

* * * Where the court is without jurisdiction it has no authority to render any judgment other than one of dismissal.[31]

A judge or court may be in a legal sense immune from any claims that it is guilty of corruption because of its improper exercise of jurisdiction. However, it has no such protection where it lacks jurisdiction and the issue has been raised and asserted before judgment. Thus when the lack of jurisdiction has been shown, a judgment rendered is not only void, but is also *usurpation!*

Jurisdiction is a fundamental prerequisite to a valid prosecution and conviction, and a usurpation thereof is a nullity.[32]

If [excessive exercise of authority] has reference to want of power over the subject matter, the result is void when challenged directly or collaterally. If it has reference merely to the judicial method of the exercise of power, the result is binding upon the parties to the litigation till reversed * * * The former is usurpation; the latter error in judgment.[33]

The line which separates error in judgment from the usurpation of power is very definite.[34]

Since the laws in use today are invalid on their face, it deprives the court of subject matter jurisdiction. For the court to proceed with trial and make a judgment or sentence after such a jurisdictional challenge has been made, it is simply an act of usurpation and treason. The importance of this material is that it forces the courts to either completely retract from enforcing corrupt and ungodly laws, or it forces them to establish the grounds for

27 *Hooker v. Boles,* 346 Fed.2d 285, 286 (1965);  *Honomichl v. State,* 333 N.W.2d 797, 799 (S.D. 1983).

28 21 *Corpus Juris Secundum,* "Courts," § 18, p. 25; *People v. Mckinnon,* 362 N.W.2d 809, 812 (Mich.App. 1985).

29 *United States v. U.S. Fidelity & Guaranty Co.,* 24 F.Supp. 961, 966 (1938); 47 Am Jur 2d, "Judgments," § 916.

30 *Ralph v. Police Court of City of El Cerrito,* 190 P.2d 632, 634,  84 Ca.App.2d 257 (1948).

31 *Garcia v. Dial,* 596 S.W.2d 524, 528 (Tex.Cr.App. 1980).

32 22 *Corpus Juris Secundum,* "Criminal Law," § 150, p. 183.

33 *Harrigan v. Gilchrist,* 99 N.W. 909, 934,  121 Wis. 127 (1904).

34 *Voorhees v. The Bank of the United States,* 35 U.S. 449, 474-75 (1836).

48

revolution—usurpation and tyranny! There is no right to commit tyranny or usurpation, and such acts can be disobeyed or resisted. A maxim of law states:

> A judge who exceeds his office or jurisdiction is not to be obeyed.

> He who exercises judicial authority beyond his proper limits can not be obeyed with safety or impunity.[35]

A judge cannot claim immunity to acts of usurpation, for the law does not recognize such acts. Thus one cannot be punished for not obeying a judgment rendered by usurpation or want of jurisdiction:

> The rule is fundamental that, where the court has no jurisdiction over the subject matter of the action, all proceedings in such action are void. The rule is likewise well settled that refusal to obey a void order or judgment is not contempt.[36]

It should be stated in all fairness that an act cannot really be classified as usurpation unless the problem is revealed and the judge warned of the situation. The American colonists knew that it was proper to first warn King George of his acts of usurpation and tyranny before they could take action against him. Up to now judges have escaped being held accountable for committing usurpation or tyranny for using invalid law against citizens. If this is not pointed out and objected to, it is assumed the accused has acquiesced to the invalidity of the law. There must be notice and warning of the matter.

It is often held that a void judgment, or an act committed without jurisdiction, can be attacked collaterally, which means it can be attacked differently from what the law usually prescribes, as one text writer explains:

> There are only two ways to attack a judicial proceeding, direct and collateral. Any proceeding provided by law for the purpose of avoiding or correcting a judgment, is a direct attack which will be successful upon showing the error; while an attempt to do the same thing in any other proceeding is a collateral attack, which will be successful only upon showing a want of power.[37]

The American colonists at first attacked the usurpation and tyranny of King George directly with petitions and redresses. Later on they attacked it in a collateral sense by force of arms and by proclaiming their independence from that government. However, no act or judgment can be attacked until it is understood how and why it is without power or authority. This material on authority of law can give the people of this land the right to collaterally attack the legal system and government.

If one is asked to plead to the charges, it should be said that you can't plead at this time because you believe that the subject matter for this case is lacking, and you choose first to submit a motion to dismiss on those grounds. The government may try to say that, "the laws in question were lawfully passed by the Legislature pursuant to the Constitution." Technically this can be said since laws like the ones in the Revised Statutes (or U.S. Code) were passed by the Legislature, but this is not the issue. The issue is not whether the laws charged against you or laws like them were passed by the Legislature (or Congress), but rather that they don't exist in their current state as valid laws. That is, they fail to follow the valid form and style of a law due to the manner in which they are published or promulgated. If the court says that the authority for the law is the legislature, the reply should be, where is the legislative enacting authority for the law?

The following is an example of a memorandum and motion to dismiss due to lack of subject matter jurisdiction. With this argument you are not asking for the charges to be dismissed, since legally there are no charges, but rather that the cause of action be dismissed.

---

35 See, *Maxims of Law*, edited by C. Weisman, 63z, 66m.

36 *Wolski v. Lippincott*, 25 N.W.2d 754, 755 (Neb. 1947).

37 John M. Vanfleet, *The Law of Collateral Attack on Judicial Proceedings*, Callaghan & Co., Chicago, 1892, p. 5.

49

STATE OF MINNESOTA        DISTRICT COURT

COUNTY OF HENNEPIN      4TH JUDICIAL DISTRICT

| | | |
|---|---|---|
| State of Minnesota, | ) | **MEMORANDUM AND** |
| Plaintiff, | ) | **MOTION TO DISMISS** |
| | ) | **FOR LACK OF** |
| vs. | ) | **SUBJECT MATTER** |
| | ) | **JURISDICTION** |
| | ) | |
| John R. Smith, | ) | Court Case Nos.   KX-95-2125 |
| Accused. | ) | EO-95-2277 |
| | ) | |

COMES NOW THE ACCUSED denying and challenging the jurisdiction of the above-named court over the subject matter in the above-entitled cause, for the reasons explained in the following memorandum:

### MEMORANDUM OF LAW

**I. The Nature of Subject Matter Jurisdiction.**

The jurisdiction of a court over the subject matter has been said to be essential, necessary, indispensable and an elementary prerequisite to the exercise of judicial power. 21 C.J.S., "Courts," § 18, p. 25. A court cannot proceed with a trial or make a judgment without such jurisdiction existing.

It is elementary that the jurisdiction of the court over the subject matter of the action is the most critical aspect of the court's authority to act. Without it the court lacks any power to proceed; therefore, a defense based upon this lack cannot be waived and may be asserted at any time. *Matter of Green*, 313 S.E.2d 193 (N.C.App. 1984).

Subject matter jurisdiction cannot be conferred by waiver or consent, and may be raised at any time. *Rodriguez v. State*, 441 So.2d 1129 (Fla.App. 1983). The subject matter jurisdiction of a criminal case is related to the cause of action in general, and more specifically to the alleged crime or offense which creates the action.

The subject-matter of a criminal offense is the crime itself.  Subject-matter in its broadest sense means the cause; the object; the thing in dispute.  *Stillwell v. Markham*, 10 P.2d 15, 16 135 Kan. 206 (1932).

An indictment or complaint in a criminal case is the main means by which a court obtains subject matter jurisdiction, and is "the jurisdictional instrument upon which the accused stands trial."*State v. Chatmon*, 671 P.2d 531, 538 (Kan. 1983). The complaint is the foundation of the jurisdiction of the magistrate or court.  Thus if these charging instruments are invalid, there is a lack of subject matter jurisdiction.

Without a formal and sufficient indictment or information, a court does not acquire subject matter jurisdiction and thus an accused may not be punished for a crime.  *Honomichl v. State*, 333 N.W.2d 797, 798 (S.D. 1983).

A formal accusation is essential for every trial of a crime.  Without it the court acquires no jurisdiction to proceed, even with the consent of the parties, and where the indictment or information is invalid the court is without jurisdiction.  *Ex parte Carlson*, 186 N.W. 722, 725,  176 Wis. 538 (1922).

Without a valid complaint any judgment or sentence rendered is "void ab initio" *Ralph v. Police Court of El Cerrito*, 190 P.2d 632, 634,  84 Cal. App.2d 257 (1948).

Jurisdiction to try and punish for a crime cannot be acquired by the mere assertion of it, or invoked otherwise than in the mode prescribed by law, and if it is not so acquired or invoked any judgment is a nullity.  22 C.J.S., "Criminal Law,"  § 167, p. 202.

The charging instrument must not only be in the particular mode or form prescribed by the constitution and statute to be valid, but it also must contain reference to valid laws. Without a valid law, the charging instrument is insufficient and no subject matter jurisdiction exists for the matter to be tried.

Where an information charges no crime, the court lacks jurisdiction to try the accused. *People v. Hardiman*, 347 N.W.2d 460, 462,  132 Mich.App. 382 (1984).

(W)hether or not the complaint charges an offense is a jurisdictional matter.  *Ex parte Carlson*, 186 N.W. 722, 725,  176 Wis. 538 (1922).

An invalid law charged against one in a criminal matter also negates subject matter jurisdiction by the sheer fact that it fails to create a cause of action.  "Subject matter is the thing in controversy." *Holmes v. Mason*, 115 N.W. 770, 80 Neb. 454, citing *Black's Law Dictionary*.  Without a valid law, there is no issue or controversy for a court to decide upon.  Thus, where a law does not exist or does not constitutionally exist, or where the law is invalid, void or unconstitutional, there is no subject matter jurisdiction to try one for an offense alleged under such a law.

If a criminal statute is unconstitutional, the court lacks subject-matter jurisdiction and cannot proceed to try the case.  22 C.J.S. "Criminal Law," § 157, p. 189;  citing *People v. Katrinak*, 185 Cal.Rptr. 869,  136 Cal.App.3d 145 (1982).

Where the offense charged does not exist, the trial court lacks jurisdiction.  *State v. Christensen*,  329 N.W.2d 382, 383,  110 Wis.2d 538 (1983).

Page 2 of 17

Not all statutes create a criminal offense.  Thus where a man was charged with "a statute which does not create a criminal offense," such person was never legally charged with any crime or lawfully convicted because the trial court did not have "jurisdiction of the subject matter," *State ex rel. Hansen v. Rigg*, 258 Minn. 388,  104 N.W.2d 553 (1960).  There must be a valid law in order for subject matter to exist.

In a case where a man was convicted of violating certain sections of some laws, he later claimed that the laws were unconstitutional which deprived the county court of jurisdiction to try him for those offenses.  The Supreme Court of Oregon held:

> If these sections are unconstitutional, the law is void and an offense created by them is not a crime and a conviction under them cannot be a legal cause of imprisonment, for no court can acquire jurisdiction to try a person for acts which are made criminal only by an unconstitutional law.  *Kelly v. Meyers*, 263 Pac. 903, 905 (Ore. 1928).

Without a valid law there can be no crime charged under that law, and where there is no crime or offense there is no controversy or cause of action, and without a cause of action there can be no subject matter jurisdiction to try a person accused of violating said law.   The court then has no power or right to hear and decide a particular case involving such invalid or nonexistent laws.

These authorities and others make it clear that if there are no valid laws charged against a person, there is nothing that can be deemed a crime, and without a crime there is no subject matter jurisdiction.  Further, invalid or unlawful laws make the complaint fatally defective and insufficient, and without a valid complaint there is a lack of subject matter jurisdiction.

The Accused asserts that the laws charged against him are not valid, or do not constitutionally exist as they do not conform to certain constitutional prerequisites, and thus are no laws at all, which prevents subject matter jurisdiction to the above-named court.

The complaints in question allege that the Accused has committed several crimes by the violation of certain laws which are listed in said complaints, to wit:

    Intent to escape tax – M.S. §168.35
    No Plates Affixed to Vehicle – M.S. §169.79
    No insurance – M.S. §169.797, Subd. 2
    No Minnesota Registration – M.S. §168.36
    Driving after revocation – M.S. §171.24, Subd. 2

I have been informed that these laws or statutes used in the complaints against myself are located in and derived from a collection of books entitled "Minnesota Statutes."  Upon looking up these laws in this publication, I realized that they do not adhere to several constitutional provisions of the Minnesota Constitution.

By Article 4 of the Constitution of Minnesota (1857), all lawmaking authority for the State is vested in the Legislature of Minnesota. This Article also prescribes certain forms, modes and procedures that must be followed in order for a valid law to exist under the Constitution. It is fundamental that nothing can be a law that is not enacted by the Legislature prescribed in the Constitution, *and* which fails to conform to constitutional forms, prerequisites or prohibitions. These are the grounds for challenging the subject matter jurisdiction of this court, since the validity of a law on a complaint or indictment goes to the jurisdiction of a court. The following explains in authoritative detail why the laws cited in the complaints against the Accused are not constitutionally valid laws.

**II.  By Constitutional Mandate, all Laws Must Have an Enacting Clause.**

One of the forms that all laws are required to follow by the Constitution of Minnesota (1857), is that they contain an enacting style or clause. This provision is stated as follows:

> Article IV, Sec. 15.  The style of all laws of this State shall be: "Be it enacted by the Legislature of the State of Minnesota."

None of the laws cited in the complaints against the Accused, as found in the "Minnesota Statutes," 1994, contain any enacting clauses.

The constitutional provision which prescribes an enacting clause for all laws is not *directory*, but it is mandatory. This provision is to be strictly adhered to as asserted by the Supreme Court of Minnesota:

> Upon both principle and authority, we hold that article 4, § 13, of our constitution, which provides that "the style of all laws of this state shall be, 'Be it enacted by the legislature of the state of Minnesota,'" <u>is mandatory</u>, and that a statute without any enacting clause <u>is void</u>.  *Sjoberg v. Security Savings & Loan Assn*, 73 Minn. 203, 212 (1898).

*[Add other material here relating to the mandatory nature of enacting clauses]*

**III.  What is the Purpose of the Constitutional Provision for an Enacting Clause?**

To determine the validity of using laws without an enacting clause against citizens, we need to determine the purpose and function of an enacting clause; and also to see what problems or evils were intended to be avoided by including such a provision in our State Constitution. One object of the constitutional mandate for an enacting clause is to show that the law is one enacted by the legislative body which has been given the lawmaking authority under the Constitution.

> The purpose of thus prescribing an enacting clause—"the style of the acts"—is to establish it; to give it permanence, uniformity, and certainty; <u>to identify the act of legislation as of the present assembly</u>; to afford evidence of its legislative statutory nature; and to secure uniformity of identification, and thus prevent inadvertence, possibly mistake and

fraud.  *State v. Patterson*, 4 S.E. 350, 352,  98 N.C. 660 (1887); 82 C.J.S. "Statutes," § 65, p. 104;  *Joiner v. State*, 155 S.E.2d 8, 10, 223 Ga. 367 (1967).

What is the object of the style of a bill or enacting clause anyway?  To show the authority by which the bill is enacted into law; to show that the act comes from a place pointed out by the Constitution as the source of legislation.  *Ferrill v. Keel*, 151 S.W. 269, 272, 105 Ark. 380 (1912).

To fulfill the purpose of identifying the lawmaking authority of a law, it has been repeatedly declared by the courts of this land that an enacting clause is to  appear on the face of every law which the people are expected to follow and obey.

The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority.  The purpose of an enacting clause of a statute is to identify it as an act of legislation by expressing on its face the authority behind the act.  73  Am. Jur.2d, "Statutes," § 93, p. 319, 320;  *Preckel v. Byrne*, 243 N.W. 823, 826,  62 N.D. 356 (1932).

For an enacting clause to appear on the face of a law, it must be recorded or published with the law so that the public can readily identify the authority for that particular law which they are expected to follow.  The "statutes" used in the complaints against the Accused have no enacting clauses.  They thus cannot be identified as acts of legislation of the State of Minnesota pursuant to its lawmaking authority under Article IV of the Constitution of Minnesota (1857), since a law is mainly identified as a true and Constitutional law by way of its enacting clause.   The Supreme Court of Georgia asserted that a statute must have an enacting clause, even though their State Constitution had no provision for the measure.  The Court stated that an enacting clause establishes a law or statute as being a true and authentic law of the State:

The enacting clause is that portion of a statute which gives it jurisdictional identity and constitutional authenticity.  *Joiner v. State*, 155 S.E.2d 8, 10 (Ga. 1967).

The failure of a law to display on its face an enacting clause deprives it of essential legality,  and renders a statute which omits such clause as "a nullity and of no force of law." *Joiner v. State*, supra.  The statutes cited in the complaints have no jurisdictional identity and are not authentic laws under the Constitution of Minnesota.

The Court of Appeals of Kentucky held that the constitutional provision requiring an enacting clause is a basic concept which has a direct affect upon the validity of a law.  The Court, in dealing with a law that had contained no enacting clause, stated:

The alleged act or law in question is unenacted;  is shown no signs of authority; it carries with it no evidence that the General Assembly or any other lawmaking power is responsible or answerable for it. * * * By an enacting clause, the makers of the Constitution intended that the General Assembly should make its impress or seal, as it were, upon each enactment for the sake of identity, and to assume and show responsibility.  * * *  While the Constitution makes this a necessity, it did not originate it.  The custom is one practically everywhere, and is as old as parliamentary government, as old as king's decrees, and even they borrowed it.  The decrees of Cyrus, King of Persia, which Holy Writ records, were not the first to be prefaced with a statement of authority.  The law was delivered

to Moses in the name of the Great I Am, and the prologue to the Great Commandments is no less majestic and impelling. But, whether these edicts and commands be promulgated by the Supreme Ruler or by petty kings, or by the sovereign people themselves, they have always begun with some such form as a evidence of power and authority. *Commonwealth v. Illinois Cent. R. Co.*, 170 S.W. 171, 172, 175, 160 Ky. 745 (1914).

The "laws" used against the Accused are unnamed. They show no sign of authority on their face as recorded is the "Minnesota Statutes." They carry with them no evidence that the Legislature of Minnesota, pursuant to Article IV of the Constitution of Minnesota (1857), is responsible for these laws. Without an enacting clause the laws referenced to in the complaints have no official evidence that they are from an authority which I am subject to or required to obey.

When the question of the "objects intended to be secured by the enacting clause provision" was before the Supreme Court of Minnesota, the Court held that such a clause was necessary to show the people who are to obey the law, the authority for their obedience. It was revealed that historically this was a main use for an enacting clause, and thus its use is a fundamental concept of law. The Court stated:

All written laws, in all times and in all countries, whether in the form of decrees issued by absolute monarchs, or statutes enacted by king and council, or by a representative body, have, as a rule, expressed upon their face the authority by which they were promulgated or enacted. The almost unbroken custom of centuries has been to preface laws with a statement in some form declaring the enacting authority. If such an enacting clause is a mere matter of form, a relic of antiquity, serving no useful purpose, why should the constitutions of so many of our states require that all laws must have an enacting clause, and prescribe its form. If an enacting clause is useful and important, if it is desirable that laws shall bear upon their face the authority by which they are enacted, so that the people who are to obey them need not search legislative and other records to ascertain the authority, then it is not beneath the dignity of the framers of a constitution, or unworthy of such an instrument, to prescribe a uniform style for such enacting clause.

The words of the constitution, that the style of all laws of this state shall be, "Be it enacted by the legislature of the state of Minnesota," imply that all laws must be so expressed or declared, to the end that they may express upon their face the authority by which they were enacted; and, if they do not so declare, they are not laws of this state. *Sjoberg v. Security Savings & Loan Assn*, 73 Minn. 203, 212-214 (1898).

This case was initiated when it was discovered that the law relating to "building, loan and savings associations," had no enacting clause as it was printing in the statute book, "Laws 1897, c. 250." The Court made it clear that a law existing in that manner is "void" *Sjoberg*, supra, p. 214.

The purported laws in the complaints, which the Accused is said to have violated, are referenced to various laws found printed in the "Minnesota Statutes" book. I have looked up the laws charged against me in this book and found no enacting clause for any of these laws. A citizen is not expected or required to search through other records or books for the enacting authority. If such enacting authority is not "on the *face*" of

the laws which are referenced in a complaint, then "they are not laws of this state," and thus are not laws to which I am subject. Since they are not laws of this State, the above-named Court has no subject matter jurisdiction, as there can be no crime which can exist from failing to follow laws which do not constitutionally exist.

In speaking on the necessity and purpose that each law be prefaced with an enacting clause, the Supreme Court of Tennessee quoted the first portion of the *Sjoberg* case cited above, and then stated:

> The purpose of provisions of this character is that <u>all statutes</u> may <u>bear upon their faces a declaration of sovereign authority</u> by which they are enacted and declared to be the law, and to promote and preserve uniformity in legislation. Such clauses also import a command of obedience and clothe the statute with a certain dignity, believed in all times to command respect and aid in the enforcement of laws. *State v. Burrow*, 104 S.W. 526, 529, 119 Tenn. 376 (1907).

The use of an enacting clause does not merely serve as a "flag" under which bills run the course through the legislative machinery. *Vaughn & Ragsdale Co. v. State Bd. of Eq.*, 96 P.2d 420, 424 (Mont. 1939). The enacting clause of a law goes to its substance, and is not merely procedural. *Morgan v. Murray*, 328 P.2d 644, 654 (Mont. 1958).

Any purported statute which has no enacting clause<u>on its face</u>, is not legally binding and obligatory upon the people, as it is not constitutionally a law at all. The Supreme Court of Michigan, in citing numerous authorities, said that an enacting clause was a requisite to a valid law since the enacting provision was mandatory:

> It is necessary that <u>every law</u> should show <u>on its face the authority</u> by which it is adopted and promulgated, and that it should clearly appear that it is intended by the legislative power that enacts it that it should take effect as a law. *People v. Dettenthaler*, 77 N.W. 450, 451, 118 Mich. 595 (1898); citing *Swann v. Buck*, 40 Miss. 270.

The laws in the "Minnesota Statutes" do not show on their face the authority by which they are adopted and promulgated. There is nothing on their face which declares they should be law, or that they are of the proper legislative authority in this State.

These and other authorities then all hold that the enacting clause of a law is to be "on its face." It must appear directly above the content or body of the law. To be on the face of the law does not and cannot mean that the enacting clause can be buried away in some other volume or some other book or records.

> Face. The surface of anything, especially the front, upper, or outer part or surface. That which particularly offers itself to the view of a spectator. That which is shown by the language employed, without any explanation, modification, or addition from extrinsic facts or evidence. *Black's Law Dictionary*, 5th ed., p. 530.

The enacting clause must be intrinsic to the law, and not "extrinsic" to it, that is, it cannot be hidden away in other records or books. Thus the enacting clause is regarded as part of the law, and has to appear directly with the law, on its face, so that one charged with said law knows the authority by which it exists.

**IV.  Laws Must be Published and Recorded with Enacting Clauses.**

Since it has been repeatedly held that an enacting clause must appear "on the face" of a law, such a requirement affects the printing and publishing of laws.  The fact that the constitution requires "all laws" to have an enacting clause makes it a requirement on not just bills within the legislature, but on published laws as well.  If the constitution said "all bills" shall have an enacting clause, it probably could be said that their use in publications would not be required.  But the historical usage and application of an enacting clause has been for them to be printed and published along with the body of the law, thus appearing "on the face" of the law.

It is obvious, then, that the enacting clause must be readily visible on the face of a statute in the common mode in which it is published so that citizens don't have to search through the legislative journals or other records and books to see the kind of clause used, or if any exists at all.  Thus a law in a statute book without an enacting clause is not a valid publication of law.  In regards to the validity of a law that was found in their statute books with a defective enacting clause, the Supreme Court of Nevada held:

> Our constitution expressly provided that the enacting clause *of every law* shall be, "The people of the state of Nevada, represented in senate and assembly, do enact as follows." This language is susceptible of but one interpretation.  There is no doubtful meaning as to the intention. It is, in our judgment, an imperative mandate of the people, in their sovereign capacity, to the legislature, requiring that all laws, to be binding upon them, shall, upon their face, express the authority by which they were enacted; and, since this act comes to us without such authority appearing upon its face, it *is not a law.*" *State of Nevada v. Rogers*, 10 Nev. 120, 261 (1875); approved in *Caine v. Robbins*, 131 P.2d 516, 518,  61 Nev. 416 (1942); *Kefauver v. Spurling*, 290 S.W. 14, 15  (Tenn. 1926).

The manner in which the law came to the court was by the way it was found in the statute book, cited by the Court as "Stat. 1875, 66," and that is how they judge the validity of the law.  Since they saw that the act, as it was printed in the statute book, had an insufficient enacting clause on its face, it was deemed to be "not a law."  It is only by inspecting the publicly printed statute book that the people can determine the source, authority and constitutional authenticity of the law they are expected to follow.

*[Add other material here relating to the publication of statutes]*

It should be noted that laws in the above cases were held to be void for having no enacting clauses despite the fact that they were published in an official statute book of the State, and were next to other laws which had the proper enacting clauses.

The preceding examples and declarations on the use and purpose of enacting clauses shows beyond doubt that nothing can be called or regarded as a law of this State which is published without an enacting clause on its face.  Nothing can exist as a State law except in the manner prescribed by the State Constitution.  One of those provisions is that "all laws" must bear on their face a specific enacting style—*Be it enacted by the*

*Legislature of the State of Minnesota.*"(Minn. Const., Art. IV, Sec. 13).   All laws must be published with this clause in order to be valid laws, and since the "statutes" in the "Minnesota Statutes" are not so published, they are not valid laws of this State.

**V.  The Laws Referenced to in the Complaints Contain no Titles.**

The laws listed in the complaints in question, as cited from the "Minnesota Statutes," contain no titles.   All laws are to have titles indicating the subject matter of the law, as required by the Constitution of Minnesota:

Article IV, Sec. 27.  No law shall embrace more than one subject, which shall be expressed in its title.

By this provision a title is required to be on all laws.   The title is another one of the forms of a law required by the Constitution.  This type of constitutional provision "makes the title an essential part of every law," thus the title "is as much a part of the act as the body itself." *Leisinger v. Alger,* 26 N.W.2d 348, 351,  316 Mich. 644 (1947).

The title to a legislative act is a part thereof, and must clearly express the subject of legislation.   *State v. Burlington & M. R.R. Co.,* 60 Neb. 741, 84 N.W. 254 (1900).

Nearly all legal authorities have held that the title is part of the act, especially when a constitutional provision for a title exists.  37 A.L.R. Annotated, pp. 948, 949.  What then can be said of a law in which an essential part of it is missing, except that it is not a law under the State Constitution.

This provision of the State Constitution, providing that every law is to have a title expressing one subject, is mandatory and is to be followed in all laws, as stated by the Supreme Court of Minnesota:

We pointed out that our constitutional debates indicated that the constitutional requirements relating to enactment of statutes were intended to be remedial and mandatory,—remedial, as guarding against recognized evils arising from loose and dangerous methods of conducting legislation, and mandatory, as requiring compliance by the legislature without discretion on its part to protect the public interest against such recognized evils, and that the validity of statutes should depend on compliance with such requirements * * *.   *Bull v. King,* 286 N.W. 311, 313 (Minn. 1939).

The constitutional provisions for a title have been held in many other states to be mandatory in the highest sense.  *State v. Beckman,* 185 S.W.2d 810, 816 (Mo. 1945); *Leisinger v. Alger,* 26 N.W.2d 384, 316 Mich. 644;  82 C.J.S. "Statutes," § 64, p. 102. The provision for a title in the constitution "renders a title indispensable."  73 Am. Jur. 2d, "Statutes," § 99, p. 325, citing *People v. Monroe,* 349 Ill. 270, 182 N.E. 439.  Since such provisions regarding a title are mandatory and indispensable, the existence of a title is necessary to the validity of the act.  If a title does not exist, then it is not a law pursuant to Art. IV, Sec. 27 of the Constitution of Minnesota (1857).    In speaking of the constitutional provision requiring one subject to be embraced in the title of each law, the Supreme Court of Tennessee stated:

That requirement of the organic law is mandatory, and, unless obeyed in every instance, the legislation attempted is invalid and of no effect whatever. *State v. Yardley*, 32 S.W. 481, 482, 95 Tenn. 546 (1895).

To further determine the validity of citing laws in a complaint which have no titles, we must also look at the purpose for this constitutional provision, and the evils and problems which it was intended to prevent or defeat.

One of the aims and purposes for a title or caption to an act is to convey to the people who are to obey it the legislative intent behind the law.

The constitution has made the title the conclusive index to the legislative intent as to what shall have operation. *Megins v. City of Duluth*, 106 N.W. 89, 90, 97 Minn. 23 (1906); *Hyman v. State*, 9 S.W. 372, 373, 87 Tenn. 109 (1888).

In ruling as to the precise meaning of the language employed in a statute, nothing, as we have said before, is more pertinent towards ascertaining the true intention of the legislative mind in the passage of the enactment than the legislature's own interpretation of the scope and purpose of the act, as contained in the caption. *Winberly v. Georgia S. & F.R. Co.*, 63 S.E. 29, 5 Ga. App. 263 (1908).

Under a constitutional provision * * * requiring the subject of the legislation to be expressed in the title, that portion of an act is often the very window through which the legislative intent may be seen. *State v. Clinton County*, 76 N.E. 986, 166 Ind. 162 (1906).

The title of an act is necessarily a part of it, and in construing the act the title should be taken into consideration. *Glaser v. Rothschild*, 120 S.W. 1, 221 Mo. 180 (1909).

Without the title the intent of the legislature is concealed or cloaked from public view. Yet a specific purpose or function of a title to a law is to "protect the people against covert legislation" *Brown v. Clower*, 166 S.E.2d 363, 365, 225 Ga. 165 (1969). A title will reveal or give notice to the public of the general character of the legislation. However, the nature and intent of the "laws" in the "Minnesota Statutes" have been concealed and made uncertain by its nonuse of titles. The true nature of the subject matter of the laws therein is not made clear without titles. Thus another purpose of the title is to apprise the people of the nature of legislation, thereby preventing fraud or deception in regard to the laws they are to follow. The U.S. Supreme Court, in determining the purpose of such a provision in state constitutions, said:

The purpose of the constitutional provision is to prevent the inclusion of incongruous and unrelated matters in the same measure and <u>to guard against inadvertence, stealth and fraud in legislation</u>. * * * Courts strictly enforce such provisions in cases that fall within the reasons on which they rest, * * * and hold that, in order to warrant the setting aside of enactments for failure to comply with the rule, the violation must be substantial and plain. *Posadas v. Warner, B. & Co.*, 279 U.S. 340, 344 (1928); also *Internat. Shoe Co. v. Shartel*, 279 U.S. 429, 434 (1928).

The complete omission of a title is about as substantial and plain a violation of this constitutional provision as can exist. The laws cited in the complaints against the

Accused are of that nature. They have no titles at all, and thus are not laws under our State Constitution.

The Supreme Court of Idaho, in construing the purpose for its constitutional provision requiring a one-subject title on all laws, stated:

> The object of the title is to give a general statement of the subject-matter, and such a general statement will be sufficient to include all provisions of the act having a reasonable connection with the subject-matter mentioned. * * * The object or purpose of the clause in the Constitution * * * is to prevent the perpetration of fraud upon the members of the Legislature or the citizens of the state in the enactment of laws. *Ex parte Crane*, 151 Pac. 1006, 1010, 1011, 27 Idaho 671 (1915).

The Supreme Court of North Dakota, in speaking on its constitutional provision requiring titles on laws, stated that, "This provision is intended * * * to prevent all surprises or misapprehensions on the part of the public." *State v. McEnroe*, 283 N.W. 57, 61 (N.D. 1938). The Supreme Court of Minnesota, in speaking on Article 4, § 27 of the State Constitution, said:

> This section of the constitution is designed to prevent deception as to the nature or subject of legislative enactments. *State v. Rigg*, 109 N.W.2d 310, 314, 260 Minn. 141 (1961); *LeRoy v. Special Ind. Sch. Dist.*, 172 N.W.2d 764, 768 (Minn. 1969).

> [T]he purpose of the constitutional provision quoted is * * * to prevent misleading or deceiving the public as to the nature of an act by the title given it. *State v. Holmer*, 211 N.W. 3, 169 Minn. 221 (1926).

The purposes of the constitutional provision requiring a one-subject title, and the mischiefs which it was designed to prevent, are defeated by the lack of such a title on the face of a law which a citizen is charged with violating. Upon looking at the laws charged in the complaint from the "Minnesota Statutes," I am left asking, what is the subject and nature of the laws used in the complaints against me? What interests or rights are these laws intended to affect? Since the particular objects of the provision requiring a one-subject title are defeated by the publication of laws which completely absent of a title, the use of such a publication to indict or charge citizens with violating such laws is fraudulent and obnoxious to the Constitution.

> It is to prevent surreptitious, inconsiderate, and misapprehended legislation, carelessly, inadvertently, or unintentionally enacted through stealth and fraud, and similar abuses, that the subject or object of a law is required to be stated in the title. 73 Am. Jur. 2d, "Statutes," § 100, p. 325, cases cited.

Judge Cooley says that the object of requiring a title is to "fairly apprise the people, through such publication of legislative proceedings as is usually made, of the subjects of legislation that are being considered." Cooley, *Const. Lim.*, p. 144. The State Constitution requires one-subject titles. The particular ends to be accomplished by requiring the title of a law are not fulfilled in the statutes referred to in the "Minnesota Statutes." Thus the laws charged in the complaints against me are not valid laws.

**VI. The Minnesota Statutes are of an Unknown and Uncertain Authority.**

The so called "statutes" in the "Minnesota Statutes" are not only absent enacting clauses, but are surrounded by other issues and facts which make their authority unknown or uncertain or questionable.

The title page of the "Minnesota Statutes" states that the statutes therein were, "Compiled, edited, and published by the Revisor of Statutes of Minnesota." It does not say that they are the official laws of the Legislature of Minnesota. The official laws of this state has always been listed in the "Session Laws" of Minnesota. The title page to the Session Laws makes it clear as to the nature of the laws therein, to wit—*Session Laws of the State of Minnesota passed during the Forty-Fourth session of the State Legislature.* The Minnesota Statutes states that: "Minnesota Revised Statutes must not be cited, enumerated, or otherwise treated as a session law" (M.S. 3C.07, Subd. 1).

The "Session Laws" were also published by the Secretary of the State, who historically and constitutionally is in possession of the enrolled bills of the Legislature which become State law. The Constitution of Minnesota, Art. IV, Sec. 11 (1857) requires that every bill which passes both the Senate and House, and is signed by the Governor, is to be deposited "in the office of Secretary of State for preservation." Thus in this state, as in nearly all other states, all official laws, records, and documents are universally recognized by their being issued or published by the Secretary of State.

The "Minnesota Statutes" are published by the Revisor of Statutes, and are also copyrighted by him or his office. The "Session Laws" were never copyrighted as they are true public documents. In fact no true public document of this state or any state or of the United States has been or can be under a copyright. Public documents are in the public domain. A copyright infers a private right over the contents of a book, suggesting that the laws in the "Minnesota Statutes" are derived from a private source, and thus are not true public laws.

The Revisor of Statutes, in the preface to his statute book called "Minnesota Statutes," points out the difference in the various types of arrangements of laws, and states the following:

> to order to understand and use statutory law, it is necessary to know the meaning of the terms used and the inclusiveness and *authority of the laws* found in the various arrangements. The terms *laws, acts, statutes, revisions, compilations,* and *codes* are often used indiscriminately, but in the following discussion each has a specific meaning. "Minnesota Statutes," vol. 1, p. x.

The Revisor then proceeds to point out the difference that exists between the "Session Laws" and that of a compilation, revision or code. He makes it apparent that the "Session Laws" are of a different authority than that of compilations, revisions and codes. The "Minnesota Statutes" are apparently a 'revision,' which was first published in 1945 (p. ix). The "Minnesota Statutes" appear to be nothing more than

Case 1:22-cr-00299-CKK   Document 37   Filed 12/22/22   Page 67 of 150

a reference book, like "Dunnell Minnesota Digest," or "West's Minnesota Statutes Annotated," which are also copyrighted. The contents of such reference books cannot be used as law in charging citizens with crimes on criminal complaints.

The Revisor does not say that the statutes in his book are the official laws of the State of Minnesota. He indicates that these statutes are only in "theory" laws of the State (p. xii). There thus are many confusing and ambiguous statements made by the Revisor as to the nature and authority of the statutes in the "Minnesota Statutes." It is not at all made certain that they are laws pursuant to Article IV of the Constitution of Minnesota. That which is uncertain cannot be accepted as true or valid in law.

Uncertain things are held for nothing. *Maxim of Law.*

The law requires, not conjecture, but certainty. *Coffin v. Ogden,* 85 U.S. 120, 124.

Where the law is uncertain, there is no law. *Bouvier's Law Dictionary,* vol. 2, "Maxims," 1880 edition.

The purported statutes in the "Minnesota Statutes" do not make it clear by what authority they exist. The statutes therein have no enacting authority on their face. In fact, their is not a hint that the Legislature of Minnesota had anything at all to do with these so-called statute books. Thus the statutes used against the Accused are just idle words which carry no authority of any kind on their face.

## VII. Established Rules of Constitutional Construction.

The issue of subject matter jurisdiction for this case thus squarely rests upon certain provisions of the Constitution of Minnesota (1857), to wit:

Article IV, Sec. 13. The style of all laws of this State shall be: "Be it enacted by the Legislature of the State of Minnesota."

Article IV, Sec. 27. No law shall embrace more than one subject, which shall be expressed in its title.

These provisions are not in the least ambiguous or susceptible to any other interpretation than their plain and apparent meaning. The Supreme Court of Montana, in construing such provisions, said that they were "so plainly and clearly expressed and are so entirely free from ambiguity," that "there is nothing for the court to construe" *Vaughn & Ragsdale Co. v. State Bd. of Eq.,* 96 P.2d 420, 423, 424. The Supreme Court of Minnesota stated how these provisions are to be construed, when it was considering the meaning of a another provision under the legislative department (Art. 4, § 9):

In treating of constitutional provisions, we believe it is the general rule among courts to regard them as mandatory, and not to leave it to the will or pleasure of a legislature to obey or disregard them. Where the language of the constitution is plain, we are not permitted to indulge in speculation concerning its meaning, nor whether it is the embodiment of great wisdom. * * * The rule with reference to constitutional construction is also well stated by Johnson, J., in the case of Newell v. People, 7 N.Y. 9, 97, as

follows: "If the words embody a <u>definite meaning</u>, which involves no absurdity, and no contradiction between different parts of the same writing, then <u>that meaning apparent upon the face of the instrument</u> is the one which alone we are at liberty to say was intended to be conveyed. In such a case <u>there is no room for construction</u>. That which the words declare is the meaning of the instrument; and <u>neither courts nor legislatures have the right to add to or take away from that meaning</u>. * * * It must be very plain,—nay, absolutely certain—that the people did not intend what the language they have employed in its <u>natural signification imports</u>, before a court will feel itself at liberty to depart from the <u>plain reading</u> of a constitutional provision." *State ex rel. v. Sutton*, 63 Minn. 147, 149, 150,. 65 N.W. 262 (1895); affirmed, *State v. Holm*, 62 N.W.2d 52, 55, 56 (Minn. 1954); *Butler Taconite v. Roemer*, 282 N.W.2d 867, 870, 871 (Minn. 1979).

It is certain that the plain and apparent language of these Constitutional provisions are not followed in the publication known as the "Minnesota Statutes" which contain no titles and no enacting clauses, and thus it is not and cannot be used as the law of this State under our Constitution.  No language could be plainer or clearer than that used in Art. 4, § 13 and § 27 of our Constitution.  There is no room for construction!  The contents of these provisions were written in ordinary language, making their meaning self-evident, as said by the *Supreme Court of Minnesota*:

> In construing a provision of our constitution, however, we are governed by certain well-established rules.  Foremost among these is the rule that, where the language used is clear, explicit, and unambiguous, the language of the provision itself is the best evidence of the intention of the framers of the constitution.  If the language is free from obscurity, the courts must give it the ordinary meaning of the words used.  *State v. Holm*, 62 N.W.2d 52, 55, (Minn. 1954).

No matter how much the courts of this State have relied upon and used the publication entitled "Minnesota Statutes" as being law, that use can never be regarded as an exception to the Constitution.  To support this publication as law, it must be said that it is "absolutely certain" that the framers of the Constitution did not intend for titles and enacting clauses to be printed and published with all laws, but that they did intend for them to be all stripped away and concealed from public view when a compilation of statutes is made.  Such an absurdity will gain the support or respect of no one.  Nor can it be speculated that a revised statute publication which dispenses with all titles and enacting clauses must be allowed under the Constitution as it is more practical and convenient than the "Session Law" publication.  The use of such speculation or desired exceptions can never be used in construing such plain and unambiguous provisions.

> [T]he general rule of law is, when a statute or Constitution is plain and unambiguous, the court is not permitted to indulge in speculation concerning its meaning, nor whether it is the embodiment of great wisdom.  A Constitution is intended to be framed in brief and precise language. * * * It is not within the province of the court to read an exception in the Constitution which the framers thereof did not see fit to enact therein.  *Baskin v. State*, 232 Pac. 388, 389,  107 Okla. 272 (1925).

There is of course no need for construction or interpretation of these provisions as they have been adjudicated upon, especially those dealing with the use of an enacting

clause. The Supreme Court of Minnesota has made it clear that Art. 4, § 13 of our constitution "is mandatory, and that a statute without any enacting clause is void." *Sjoberg v. Security Savings & Loan Assn.*, 73 Minn. 203, 212. Being that the statutes used against me are without enacting clauses and titles they are void, which means there is no offense, no valid complaints, and thus no subject matter jurisdiction.

The provisions requiring an enacting clause and one-subject titles were adhered to with the publications known as the "Session Laws" and "General Laws" for the State of Minnesota. But because certain people in government thought that they could devise a more convenient way of doing things without regard for provisions of the State Constitution, they devised the contrivance known as the "Minnesota Statutes," and then held it out to the public as being "law." This of course was fraud, subversion, and a great deception upon the people of this State which is now revealed and exposed.

There is no justification for deviating from or violating a written constitution. The "Minnesota Statutes" cannot be used as law, like the "Session Laws" were once used, solely because the circumstances have changed and we now have more laws to deal with. It cannot be said that the use and need of revised statutes without titles and enacting clauses must be justified due to expediency. New circumstances or needs do not change the meaning of constitutions, as Judge Cooley expressed:

A constitution is not to be made to mean one thing at one time, and another at some subsequent time when the circumstances may have so changed as perhaps to make a different rule in the case seem desirable. A principal share of the benefit expected from written constitutions would be lost if the rules they established were so flexible as to bend to circumstances or be modified by public opinion. * * * [A] court or legislature which should allow a change in public sentiment to influence it in giving to a written constitution a construction not warranted by the intention of its founders, would be justly chargeable with reckless disregard of official oath and public duty; and if its course could become a precedent, these instruments would be of little avail. * * * What a court is to do, therefore, is to *declare the law as written.* T. M. Cooley, *A Treatise on the Constitutional Limitations*, 5th edition, pp. 54, 55.

There is great danger in looking beyond the constitution itself to ascertain its meaning and the rule for government. Looking at the Constitution alone, it is not at all possible to find support for the idea that the publication called the "Minnesota Statutes" is valid law of this State. The original intent of Article 4, §13 and §27 of the Constitution cannot be stretched to cover their use as such. These provisions cannot now be regarded as antiquated, unnecessary or of little importance, since "no section of a constitution should be considered superfluous." *Butler Taconite v. Roemer*, 282 N.W.2d 867, 870, (Minn. 1979). The Constitution was written for all times and circumstances, because it embodies fundamental principles which do not change with time.

Judges are not to consider the political or economic impact that might ensue from upholding the Constitution as written. They are to uphold it no matter what may result, as that ancient maxim of law states: *"Though the heavens may fall, let justice be done."*

## MOTION

Based upon the above memorandum, the Accused moves that this action and cause be dismissed for lack of subject matter jurisdiction.

A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking. *United States v. Shelpke*, 686 Fed.2d 832, 835 (1981), cases cited.

Nothing can be regarded as a law in this State which fails to conform to the constitutional prerequisites which call for an enacting clause and title. There is nothing in the complaints which can constitutionally be regarded as laws, and thus there is nothing in them which I am answerable for or which can be charged against me. Since there are no valid or constitutional laws charged against me there are no crimes that exist, consequently there is no subject matter jurisdiction by which I can be tried in the above-named court.

## CAVEAT

I regard it as just and necessary to give fair warning to this court of the consequences of its failure to follow the Constitution of Minnesota and uphold its oath and duty in this matter, being that it can result in this court committing acts of treason, usurpation, and tyranny. Such trespasses would be clearly evident to the public, especially in light of the clear and unambiguous provisions of the Constitution that are involved here which leave no room for construction, and in light of the numerous adjudications upon them as herein stated. The possible breaches of law that may result by denying this motion are enumerated as follows:

1. The failure to uphold these clear and plain provision of our Constitution cannot be regarded as mere error in judgment, but deliberate USURPATION. "Usurpation is defined as unauthorized arbitrary assumption and exercise of power."*State ex rel. Danielson v. Village of Mound*, 234 Minn. 531, 543, 48 N.W.2d 855, 863 (1951). While error is only voidable, such usurpation is void.

The boundary between an error in judgment and the usurpation of judicial power is this: The former is reversible by an appellate court and is, therefore, only voidable, while the latter is a nullity. *State v. Mandler*, 209 N.W. 750, 752 (Minn. 1926).

To take jurisdiction where it clearly does not exist is usurpation, and no one is bound to follow acts of usurpation, and in fact it is a duty of citizens to disregard and disobey them since they are void and unenforceable.

[N]o authority need be cited for the proposition that, when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable. *Hooker v. Boles*, 346 Fed.2d 285, 286 (1965).

The fact that the "Minnesota Statutes" has been in use for over forty years cannot be held as a justification to continue to usurp power and set aside the constitutional provisions which are contrary to such usurpation, as Judge Cooley stated:

Acquiescence for no length of time can legalize a clear usurpation of power, where the people have plainly expressed their will in the Constitution. Cooley, *Constitutional Limitations*, p. 71.

2. To assume jurisdiction in this case would result in TREASON. Chief Justice John Marshall once stated:

We [judges] have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the constitution. *Cohens v. Virginia*, 6 Wheat. (19 U.S.) 264, 404 (1821).

The judge of this court took an oath to uphold and support the Constitution of Minnesota, and his blatant disregard of that obligation and allegiance can only result in an act of treason.

3. If this court departs from the clear meaning of the Constitution, it will be regarded as a blatant act of TYRANNY. *Any exercise of power which is done without the support of law or beyond what the law allows is tyranny.*

It has been said, with much truth, "Where the law ends, tyranny begins." *Merritt v. Welsh*, 104 U.S. 694, 702 (1881).

The law, the Constitution, does not allow laws to exist without titles or enacting clauses. To go beyond that and allow the "Minnesota Statutes" to exist as "law" is nothing but tyranny. Tyranny and despotism exist where the will and pleasure of those in government is followed rather than established law. It has been repeatedly said and affirmed as a most basic principle of our government that, "this is a government of laws and not of men; and that there is no arbitrary power located in any individual or body of individuals." *Cotting v. Kansas City Stock Yards Co.*, 183 U.S. 79, 84 (1901). The Constitution requires that all laws have enacting clauses and titles. If these clear and unambiguous provisions of the State Constitution can be disregarded, then we no longer have a constitution in this State, and we no longer live under a government of laws but a government of men, i.e., a system that is governed by the arbitrary will of those in office. The creation of the "Minnesota Statutes" is a typical example of the arbitrary acts of government which have become all too prevalent in this century. Its use as law is a nullity under our Constitution.

Dated: February 26, 1996

_____
John R. Smith
5384 Cedar Avenue
Minneapolis, Minnesota

# Our Nonconstitutional Legal System

Many recognize that the legal system today does not follow constitutional law or the common law, as it once did, but is now operating under some other law. While it is generally agreed that we are under a different law and legal system, its exact nature seems to be in dispute. It has been said that we are under admiralty law, equity law and procedure, administrative rules, public policy, emergency measures, bankruptcy law, the war powers, international law, or martial law.

In a sense, all of these concepts are in part correct, since aspects of each of them are being arbitrarily followed. But none of them specifically state or identify the legal problem and situation. While the cause or source of the current corrupt law and legal system is to be found in the spiritual sector, there is a legal explanation for what is transpiring in the government and courts.

## Constitutional Avoidance

The question many of us have often asked is, how can those who control the legal and judicial system avoid conflict with the constitution while implementing arbitrary and tyrannical laws and procedures?

The answer is that they make use of a concept known as "constitutional avoidance."[1] By this basic concept it is never presumed that the legislature intended to act contrary to the Constitution or Bill of Rights, or that it "meant to exercise or usurp any unconstitutional authority."[2] Thus if a statute can be interpreted two ways, one which conflicts with the constitution, and one which does not, the courts will always adopt the interpretation that avoids constitutional conflict. They will also dispose of matters by some other means which does not involve the constitution if available.

> The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.[3]

> Where a case in this court can be decided without reference to questions arising under the Federal Constitution, that course is usually pursued. . . .[4]

> A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score.[4]

Thus a construction or decision which would be in conflict with the Constitution is to be avoided, if another is available that causes no conflict. In dealing with what it called a "nonconstitutional issue" the U.S. Supreme Court stated this rule of procedure:

> [T]he ordinary rule [is] that a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available.[5]

---

1 *United States v. Coombs*, 12 Peters (37 U.S.) 72, 75 (1838); *San Gabriel County Water Dist. v. Richardson*, 68 Cal. App. 297, 229 P. 1885, 1056 (1924).

2 *Ashwander v. Valley Authority*, 297 U.S. 288, 347 (1935).

3 *Siler v. Louisville & Nashville R.R. Co.*, 213 U.S. 175, 193 (1908); *Light v. United States*, 220 U.S. 523, 538 (1910).

4 *Panama R.R. Co. v. Johnson*, 264 U.S. 375, 390 (1922); *United States v. Standard Brewery*, 251 U.S. 210, 220 (1919).

5 *Hagans v. Lavine*, 415 U.S. 528, 547 (1973).

Suppose that a Federal statute required all farmers to sell their grain to certain designated grain mills. One farmer had a contract with one of these grain mills to sell his grain to them. When the law is passed he stops sending his grain to that mill in protest of the law which is obviously not authorized by the Federal Constitution. The grain mill then sues the farmer and the farmer claims that the statute which the grain mill bases its claim upon is unconstitutional. But as the record shows that the farmer was under a contract to sell his grain, the court holds that the farmer is required to sell his grain to the mill, and the statute appears to be held valid.

That contract became the "other ground" or the "nonconstitutional ground" upon which the matter can be settled. Thus if a non-constitutional ground exists, as well as an unconstitutional one, the issue will be decided upon the nonconstitutional ground to avoid conflict with the Constitution, no matter how much the statute involved might conflict with the Constitution. If there was no contract and thus no "other ground" existed, the court still would see if the statute could be interpreted in some reasonable way so as to avoid the conflict.

The concept of constitutional avoidance is basic and somewhat logical and just; but those who are in control of the current legal system have taken this principle and have expanded upon it and made it the basis of the system we now have. They have intentionally created other "nonconstitutional grounds" and "issues" to circumvent the application of constitutional law. They have done this through legislative action by creating a host of boards, commissions, agencies, bureaus and trusts which make up a rather new concept of law and government called "administrative law."[6] The legal status of these entities is much like that of a corporation, which is also created by statute.

The powers granted to an administrative body may be such as to establish it as a legal entity, and, although one expressly declared to be a corporation, it may be considered a public-quasi corporation.[7]

The interstate Commerce Commission is a body corporate, with legal capacity to be a party plaintiff or defendant in the Federal courts.[8]

When a government is created by a compact or constitution, it too is in a sense a legal entity, or corporate body, but one which exists by the decree of the people or by the common law. But these administrative agencies or bodies, being creatures of statute, have a different relationship to the people than do the legislative, executive and judicial bodies created by the constitution. This point is critical since the relationship to an entity determines the authority for the "law" it might make.

These agencies and commissions are not true constitutional entities and have no common law authority being that they are created by the legislature. But, like a corporation, they also are not unconstitutional. Rather they are "non-constitutional" in nature, which simply means their existence does not come from the constitution. Thus, the problems and conflicts citizens have with these "legal entities" can be decided on some ground other than a constitutional one. It becomes an issue that can be decided without reference to the Constitution, as they are not its creatures.

No creature of the Constitution has power to question its authority or to hold inoperative any section or provision of it.[8]

---

6. 73 Corpus Juris Secundum, "Public Administrative Law and Procedure," § 10, p. 372, citing Pfotzer v. Unemployment Compensation Commission, 214 S.W.2d 529, 358 Mo. 365.

7. Texas & Pacific Railway v. Interstate Commerce Com., 162 U.S. 197 (1895). In 2 Am Jur 2d, "Administrative Law," § 32, p. 36, it states: "Some administrative agencies are corporate bodies with legal capacity to sue or be sued."

8. Commonwealth v. Illinois Cent. R. Co., 170 S.W. 171, 175, 160 Ky. 745 (1914).

Artificial legal entities are creatures of the legislature, and are not "creatures of the constitution." Therefore they are not bound to the terms or limitations of the constitution, except as statute might make them. Thus when citizens have a conflict with these entities, the issue can be resolved upon a "nonconstitutional ground," not the constitution. The Internal Revenue Service is a typical example, as it is not a creature of the U.S. Constitution nor does it have common law powers. It is a mechanism created by government and thus any conflicts with it can be decided upon grounds other than the Constitution – nonconstitutional grounds.

The constitution with its requirements and limitations has been avoided by creating a *nonconstitutional* entity. The activities of such entities are generally immune from attack as being *unconstitutional*. This is especially so today with the adverse spiritual conditions that prevail in the land.

The Federal Reserve is another example of this, as it is an artificial legal entity created by Congress. While it is true its "Federal Reserve Notes" are not constitutional, since such things are obviously not specifically authorized by the U.S. Constitution, they also are not *unconstitutional*, since Congress is not printing or issuing the paper currency. Congress is clearly prohibited from doing such things since it is a constitutional entity and its actions are limited by the Constitution. But a corporation or trust is not. So to avoid constitutional conflict, certain lawyers got Congress to create an artificial legal entity and then let that entity issue the paper currency. It is so different if a corporation would print and issue its own "Monopoly" money. Such a measure is not unconstitutional because the corporation is not a constitutional entity. Thus all constitutional issues have been avoided with the creation of the Federal Reserve.

Whatever area these nonconstitutional legal entities have control over, they function to avoid conflict with the constitution and due process procedures. It is true that we are not legally bound to follow the laws of these entities, or to use or accept Federal Reserve Notes. Since the *powers that be* have avoided the Constitution, there must be a way in which we can legally avoid their nonconstitutional activities, rules and laws. This can be done by declaring a lack of authority and subject matter jurisdiction because of the lack of valid law from the Legislature or Congress.

Under the Christian republic of the past the problems associated with this "administrative law" would have been minimal or less severe. But America, and the world, has become plagued with an ungodly spiritual condition which has magnified these problems. Though this adverse spiritual problem is the source of the legal problems and dilemma we face today, the nature and reasons for it are beyond the scope of this treatise. But the spiritual realm does affect the legal realm, and it has made these legal entities created by statute a severe problem with regards to freedom and individual rights.

### Nonconstitutional Laws

A law is constitutional if it conforms to the written constitution of the state or nation; it is unconstitutional if it is repugnant to that constitution. But this is based upon the presumption that the law was enacted and passed by the constitutional body which is authorized to do so. In other words, the law comes from a "creature of the Constitution."

The commissions, committees, or revisors who drafted the codes and the comprehensive revised statutes in this country are not "creatures" of any constitution. They are a creation of the legislature or Congress and thus are creatures of statute. The "laws" they write are not subject to any constitution. Thus any conflict a citizen might have with their laws is not subject to a constitutional attack. As nonconstitutional entities there is no constitutional issue that can be raised. Thus

any constitutional issue raised will be avoided and the matter decided on other grounds.

Suppose the parliament of France passes a law that prohibits anyone from having over 200 dollars on them while in public, and any violation thereof shall be punished by 90 days imprisonment. That law cannot be called a constitutional law from the perspective of the U.S. Constitution, since it did not come from Congress. But it also cannot be called unconstitutional, no matter how oppressive it is or how contrary it is to the U.S. Constitution. Such a law could only be regarded as being "nonconstitutional" in nature.

Suppose now that you happen to be charged with violating this law by the Federal Government. In your defense you argue in court that this law violates your rights under the 4th and 5th Amendments, and is repugnant to the Constitution. The judge ignores your arguments and holds that the law is not "unconstitutional." The court would, of course, be correct but it would seem to you and everyone else that the court is corrupt and has no regard for the U.S. Constitution.

When the nature of this law is made known the decision of the court makes sense. The law was not a law of Congress, though it might have been presented as such, but rather was a law from another legal body. The clue should have been clear to all by the fact that the law in question did not have an enacting clause for Congress that said:

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled.*

The law in question was nonconstitutional because it came from a nonconstitutional source. This is because the French Parliament is not subject to the U.S. Constitution. While you are subject to certain laws that Congress can enact under the Constitution, you are not subject to laws of the French Parliament. But your failure to raise this fact of the non-

constitutional law created the implication that you were subject to the law. Your position should have been that there is no valid law of Congress on the indictment, which makes the indictment insufficient, which causes a lack of subject matter jurisdiction of the court.

The French Parliament cannot pass any unconstitutional laws because their legislative authority does not come from the constitution, nor are they legally bound to its terms as in Congress. From our perspective in America, all laws passed by this assembly are nonconstitutional, that is, they have no relation to the U.S Constitution or any state constitution. But if one fails to point this matter out in court, such laws will be used against him.

This same situation is what is occurring with the current legal system. The laws we are being charged with violating are written by commissions and committees, and are held out to the public as being laws of the State or nation. But we are not required to follow these laws as they do not come from a constitutional source. Congress and the State legislatures have created these legal entities to write laws which are based upon laws they once passed, so as to make it appear they are laws of Congress or the Legislature.

If the California Legislature passes a law and then the Legislature of Texas copies that law verbatim and enacts it as a law, no one can look at what the Legislature of Texas wrote and enacted and say it is a California law. If a prosecutor in California had the Texas Statute book which contains this law and cited from it on a complaint, would that make a valid complaint? No, it wouldn't because the law is not a law of the California Legislature, as it does not have the enacting clause of the California Legislature. The fact that the California Legislature passed an identical law is irrelevant because that law is not referred to in the complaint. Likewise, the laws from the commissions and committees do not become

laws of the State Legislature just because they are similar to laws once passed by that Legislature. The laws of these entities do not have the enacting clause of the Legislature.

Let us look at another example of this problem. Suppose that General Motors corporation passed a regulation or by-law which prohibited anyone from parking their car in neutral gear. You are caught doing so and your car is towed away by the city, and you are charged for violating that regulation by the State. The complaint or indictment might cite the regulation as GMR 142.65, subd. c (GMR=General Motors Regulations).

If you argue that the law or regulation is a violation of the Bill of Rights, or is unconstitutional, you shall not prevail because General Motors cannot do anything unconstitutional, nor can they violate your rights of life, liberty and property as prescribed by the Bill of Rights. They can commit torts, trespasses, false imprisonments, thefts, and damages, but they can never write a rule, regulation or by-law which would violate your rights under the Constitution. As a corporation, General Motors is not subject to the limitations of the Constitution. Only duly constituted officers, departments or positions under the constitution, or which exist by the common law, are subject to the constitution. Only these entities can do something "unconstitutional." Thus your claim that the law violates your constitutional rights and exceeds the limits of the Constitution would be denied and held as frivolous.

It is true that the Regulation of General Motors (GMR 142.65, subd. c.) is not a constitutional law, but it also is not an unconstitutional law. It is a "nonconstitutional law," meaning it comes from a source outside the realm of the constitution, because General Motors is not a constitutional entity. The law passed by General Motors has no authority

behind it which would make you obligated to follow it. The law contains no enacting clause showing that it comes from the State Legislature or some authority to which you are subject. There is no obligation on your part to follow the law because there is no legal relationship between you and General Motors. If one is an employee of General Motors the law might apply to him, since some manner of legal relationship then exists. But the law could not apply to employees of other companies.

### Creating an Issue for Trial

The issue of a trial or hearing exists when the plaintiff and defendant arrive at some specific point or matter in which one affirms and the other denies.[9] In a criminal matter this issue is that a law has or has not been violated. But if there is no valid law, or the accused is not subject to the law in question, no issue can legally exist as the basis for the point of contention does not legally exist.

The current corrupt legal system has actually sown its own seeds of destruction by arbitrarily forming codes and statute revisions. All complaints or indictments today cite laws from these codes and revised statute books which contain no enacting clauses. Any law which fails to have an enacting clause is not a law of the legislative body to which we are constitutionally subject. The laws from the U.S. Code or Revised Statutes of the State are from another legal entity, that being some commission or committee.

Since there are no valid laws on the complaint or indictment, there legally is no issue before the court. But the court system creates an issue by asking the accused how he pleads to the charges. The plea causes an issue to exist because it creates a controversy. The controversy relates to what is on the complaint or indictment because the plea acknowledges that it is a genuine document.

9  Black's Law Dictionary, 2d ed., West Publishing, 1910, p. 637.

The very act of pleading to it [an indictment] admits its genuineness as a record.[10]

If there is a law on the complaint which is unconstitutional, or is from another state or other legal entity, the violation of that law can become a triable issue by way of the plea. Thus when one pleads to a false or invalid charge on the complaint, he establishes an issue which would not have otherwise existed.

The plea forms the issue to be tried, without which there is nothing before the court or jury for trial.[11]

It is essential to a valid trial that in some way there should be an issue between the state and the accused, and without a plea, there could be no issue.[12] If you make a plea of "not guilty" to the charge of violating GMR 142.65, subd. c, or the law of the French Parliament, you have admitted or acknowledged that the law used in the complaint is genuine. It has now been established that there exists an issue which can be tried. When one is charged for violating a zoning ordinance, driving without a license, or failure to file an income tax return, and a plea of "not guilty" is made, one has in effect acquiesced to the validity of these laws. The only way one can prevail is by showing they did not commit them, or by showing they are unconstitutional. But since these are nonconstitutional laws of some committee or commission, such constitutional arguments will not work. The one thing that can stop this procedure is showing a lack of subject matter jurisdiction, which can be shown because the laws used have no enacting clauses and are thus void. It now is an issue of authority for that law to exist as a law of the state or Congress.

When you are charged with a violation of some "Code" of some committee, the court proceedings are in equity since your conflict is not with a constitutional source of law, or with a common law crime.

The legal system today does not recognize or proceed upon common law crimes, and thus the only things that are crimes are made so by statute (or rather code). A crime exists when a law exists which prohibits or commands an action. If there is no law, there can be no crime, and if there is no crime, there can be no subject-matter jurisdiction of the court to hear a matter. A nonconstitutional law has the same effect upon a complaint or indictment as does an unconstitutional law or a non-existent law. It renders the charging instrument void.

A nonconstitutional law is not a law to which we are subject, so doing what it prohibits cannot constitute a crime. Thus if General Motors passes a law requiring all persons to show up for work by 6:00 A.M. or they will lose their jobs, it is a nonconstitutional law. Unless one is an employee of General Motors, he is not subject to that law and so cannot be charged for violating it. Because it is a nonconstitutional law it is has no force and effect as a law over you and the court lacks subject matter jurisdiction to try the matter.

Only a constitutionally established government, or that which exists by the common law, (sheriffs, constables, coroners, mayors, etc.), can do something that is unconstitutional. Only the State Legislature is limited by the provisions of the State Constitution regarding laws enacted. Thus only the State Legislature can enact an unconstitutional law or statute. General Motors, Inc., or the Parliament of France, can pass all sorts of rules, regulations and laws, but none of them can ever be declared unconstitutional. But they are not valid laws which we are subject to, for we have no legal relationship to these entities. Likewise, we have no legal relationship to the commissions which drafted the modern-day "Codes" or "Revised Statutes."

---

10 *Frisbie* v. *United States*, 157 U.S. 160, 165 (1894).

11 *Kreulelski* v. *State*, 158 N.E. 903, 905 (Ind. 1927); *Andrews* v. *State*, 146 N.E. 817, 196 Ind. 12 (1925); *State* v. *Acton*, 580 Atl. 317, 318 (N.J. 1932).

12 *United States* v. *Aurandt*, 107 Pac. 1064, 1065 (N.M. 1910).

# – 8 –

# Conclusions and Comments

The comprehensive codes and revised statutes that exist today are but a clandestine means to subject citizens to some legal entity other than the State Legislature or Congress. They also serve as a clandestine means to bring laws into existence that are not limited to the confines of a constitution or the common law. While these codes were intended to solve the problem of massive amounts of law, they have created even bigger problems.

There is no way anyone can say that it was the intent of the framers of the Constitution, and the people who adopted it, to have all titles and enacting clauses stripped away from all the laws when they are published. Such a measure totally defeats the purpose for which these forms of law were intended and thus required in the State constitutions. In Washington it was held that the compilation entitled "Revised Code of Washington . . . <u>is not the law</u>."[1]

It has been repeatedly said that the comprehensive codes were done for the sake of "convenience." It also has been said that it would not be practicable to have the enacting clause or title precede every law within a revision or comprehensive code.[2] But note that nothing is ever raised or said about the constitutionality of such a measure. If those in government are free to do things based solely upon what they deem to be more practicable or convenient, then we truly live under an arbitrary and despotic government.

The necessities of a particular case will not justify a departure from the organic law. It is by such insidious process and gradual encroachment that constitutional limitations and government by the people are weakened

and eventually destroyed. It has been well said:

"One step taken by the Legislature or judiciary in enlarging the powers of government opens the door for another, which will be sure to follow, and so the process goes on until all respect for the fundamental law is lost, and the powers of government are just what those in authority please to make or call them." Oakley v. Aspinwall, 3 N.Y. 547, 568.[3]

Constitutions were written to prescribe certain ways of doing things, which means there will no doubt be other means of doing the same thing which are easier and more convenient. Governments naturally tend do that which is easier, more convenient and practical for their own sake. Whenever they do so they always transcend constitutional limitations and trespass on individual rights, and all of history attests that this is the result of arbitrary action.

The enacting clause acts as a sign or seal of constitutional authority of law. A king may have a seal which indicates his authority. All things that bear the seal of the king are recognized as existing by his authority. If a king's agent presents a document claiming it is from the king but has not his seal, many may believe it is by the authority of the king, though it is not. This is what the government has done with the codes and revised statutes. It has presented to the public a collection of statute books, claiming they are from the State Legislature or Congress, but the laws in them do not have the seal of authority upon them. They do not have the official enacting clause upon them to indicate they are laws from an authorized source. They thus are laws which no one needs to respect or obey.

1  *In re Self v. Rhay*, 61 Wash. (2d) 261, 264, 265,  377 P. (2d) 885 (1963).

2  This argument is also not stand as the Illinois revised statutes had been compiled with titles and enacting clauses.

3  *Village of Ridgefield Park v. Bergen Co. Bd. of Tax.*, 162 A.2d 132, 134, 135,  62 N.J. Super. 133 (1960); citing *State v. Barrow*, 104 S.W. 526, 527,  119 Tenn. 376 (1907).

# A
# TREATISE ON
# ARREST
# AND
# FALSE
# IMPRISONMENT

### BY
### CHARLES A. WEISMAN

# A TREATISE ON ARREST AND FALSE IMPRISONMENT

*by Charles A. Weisman*

*Copyright* © Dec., 1993 by C.A. Weisman;  2nd Edition, Dec., 1994;  3rd Edition, Nov., 2004

Published by Weisman Publications • P.O. Box 240844 • Apple Valley, MN 55124

**ISBN 1-929205-08-2**

PRINTED IN THE UNITED STATES OF AMERICA

## CONTENTS

1. INTRODUCTION ............................................................................. 2

2. DEFINITION OF FALSE IMPRISONMENT ........................................ 3
   – What Constitutes False Imprisonment ........................................... 3
   – Length of Time Required ............................................................... 5
   – Damages and Liability ................................................................... 6
   – Malicious Prosecution ................................................................... 7

3. ARREST WITHOUT WARRANT .................................................... 9
   – The Law of the Land ..................................................................... 9
   – Summons ...................................................................................... 10
   – Complaint ..................................................................................... 11
   – Memorandum of Law on Arrest Without Warrant ......................... 13

4. BREACH OF THE PEACE & FELONY ARRESTS ............................ 26
   – What is a Breach of the Peace? ..................................................... 26
   – Arrests for Breach of the Peace .................................................... 27
   – Threatened Breach of the Peace .................................................... 29
   – Conditions of Felony Arrests ........................................................ 31

5. DEFENSES TO UNLAWFUL ARRESTS .......................................... 32
   – Burden Of Proof ........................................................................... 32
   – Good Faith and Probable Cause .................................................... 34
   – Ignorance of Law .......................................................................... 36
   – Guilt of Party Arrested ................................................................. 37
   – Immunity ...................................................................................... 38

6. THE USE OF A WARRANT IN ARRESTS ...................................... 39
   – Warrant to be in the Possession of the Arresting Officer .............. 39
   – Warrant to be Shown Upon Arrest ................................................ 43
   – Invalid and Unlawful Warrants ..................................................... 46

7. BRINGING ARRESTED PERSON BEFORE A MAGISTRATE ........... 49
   – Duty of Officer ............................................................................. 49
   – As a Trespasser Ab Initio ............................................................. 52
   – Detainment is Not a Decision of Arresting Officer ....................... 53
   – Arresting and Releasing Without Bringing Before a Magistrate ..... 56
   – Defenses ....................................................................................... 57

8. DISTORTIONS OF FUNDAMENTAL LAW ..................................... 59
   – Due Process Neglected ................................................................. 59
   – Fourth Amendment Argument ....................................................... 60
   – Highway Traffic Laws ................................................................... 61
   – Resisting Arrest ............................................................................ 64
   – Handcuffing .................................................................................. 69
   – Post-arrest Booking Procedures (Fingerprinting, etc.) .................. 70
   – Limitations Upon Arrests .............................................................. 72

9. CONCLUSIONS and APPENDIX .............................................. 74, 75

# A TREATISE ON ARREST AND FALSE IMPRISONMENT

*by Charles A. Weisman*

*Copyright* © Dec., 1993 by C.A. Weisman;  2nd Edition, Dec., 1994;  3rd Edition, Nov., 2004
Published by Weisman Publications  •  P.O. Box 240844  •  Apple Valley, MN  55124
**ISBN 1-929205-08-2**
PRINTED IN THE UNITED STATES OF AMERICA

## CONTENTS

1. INTRODUCTION .................................................................. 2

2. DEFINITION OF FALSE IMPRISONMENT ............................ 3
   – What Constitutes False Imprisonment ........................... 3
   – Length of Time Required ............................................... 5
   – Damages and Liability .................................................. 6
   – Malicious Prosecution .................................................. 7

3. ARREST WITHOUT WARRANT ........................................... 9
   – The Law of the Land ..................................................... 9
   – Summons .................................................................... 10
   – Complaint ................................................................... 11
   – Memorandum of Law on Arrest Without Warrant ......... 13

4. BREACH OF THE PEACE & FELONY ARRESTS .................. 26
   – What is a Breach of the Peace? ................................... 26
   – Arrests for Breach of the Peace .................................. 27
   – Threatened Breach of the Peace ................................. 29
   – Conditions of Felony Arrests ...................................... 31

5. DEFENSES TO UNLAWFUL ARRESTS ............................... 32
   – Burden Of Proof .......................................................... 32
   – Good Faith and Probable Cause .................................. 34
   – Ignorance of Law ........................................................ 36
   – Guilt of Party Arrested ................................................ 37
   – Immunity ..................................................................... 38

6. THE USE OF A WARRANT IN ARRESTS ............................ 39
   – Warrant to be in the Possession of the Arresting Officer ... 39
   – Warrant to be Shown Upon Arrest ............................... 43
   – Invalid and Unlawful Warrants .................................... 46

7. BRINGING ARRESTED PERSON BEFORE A MAGISTRATE ... 49
   – Duty of Officer ............................................................ 49
   – As a Trespasser Ab Initio ............................................ 52
   – Detainment is Not a Decision of Arresting Officer ....... 53
   – Arresting and Releasing Without Bringing Before a Magistrate ... 56
   – Defenses ..................................................................... 57

8. DISTORTIONS OF FUNDAMENTAL LAW ........................... 59
   – Due Process Neglected ............................................... 59
   – Fourth Amendment Argument ...................................... 60
   – Highway Traffic Laws .................................................. 61
   – Resisting Arrest .......................................................... 64
   – Handcuffing ................................................................ 69
   – Post-arrest Booking Procedures (Fingerprinting, etc.) ... 70
   – Limitations Upon Arrests ............................................ 72

9. CONCLUSIONS and APPENDIX ............................... 74, 75

2

1

# INTRODUCTION

This book is about liberty.  It is about the lawful and unlawful means by which government acts in depriving an individual of his liberty.  History teaches that deprivation of liberty is more often arbitrary and unlawful than it is otherwise.  At least this is always the tendency of those who hold executive power. Daniel Webster once stated this problem in these words:

*"The contest for ages has been to rescue liberty from the grasp of the executive power."*

Liberty is taken away or deprived most commonly by arrest and imprisonment.  The practice of easy arrests and secret imprisonments has always been an earmark of a despotic executive power.  To compound this problem, we have the legislative mills which turn out thousands of new laws every year. The passion of modern legislatures to regulate every facet of the most intimate concerns of every day life is notorious. This would be oppressive enough if administered under the requirements of a warrant or summons.  But it becomes doubly intolerable if every zealous officer is authorized to arrest, on sight, every person whom he detects breaking one of these laws. No one can be safe to leave their home or to travel about for fear of being subject to thousands of unknown laws in which he could be instantly arrested for transgressing.  One law review writer states the problem as follows:

People no longer live their whole lives in the village in which they were born.  They pass freely from place to place, and in transit go through innumerable towns and villages.   The risk of being arrested on sight, because one's conduct contravenes some regulation which the wisdom of the local Solons deems necessary, is appalling to any thinking person.  It would be impossible to know at what moment one might become amenable to arrest. [1]

A revolution in England and the revolution of the American colonies are said by high authorities to have been largely influenced by promiscuous seizures and searches of persons and property.   The history of our ancestors over the centuries teaches that a people cannot be free where the executive power can arbitrarily arrest or imprison citizens, or ransack at will the properties of the people.   The executive power is limited and guided by the 'law of the land,' or 'due process of law.'  If it was a restriction upon the King of England, it must be so for every petty officer today.

In many of the treatises on the law pertaining to the rights of citizens, and in many of the older and better court cases, we find the declaration: *"The law is very jealous of the liberty of the citizen."*   What law is it that so regards liberty?  It is the *Common Law*, and it declares that: *"one who interferes with another's liberty does so at his peril.* [2]   This law also prescribes how arrests are to be made, and the restrictions involved.

1   *University of Pennsylvania Law Review,* vol. 75, p. 491, April, 1927.

2   *Knight v. Baker,* 117 Ore. 492, 244 Pac. 543, 544 (1926).

# 2

# DEFINITION OF FALSE IMPRISONMENT

## What Constitutes False Imprisonment

False imprisonment consists of any type of unlawful restraint or interference with the personal liberty of an individual. It basically involves any unlawful violation of the liberty of another. The ancient English legal scholar, Henry de Bracton (1200-1268) tells us that false imprisonment is one of the oldest violation of rights known:

> Forcefully to deprive a man of freedom to go wheresoever he may is clearly a trespass. False imprisonment was indeed one of the first trespasses recognized by the Common Law.[1]

False imprisonment is classified as a tort under the common law, and also as a crime.[2] It has been labeled as a tort, a trespass, an assault, a wrong, a damage, and an injury, giving one cause to bring suit against another for a remedy. Depriving a person of their liberty is legally no different than depriving a person of their property — a theft of liberty is a wrong by which remedy can be had, just as is the case with the theft of property.

False imprisonment is a great offense due to the high regard the law has for liberty. In Chitty's *Practice of the Law* it states:

The infraction of personal liberty has ever been regarded as one of the greatest injuries. The injuries to liberty are principally termed *"false imprisonments,* or *malicious prosecutions."*[3]

Unlawful detention or deprivation of liberty is the basis of an action for the tort of false imprisonment. Actual seizure or the laying on of hands is not necessary to constitute an unlawful detention.[4] Thus the only essential elements of the action are: (1) Detention or restraint against one's will; and (2) The unlawfulness of such detention or restraint.[5]

In his *Treatise on the Law of Torts,* Judge Cooley states:

> False imprisonment is a wrong akin to the wrongs of assault and battery, and consists in imposing, by force or threats, an unlawful restraint upon a man's freedom of locomotion.[6]

Blackstone, in his *Commentaries on the Law,* (3 Bl. Comm. 127) states on this matter:

> Every confinement of the person is an imprisonment, whether it be in a common prison, or in a private house, or in the stocks, or even by forcibly detaining one in the public streets.[7]

---

1   *Street's Foundation of Legal Liability,* vol. 1, p. 12, citing: *Bacton's Note Book,* vol. II, p. 314 (1229), pl. 465.

2   *Kroeger v. Passmore,* 36 Mont. 504, 93 Pac. 805, 807 (1908). *McBeath v. Campbell,* 12 S.W.2d 118, 122 (Tex. 1929).

3   Joseph Chitty, Esq., *The Practice of the Law,* vol. I, Chap. II, p. 47, London, 1837.

4   *Hanser v. Bieber,* 271 Mo. 326, 197 S.W. 68, 70 (1917).

5   *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 93 (1952); *Sinclair Refining Co. v. Meek,* 62 Ga.App. 850, 10 S.E.2d 76, 79 (1940); *Southern Ry. Co. in Kentucky v. Shirley,* 121 Ky. 863, 90 S.W. 597, 599 (1906).

6   Thomas Cooley, *Treatise on the Law of Torts,* vol. 1, 4th Ed. § 109, p. 345; *Meints v. Huntington,* 276 F. 245, 248 (1921).

7   Cited by: *Fox v. McCurnin,* 205 Iowa 752, 218 N.W. 499, 501 (1928); *Sergeant v. Watson Bros. Transp. Co.,* 244 Iowa 185, 52 N.W.2d 86, 93 (1952).

4

Thus any type of detainment or confinement of a person, or restriction or deprivation of their liberty or freedom of locomotion, where he is compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an "imprisonment." The only question thereafter is whether or not the imprisonment is "false." The word "false" comes from the common law and is synonymous with "unlawful." A false arrest is one means of committing a false imprisonment.

In describing false imprisonment as being the unlawful restraint of the liberty of the citizen, or of the primary right of freedom of locomotion, the Supreme Court of Idaho also stated:

> Imprisonment is any restraint of the personal liberty of another; and prevention of his movements from place to place, or his free action according to his own pleasure and will; * * * it is false imprisonment when this is done without lawful authority. [8]

In reviewing several "text-book" definitions on false imprisonment, the Supreme Court of North Carolina stated:

> False imprisonment is the unlawful and total restraint of the liberty of the person. The imprisonment is false in the sense of being unlawful. The right violated by this tort is 'freedom of locomotion.' It belongs historically to the class of rights known as simple or primary rights. * * * The theory of law is that one interferes with the freedom of locomotion of another at his own peril. [9]

A rather complete description of what does and does not constitute false imprisonment was given by the Supreme Court of Kansas as follows:

> False imprisonment is necessarily a wrongful interference with the personal liberty of an individual. The wrong may be committed by words alone or by acts alone, or by both, and by merely operating on the will of the individual, or by personal violence, or by both. It is not necessary that the individual be confined within a prison or within walls, or that he be assaulted or even touched. It is not necessary that there should be any injury done to the individual's person or to his character or reputation; nor is it necessary that the wrongful act be committed with malice or ill will, or even with the slightest wrongful intention; nor is it necessary that the act be under color of any legal or judicial proceeding. All that is necessary is that the individual be restrained of his liberty without any sufficient legal cause therefor, and by words or acts which he fears to disregard. [10]

False imprisonment exists not only by words or acts that one *fears* to disregard, but also by such acts and measures that he *cannot* disregard. No fear of disobedience need to exist. If someone causes a situation that makes it impossible for another to exercise their liberty or locomotion, it is a false imprisonment.

False imprisonment is the name of the category for those torts that unlawfully deprive or interfere with the liberty of a person. Under this category, the unlawful arrest is the most common type of wrong committed. Another common way in which a wrong of this nature occurs is by the unlawful detention of a person in a room, jail, or other location. Definitions of false imprisonment usually come from unlawful restraints of this nature:

---

8   *Griffin v. Clark*, 55 Idaho 364, 42 P.(2d) 297, 301 (1935); citing, *Cordell v. Standard Oil Co.*, 131 Kan. 221, 289 P. 472, 473 (1930); *Johnson v. Tompkins*, 13 Fed. Cas. 840, 853, No. 7,416 (1833).

9   *Riley v. Stone*, 174 N.C. 588, 94 S.E. 434, 440 (1917).

10  *Garnier v. Squires*, 62 Kan. 321, 62 Pac. 1005, 1006 (1900); *Kroeger v. Passmore*, 36 Mont. 504, 93 Pac. 805, 807 (1908).

False imprisonment has been well defined to be a trespass committed by one man against the person of another, by unlawfully arresting him and detaining him without any legal authority.[11]

The law sets such a high value upon the liberty of the citizen that even an attempt to unlawfully arrest is esteemed a great provocation.[12]   All the authorities agree that an arrest may be made either with or without any physical force or actual touching by the officer.[13]   Thus any illegal restraint of one's personal liberty by the act of another, gives that person a cause of action for false imprisonment against the one causing the illegal restraint.  Prima facie any restraint put by fear or force is unlawful.

False imprisonment is necessarily a wrongful interference with the personal liberty of an individual usually made by an arrest, and physical custody or restraint is not essential to the effectuation of an arrest.  So if an officer tells a person that he is under arrest, and he thereupon submits himself to the officer, going with him and obeying his orders, such person is deprived of his liberty, and if the act of the officer is unlawful, it is false imprisonment.  In all cases in which there is no physical touching or seizure, nor any resistance, the intentions of the parties to the transaction are to be considered.  In such a case there must have been intent on the part of one of them to arrest or restrain the other, and intent on the part of such other to submit, under the belief and impression that submission was necessary.[14]

The following definitions will provide further insight into the nature and elements of false imprisonment:

> False imprisonment is the unlawful restraint by one person of the physical liberty of another, and as here used the word "false" seems to be synonymous with unlawful.[15]

> Any exercise of force, or expressed or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or go where he does not wish to go, is an imprisonment.[16]

> False imprisonment is the unlawful arrest or detention of a person, without warrant, or by an illegal warrant, or a warrant illegally executed.[17]

> Any restraint, however slight, upon another's liberty to come and go as he pleases, constitutes an arrest.[18]

### Length of Time Requirement

The tort or wrong of false imprisonment occurs the instance that one is restrained in the exercise of their liberty.   There is no *unreasonable length of time* for a restraint before the tort can be claimed.

> False imprisonment at common law and elsewhere consists in the unlawful detention of the person of another for any

---

11  *Riegel v. Hygrade Seed Co.,* 47 Fed.Supp. 290, 294  (1942).

12  *Giddens v. State,* 154 Ga. 54,  113 S.E. 386, 388 (1922).

13  *McAleer v. Good,* 216 Pa. 473, 65 Atl. 934, 935 (1907).

14  *Johnson v. Norfolk & W. Ry. Co.,* 82 W.Va. 692,  97 S.E. 189, 191 (1918).

15  *Mahan v. Adams,*  144 Md. 355,  124 A. 901, 904 (1924).

16  *Black v. Clark's Greensboro, Inc.,* 263 N.C. 226,  139 S.E.2d 199, 201 (1964).

17  *Noce v. Ritchie,*  155 S.E. 127, 128  (W.Va. 1930).

18  *Turney v. Rhodes,*  42 Ga.App. 104,  155 S.E. 112 (1930).

6

time, whereby he is deprived of his personal liberty. [19]

Where two people are traveling in a car and stopped by police, and the party not driving is put in the police car and told to wait, the officer doing so is guilty of false imprisonment. Even though the the person was in the police car for less than a minute, it was an arrest, as the officer had no authority for confining him in the car. Even where police officers stop a moving vehicle for a brief detention, it is sufficient to constitute an arrest. [20] Where one is told to stay in their car by an officer, though it be for only ten seconds, it is an arrest. Time duration is not a factor in making an arrest.

> False imprisonment is defined as an act which, directly or indirectly, is a legal cause of confinement of another within boundaries fixed by the actor for any time, no matter how short in duration, makes the actor liable to the other. [21]

When one is approached by an officer and questioned about his identity and actions, this is only an *accosting*, not an *arrest*. [22]

## Damages and Liability

One who interferes with another's liberty of locomotion does so at his own peril. All who do so without lawful authority can be sued for the trespass upon liberty and loss of time. It thus is a very serious thing to deprive a person of their liberty.

Since false imprisonment is a wrong suffered by a person, that person is entitled to receive a remedy for damages. Not only is a person entitled to receive a remedy for the deprivation of his liberty, but also for any other damages that are a result of that deprivation.

False imprisonment was an indictable offense at common law, and relief by the party aggrieved was obtained by an action for trespass *vi et armis* (with force & arms). [23]

The illegal arrest of a person without a warrant, or under an invalid warrant, entitles him to compensation for the damages sustained by reason of the false or unlawful imprisonment.

> The general rule of damages in cases of false imprisonment is that the person causing a wrongful imprisonment is liable for all the natural and probable consequences thereof. The plaintiff is entitled to recover damages for what the party wrongfully did. * * * In Murphy v. Countiss, 1 Harr. (Del.) 143, in an action for trespass, assault and battery, and false imprisonment, the court held that the plaintiff could recover, not merely for the time the constable was bringing him to jail, but for the whole period of his imprisonment. And in Mandeville v. Guernsey, 51 Barb (N.Y.) 99, the court said: "The arrest being wrongful, the defendant is liable for all the injurious consequences to the plaintiff which resulted directly from the wrongful act." [24]

Unlawful interference with or injuries to the liberty of a citizen is a violation of his natural, inherent and absolute rights, which damage results as a legal consequence. [25]

19  *Sinclair Refining Co. v. Meek*, 62 Ga.App. 850, 10 S.E. 76, 79 (1940), citing: 3 Bl. Com. 127; 12 *Amer. & Eng. Ency. of Law*, 721; 19 Cyc. 319.

20  5 *American Jurisprudence*, 2d, "Arrest," § 1, p. 696.

21  *Sergeant v. Watson Bros. Transp. Co.*, 244 Iowa 185, 52 N.W.2d 86, 92 (1952).

22  *Cornish v. State*, 215 Md. 64, 137 Atl.2d 170, 173 (1957).

23  *Meints v. Huntington*, 276 Fed. 245, 249 (1921), citing:  3 Blackstone, Com. 127, 4 Blackstone, Com. 218.

24  *Knickerbocker Steamboat Co. v. Cusack*, 172 Fed. 358, 360-61 (1905).

25  *Meints v. Huntington*, 276 Fed. 245, 248 (1921), citing: *Adler v. Fenton*, 24 How (65 U.S.) 407, 410 (1860).

A false imprisonment generally includes an assault and battery, and always, at least, a technical assault.[26]   An unlawful arrest, imprisonment and prosecution of a person can cause that person many damages, including bodily pain, great physical inconvenience and discomfort, loss of time, mental suffering, injury to reputation, distress or anguish, humiliation of mind, shame, public ridicule, invidious publicity, and public disgrace. Some of these damages overlap to some degree but all can and have been claimed in false imprisonment suits.

Upon the subject of damages, the law specifies two kinds of damages or divides them into two classes.   There are what are called "actual damages," then there are what are called "punitive damages."

Actual damages are such compensation for the injury as would follow from the nature and character of the act.  They are the damages for wrongs received and injuries done when none were intended.  In a false imprisonment they could include the pain and suffering which the average citizen would be supposed to suffer under such circumstances. They further can include the physical discomfort and sense of shame, wrong and outrage.  These are also called compensatory damages as they compensate the injured party for the actual injuries sustained, and no more.

Punitive damages are those that grow out of the wantonness or atrocity, or aggravated by the act.  They are the injuries and sufferings that were intended, or occurred through malice, carelessness or negligence amounting to a wrong so reckless and wanton as to be without excuse.[27]   These are also called exemplary damages.

Anyone who assists or participates in an unlawful arrest or imprisonment is equally liable for the damage caused.  Thus where a man was illegally arrested by a police officer, and was placed in a patrol wagon in which he was taken to the central station, it was held that the two officers in charge of the patrol wagon were liable, along with the arresting officer, for false imprisonment.[28]

## Malicious Prosecution

In many cases of imprisonment or wrongful arrests, there has often been a misunderstanding made between the charges of false imprisonment and that of malicious prosecution.  While both may often involve a restraint of one's liberty, the two charges are not interchangeable or synonymous.

There is a fundamental difference between these two charges. They are made up of different elements, enforced by different forms of action, are governed by different rules of pleading, evidence, and damages, and are subject to different defenses.[29]  One description of malicious prosecution is as follows:

> Malicious prosecution is an action ex delicto for the recovery of damages which have proximately resulted to person, property, or reputation from a previous unsuccessful civil or criminal proceeding, which was prosecuted without probable cause and

---

26  *Black v. Clark's Greensboro, Inc.*, 263 N.C. 226, 139 S.E.2d 199, 201 (1964).  It has been said that, "An illegal arrest is an assault and battery," *State v. Robinson,* 145 Me. 77,  72 A.(2d) 260, 262 (1950).

27  *Ross v. Leggett,*  61 Mich. 445.  28 N.W. 695, 697 (1886).

28  *Cook v. Hastings,* 150 Mich. 289,  114 N.W. 71, 72 (1907).

29  *Snyder v. Thompson,* 134 Iowa 725, 112 N.W. 239, 241 (1907);   35 C.J.S., False Imprisonment, § 4, p. 625.

8

with malice. In an action of this type the burden rests upon the plaintiff (the one bringing the suit) to establish each and all of the following propositions before being entitled to recover, to wit: (1) He was prosecuted in a criminal proceeding or civil suit; (2) Defendant instigated such prosecution; (3) The prosecution terminated favorable to the accused; (4) Defendant acted without probable cause; (5) Defendant acted with malice; and (6) Damages that were caused.[30]

In Indiana a case arose where a man sued several officers for unlawfully arresting and imprisoning him in the county jail, and without any charge preferred against him. The defendants insisted his complaint was bad as it did not allege that the imprisonment was malicious and without probable cause. The State Supreme Court rejected this claim:

> There is a marked distinction between malicious prosecution and false imprisonment. If the imprisonment is under legal process, but the action has been commenced and carried on maliciously and without probable cause, it is malicious prosecution. If it has been extra-judicial, without legal process, it is false imprisonment.[31]

An arrest or imprisonment can be malicious or false, but not both. In a case of malicious prosecution the arrest or detention is procured from malicious motives and without probable cause, but was done under lawful process; whereas in false imprisonment the detention is without proper legal authority.[32] One may be legally arrested for some alleged reason, but done maliciously. If he is found to be not guilty he then has a case for malicious prosecution but not false imprisonment. If the arrest is not pursuant to legal forms of the law, then whether he is guilty or not he has a case for false imprisonment but not malicious prosecution. If this is done with malice it would add punitive damages to the suit.

In describing the distinction between these two charges, the Supreme Court of Oregon stated that foundation of the cause of action for false imprisonment is the right which even a guilty man has to be protected against any unlawful restraint of his personal liberty; while a malicious prosecution case is founded upon the right of an innocent man to be compensated in damages for any injury he may sustain when a groundless charge is brought against him, even though such charge may be presented and prosecuted in accordance with the strictest forms of law.[33]

In other words, the want of authority is an essential element in an action for false imprisonment. Whereas malice and want of probable cause are the essentials in an action for malicious prosecution.[34]

Somewhat different to the wrong of malicious prosecution is the charge of abuse of process, which is the misuse of legal process for an ulterior purpose, in which malice or ill will may also be a factor.

The term malicious arrest is used in some cases instead of malicious prosecution, but the latter is broader in scope.

---

30  *Sergeant v. Watson Bros. Transp. Co.*, 244 Iowa 185, 52 N.W.2d 86, 91 (1952); *Cox v. Cashio*, 96 So.2d 872, 874 (1957).

31  *Colter v. Lower and Others*, 35 Ind. 285, 286-87, 9 Am. Rep. 735 (1871).

32  *Stallings v. Foster*, 119 Cal.App.2d 614, 259 P.2d 1006, 1009 (1953).

33  *State v. Williams*, 45 Ore. 314, 77 Pac. 965, 969 (1904).

34  *Roberts v. Thomas*, 135 Ky. 63, 121 S.W. 961, 962 (1909).

3

# ARREST WITHOUT WARRANT

### The Law of the Land

The authority to arrest without warrant was rather limited and well defined at common law — a law which has been made part of our constitutional law in the due process provisions. The common law rule on arrests is based on experience and common sense.

As a general rule at common law, an arrest could not be made without a warrant. Thus the right to arrest a person without a warrant is an exception to the general rule. This simple rule was expressed by Justice Carpenter, in delivering an opinion for the Supreme Court of Michigan, as follows:

> The law governing this case is elementary. Except for a breach of the peace committed in his presence, or when he has a reasonable ground to believe that the person arrested is a felon or is about to commit a felony, a police officer has no authority to arrest without a warrant.[1]

The objective in this law was to have a balance between preserving liberty and preserving the peace. Those who committed the most heinous crimes, that being felonies, were a threat to the safety of society and could be summarily deprived of their liberty by arrest. Those committing a breach of the peace could also be summarily arrested, not for apprehension as a criminal, but to preserve the peace. But for other offenses, summary arrests had to yield to the liberty of the citizen. The liberty of citizens is too sacred to be left to the arbitrary will of men.

Every one knows what felonies are. The most common felonies are murder, rape, kidnaping, sodomy, armed robbery, abortion, pedophilia, treason, and arson. A breach of the peace is also obvious and well known. Therefore everyone's liberty was safe since all knew for what reason they could or could not be arrested. But where is the safety in one's liberty if they are to be subject to every ordinance or law that legislative bodies may choose to enact? or if the law on arrests can be changed by statutes?

By the due process clause, the common law governs what the law on arrest is in this land, and where it exists the most statutes can be is declaratory of the common law. If there is no direct language in the constitution directing what procedure or process is to be followed, the common law is to be the due process of law followed, not a legislative statute or city ordinance. Officers who do not abide by this law are trespassers and are guilty of false imprisonment.

The following is some material to help the citizen in protecting his liberty from unlawful encroachment by executive officers. First, to initiate a suit against one who unlawfully deprives you of your liberty, there is an example of a "Summons" and a "Complaint" which need to be served upon the defendant and the court. There is also a "Memorandum of Law" on the subject of *Arrest Without Warrant* which is legal proof of the law that has existed for hundreds of years on this matter.

---

1   *Cook v. Hastings*, 150 Mich. 289, 114 N.W. 71, 72 (1907).

14

congress free to make any process "due process of law," by its mere will. *Murray's Lessee v. Hoboken Imp. Co.,* 18 How. (59 U.S.) 272, 276 (1855).

The Constitution of Minnesota declares that no person shall "be deprived of life, liberty or property without due process of law" (Minn. Const., Art. 1, Sec. 7). The words "due process" do not mean anything which the legislature may see fit to declare to be "due process of law" *State ex rel. v. Billings,* 55 Minn. 466, 474 (1893). Due process was intended to preserve established fundamental rights by requiring that they can not be deprived except by the established modes of law as existing under the common law. This guarantee that government shall follow a specified and pre-existing rule of conduct, process, or procedure is in itself a right the citizen held at common law, and was claimed by the colonists in early America. Thus, "it is clear that the common law is the foundation of that which is designated as due process of law" (6 R.C.L. "Const. Law," § 435). The constitution guarantees these pre-existing rights and procedures in the due process provision.

What is due process of law may be ascertained by an examination of those settled usages and modes of proceedings existing in the common and statute law of England before the emigration of our ancestors. *Twining v. New Jersey,* 211 U.S. 78, 100 (1908).

The expressions 'due process of law' and 'law of the land' have the same meaning. * * * The 'law' intended by the constitution is the common law that had come down to us from our forefathers, as it existed and was understood and administered when that instrument was framed and adopted. *State v. Doherty,* 60 Maine 504, 509 (1872).

In interpreting what due process of law is, it has been held that "none of our liberties are to be taken away except in accordance with established principles" *Ekern v. McGovern,* 154 Wis. 157, 142 N.W. 595, 620 (1913). Thus the mode of arrest by which one can be deprived of his liberty is to be determined by the pre-existing common law principles and modes of procedure. A properly constituted warrant of arrest is a process at common law by which persons could lawfully be deprived of their liberty. The common law on arrest without warrant recognized only certain specific and well defined cases whereby a citizen could be deprived of his liberty. This cannot be abrogated or changed by the legislature.

The common law drew a distinction between an arrest for misdemeanors, such as that which the Defendant arrested the Plaintiff upon, and arrests for felonies. When a felony was committed an arrest could be made without a warrant, but no arrest could be made for a misdemeanor without a warrant unless it constituted a "breach of the peace." The misdemeanor traffic violation was not a breach of peace and thus the Defendant needed a warrant to make an arrest for such offense.

In determining the law surrounding arrests, the Supreme Court of South Carolina, in the case of *State v. Byrd,* 72 S.C. 104, 51 S.E. 542, 544 (1905), affirmed a prior decision of the Court holding that:

15

> At <u>common law</u>, as a general rule, an arrest could not be made without warrant for an offense less than felony, except for a breach of the peace. 3 *Cyc.* 880; *State v. Sims,* 16 S.C. 486.

The fact that the Defendant believed that the Plaintiff committed a misdemeanor and had charged him with a violation of the traffic law, did not authorize him to arrest the Plaintiff. In a New York case, the State Supreme Court held that a city alderman or justice of the peace could not, at common law, arrest or cause an arrest for a misdemeanor not amounting to a breach of the peace, without warrant, though happening in his presence. The Supreme Court, in the case of *Butolph v. Blust,* 5 Lansing's Rep. 84, 86 (1871) stated:

> At common law an arrest could not be made of a person charged with a misdemeanor except on warrant of a magistrate, unless it involved a breach of the peace, in which case the offender might be arrested by any person present at its commission. (1 Chitty, Criminal Law, 15; *Carpenter v. Mills,* 29 How. Pr. R. 473).

In the very well reasoned and authoritative case of *Ex parte Rhodes,* 202 Ala. 68, 79 So. 462, 464 (1918), the Supreme Court of Alabama related the due process provision to the act of arrests. It asserted that, "any seizure or arrest of a citizen is not reasonable, or 'due process,' merely because a Legislature has attempted to authorize it. These phrases are limitations upon the power of the Legislature, as well as upon that of the other departments of government, or their officers." In determining what was 'due process' regarding arrests the Court stated:

> It must not be forgotten that there can be <u>no arrest without due process of law</u>. An arrest without warrant has never been lawful, except in those cases where the public security requires it; and this has only been recognized in <u>felony</u>, and in <u>breaches of the peace</u> committed in the presence of the officer. *Ex pate Rhodes,* 202 Ala. 68, 79 So. 462, 465; citing, *Sarah Way's Case,* 41 Mich. 304, 1 N.W. 1023 (1879), et al. Also cited and affirmed in *Pinkerton v. Verberg,* 78 Mich. 573, 44 N.W. 579, 583 (1889); *State v. Williams,* 45 Ore. 314, 77 Pac. 965, 969, (1904); *Adair v. Williams,* 24 Ariz. 422, 210 Pac. 853, 856 (1922).

The Alabama Supreme Court in the *Rhodes* case went on to say that "the phrase 'due process' must be determined by what it meant <u>at the common law</u>, and when the Constitution was adopted" (p. 469). The Court then cites the case of *Tillman v. Beard,* 121 Mich. 475, 80 N.W. 248 (1899), in stating:

> Officers are justified in arresting without warrant only in cases of felony and breaches of the peace. This is elementary. It is needless to cite authorities.

At one time in the history of American law and jurisprudence, the concept that no one could be arrested for a misdemeanor except with a proper warrant was so basic and "elementary" that it was not necessary to give any authorities to prove it. Yet this basic concept was found to be too restrictive to the ever-growing oppressive government that has gained power in this country. Thus in order for it to control the

16

liberty of citizens, and to enforce its oppressive laws, the corrupt, *de facto* government has gradually undermined a very basic principle of constitutional law.

In the *Pinkerton* case, supra, it was held that a police officer could not arrest a woman, without a warrant, upon mere suspicion that she was upon the street for the purpose of prostitution, even under provisions of the city ordinance allowing such arrests.   The fact that she had a reputation of being a "street walker," and that the officer knew of her reputation and believed she was plying her vocation as such, plus the fact she did not give her name to the officer stating "it was none of his business," and that she dared the officer to arrest her, did not give the officer grounds to arrest her.   The Court said:

> If persons can be restrained of their liberty, and assaulted and imprisoned, under such
> circumstances, without complaint or warrant, then there is no limit to the power of a
> police officer. * * * Any law which would place the keeping and safe conduct of another
> in the hands of even a conservator of the peace, unless for some breach of the peace
> committed in his presence, or upon suspicion of felony, would be most oppressive and
> unjust, and destroy all the rights which our constitution guaranties. These are <u>rights
> which existed long before our constitution</u>, and we have taken just pride in their
> maintenance, making them a <u>part of the fundamental law of the land</u>.   *Pinkerton v.
> Verberg*, 78 Mich. 573, 44 N.W. 579, 582-83 (1889);   *Larson v. Feeney*, 196 Mich. 1,
> 162 N.W. 275, 276-77 (1917).

Under the topic of "Arrest" as found in Vol. 2 of *Ruling Case Law*, we find the heading, "Constitutional Requirements as to Warrants," wherein it states:

> [T]he fundamental constitutional guaranties of personal liberty protect private
> individuals in the right of enjoyment of personal freedom without unlawful restraint,
> and it is universally recognized that <u>no one may be arrested except by due process of
> law</u>. (2 R.C.L. 463, § 21).

Here again we find that this principle of arrest only by due process of law was once universally recognized, yet the Defendant has ignored such process in his arrest of the Plaintiff.   The law regarding warrantless arrests was also declared by the Supreme Court of Wisconsin in the case of *Radloff v. National Food Stores, Inc.*, 20 Wis.2d 224; 121 N.W.2d 865, 867 (1963) as follows:

> In *Stittgen v. Rundle*, (1898), 99 Wis. 78, 80, 74 N.W. 536, this court established the
> principle that "An arrest without warrant has never been lawful except in those cases
> where the public security requires it; and this has only been recognized in felony, and
> in breaches of the peace committed in the presence of the officer." This rule was
> reaffirmed in *Gunderson v. Stuebing* (1905), 125 Wis. 173, 104 N.W. 149; 1 *American
> Law Reports*, Annotated, 585.

The *Radloff* case involved a shoplifter who was stopped and arrested by store employees for taking two cartons of cigarettes. The State Supreme Court said that the employees had the right to stop the shoplifter and recover the goods he had stolen from their employer, and were not negligent *per se* in so doing.   However, since the

taking of the cigarettes constituted a misdemeanor, the store employees had no right to arrest the shoplifter when they had no warrant to arrest. In the *Gunderson* case, the court expalined that arrests without warrants were allowed at common law "only where the ends of justice would be defeated without it," and that it "must be confined to cases of strict public necessity."

Where a person was arrested without warrant and charged with "public drunkenness," which resulted in charges of "resisting arrest," it was held by the Supreme Court of North Carolina that the arrest was illegal as the state failed to make a prima facie case by showing that the defendant's conduct at the time of arrest amounted to either an actual or threatened breach of peace. The court said "it is manifest that mere drunkenness unaccompanied by language or conduct which creates public disorder amounting to a breach of the peace, will not justify arrest without a warrant," and that "not every misdemeanor is a breach of the peace." In a very well-reasoned decision on the subject of arrests, the Court held the following:

> It has always been the general rule of the common law that ordinarily an arrest should not be made without warrant and that, subject to well-defined exceptions, an arrest without warrant is deemed unlawful. 4 Bl. Comm. 289 et seq.; 6 C.J.S., Arrest, §. 5, p. 579. This <u>foundation principle of the common law</u>, designed and intended to protect the people against the abuses of arbitrary arrests, <u>is of ancient origin</u>. It derives from assurances of *Magna Carta* and harmonizes with the spirit of our constitutional precepts that the people should be secure in their persons. Nevertheless, to this general rule that no man should be taken into custody of the law without the sanction of a warrant or other judicial authority, the processes of the early English common law, in deference to the requirements of public security, worked out a number of exceptions. These exceptions related in the main to cases <u>involving felonies and suspected felonies and to breaches of the peace</u> (authorities cited). *State v. Mobley,* 240 N.C. 476, 83 S.E.2d 100, 102 (1954).

The overall opinion of the court stressed the principle of the common law as controlling in arrests, thus characterizing as erroneous the view that any offense in the presence of an officer is arrestable without warrant.

In Texas it was held that an arrest without a warrant, for selling in the officer's presence a railroad ticket in violation of a city ordinance prohibiting the selling of such tickets, was unlawful, as the offense charged was not a felony, nor an offense "against the public peace." *M.K. & T. Ry. Co. v. Warner,* 19 Tex. Civ. App. 463 (1898).

Sheriffs, constables and other officers under the executive branch of government had always been recognized as having authority to arrest for felonies committed and for misdemeanors amounting to a breach of peace. But this is the extent of their power to arrest without a warrant, and this constitutional principle is well-grounded in ancient common law safeguards of individual liberty:

18

In England, <u>under the common law</u>, sheriffs, justices of the peace, coroners, constables, and watchmen were entrusted with special powers as conservators of the peace, with authority to arrest felons and persons reasonably suspected of being felons. * * * Conservators of the peace also had the authority to make arrests without warrants in case of a misdemeanor which involved a breach of the peace committed in the presence of the officer making the arrest. 2 *Ruling Case Law*, p. 446; *Orick v. State*, 105 So. 465, 469 (Miss., 1925); *Grahm v. State*, 143 Ga. 440, 85 S.E. 328, 330 (1915); *Kennedy v. State*, 139 Miss. 579, 104 So. 449, 450 (1925); *Wilson v. Town of Mooresville*, 222 N.C. 283, 22 S.W.2d 907, 911 (1942); *People v. McGurn*, 341 Ill. 632, 173 N.E. 754, 756 (1930).

It has been held that constitutional provisions of rights are to be interpreted according to "the common and statute law of England prior to the emigration of our ancestors," and by the law established here before the Constitution was adopted. "Under the common law the powers of state agents were limited and the requirements for an arrest warrant was strictly enforced" *United States v. Tarlowski*, 305 F. Supp. 112, 116 (1969). This procedure for arrest is part of the "due process of law" provision of the constitution which protects citizens from the arbitrary infringement of their right to personal liberty. Thus, any specific authority for arrests must be based upon the common law procedures that allowed a deprivation of one's liberty. This was so held by the Supreme Court of Michigan as follows:

It has already been decided that no arrest can be lawfully made without warrant, except in the cases <u>existing at common law</u> before our constitution was adopted. *People v. Swift*, 59 Mich. 529, 26 N.W. 694, 698 (1886).

Since liberty cannot be deprived except by the law of the land, or due process of law, no statute or ordinance can constitutionally be enacted which allows arrests without a warrant for any purpose the legislature decides. Due process is a limitation upon the legislature, and thus a legislative statute cannot be the due process by which one can be deprived of his liberty by arrests.

In a legal article titled, "Arrest With and Without a Warrant," written in the *University of Pennsylvania Law Review*, Vol. 75, No. 6, April, 1927, p. 485, numerous authorities were cited in support of the following proposition:

It is usually said that not even a peace officer is privileged to make an arrest without a warrant for a misdemeanor which does not amount to a breach of the peace, and there are many cases which expressly deny the privilege to arrest for such a misdemeanor (p. 486).

In the Annotation of the *American Law Reports*, vol. 1, p. 585, is found a legal study titled: "Constitutionality of statute or ordinance authorizing an arrest without a warrant," in which the following is stated:

It has been stated that in cases less than a felony an arrest could only be made without warrant, where there was a breach of the peace in the presence of the person arresting (cases cited).

"The limits to the power of arrest by a constable, without process, <u>was well defined at</u> <u>common law</u>. . . . To prevent the escape of a felon, he had authority to arrest anyone whom he reasonably suspected to have been engaged in the perpetration of a felony.  To prevent breaches of the peace, he had the right to arrest any person who was engaged in, or in his presence threatened to engage in, an affray or other breach of the peace. Beyond this, the law did not allow him to exercise the function of determining whether there was a sufficient case of the violation of a law to justify an arrest."  Reed, J., in *Newark v. Murphy* (1878) 40 N.J.L. 145.

After this excerpt the law report stated that "the foregoing statement from *Newark v. Murphy* is in accord with the weight of American opinion."   Those cases which seemed to deviate from this proposition are those which have upheld arrests for certain acts that were unlawful at common law, such as "streetwalkers."

In Tiedeman's *"Treatise on the Limitations of Police Power"* (1886) § 33, is found the requirements for a lawful arrest and the exceptions to a warrantless arrest:

33.  **What constitutes a lawful arrest.** — As a general proposition, no one can make a lawful arrest for a crime, except an officer who has a warrant issued by a court or magistrate having the competent authority.

33*a*.  **Arrests without a warrant.**— Although it is the general rule of law that there can be no arrest without a warrant of the nature just described, yet there are cases in which the requirement of a warrant would so obstruct the effectual enforcement of the laws, that the ends of justice would be defeated.  For public reasons, therefore, in a few cases the personal security of the citizen is subjected to the further liability of being arrested by a police officer or private individual without warrant.  But the right thus to arrest without a warrant must be confined to the cases of strict public necessity.   The cases are few in number, and may be stated as follows:

1. When a felony is being committed, an arrest may be made without warrant to prevent any further violation of the law.

2. When the felony has been committed, and the officer or private individual is justified, by the facts within his knowledge, in believing that the person arrested has committed the crime.

3. All breaches of the peace, in assaults and batteries, affrays, riots, etc., for the purpose of restoring order immediately.

The rule of the common law, that a peace officer or a private citizen may arrest a felon without a warrant, or on view a breach of the peace, has never been extended to any and all misdemeanors.  While there have been some erroneous decisions that have recognized statutes authorizing arrests for misdemeanors that do not constitute a breach of the peace, none are based upon the meaning of due process of law. Thus arrests are not lawful where only a misdemeanor occurs unless it is of the nature of a 'breach of peace.'

At the <u>common law</u> an officer had no authority to make an arrest for a misdemeanor though committed in his presence <u>unless it involved a breach of the peace</u>. * * * The

right of personal liberty is a very high prerogative right, and to deprive one of that right, <u>without due process of law</u>, we must find specific authority for doing so. It can not be left to inference or some strained construction of statute or ordinance. *State v. Lutz*, 85 W.Va. 330; 101 S.E. 434, 43 (1919).

The specific authority for arrests is grounded in the ancient settled maxims of law, which no statute can abrogate without violating the 'due process of law' provision of the constitution. Thus a warrant must be obtained for a misdemeanor that is not a 'breach of peace.' The supreme Court of Minnesota has stated on several occasions that even in the case of a felony an "arrest and search should not be made without a warrant unless there is a compelling necessity to do so." *State v. Mastrian*, 285 Minn. 51, 57 (1969). The supreme Court of Rhode Island in declaring the requirements at common law for an arrest stated:

> That law permitted an officer to arrest without a warrant on reasonable suspicion based on his knowledge that a felony had been committed. * * * In all other cases, except in the case of a misdemeanor <u>amounting to a breach of the peace</u> committed in his presence, an officer had no authority, <u>at common law</u>, to arrest without a warrant (authorities cited) *Kominsky v. Durand*, 64 R.I 387, 12 Atl.2d 652, 654 (1940).

In *American Jurisprudence*, 2d., Vol. 5, under the subject of "Arrest," sections 26 and 28, pp. 716, 718, it states:

> At <u>common law</u>, a peace officer cannot arrest without warrant for a misdemeanor, although committed in his presence, unless a breach of peace is involved.

> At <u>common law</u>, the right to arrest for a misdemeanor committed in the presence of the officer is limited to those offenses which <u>amount to a breach of the peace</u>. The basis for the rule is that arrest without warrant is permitted, in cases less than felony, not for the apprehension of the offender, but only for the immediate preservation of the public peace; and, accordingly, when the public peace is not menaced, a warrant is necessary. (authorities cited, see also section 22).

In *Corpus Juris Secundum*, Vol. 6A, under the subject of "Arrest," and under the heading of "Arrest or Detention Without Warrant" § 10, p. 17, it is written:

> At <u>common law</u>, however, it has always been the rule that, except in cases where the public security has demanded it, arrest without a warrant is deemed to be unlawful.

"Due process of law," which declares that no citizen shall be deprived of any of his rights of life, liberty or property, unless by the law of the land, or the judgment of his peers (Minn. Const., Art. I, Sec. 2 & 7), is the controlling factor in the matter of the arrest made by the Defendant. An arrest is a deprivation of one's liberty and the due process that must be followed in an arrest is that process which existed at common law. To prevent the exercise of arbitrary power at the discretion of government, it was deemed wise to secure the principles already settled in the common law upon this vital point of civil liberty in written constitutions (Cooley, *Const. Lim.* 364 and notes).

Where a Chicago policeman arrested a man for "vagrancy," the officer was found guilty by a jury of false imprisonment.   The Supreme Court of Illinois upheld the conviction of the policeman and declared the rule of law regarding arrests without warrants:

> Blackstone says: "The constable hath great original and inherent authority with regard to arrests. He may, without warrant, arrest any one for a breach of the peace committed in his view, and carry him before a justice of the peace; and in case of felony actually committed, or a dangerous wounding whereby felony is likely to ensue, he may, upon probable suspicion, arrest the felon, and, for that purpose, is authorized (as upon a justice's warrant) to break open doors, and even to kill the felon, if he can not otherwise be taken." 4 Bl. Comm. 292.

> In all other cases, however, the authorities are uniform, a constable or policeman has no authority to make an arrest without a warrant (authorities cited) *Shanley v. Wells,* 71 Ill. 78, 82 (1873).

In a case for false imprisonment, the Supreme Court of Maine examined the law regarding arrests and held: "The principles which, by the common law, regulate the right to arrest, or cause an arrest, without warrant, have been long settled both in this country and England; and, by these principles, the rights of these parties must be determined." After citing numerous cases involving the authority to arrest, the Court stated:

> In many of these cases it seems to have been held that the authority of an officer to arrest for misdemeanor, without warrant, is limited to breaches of the peace or affrays, committed in his presence. *Palmer v. Maine Cent. R. Co.,* 42 Atl. 800, 803, 92 Me. 399 (1899).

In a case involving a state liquor prohibition law, a man, while walking down along a public street, was accosted by a police officer, and asked if he had any liquor on his person. He replied that he did. Thereupon the officer searched him and found a pint bottle of liquor in his inside coat pocket. He was then taken to the police station. The State Supreme Court of Wisconsin said that when the police office stopped the man he was illegally arrested and was illegally searched, as he had no warrant to do either. The Court said that "it is a serious thing to arrest a citizen, and it is a more serious thing to search his person" and it must be done "in conformity to the laws of the land." Regarding the law on arrests it held:

> At common law arrests for misdemeanors were not permissible without a warrant except for acts committed in the presence of the officer causing a breach of the peace. *Allen v. State,* 183 Wis. 323, 197 N.W. 808, 810, 811 (1924).

Thus in order that the citizen's sacred right of liberty be secure and preserved, it has always been fundamental law that arrests without warrant were not deemed lawful, with only a few well-established exceptions of felonies and breaches of peace. The liberty of citizens would never be safe if such principles could be determined and thus

abrogated by statute. Therefore these principles surrounding arrests are regarded as fundamental law under our American system of government, as held by the Supreme Court of Michigan:

> Under our system we have repeatedly decided, in accordance with constitutional principles as construed everywhere, that <u>no arrest can be made without warrant except in cases of felony, or in cases of breaches of the peace committed in the presence of the arresting officer</u>. This exception, in cases of breaches of the peace, has only been allowed by reason of the <u>immediate danger to the safety of the community</u> against crimes of violence. *Yerkes v. Smith*, 157 Mich. 557, 122 N.W. 223, 224 (1909), citing: *Robison v. Miner*, 68 Mich. 549, 557-58, 37 N.W. 21, 25 (1888).

In the *Yerkes* case, it was held that the playing of baseball on Sunday did not necessarily involve a breach of peace justifying an arrest, though it may cause a breach of peace. The Court said that before a summary arrest can be made for a breach of the peace, not only must overt acts be committed in the presence of the officer, but they must be violent and dangerous acts of some sort. In the *Robison* case, the Court held that a liquor law ordinance which allowed arrests without process was unconstitutional because it was not pursuant to due process of law.

Where a man was arrested for public drunkenness, the question arose whether this was an offense for which one could be arrested without a warrant. The Supreme Court of Appeals of Virginia declared the law on arrests:

> [T]he <u>common law relating to arrest</u> is the law on that subject in Virginia. At common law a peace officer may arrest without a warrant for a breach of the peace committed in his presence, <u>but for no other misdemeanor</u>. *Galliher v. Commonwealth*, 161 Va. 1014, 170 S.E. 734, 736 (1933), authorities cited.

The common law on arrest is the same in every state, as due process of law has the same meaning throughout America. The security of the citizen's liberty in this country is to be more highly regarded than it was in England under the common law. To say it is less regarded is to make a mockery of the Revolution.

In a New Jersey case a man was arrested by two city policemen on orders of their superior to do so, alleging that he was guilty of disorderly conduct, and was taken to a police station and held over night. This was done without any charge or complaint made against the man and without any warrant, the only authority for the arrest was that the officers were told to do so. In a suit for false imprisonment it was held by the Supreme Court of New Jersey that the arrest was without authority and gave the following opinion:

> The legal principle underlying this case and the one to be applied to the facts is firmly embodied in the <u>roots of the common law</u>, which has been handed down to us from early times unimpaired, in its full vigor, <u>for the protection of personal liberty</u>, against <u>illegal arrests</u>. The liberty of the person is too important a matter to the state to be interfered with without the safeguards with which the law guards such invasions. This court has

said: The limits to the power of arrest by a constable, without process, was <u>well defined at common law</u>. The regard for liberty of the person was so great that the common law did not confer upon a mere conservator of the peace the power to touch the person of the subject, of his own volition, except in those cases when the interests of the public absolutely demanded it. *Collins v. Cody*, 95 N.J. Law 65, 113 Atl. 709, 710 (1920).

In a Pennsylvania case a woman was arrested for causing and procuring to be made, loud and annoying sounds and noises at late hours of the night, in a certain tent near a city street, by beating upon a drum. Upon indictment her counsel moved that the indictment be quashed as she was arrested without affidavit and warrant while she was in a tent upon private property. It was held that the arrest was unlawful as the act was such that summary arrest was not justified and due process required a warrant for such arrest:

> It is the undoubted right of every person in this community not to be deprived of liberty without due process of law, and if the defendant has been arrested without due process of law, the indictment against her cannot be sustained. * * * It has long been recognized that arrests without warrant are justified in cases of treason, felony or breach of the peace, in which actual or threatened violence is an essential element: 1 Hale's P.C., 589; 2 Hawkin's P.C., ch. 13, sec. 8; 1 Burns, J., 287; 4 Blackstone, 292; 9 Bacon, Abrid., 468; 1 Chitty Cr. Law, 15; Clark's Criminal Procedure, 39; Russell, Crimes, vol. 3, page 83; 4 Amer. and Eng. Ency. of Law, 902. *Commonwealth v. Krubeck*, 8 Penn. Dist. Rep. 521, 522 (1899).

It must be remembered that, "Not every misdemeanor involves a breach of the peace." *Commonwealth v. Gorman*, 192 N.E. 618, 620. Under the common law, acts that were *malum per se,* that is wrong or unlawful by their nature, were often felonies or breaches of the peace, and subject to arrest without warrant. But that is not the law for an act that was only *malum prohibitum,* being made unlawful only by statute, and without such enactment were otherwise innocent acts. The law asserts that for such statutory misdemeanors, not amounting to a breach of the peace, there is no authority in an officer to arrest without a warrant.

> As a general principle, no person can be arrested or taken into custody without warrant. But if a felony, or a breach of the peace, has, in fact, been committed by the person arrested, the arrest may be justified. *Burns v. Erben*, 40 N.Y. 463, 466 (1869); see also *Cunningham v. Baker*, 104 Ala. 160, 16 So. 68, 70 (1894).

While the "search and seizure" provision of the constitution regulates the manner in which warrants can be issued, it is the "due process" clause which protects citizens from unlawful arrests without warrant:

> "No person shall be deprived of life, liberty, or property without due process of law." And, under like restrictions in the constitution, it has been held in some states that arrests shall not be made without warrant, except for felonies, and for breaches of the peace committed in the presence of the officer arresting. *North v. People*, 139 Ill. 81, 28 N.E. 966, 972 (1891).

Page 11 of 13 — Plaintiff's Memorandum on Arrest Without Warrant

Thus, where an arrest is made without warrant, in a case not involving a felony or breach of peace, the arrest is unlawful. "Arrest without warrant where a warrant is required, is not due process of law, and arbitrary or despotic power no man possesses under our system of government." Thus when "a police officer exceeds his powers in making an arrest he becomes a trespasser" and he is liable for false imprisonment. *Muscoe v. Commonwealth*, 86 Va. 443, 10 S.E. 534, 536.

For other authorities on this matter see: 1 Am. Law Rep., Anno., 585, et. seq.; *Com. v. Carey*, 12 Cush. 246 (Mass., 1853); 6A C.J.S., 'Arrest' § 10, p. 17; Anderson, *A Treatise on the Law of Sheriffs*, Vol. I, § 166 (1941); *Hill v. Day*, 168 Kan. 604, 215 P.2d 219; *Lee v. State*, 45 Tex. Cr. R. 94, 74 S.W. 28 (1903); 22 Mich. Law Review 673, 703-707; *Ulvestad v. Dolphin*, 278 P. 681, 684 (Wash. 1929); *In re Kellam*, 55 Kan. 700, 41 P. 960, 961 (1895); *Pavish v. Meyers*, 225 Pac. 633 (Wash., 1924); *Delafoile v. State*, 54 N.J.L. 381, 24 Atl. 557, 558 (1892); *Giroux v. The State*, 40 Tex. 99, 104 (1874); (1892); *Staker v. U.S.*, 2 F.2d 312, 314 (1925); *Porter v. State*, 52 S.E. 283, 285 (Ga. 1905); *Cave .v Cooley*, 152 P.2d 886 (N.M.).

## CONCLUSIONS.

It is a maxim of law that, *"Liberty is more favored than all things"* (Dig. 50, 17, 122). Thus the law favors liberty above all things and applies the most liberal interpretation to it. The common law rule regarding the procedure and process for arrest was established in this country. In *Allor v. Wayne Co.*, 43 Mich. 76, 97, 4 N.W. 492, 495-96 (1880), Mr. Justice Campbell says:

> The constitution has also provided that no one shall be deprived of liberty without due process of law, and has provided that no warrant shall issue except upon oath or affirmation establishing probable cause. It has been settled for centuries, and the doctrine has been recognized here, that except in cases of reasonable belief of treason or felony, or breach of the peace committed in presence of an officer, there is no due process of law without a warrant issued by a court or magistrate upon a proper showing or finding.

It is thus fundamental that "the due process clause of the Constitution protects the citizen from unlawful arrests." *State v. Quinn*, 97 S.E. 62, 64, (S.C. 1918). By the common law, which is that law due process guarantees, a citizen cannot be summarily arrested when he is found violating a law that is only a misdemeanor. A warrant must first be acquired to arrest such a person pursuant to due process of law. If that which constitutes due process of law is made to depend upon the will of the legislature as expressed in a statute or charter, then no fundamental principles of law or rights are perpetuated or secured against abrogation.

An arrest is a deprivation of one's liberty.   The State Constitution requires that, *"No person shall . . . be deprived of life, liberty or property without due process of law"* (Minn. Const. Art. I, Sec. 7).  The procedure for arrest under the common law is what constitutes 'due process' today, as the Minnesota Supreme Court held:

> What is due process of law usually a traditional or historical question.  Was it due process of law under the common law, and did it remain such up to the time of adopting the constitution.  *C.N. Nelson Lumber Co. v. M'Kinnon*, 61 Minn. 219, 222.

The law is very jealous of the liberty of the citizen.  Where the offense is less serious, the greater the formality prescribed for the exercise of the power which can deprive the citizen of his liberty.  *Porter v. State*, 124 Ga. 297, 52 S.E. 283, 285 (1905). The citizen cannot be summarily deprived of his liberty because of his infraction of some ordinance or statute, unless at common law he was liable to arrest.  The misdemeanor traffic statute involved in this case is such that it does not allow the Defendant to arrest the Plaintiff without the formality of a warrant. Therefore, the Defendant is guilty of false imprisonment for arresting the Plaintiff without authority of law.

The foregoing proves that the common law surrounding arrests was always recognized in this country and is thus a requirement for 'due process' in depriving the Plaintiff of his liberty.  It is the "law of the land."  As such, these principles are constitutional mandates and cannot be abrogated by mere statutes.

Respectfully submitted and
stated, Juris et de jure, by.

_____

Charles A. Weisman
11751 W. River Hills Dr.
Burnsville, Minnesota

26

4

# BREACH OF THE PEACE & FELONY ARRESTS

### What Is A Breach Of The Peace?

A breach of the peace may be generally defined as a violation of the public order which amounts to a disturbance of the public tranquillity, or by inciting others to do so. It is clear that not every misdemeanor is a breach of the peace.

To constitute a breach of the peace there must be some violence or harm existing or threatened to occur to person, property, health or morals. Affrays, assaults, riotous conduct or destruction of property make up the largest part of what can be called a breach of the peace. Thus in the majority of cases of a breach of peace some actual violence is present.

In some States there has been attempts to expand the meaning of "breach of peace" to include all indictable misdemeanors; "but this it must be confessed is doing serious violence to a simple expression, easily and well understood."[1]

Some of the types of breaches of the peace are described as follows:

> [A] breach of peace, includes acts of public turbulence, acts of violence or tending to produce violence or tending to incite violence, disturbance of the public tranquillity by yelling, hollering, or uttering loud and vociferous language, making disturbing noises on a public street by one in a state of intoxication, . . . wanton discharge of firearms in a public place, engaging in an

affray or in an assault, . . . uttering abusive, profane, indecent, or otherwise provocative language.[2]

In discussing what constitutes a breach of the peace the Supreme Court of North Carolina held:

> A breach of the peace is a public offense done by violence or one causing or likely to cause an immediate disturbance of public order.[3]

Breaches of the peace are acts which are *malum in se*, being wrongful or evil by their nature. Thus acts which are *malum prohibita*, or those acts made wrong merely by a statute, cannot be classed as a breach of the peace. Those acts which constitute a breach of peace have been settled throughout the course of the common law. The legislature cannot declare any act they choose to be a breach of peace. The nature of the act determines if it fits the common law definition of a breach of the peace.

The acts that are only *malum prohibita* include liquor prohibition laws, traffic laws, labor laws, health laws, food laws, building codes and zoning ordinances, safety acts, game laws, and very many other "police regulations." Without a statute, most of the acts constituting these offenses would be innocent acts.[4]

A parade on the street is not of itself a breach of the peace though it could constitute

---

1   Walter Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables,* vol. 1, § 131, pp. 126-27 (1941).

2   12 *American Jurisprudence,* 2d, "Breach of Peace," § 8, pp. 669-70.

3   *State v. Mobley,* 240 N.C. 476, 83 S.E.2d 100, 104 (1954) authorities cited.

4   *Allen v. State,* 183 Wis. 323, 197 N.W. 808, 811 (1924).

one.[5]   The carrying of arms in a quiet, peaceable, and orderly manner, concealed on or about the person, is not a breach of the peace.  Nor does such an act, of itself, tend to a breach of the peace.[6]   A mere trespass is not a breach of the peace and does not impose criminal liability upon the wrongdoer.[7]   Driving an automobile while intoxicated constitutes a breach of peace.[8]   Indecent exposure as where one is walking in public naked or nearly naked or in indecent dress is disruptive of the morals of society and constitutes a breach of the peace.  Blasphemy of Christ or Christianity in public is a breach of the peace.

A mere violation of public decorum or a penal law, does not constitute a breach of peace.[9]   Conduct merely amounting to a nuisance is not *per se* a breach of peace.[10]  The sale of fifteen dynamite caps to a 15-year old boy did not constitute a breach of the peace.[11]   A theft is not in its nature a breach of the peace.[12]

A charge of "disorderly conduct" is a broader term than a breach of the peace because a person who commits a breach of the peace is necessarily guilty of disorderly conduct.  However, all acts of disorderly conduct are not necessarily a breach of the peace.[13]  Littering or yelling are such cases.

Breach of the peace is a common law offense, but it is not itself a specific offense.  Thus in a charge or indictment the specific offense must be specified.

### Arrests For Breach Of The Peace

In the struggle for government to claim and exercise greater powers of arrests, it has unlawfully attempted to apply the common law rule for a breach of peace arrest to all misdemeanors.  The general rule of law under the common law for the arrest of misdemeanor offenses amounting to a breach of the peace is stated as follows:

> In cases of misdemeanor, a peace officer like a private person has at common law no power of arresting without a warrant except when a breach of the peace has been committed in his presence or there is reasonable ground for supposing that a breach of peace is about to be committed or renewed in his presence.[14]

An arrest can only be made to suppress and prevent the breach of peace, and if the act ceases, there is no longer justification for the arrest without warrant.

> "A constable cannot arrest, but when he sees an actual breach of peace, and if the affray be over, he cannot arrest; and where a breach of the peace had been committed, and was over, the constable must proceed in

---

5   *In Shields v. State*, 187 Wis. 448, 204 N.W. 486, 40 A.L.R. 945.

6   *Wharton's Criminal Law and Procedure*, 12th Ed., vol. 2, "Breach of the Peace," § 803, p. 660 (1957);  12 *American Jurisprudence*, 2d, 'Breach of Peace,' § 8, pp. 669-70;  *Judy v. Lashley*, 50 W.Va. 628, 41 S.E. 197, 200 (1902); *Robertson v. State*, 43 Fla. 156, 29 So. 535, 538 (1901).

7   *Wharton*, op. cit., § 804.

8   *State v. Rue*, 72 N.M. 212, 382 P.2d 697, 700 (1963);  *State v. Jennings*, 112 Ohio App. 455, 176 N.E.2d 304, 307.

9   *Herron v. Commonwealth*, 294 Ky. 31, 170 S.W.2d 861, 862 (1943).

10  *State v. Mobley*, 240 N.C. 476, 83 S.E.2d 100 (1954).

11  *State v. Thompson*, 117 Vt. 70, 84 A.2d 594, 596 (1951).

12  *Radloff v. National Food Stores*, 20 Wis.2d 224, 123 N.W.2d 570 (1963).

13  *City of Seattle v. Franklin*, 191 Wash. 297, 70 P.2d 1049, 1051.

14  *Carroll v. United States*, 267 U.S. 132, 157 (1924),  citing: *Halsbury's Laws of England*, Vol. 9, part III, p. 612.

28

the same way as any other person, namely; by obtaining a warrant from a magistrate"[15]

The rule for arrest without warrant involving misdemeanors was stated in an article in the *Michigan Law Review* as follows: "Neither O (a peace officer) nor C (a private citizen) may arrest D (a person) for M (a misdemeanor) which is not a BP (a breach of the peace). In regards to this rule it was stated:

> [N]either an officer nor a citizen may arrest for a misdemeanor which does not amount to a breach of the peace even though it occurs in his presence. As for example, talking loudly in the street in the presence of the officer, who ordered the parties to be quiet, an arrest without a warrant was not justified; nor where D in the presence of O, was "turning toward the wall for a particular purpose" of relief, in the street; or where he was disturbing a public meeting; or obstructing the free passage across a bridge; or refusing to move on, on a sidewalk, at the request of an officer; or fraudulently substituting a smaller for a larger check; or fraudulently evading payment of a railroad fare; or maintaining a bill board on a sidewalk; or insulting the head of the house in the presence of his family; or assembling to witness a Sunday ball game, or a movie show.[16]

It is a common rule that an officer cannot arrest for a breach of the peace after it has ended. When a breach of the peace ceases, the reason for the arrest ceases, that being to stop or prevent the breach of public order. Mr. Bishop, in his *Treatise on Criminal Procedure*,

speaking on the subject of arrest for breaches of the peace says:

> After the tumult is over, with no prospect of its renewal, it is too late to interfere without judicial process. And other past misdemeanors are within the same rule, namely, that a private person, or even an officer, cannot without a warrant arrest one for a misdemeanor committed on an occasion already passed. 1 Bish. Crim. Proced. §§ 166, 167.[17]

The principle behind the common law rule of arrests was that in order to prevent harm, violence or disturbance to the public peace, it is necessary that those perpetrating such acts be promptly stopped by arrest. Where, however, the offense is an accomplished fact, its prevention is no longer possible. Also, if public order has been fully restored before the officer appears, the power to arrest without warrant for a misdemeanor breach of the peace no longer exists, for the end by which such authority to arrest is allowed—to maintain the public peace—is no longer attainable.[18]

The occasions which would justify arrest without process for "vagrancy" would indeed be very rare, inasmuch it involves no immediate danger to public or private security.[19] Under American common law, no one can be required to "give an account of themselves," or to show they have a "visible means of support," or that they have employment. As part of the right to life, all have a right to choose how to live and how to

---

15 *State v. Lewis*, 50 Ohio Rep. 179, 185, 33 N.E. 405, 406-07 (1893). Also: *Pow v. Beckner*, 3 Ind. 475, 478; *Commonwealth v. Gorman*, 288 Mass. 294, 297, 192 N.E. 618, 620 (1934); 2 *Hawkins P.C.*, c. 13, § 8; and in the English case of *Regina v. Tooley*, 2 Ld. Ray. 1296, 1301; 11 Mod. 242, 250, by Lord Holt.

16 22 *Michigan Law Review*, 673, "Arrest Without a Warrant," pp. 703-704. Citing cases and quoting from *Halsbury's Laws of England*.

17 As quoted in: *Ex parte Rhodes*, 202 Ala. 68, 79 So. 462, 472 (1918).

18 *State v. Lewis*, 50 Ohio Rep. 179, 187, 33 N.E. 405 (1893);

19 *Sarah Way's Case*, 41 Mich. 299, 304 (1879).

support themselves, and no government act can interfere with this right.

The majority of misdemeanor offenses would not fall in the class of a breach of the peace which allow the immediate inter-vention of authority by arrest, as they are not an offense of a grave nature, or because they do not actually disturb the public peace.

An arrest for breach of the peace in the officer's presence must be made *"promptly,"* either *"at the time of the offense"* or *"as soon as the circumstances permit."* If the officer "does not act immediately after the offense has been committed, he can thereafter make arrests only by procuring a warrant."[20]

When an officer, after having seen a breach of the peace committed, departs on other business or for other purposes, and afterwards returns, he cannot, without warrant, make an arrest for the offense; but where the officer finds it necessary to procure assistance, a reasonable time may be employed in the pursuit. In such a case the officer must at once set about the arrest and follow up the effort until the arrest is effected. An unreasonable delay will make the arrest invalid. In order to justify a delay, there should be a continued attempt on the part of the officer to make the arrest.

It has been erroneously stated that officers are authorized to break in a house or building to prevent the commission of any crime without a warrant. This is an invalid exaggeration of the true law on the matter, which is revealed as follows:

> The authority of a constable to break open doors and arrest without a warrant is confined to cases where treason or felony has been committed, or if there is an affray or a breach of the peace in his presence. 2 Hale P.C. 88-96; 1 Hawkins, c. 63, § 16: 1 Russell on Crimes, 629; 1 Chitty's Criminal Law, 14, 15; Bacon, Abr. "Constable," (C).[21]

The cases in which a breach of the peace occurs in the presence of an officer when done in a building would be very rare. The cases of felony and treason in such a case would most often occur where the felon was pursued into a building by the officer.

Public drunkenness unaccompanied by language or conduct which creates a breach of the peace, will not justify arrest without a warrant.[22] Impudent, abusive or offensive language addressed to a peace officer does not tend to breach the peace, even though it may provoke the officer to anger.[23] And it has been held that the mere "refusal to give one's name and address does not justify the incarceration of a citizen."[24]

### Threatened Breach Of The Peace

An officer cannot arrest because he thinks or has suspicions that a breach of peace might be committed. The cause for arresting upon such cases must be when a breach of the peace is "threatened" or its occurrence is "imminent."[25] In determining when officers

20  4 Am. Jur. "Arrest," §67, p. 46; *Lyons v. Worley,* 152 Okla. 57, 4 P.2d 3, 6 (1931); *State v. Lewis,* 50 Ohio St. 179 33 N.E. 405, 406 (1893).

21  *McLennon v. Richardson,* 15 Gray's Rep. 74, 77 (Mass. 1860).

22  *State v. Mobley,* 240 N.C. 476, 83 S.E.2d 100, 104 (1954) authorities cited.

23  *Pavish v. Meyers,* 129 Wash. 605, 225 Pac. 633, 634 (1924); *Salem v. Coffey,* 113 Mo. App. 675, 88 S.W. 772 (1905); *People v. Lukowsky,* 94 Misc. 500, 159 N.Y.S. 599 (1916); *Myers v. Collett,* 1 Utah 2d 406, 268 P.2d 432, 434 (1954).

24  *Scott v. Feilschmidt,* 191 Iowa 347, 182 N.W. 382, 384 (Iowa, 1921).

30

may interfere by an arrest to prevent a threatened breach of the peace, the Supreme Court of Michigan stated:

> We are of opinion that a threat or other indication of a breach of the peace will not justify an officer in making an arrest, unless the facts are such as would warrant the officer in believing an arrest is necessary to prevent an immediate execution thereof, as where a threat is made coupled with some overt act in attempted execution thereof. * * * The object of permitting an arrest under such circumstances is to prevent a breach of the peace, where the facts show danger of its being immediately committed.[26]

Thus the interposition of the officer in a threatened breach of the peace is not for the purpose of an arrest but "to prevent a disturbance or breach of the peace under a present menace of violence."

> The courts are almost unanimous in their holdings, * * * that a threatened breach of the peace will not justify an arrest without warrant, unless the facts are such as would warrant the officer in believing an arrest necessary to prevent an immediate execution thereof, as where the threat is made coupled with some overt act in attempted execution thereof. In such cases the officer need not wait until the offense is actually committed.[27]

The guideline then for making arrests on what is to be called a "threatened" breach of the peace, is when the conditions are such that the threatened breach of peace is *imminent*, or that it is *obvious* to the average person that it is *going to occur*. As held by the Supreme Court of North Carolina:

> [W]e think a breach of the peace is threatened * * * if the offending person's conduct under the surrounding facts and circumstances is such as reasonably justifies a belief that the perpetration of an offense amounting to a breach of the peace is imminent.[28]

Since the nature of most breaches of the peace are such that cause violence to person or property, the acts which constitute them are apparent, so that one can readily see or hear them occurring. It is said a breach of peace is committed in one's presence when, by the use of his senses, he knows of its commission by the person about to be arrested. Thus an arrest for a breach of peace may be made when one's "senses afford him knowledge" that it "is being committed," whether through "sight, hearing, or other senses."[29] An arrest for a breach of the peace cannot be made on suspicion or mere belief:

> An arrest for a breach of the peace cannot be justified merely upon belief or suspicion existing in the mind of the officer; but, where the actions of the person and the surrounding circumstances are such as to indicate a threatened breach of the peace, the arrest may be lawfully made.[30]

It is thus said that an officer can not arrest for a misdemeanor or a breach of the peace based solely upon information from another or suspicion without a warrant. In no case could advice or information given after the arrest was made justify the arrest. Likewise, an arrest cannot be made for one purpose and justified for another.

---

25 *Price v. State,* 227 Md. 28, 175 A.2d 11, 16 (1961).

26 *Quinn v. Heisel,* 40 Mich. 576, 578-79 (1879).

27 *Haverbekken v. Hollingsworth,* 250 S.W. 261, 265 (Tex. Civ. App. 1923).

28 *State v. Mobley,* 240 N.C. 476, 83 S.E.2d 100, 104 (1954) authorities cited.

29 Restatement, Torts, Sec. 119; *Walker v. United States,* 7 Fed.2d 309, 311 (9th Cir. 1925); *Wharton's Criminal Procedure,* vol. I, "Arrest," § 65, 12th Ed., p. 173.

30 *Hughes v. State,* 145 Tenn. 544, 238 S.W. 588, 596 (1922).

## Conditions Of Felony Arrests

It was regarded under the common law to be a right and a duty for a citizen to arrest one he sees committing a felony without a warrant. As stated by justice Platt:

> All persons whatever, who are present when a felony is committed, or a dangerous wound is given, are bound to apprehend the offenders. (3 *Hawkins*, *P.C.* 157, *Arrest*, s. 1.)[31]

To arrest a person for a felony not witnessed by the officer, he must be able to conclude from the facts then existing that a certain person did commit the felony, so that any prudent person would be lead to believe likewise. An arrest for felony based upon suspicion, belief or rumor can never be justified for any cause whatsoever, not even by a warrant can such an arrest be lawful.

> Where there is a felony and it is past, the officer is justified in arresting though no offense has been committed; yet he must have had reasonable cause to suspect the one apprehended.[32]

To allow arrests for suspicions, even in the case of felony, would make everyone susceptible to arrest who the officer might choose to believe is a likely or possible perpetrator of a crime. It would in effect amount to a "general warrant" in the hands of any officer — a concept which was found to be so abhorrent to the founding fathers of the American Revolution.

All arrests for felonies not seen or witnessed by the officer or citizen making the arrest have the burden to justify the arrest. In a felony arrest by a private citizen, he must justify the arrest by showing "that the felony had actually been committed, and that he had reasonable grounds for believing the person arrested to be guilty."[33] An officer is required only to show the probable cause existing for making the arrest, and need not show that a felony actually occurred, though such proof could serve as a justification.[34] In all other arrests, probable cause is not a factor in justifying an arrest without warrant.

It is well settled at common law, that an officer or private person, without warrant, may lawfully seize and detain another in cases where a felony was about to occur.

> If two persons be fighting, and there be reason to fear that one of them will be killed by the other, it will be lawful to part and imprison them till their anger shall be cooled. Bacon, Abr., Trespass, D.; 2 Roll. Abr. 559. * * * And private persons may justify breaking and entering the plaintiff's house, and imprisoning his person, to prevent him from murdering his wife.[35]

The law on felony arrest allowed all peaceable persons to travel freely anywhere without having to worry about an arrest or warrant for a felony. This is because all persons know what constitutes a felony, that being intrinsically evil acts such as murder, kidnaping, rape, arson, mayhem, armed robbery, and other such atrocious crimes. No one commits a felony accidentally or without foreknowledge of the act. Thus a felon's arrest comes as no surprise to him.

---

31 *Phillips against Trull*, 11 Johnson's Rep. 486, 487 (N.Y. 1814). See also, 6A C.J.S. "Arrest," § 13.

32 *The State v. Underwood*, 75 Mo. 230, 237 (1881), citing 1 *Bishop's Criminal Procedure*, § 181; also see *Commonwealth v. Carey*, 12 Cush. 246 (Mass.); *Palmer v. Maine Cent. R. Co.*, 92 Me. 399, 42 Atl. 800, 803 (1899), authorities cited.

33 *Palmer v. Maine Cent. R. Co.*, 92 Me. 399, 42 Atl. 800, 803 (1899), authorities cited; *Golibart v. Sullivan*, 30 Ind. App. 428, 66 N.E. 188, 191 (1903).

34 *State v. Nolan*, 354 Mo. 980, 192 S.W.2d 1016, 1020 (1946).

35 *Colby v. Jackson*, 12 N.H. 526, 530 (1842).

32

5

# DEFENSES TO UNLAWFUL ARRESTS

This section will be of benefit not only to those who may initiate a suit for false imprisonment, but also for peace officers as it further outlines what is the extend of their authority. Suits are usually brought about because there is not a meeting of the minds in regards to the facts or the law of a case. If both parties know the law of arrests and what can and cannot be used as a defense to acts of imprisonment, many lengthy and costly litigations can be avoided.

Over the course of the history of arrests, there have been numerous defenses raised against claims of false imprisonment. Yet the basic defense for this charge is usually limited to showing that the arrest was pursuant to law—that the one arresting had lawful authority to so act. Thus a valid defense or proper justification for false imprisonment would normally be one asserting the legality of the arrest.[1] As Justice Hand stated:

> The law watches personal liberty with vigilance and jealousy; and whoever imprisons another, in this country, must do it for lawful cause and in a legal manner.[2]

Most of the erroneous defenses have been due to misconstruing the requirements of a suit for malicious prosecution with those required for false imprisonment.

**Burden of Proof**

In false imprisonment suits, or in allegations of false arrest, it can be no defense that the one who was arrested must prove that the arrest was unlawful in order to prevail in the suit. Due to the high regard placed on liberty, all imprisonments of a person are deemed unlawful until the contrary is shown. In *Halsbury's Laws of England,* in speaking on suits of false imprisonment, it says:

> The plaintiff need not prove that the imprisonment was unlawful or malicious, but establishes a prima facie case if he proves that he was imprisoned by the defendant; the onus then lies on the defendant of proving a justification.[3]

The only thing the plaintiff needs to plead and to prove is one of two things, either (1) that the defendant made an arrest or imprisonment, or (2) that the defendant affirmatively instigated, encouraged, incited, or caused the arrest or imprisonment.[4] When the plaintiff has shown that he was arrested, imprisoned or restrained of his liberty by the defendant, "the law presumes it to be unlawful."[5]

Thus it has been held that in false imprisonment suits the defendant, in order to escape liability, must either prove that he

---

1   *Marks v. Baltimore & O. R. Co.,* 131 N.Y.S.2d 325, 327, 284 App.Div. 251 (1954).

2   *Pratt v. Hill,* 16 Barb. Rep. 303, 308 (N.Y. 1853).

3   Earl of Halsbury, *The Laws of England,* vol. 38, 3rd Ed., Pt. 4, § 1266, p. 765, London, 1962.

4   *Burlington Transp. Co. v. Josephson,* 153 Fed.2d 372, 276 (1946).

5   *People v. McGrew,* 77 Cal. 570, 20 Pac. 92 (1888); *Knight v. Baker,* 117 Ore. 492, 244 P. 543, 544 (1926).

to believe that the accused was actually guilty.[19]

In some cases, instead of asserting that the officer acted in good faith, the defense is raised that malice must be proven on the part of the arresting officer. This defense is, however, groundless in matters of false imprisonment.

> In an action for false imprisonment, neither actual malice nor want of probable cause is an essential element necessary to a recovery of general damages.[20]

What ever the motives of the arresting officer, they do not cause or bring about a change in the legality of an arrest, as was asserted by the Supreme Court of Missouri:

> A lawful imprisonment does not become unlawful because of malicious motives nor does an unlawful detention become lawful because actuated by a laudable purpose or founded in good faith.[21]

Closely related to the defense of good faith or lack of malice is that an arrest is justified where there is no force or injury done to the person arrested. But as the United States Court of Appeals stated, this does not justify an arrest:

> All that is necessary to establish false imprisonment is that an individual be restrained of his liberty under the probable imminence of force without any legal cause or justification therefor. It is not necessary to show actual force, threats, or injury done to the individual's person, character, or reputation. The lack of malice, the presence of good faith, or the presence of probable cause do not affect the existence of the wrong when the detention is unlawful.[22]

Where a deputy game warden had arrested a man without warrant and incarcerated him in the county jail, the deputy claimed that at the time of the arrest he had probable cause for believing that plaintiff was then violating the law, by hunting without a license. It was held that there was a false imprisonment involved, as the Supreme Court of Alabama said:

> In false imprisonment, the essence of the tort is that the plaintiff is forcibly deprived of his liberty, and the good intent of the defendant, or the fact that he had probable cause for believing that an offense was committed, and acted in good faith, will not justify or excuse the trespass.[23]

In an action against a mayor and a police court judge for alleged false arrest and imprisonment, it was claimed that the defendants acted maliciously with a design to injure the plaintiff. It was held by the Supreme Court of Kansas that based upon the claim of malice, the defendants were not liable for false arrest. The proper remedy would be an action for malicious prosecution. The Court also stated:

> The motive with which a restraint of liberty is accomplished, be it evil or good, is irrelevant to the question of whether or not an unlawful arrest has been established. The existence of actual malice is of consequence only as it may afford the basis for punitive damages.     In Garnier v. Squires, 62 Kan. 321, 62 P. 1005, the court said: "As will be seen, malice and willfulness are not essential elements of false imprisonment; and motives of the defendant, whatever they may have been, are not material to the case."[24]

19 *Markey v. Griffin*, 109 Ill. App. 212 (1903).

20 *McNeff v. Heider*, 337 P.2d 819, 821 (Ore., 1958); 35 C.J.S. "False Imprisonment," § 7, pp. 629-30..

21 *Thompson v. Farmers' Exchange Bank*, 333 Mo. 437, 62 S.W. (2d) 803, 811 (Mo. 1933).

22 *Nesmith v. Alford*, 318 F.2d 110, 118-19 (1963). Authorities cited therein.

23 *Daniels v. Milstead*, 221 Ala. 353, 128 So. 447, 448 (1930); *De Armond v. Saunders*, 243 Ala. 263, 9 So.2d 747, 751 (1942).

24 *Holland v. Lutz*, 194 Kan. 712, 401 P.2d 1015, 1019 (1965).

36

And the Court of Appeals of Maryland had stated:

> In false imprisonment suits, * * * the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification, and <u>the good or evil intention of the defendant does not excuse or create the tort</u>. 11 R.C.L. 791. * * * Any deprivation by one person of the liberty of another without his consent, constitutes an imprisonment, and if this is done unlawfully, it is false imprisonment, <u>without regard to whether it is done with or without probable cause</u>.[25]

In a case of false imprisonment, the defendant claimed that the petition did not state a cause of action, for the reason that it was not alleged that the imprisonment was malicious and without probable cause. The trial court held that these claims were only valid in suits for malicious prosecution, and that there was a marked distinction between malicious prosecution and false imprisonment. The Kentucky Court of Appeals affirmed this position with various cites:

> In Starkie's Evid. 1112, it is said: "No proof of malice or want of probable cause is necessary to make a case for false imprisonment."[26]

Where the life, liberty or property of the citizen are at stake, good intentions are never good enough. It has been stated that the citizen's liberty must not depend upon good faith merely, but upon legal rules governing official action.[27]

It has been held many times that in cases of false imprisonment, "the defendant can only avoid liability for false arrest by pleading justification for the arrest."[28]    All other arguments must necessarily fail.

### Ignorance of Law

It is a fundamental maxim of law that ignorance of the law is no excuse to violating it.    One such maxim is as follows:

> Ignorance of the fact excuses; ignorance of the law excuses not. Every man must be taken to be cognizant of the law; otherwise there is no saying to what extent the excuse of ignorance may not be carried.[29]

It has been said that an unlawful detention or imprisonment does not become lawful because done out of of ignorance of the law.[30] The Georgia Court of Appeals has held that, "It is no defense that a person perpetrating an illegal arrest or imprisonment is ignorant of the illegality of his acts."[31]    Knowingly committing an arrest which is illegal is sufficient to fix liability.

> False imprisonment is treated as a tort, and also as a crime. * * * If the conduct is unlawful, neither good faith, nor provocation, <u>nor ignorance of the law</u> is a defense to the person committing the wrong.[32]

After speaking on the constitutional rights of citizens, the Supreme Court of Minnesota further adds:

---

25  *Mahan v. Adam*, 144 Md. 355, 124 Atl. 901, 905 (1924), cases cited.

26  *Southern Ry. Co. in Kentucky v. Shirley*, 121 Ky. 863, 90 S.W. 597, 599 (1906), authorities cited.

27  *Hill v. Wyrosdick*, 216 Ala. 235, 113 So. 49, 50 (1927).

28  *Kraft v. Montgomery Ward & Co.*, 348 P.2d 239, 243 (Ore. 1959).

29  *Maxims of Law*, ed. C. A. Weisman, 57f. (1 *Coke*, 177;  4 *Bouvier's Institutes*, n. 3828).

30  35 *Corpus Juris Secundum*, "False Imprisonment," § 7, p. 630.

31  *Stembridge v. Wright*, 32 Ga.App. 587, 124 S.E. 115 (1924).

32  *Kroeger v. Passmore*, 36 Mont. 504, 93 Pac. 805, 807 (1908).

As is the case of illegal arrests, the officer is bound to know these fundamental rights and privileges, and must keep within the law at his peril.[33]

Ignorance cannot be an excuse for violating the rights of citizens or any constitutional mandates such as due process, especially by those who have taken an oath to uphold that law. They become a hypocrite upon the assertion of such an excuse.

### Guilt of Party Arrested

An unlawful arrest cannot be justified because the arrested party was actually guilty of the charge for which he was arrested. The person charged with an offense can only be deprived of his liberty by due process of law, and this constitutional safeguard applies to the guilty as well as the innocent.

Thus the guilt of the one arrested has no bearing on the legality of an arrest:

> As stated in Annotation 25 A.L.R. 1519: "No one can recover damages for a legal arrest and conviction; therefore, in cases of malicious prosecution, it becomes necessary to await the final determination of the action. But the same principle does not apply to an action for false imprisonment, as the form of action is based upon an illegal arrest; and no matter ex post facto can legalize an act which was illegal at the time it was done."[34]

Thus nothing that happens ex post facto (after the fact of the arrest) can change the legal nature of the original arrest. A prosecution and verdict of guilty does not make an unlawful arrest lawful. In a case of false imprisonment where it was being asserted that the plaintiff was guilty, the Supreme Court of Oklahoma said: "The guilt of the plaintiff is not material."[35] In the *Michigan Law Review* it was stated that:

> An arrest is unlawful, even though the arrestee be guilty of a felony, if the officer had not reasonable ground to believe him guilty. Thus neither the guilt nor innocence of the person arrested has anything to do with the legality of the arrest.[36]

It thus has been declared that in an action for false imprisonment, the termination of a prior proceeding in favor of the one deprived of his liberty is not material to his suit.[37] Since termination of the proceedings is not material, the fact that the one deprived of his liberty was actually found guilty is immaterial to the false imprisonment suit. But in a suit for malicious prosecution, there must be a termination in the proceedings in favor of the party deprived of his liberty to prevail. If he is found guilty, he cannot sue for malicious prosecution.

A false imprisonment case in New Jersey occurred where a woman was committed to an insane asylum by a business partner, and was released a few days latter by her husband. The woman sued the partner for false imprisonment but it was argued that the woman failed to plead or prove that the proceedings leading to her arrest and imprisonment in the asylum had terminated. The Appeals Court said that the argument raised did not apply to this case as it was an

---

33  *Thiede v. Town of Scandia Valley*, 217 Minn. 218, 231, 14 N.W.(2d) 400 (1944).

34  *Sergeant v. Watson Bros. Transp. Co.*, 244 Iowa 185, 52 N.W.2d 86, 92-93 (1952); citing, *Neves v. Costa*, 5 Cal. App. 111, 89 Pac. 860 (1907).

35  *Halliburton-Abbott Co. v. Hodge*, 44 P.2d 122, 125 (Okla., 1935).

36  *Michigan Law Review*, vol. 31, April, 1933, p. 750; citing numerous cases.

37  *Riegel v. Hygrade Seed Co.*, 47 F.Supp. 290, 293 (1942); *Thompson v. Farmers' Exchange Bank*, 62 S.W.(2d) 803, 810 (Mo. 1933); 25 *American Law Reports*, Annotation, p. 1518.

38

action for false imprisonment, and not malicious prosecution. The Court held:

> The weight of authority is against the proposition that in a suit for false imprisonment the prosecution should terminate before a suit for damages can be instituted.[38]

In a suit for false imprisonment, a record of conviction for the same offense for which the arrest was made is inadmissible.[39] An action for false imprisonment is to be based upon the legality of the arrest, not upon the filing of a complaint, or the proof of an alleged crime, or the results of a trial, as the California Supreme Court said:

> The finding of guilt in the subsequent criminal proceeding cannot legalize an arrest unlawful when made.[40]

Even where a party has pleaded guilty, the one making the arrest can still be liable for an illegal arrest.[41] Thus it has been held that consent to an unlawful arrest will not excuse an officer or person from their acts, as held by a *Federal Circuit Court of Appeals:*

> We are of opinion that the law does not permit the citizen to consent to unlawful restraint, nor permit such a claim to be made upon the part of the defendants. In Wharton on Criminal Law, vol. 1, § 751e, it is said: "No man has a right to take away another's liberty, even though with consent, except by process of law. And the reason is, that <u>liberty is an unalienable prerogative</u> of which no man can divest himself, and of which any divestiture is null.[42]

## Immunity

The argument of official immunity would seem to be an obvious and logical argument for an officer in defense of a charge of false imprisonment.   Government is generally immune from being sued and peace officers are regarded as members of government, thus it is often claimed they are immune from suit. But the immunity doctrine does not extend to anyone in government who causes a wrong:

> But immunity from suit is a high attribute of sovereignty—a prerogative of the State itself—which cannot be availed of by public agents when sued for their own torts. [43]

Under the doctrine of official immunity there have been distinctions made between acts that are "discretionary duties," which an officer in performance of is immune, and acts which are "ministerial duties," for which officers remain liable.   An officers official duty is described as ministerial, "when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts."[44]   An arrest by an officer is a ministerial not a discretionary act.

---

38  *Boesch v. Kick,* 98 N.J. Law 183, 119 Atl. 1, 2 (1922);  25 A.L.R. 1516;  5 Am. Jur. 2d, "Arrest," § 22, p. 712.

39  Dunnell Minnesota Digest, 3rd Ed., Vol. 8A, "False Imprisonment," §1.06(c), citing *Wahl v. Walton,* 30 Minn. 506, 16 N.W. 397  (1883).

40  *Coverstone v. Davis,* 38 Cal.2d 315,  239 P.2d 876, 878 (1952); *Wilson v. Loustalot,* 85 Cal.App.2d 316,  193 P.2d 127, 132 (1948);  *Stewart v. State,*  244 S.W.2d 688, 690 (Tex. Civ. App., 1951).

41  *Hotzel v. Simmons,* 258 Wis. 234, 45 N.W.2d 683, 687 (1951);  *Anderson v. Foster,* 73 Idaho 340, 252 P.2d 199, 202 (1953).

42  *Meints v. Huntington,*  276 Fed. 245, 250 (1921).  other authorities cited.

43  *Hopkins v. Clemson College,*  221 U.S. 636, 642-43 (1910);  *Johnson v. Lankford,* 245 U.S. 541, 546 (1917).

44  *Rico v. State,* 472 N.W.2d 100, 107 (Minn., 1991).

# 6

# THE USE OF A WARRANT IN ARRESTS

The requirement for warrants in the seizure of persons and property is an affirmation of common law principles. The declaration in our constitutions prescribing the mode in which they are to issue, reflects the abhorrence of the use of the so-called "general warrants," whereby easy and arbitrary arrests and seizures were made.

Despite such declarations for the security of liberty, privacy and property, history shows that the executive department has strong tendencies to disregard and violate them, as revealed by the U.S. Supreme Court:

Though the police are honest and their aims worthy, history shows they are not appropriate guardians of the privacy which the Fourth Amendment protects.[1]

While the Fourth Amendment has been badly violated, we find that the due process of law provision is virtually ignored when it comes to warrants. For the most part it is the due process provision which prescribes the actual requirement of a warrant for all arrests except where public security allows a warrantless arrest.

## Warrant to be in the Possession of the Arresting Officer

A warrant of arrest is a written order issued by a court or magistrate, directed to a peace officer or to a specified private person, commanding him to arrest a named person.[2] It is regarded as fundamental law that where one cannot arrest without a warrant, a warrant must be acquired and be in the actual possession of the one making the arrest otherwise he is not protected by it.

The requirement of having the warrant for arrest "in actual possession" is the common law rule and thus is part of due process of law, as it is a procedure which deprives a citizen of his liberty.

In a case where a policeman, by direction of a sheriff, arrested an individual pursuant to a warrant, it was claimed the arrest was unlawful since the sheriff retained the possession of the warrant in his office. The Supreme Court of North Carolina held that "the overwhelming weight of authority" for misdemeanor charges, is that the officer "must have the warrant in his possession." The Court stated the following:[3]

In 6 C.J.S., Arrest, § 4, p. 576 et seq., we find the general rule stated as follows: "The warrant must at the time of arrest be in the possession of and with the person purporting to act thereunder or of one with whom he is acting in conjunction. * * * Accordingly, where the warrant is at the officer's house some distance from the scene of the arrest, or in the hands of another who is not at the scene of arrest, or in the central office of a city detective bureau, the arrest is unlawful."[3]

Since there was no felony or breach of peace committed in the presence of the policeman, his arrest was deemed illegal despite the fact there was a valid warrant for the individual arrested, since it was with the

1   *Jones v. United States*, 362 U.S. 257, 273 (1959).

2   Wharton's Criminal Procedure, vol. 1, 12th ed., § 54, p. 151.

3   *Alexander v. Lindsey*, 230 N.C. 663,  55 S.E.2d 470, 474 (1949).

40

sheriff who was in another town. The Court also said that the good faith of the policeman did not affect the unlawfulness of the arrest.

A Mississippi case involved a warrant that was issued for the arrest of a Bill Smith on a reckless driving charge. Under the sheriff's instructions, a deputy went to Smith's home to arrest him while the warrant remained in the sheriff's office. Smith asked to see the warrant for his arrest. The deputy replied that he did not have it with him, but that it was at the sheriff's office and Smith could see it when they arrived there. However, Smith said he would have to see the warrant before he would submit to the arrest. Smith resisted the arrest. The sheriff was called out but came without the warrant. Smith again resisted but was forcibly taken to jail. The State Supreme Court held the arrest unlawful:

> [U]nder the great weight of authority an officer making an arrest for a misdemeanor not committed in his presence must have the warrant for such arrest in his actual possession if the arrest is to be lawful. [4]

In a criminal case involving a violation of a lien, a policeman was given a warrant for the arrest of a man named Shaw. He drove to Shaw's house in a buggy. He left the warrant in the buggy being some 150 yards from the house. The officer went into the house and put his hand on Shaw's shoulder and told him that he had a warrant for him and to consider himself under arrest. Shaw asked, "What for?" The officer replied, "For disposing of property under lien," and that a Mr. Bradham had sworn out the warrant. Shaw said, "I am not going." He resisted the arrest and claimed at trial that the arrest was not valid as at the time of arrest the officer had not actual possession of the warrant. The State Supreme Court held that the warrant was in fact in the officer's possession:

> The authorities agree that in cases of misdemeanor not committed in his presence, and for which he cannot lawfully arrest without a warrant, the officer should have the warrant in his actual possession at the time of making the arrest. * * * It was not necessary that he should have the warrant in his hand or in his pocket at the time of making the arrest. Actual possession of it does not mean that. The rule is satisfied if the officer has such possession of the warrant that he can produce it with reasonable promptness on demand. [5]

The question of what constitutes "possession" of the warrant has often been debated, but it is obvious that it must be so close at hand as to show it upon request. Thus it need not be said that the warrant must in all cases be directly in the hand of the arresting officer. This would be too narrow and technical view of the law and one not based on substantial grounds. One reason for "actual possession" is to show the authority for the arrest; another is to display or read the warrant, and since this is to be done promptly the possession must exist. Thus the warrant must be "in possession" but not necessarily "in hand," as the Federal Circuit Court of Appeals stated:

> [T]he officer who seeks to arrest by virtue of a warrant must have the warrant in his possession at the time of the arrest. We need not undertake to define exactly what is meant by "in his possession." * * * Of course, it does not necessarily mean that the warrant shall be actually in his hand. [6]

Where a warrant was directed to all police officers, and exhibited to two officers but was kept in the police station, the warrant

---

4   *Smith v. State,* 208 So.2d 746, 747 (Miss., 1968).  Although an officer upon seeing a misdemeanor being committed cannot arrest the person committing it, he can in most cases stop him from committing it or prevent its continuance. Thus in observing a petty theft, an officer can stop the suspect, which would be an arrest, to recover the items taken.

5   *State v. Shaw,* 104 S.C. 359, 89 S.E. 322, 323 (1916).

was not "sufficiently in the possession of the two officers to sustain an arrest by them."[7]

In the rather famous and landmark case of *Crosswhite v. Barnes*, a warrant for the arrest of a Mrs. Barnes was issued by a justice for a misdemeanor, and placed in the hands of W.T. Crosswhite, chief of police. Crosswhite, along with a police Sergeant, set out to execute the warrant, but left the warrant of arrest in his desk at the courthouse. When the officers first saw Mrs. Barnes she was driving down State street in her automobile. The police turned their car in front of Mrs. Barne's car to stop her. One officer opened her car door, took hold of her by the arm, and said, "Get in my car." She refused and told the police she would not go anywhere without her husband. The policeman said, "we want you, not your husband." She asked the officers to show her the warrant. Mr. Crosswhite said he "did not have to do so," and said that "you are going to the courthouse." The argument continued ending in Mrs. Barnes being forcibly taken to the courthouse. Mrs. Barnes brought an action against Crosswhite and the other policeman for illegal arrest and assault and battery. The police were found guilty and on appeal the Supreme Court of Appeals of Virginia affirmed the conviction, and in a very authoritative decision stated:

> The text-books generally state, and many cases hold, that it is necessary not only that a warrant of arrest should have been issued, but that the officer making the arrest shall have it with him and show it on request.

In Beale's Crim. Pl. & Pr. § 18, it is said: "An officer arresting on a warrant must have the warrant with him, and must show it on request."

In 1 Bish. New Crim. Proc. § 190, it is said: "to justify an arrest under a warrant, the officer must have it in possession; and, if though delivered to him, he leaves it at his office or station house, it will not protect him."

In 2 R.C.L. (*Ruling Case Law*) 465, § 23, speaking of misdemeanors not committed in the presence of the officer, it is said: "The officer should have the warrant in his actual possession in order to justify the arrest, and if he does not have it, although it has been duly issued, an officer making an arrest may not be protected by it."[8]

The Court also referred to and relied upon a previous case in Virginia, the case of *Muscoe v. Commonwealth*, in which a policeman undertook to arrest Muscoe for a past misdemeanor, without a warrant, and Muscoe shot and killed him. He was convicted of murder and in the appeal the Court reversed the conviction stating:

> Indeed, not only must there be a warrant in the class of cases last mentioned [misdemeanors], but, to justify the arrest, the officer must have the warrant with him at the time.[9]

Since a warrant must be in one's possession to arrest, a sheriff has no authority to send a deputy to one place to make an arrest without a warrant, while he goes to another for the same purpose with the warrant. Nor can he send his deputy into one town while he gives pursuit in another.[10]

> Under the ancient practice of hue and cry, before warrants were issued, this might be done in the pursuit of felons, but no hue and cry could be raised for a misdemeanor.

6   *O'Halloran v. M'Guirk*, 167 Fed. 493, 495, 93 C.C.A. 129 (1909).

7   *People v. Fischetti*, 273 Ill. App. 215 (1933).

8   *Crosswhite v. Barnes*, 139 Va. 471, 124 S.E. 242, 245 (1924).

9   *Muscoe v. Commonwealth*, 86 Va. 443, 10 S.E. 534 (1890).

10  *McCullough v. Greenfield*, 133 Mich. 463, 95 N.W. 532, 533 (1903).

42

We think it clear that in cases of misdemeanors the sheriff must be present either in sight or hearing, directing the arrest, to justify a person not armed with the warrant to make the arrest.[11]

In a Georgia case, a warrant was issued for the arrest of Shaw, charging him with a misdemeanor. The warrant was directed to any sheriff, deputy, coroner, or constable of the state. When a constable tried to arrest Shaw at his home, a friend named Adams interposed and asked the constable if he had a warrant for Shaw. The officer replied that he had it at his home, but not with him. Adams thus prevented the arrest of Shaw and liberated him from the custody of the Constable. Adams was charged with interfering with the arrest. The Supreme Court of Georgia held that Adams was not guilty of any offense since Shaw was not legally in the custody of the officer by virtue of a lawful arrest. The Constable had no authority to arrest except under the warrant which he did not have in his possession. The Court held:

> Whenever a warrant has been issued to arrest a person charged with an offense in respect of which he cannot be apprehended without a warrant, the police officer must have the warrant in his possession at the time when he executes it. If he has not, the arrest will be illegal.[12]

Later the Court upheld this case under a similar situation, where a warrant had actually been issued for an arrest, but the warrant was in the hands of the sheriff a number of miles away from where the arrest took place. The arrest was not lawful as the officer making the arrest had not been in possession of the warrant.[13]

In many cases unlawful arrests have occurred where an officer receives some sort of communication from another jurisdiction or a central office that a warrant exists for the arrest of a particular individual. The officer relying on such information and making an arrest upon it is liable for false imprisonment, as he arrested without a warrant in his possession. One treatise says:

> In a case where the officer of one city, county or district, telephones to officers of another city, county or district to make an arrest of a party with the last mentioned city, county or district, it affords the officer attempting to carry out the instruction no protection and the arrest is illegal, unless such officer would have a right to arrest without a warrant.[14]

Thus where an officer was informed by a letter, written by the chief of police of a city in another state, that a certain person has absconded with funds belonging to a benevolent association, the officer was liable in damages for the arrest of this person without a warrant.[15]

The fact the person knows that a warrant for his arrest is outstanding does not eliminate the need for possession of the warrant in making the arrest. In Anderson's *Treatise on Sheriffs*, it states:

> Where arrest is being made under the authority of a warrant, the officer attempting to execute same, and arrest the party named therein, must be in possession of said warrant or it affords him no protection. The necessity for the possession of the warrant is not relaxed by reason of the fact that the party to be arrested knows of

---

11  *Kratzer v. Matthews*, 233 Mich. 452, 206 N.W. 982, 984 (1926); citing, *People v. McLean*, 68 Mich. 480, 36 N.W. 231.

12  *Adams v. State*, 121 Ga. 163, 48 S.E. 910, 911 (1904).

13  *Giddens v. State*, 154 Ga. 54, 113 S.E. 386, 389 (1922).

14  Walter H. Anderson, *A Treatise on the Law of Sheriffs*, vol. 1, §133, pp. 128-29 (1941). A sheriff is liable if he arrests for a misdemeanor when acting upon a telegram stating a warrant exists. *Roberts v. Dean*, 187 So. 571 (Fla. 1939).

15  *Malcomson v. Scott*, 56 Mich. 459, 23 N.W. 166 (1885).

the issuance and existence of such warrant for his arrest.[16]

Thus where an arrest is made without having the warrant in the possession of the arresting officer, such an arrest is treated as though it were made without a warrant.

### Warrant to be Shown Upon Arrest

Coupled with the requirement to have the warrant in possession when making an arrest, is the requirement to show or display the warrant to the arrested person. Where an arrest is claimed to be made under the authority of a warrant, it is the duty of the one making the arrest to show the warrant and read it to the one being arrested, especially when he requires to see it or demands to know the nature and cause of the arrest. He need not submit if this is not done.

In the case of *Smith v. State,* supra, the Supreme Court of Mississippi not only said that the warrant must be in the actual possession of the officer, but "he must show it to the accused, if requested to do so."[17] In *State v. Shaw,* supra, the Court said that the reason that a warrant is to be in the actual possession of the arresting officer, is that, "if demanded, he must produce the warrant and read it to the accused, that he may know by what authority and for what cause he is deprived of his liberty."[18]

In *Crosswhite v. Barnes,* supra, it was stated that the arresting officer must have the warrant with him, "and must show it on request." It cited a number of authorities in support of this such as the following:

> In the annotator's summary of a note in 42 L.R.A. at page 682, it is said: "An accused person, if he demands it, is entitled to have the warrant for his arrest shown to him at the time of arrest. (See also 51 L.R.A. 211).[19]

In an early case in New York, a special deputy was charged with the duty to serve a warrant for larceny, issued by a justice of the peace. The person arrested required the deputy to show him the warrant, before he would submit to the arrest. The deputy did not do so and the man resisted and the deputy beat him. At trial the judged charged the jury that if the defendant did not show the warrant to the man, he was a trespasser. The jury found a verdict in favor of the man arrested. The Supreme Court of New York upheld the verdict stating:

> A special deputy is bound to show his warrant if requested to do so, and if he omit, the party against who the warrant is may resist an arrest, and the warrant under such circumstances is no protection against an action for an assault, battery and false imprisonment.[20]

Failure to show or display a warrant when a warrant for an arrest allegedly exists, the arrest becomes illegal. On this matter the Supreme Court of Georgia stated:

> In *Galliard v. Laxton,* 2 Best & S. 363, 9 Cox C.C. 127, it was held that in a case in which a lawful arrest could not be made except under a warrant the arresting officers were bound to have the warrant ready to be produced if required; that an arrest in such a case by police officers who did not have the warrant in their possession at the time was illegal.[21]

16  Walter H. Anderson, *A Treatise on the Law of Sheriffs, Coroners & Constables,* vol. 1, §133, p. 128 (1941).

17  *Smith v. State,* 208 So.2d 746, 747 (Miss., 1968).

18  *State v. Shaw,* 104 S.C. 359, 89 S.E. 322 (1916).

19  *Crosswhite v. Barnes,* 139 Va. 471, 124 S.E. 242, 245 (1924).

20  *Frost vs. Thomas,* 24 Wendell's Rep. (N.Y.) 418, 419 (1840).

21  *Adams v. State,* 121 Ga. 163, 48 S.E. 910, 911 (1904).

44

Thus the primary reason for the officer to have the warrant in his possession when making an arrest under the warrant, is so that it can be shown to the one arrested, so that he knows the authority by which he is being deprived of his liberty. This was so held by the Supreme Court of Texas:

> It ought not to be denied that the law contemplates that the warrant directing the arrest of a person charged with a crime will be in the possession of the officer when he makes an arrest under it, for he is required to exhibit it, if called upon to do so; and this is based on a wise public policy, one purpose of which is that the officer may have to exhibit such evidence of his authority to make the arrest as will be deemed sufficient to take from the person whose arrest is commanded all right to question the authority of the officer.[22]

The argument that officers are free to arrest because there is a warrant out-standing, is nullified by the requirement of law that one arresting under a warrant must show it if requested to do so, which is manifestly impossible unless he has the warrant in his possession.

An officer arresting for taxes due on a tax warrant was held to be a trespasser where he had not the warrant with him at the time of arrest, thus failing to show it to the one arrested. The Court unanimously held:

> We think the authorities * * * are all to the effect that the officer making the arrest must be in a situation to show, if required, the authority under which he is acting. It is the legal right of the citizen when arrested that such shall be the situation, and, therefore, when such situation does not exist the arrest is a legal wrong.[23]

An arrest warrant is to be shown to the accused for he has a right to see if it is a valid warrant. Speaking on the topic, "Production of Warrant," one law textbook states:

> Every person relying upon a warrant in making an arrest should read it if requested so to do, * * * Where a warrant is necessary but the person making the arrest refuses to exhibit it when called upon to do so * * * he may forfeit the protection which it otherwise would afford him.[24]

In the Annotation of *American Law Reports*, vol. 40, p. 62, a review was given on the topic: "Necessity of showing warrant upon making arrest under warrant." The report clearly showed many other cases that held that the officer must show the warrant upon request, and stated:

> The weight of authority now, however, seems to support the proposition that an officer making an arrest under a warrant should show the warrant, if requested to do so, and in some jurisdictions he is expressly required by statute to do so.[25]

The enactment of a statute that the warrant is to be shown upon arrest is but declaratory of the due process procedure that must be followed in an arrest. Thus no statute is needed and where it exists it is merely redundant in nature.

The annotated report did speak of some authorities where it appeared that the failure of showing the warrant was allowed. It stated in the review that in some cases, "a regular officer does not need to show his warrant *before* making an arrest thereunder." Such cases involved the question of whether the officer is known or unknown to the person

---

22 *Cabell v. Arnold*, 86 Tex. 102, 23 S.W. 645, 646 (1893).

23 *Smith v. Clark*, 53 N.J.L. 197, 21 Atl. 491 (1891). Citing *Webb v. State*, 51 N.J.Law 189, 17 Atl. Rep. 113.

24 2 *Ruling Case Law*, "Arrest," § 23, pp. 465-66.

25 40 *American Law Reports*, Annotated, p. 66, numerous cases cited.

being arrested. In some cases it was stated that when the officer is <u>known</u> he need not show the warrant *before* the arrest, but must show it *after* the arrest. And where the officer is <u>unknown</u> he is to show the warrant *before* the arrest. Other cases where it appeared that the showing of the warrant was not needed is where resistance is offered or threatened before the person asked to see the warrant.

The argument that a known officer need not display his warrant at all, or that in lieu of displaying it need only state the authority under which he is acting, is not justified by the principles for why warrants are needed in the first place. Such an argument could completely take away most of the safeguards of liberty which the requirement for a warrant was established. The true law on the matter requires the officer to possess and display the warrant whether he is known or not, and in addition to his stating the nature and cause for the arrest.

> The generally recognized rule, however, sustained by the weight of authority and particularly in cases of misdemeanors, requires the officer to exhibit the warrant of arrest before the arrest is made, unless there is some resistance.[26]

In an English case cited in 40 A.L.R., Annotated, it was held that where a constable making an arrest did not have the warrant with him, he was not justified in making the arrest. The court said:

> We have already expressed our opinion that, if requested, the officers are bound to produce the warrant; and, if so, the keeping in custody after request and noncompliance would not be legal; and it can hardly be contended that the arrest itself could be legal.[27]

In an older English case, it was said that the doctrine that an officer need not show his warrant was a "dangerous doctrine." The court also stated:

> I do not think that a person is to take it for granted that another who says he has a warrant against him, without producing it, speaks truth. It is very important that, in all cases where an arrest is made by virtue of a warrant, the warrant (if demanded, at least) should be produced.[28]

The reason for the duty of an officer arresting a party by virtue of a warrant was declared in *Com. v. Cooley,* 6 Gray (Mass.) 350 (1856), as being "to explain the cause for which he makes the arrest; to state the nature and substance of the process which gives him the authority which he professes to exercise; and, if it is demanded of him, to produce and exhibit it to his prisoner for his perusal, that he may have no excuse for resistance." The court added that these are obviously successive steps, which cannot all occur at the same instant of time.

In a New York case a man was convicted for resisting a police officer who attempted to arrest him for a past misdemeanor, the warrant being at his office. His conviction was reversed because it was the duty of the officer, at the time of the arrest, to disclose to the defendant his authority and the process under which he was to be arrested. The Court said the state statute was the same as the common law doctrine on this matter:

> [I]f the officer must show the warrant, if required, then it is plain that it must be in his actual possession. It would be absurd to construe this to mean that after making the arrest the officer must, if required, take the

---

26  Walter H. Anderson, *A Treatise on the Law of Sheriffs, Coroners & Constables,* vol. 1, §134, p. 131 (1941).

27  40 A.L.R. 67, citing, *Galliard v. Laxton,* 2 Best & S. 363, 121 Eng. Reprint, 1109 (1862). Also in 51 L.R.A. 202.

28  40 A.L.R. 67, citing, *Hall v. Roche,* 8 T.R. 187, 101 Eng. Reprint, 1337 (1799).

46

defendant to some other place and there show him the warrant.[29]

It is clear that the warrant must at the time of arrest be shown, not at a later time.

In *State v. Phinney*, 42 Me. 384 (1856), the court, in discussing authorities, stated that it is very important in all cases where an arrest has been made by virtue of a warrant, that "the warrant should be produced if demanded."

In *Shovlin v. Com.*, 106 Pa. 369, 5 Am. Crim. Rep. 41 (1884), the court, in explaining the duty of one making an arrest, said:

"It is doubtless the duty of an officer who executes a warrant of arrest to state the nature and substance of the process which gives him the authority he professes to exercise, and, if it is demanded, to exhibit his warrant, that the party arrested may have no excuse for resistance."

In *Jones v. State*, 114 Ga. 79, 39 S.E. 861 (1901), the State Supreme Court held that a constable was not justified in attempting to arrest the defendant under a warrant which was in the sheriff's hands. The court said that, "it was the duty of an officer who attempts to make an arrest to exhibit the warrant if he has one."

### Invalid and Unlawful Warrants

A warrant must have certain requisites in order to render it valid and available as a defense. Many unlawful arrests have been made due to warrants failing to meet such requisites. "Whenever a warrant is invalid on its face, or where it is only a summons, the officer arresting the defendants will be liable in damages."[30] A prima facie invalid warrant will be regarded as no warrant and the officer making an arrest by a void or invalid warrant is not protected by it.

Process that is void on its face is no protection to the officer who executes it. If a warrant, order, or writ of possession shows lack of jurisdiction of the court, the officer is not protected in serving it. In fact, in so doing he becomes a trespasser.[31]

A constable justifying an imprisonment under a warrant must show that the warrant on its face is legal, and that the magistrate had jurisdiction of the subject-matter.[32] Both a proper subject matter jurisdiction and geographical jurisdiction are necessary for a valid warrant. It is generally held that where the court has no jurisdiction the officer executing a warrant will be liable in damages. The question of jurisdiction can be raised at any time, and since neither consent nor waiver can give jurisdiction, the court will not proceed where it appears from the record that it has no authority.[33]

A warrant for the arrest of an alleged fugitive was void because the complaint did not state that the original charge has been made upon oath, or made to a court, and it afforded no protection to the constable.[34]

The requirements of what a warrant should contain depends primarily on constitutional mandates, due process practices and common law principles.

The common law requires that an arrest made on a warrant be issued only after a formal

29 *People v. Shanley*, 40 Hun 477, 478 (N.Y., 1886).

30 51 L. R. A., 197, citing *Frazier v. Turner*, 76 Wis. 562, 45 N.W. 411; *Carratt v. Morley*, 1 Q.B. 18, 1 Gale & D. 45.

31 70 *American Jurisprudence*, 2d Ed., "Sheriffs, Police, and Constables," § 165, pp. 353-54.

32 *Lawyers Reports Annotated*, vol. 51, p. 197, citing, *Poulk v. Slocum*, 3 Blackfords (Ind.) 421.

33 5 *American Jurisprudence*, 2d Ed., "Arrest," § 7, p. 700.

34 *Lawyers Reports Annotated*, vol. 51, p. 197, citing, *Forbes v. Hicks*, 27 Neb. 111, 42 N.W. 898 (1889).

charge is made under oath.[35]  Thus no arrest is valid unless based upon a sworn affidavit.

> An affidavit that does not appear to have been sworn before any judicial officer, and a warrant signed only by the officer who made the arrest and not dated or authenticated, afford no lawful authority for the arrest and detention of an accused.[36]

Another obvious requirement of a warrant that would make it void on its face is if it is not signed by a magistrate or justice of the peace. It has become a practice in some areas to have warrants rubber stamped with the Judges name. This stamping being done by some clerk or administrative employee. This blatantly unlawful practice has been adopted for convenience sake, which is the most common reason or excuse government uses to transcend constitutional limitations. Such limitations were designed to make government follow certain established procedures and thus make things difficult in order to deprive a citizen of his liberty or property. A rubber stamped warrant is invalid on its face as it is not signed by any judicial officer. The authorization for a warrant requires not only judicial authority but is to be done by one who is learned in the law to determine if probable cause exists to issue the warrant.

In Minnesota, the State Supreme Court held that a statute permitting clerks and deputy clerks of the County Municipal Court to receive complaints and issue warrants in prosecutions under municipal ordinances is unconstitutional. The Court said:

> The United States Supreme Court has considered and disposed of a related problem in *Camara v. Municipal Court*, 387 U.S. 523, 541. * * * The majority in Camara nevertheless stressed the need for "individualized review" by a "neutral magistrate" to avoid the issuance of "rubber stamp" warrants.[37]

Since the taking of an affidavit in a criminal proceeding imposes a duty of a judicial nature, an affidavit taken before a clerk or prosecuting attorney is not sufficient as a basis for the issuance of a warrant.[38]

A warrant is regarded as insufficient and thus void if, on its face, it fails to state facts sufficient to constitute a crime.[39] Also, a designation or description of the offense should be written in the warrant, but need not be specified with the same technical strictness that is required in an indictment.[40] The rule on sufficiency of a charge on which a warrant can issue is stated as follows:

> The complaint or charge on which a warrant is issued must set forth the facts constituting the offense on the knowledge of the person making the complaint, and if he does not know them other witnesses must be examined who do know them; and no person can be arrested on the mere belief of the person making the complaint.[41]

A warrant issued for a matter that is not a criminal offense is no justification for a constable who arrests upon it. A person

35  *Morrow v. State*, 140 Neb. 592, 300 N.W. 843, 845 (1941).

36  *Liberis v. Harper*, 89 Fla. 477, 104 So. 853, 855 (1925). Also see 5 Am. Jur. 2d "Arrest," §12, p. 705.

37  *State v. Paulick*, 277 Minn. 140, 151 N.W.2d 591, 596 (1967). Also: *Cox v. Perkins*, 107 S.E. 863, 865 (Ga. 1921).

38  *Cox v. Perkins*, 151 Ga. 632, 107 S.E. 863 (1921).

39  *Wharton's Criminal Procedure*, 12th Ed., vol. 1, § 54, p. 152 (1974). Citing, *Go-Bart Importing Co. v. United States*, 282 U.S. 344, 355 (1930); *Ex parte Burford*, 7 U.S. 448, 451 (1806); *Smith v. Clark*, 37 Utah 116, 106 Pac. 653, (1910).

40  *Delk v. Commonwealth*, 166 Ky. 39, 178 S.W. 1129 (1915); *Moser v. Fulk*, 237 N.C. 302, 74 S.E.2d 729, (1953).

41  2 R.C.L. "Arrest," § 17, p. 460; citing, *Brown v. Hadwin*, 182 Mich. 491, 148 N.W. 693 (1914).

cannot be lawfully arrested by a sheriff acting under a copy of a court order or warrant in the form required.[42] Such copy is not valid.

Inaccuracies and imperfection do not vitiate a warrant which substantially charges an offense. But where a complaint, recited in substance in a warrant, is verified merely on information and belief and does not state facts sufficient to constitute an offense, the warrant must be held to be invalid on its face.[43] Also, an affidavit that merely states belief in the guilt of the accused is insufficient to support a warrant of arrest.[44] The Supreme Court of Kansas said that a warrant cannot be issued which is verified on the county attorney's hearsay and belief:

> If a warrant, in the first instance, may issue upon mere hearsay or belief, then all the guards of the common law and of the bill of rights, to protect the liberty and property of the citizen against arbitrary power, are swept away.[45]

An affidavit based upon a presumption or belief of crime does not give jurisdiction to the court to issue a warrant; and at common law, a constable or sheriff cannot execute a warrant outside their jurisdiction.[46]

To summarize, the following are the basic requisites needed to make a warrant valid :

- A warrant is to be issued by a judicial officer and signed by him.

- It must state the facts that show the matter to be within the jurisdiction of the judicial officer issuing it.

- It cannot be based upon belief or suspicion, but upon probable cause.

- The warrant is to list a complaint which is to state the offense committed and the facts that constitute a crime.

- A warrant is to be supported by a signed affidavit made under oath by the person making the charge.

- It must truly name the person to be arrested, or describe him sufficiently to identify him.

- The warrant must also command that the defendant be arrested and brought before the nearest available magistrate.

The officer is bound to know if under the law the warrant is defective, and not fair on its face, and he is liable as a trespasser, if it does not appear on its face to be a lawful warrant. His ignorance is no excuse.[47] The typical form of a warrant is like this:

### Municipal Court, Springfield Judicial District

To any peace officer of the (realm of jurisdiction): upon signed oath having been brought before me that the crime of larceny has been committed, and accusing John Smith of the same, you are hereby commanded forthwith to arrest and bring that person before me. Bail may be admitted in the sum of $1,000.00. Dated: 15 May 1997. /s/ Bill Wright, presiding judge.

Every citizen should when arrested (or at trial) request to see a warrant and check that it meets required criteria and object if it does not. Point out that the arrest is unlawful and how the warrant is defective. Such vigilance is necessary to secure liberty and to stop unlawful and oppressive measures from continuing in government.

---

42 5 *American Jurisprudence*, 2d ed., "Arrest," § 7, p. 700; citing, *Leighton v. Hall*, 31 Ill. 108 (1863).

43 5 *American Jurisprudence*, 2d Ed., "Arrest," § 8, p. 702.

44 *Giordenello v. United States*, 357 U.S. 480, 78 Sup. Ct. 1245 (1957).

45 *The State v. Gleason*, 32 Kan. Rep. 245, 251 (1884).

46 61 *American Law Reports*, Annotated, pp. 377-379; *Housh v. People*, 75 Ill. 487 (1874).

47 Tiedeman, *Limitations of Police Power*, p. 83, citing: *Grumon v. Raymond*, 1 Conn. 39; *Clayton v. Scott*, 45 Vt. 386.

7

# BRINGING ARRESTED PERSON BEFORE A MAGISTRATE

### Duty of Officer

It is a fundamental rule of procedure well grounded in the common law, that where an arrest is made the alleged offender is to be taken "before a magistrate to be dealt with according to law"[1] This is not only to be done, but done without delay, or without unnecessary delay, otherwise the arresting party is liable for a false imprisonment.

In *Blackstone's Commentaries*, Vol. 4, Chap. XXI, p. 292, it was stated that "A constable may, without warrant, arrest any one for a breach of the peace committed in his view, and carry him before a justice of the peace." The officer must bring a person he has arrested directly to a magistrate, otherwise it is a breach of duty.

It is the duty of an officer or other person making an arrest to take the prisoner before a magistrate with reasonable diligence and without unnecessary delay; and the rule is well settled that whether the arrest is made with or without a warrant, an action for false imprisonment may be predicated upon an unreasonable delay in taking the person arrested before a magistrate regardless of the lawfulness of the arrest in the first instance.[2]

Thus, even if the arrest was lawful, a failure to take the person arrested to a magistrate will be regarded as unlawful imprisonment. As the Supreme Court of Minnesota held:

Even though an arrest be lawful, a detention of the prisoner for an unreasonable time without taking him before a committing magistrate will constitute false imprisonment.[3]

In an exhaustive decision on the common law rule of the process and procedure for arrests, the Supreme Court of Mississippi, in the case of *Orick v. State,* said: "By the common law of England" an "arrest without warrant for a felony" can be made, "only for the purpose of bringing the offender before a civil magistrate." [4]

This procedure is the due process of law to be followed in depriving one of his liberty. Thus a failure or even a delay in following this process is an unlawful restraint or deprivation of liberty and thus a type of false imprisonment. The arresting officer has no authority to take a person to a jail and detain him there. His duty is to take the one arrested without delay to a court or magistrate, as said by the Supreme Court of Kansas:

---

1   *Muscoe v. Commonwealth*, 86 Va. 443, 447, 10 S.E. 534, 535 (1890).

2   *Mullins v. Sanders*, 189 Va. 624, 54 S.E.2d 116, 120 (1949), citing, 22 Am. Jur., False Imprisonment, § 20, p. 366; 35 C.J.S., "False Imprisonment," §§ 30, 31, pp. 545-547. Also: *Peckham v. Warner Bros. Pictures*, 36 Cal. App.2d 214, 97 Pac.2d 472, 474 (1939); *Oxford v. Berry*, 204 Mich. 197, 170 N.W. 83, 88 (1918).

3   *Kleidon v. Glascock*, 215 Minn. 417, 10 N.W.2d 394, 397 (1943).

4   *Orick v. State*, 140 Miss. 184, 105 So. 465, 470 (1925), citing, *Kurtz v. Moffitt*, 115 U.S. 487, 499 (1885).

50

The law contemplates that an arrest either by an officer or a private person with or without a warrant is a step in a public prosecution, and must be made with a view of taking the person before a magistrate or judicial tribunal for examination or trial; and an officer, even, subjects himself to liability if there is an unreasonable delay after an arrest in presenting the person for examination or trial.[5]

The only reason that can justify having an arrested person in jail or detained by the arresting officer, is as a necessary step in bringing him before a magistrate, as so stated by the Supreme Court of Rhode Island:

> When an officer makes an arrest, without warrant, it is his duty to take the person arrested, without unnecessary delay, before a magistrate or other proper judicial officer having jurisdiction, in order that he may be examined and held or dealt with as the case requires. But to detain the person arrested in custody for any purpose other than that of taking him before a magistrate is illegal.[6]

Thus detainment in a jail for purposes of "booking" or fingerprinting or investigating the alleged crime, or interrogation of the prisoner is illegal.

In cases involving the commission of the most severe crimes, as in felonies, the one arresting is still required, without unnecessary delay, to bring the prisoner to the nearest magistrate or court as a matter of fundamental law:

> From the earliest dawn of the common law, a constable could arrest without warrant when he had reasonable grounds to suspect that a felony had been committed; and he was authorized to detain the suspected party

such a reasonable length of time as would enable him to carry the accused before a magistrate. And this is still the law of the land.[7]

The Court went on to state that the officer making the arrest is liable for false imprisonment if he arrests with the intent of only detaining, or if his unreasonable delay causes a detainment. On pg. 1092 it stated:

> It cannot be questioned that, when a person is arrested, either with or without a warrant, it becomes the duty of the officer or the individual making the arrest to convey the prisoner in a reasonable time, and without unnecessary delay, before a magistrate, to be dealt with as the exigency of the case may require. The power to make the arrest does not include the power to unduly detain in custody; but, on the contrary, is coupled with a correlative duty, incumbent on the officer, to take the accused before a magistrate 'as soon as he reasonably can' (authorities cited). If the officer fails to do this, and unreasonably detains the accused in custody, he will be guilty of a false imprisonment, no matter how lawful the original arrest may have been. (Citing, 1 Hil. Torts, pp. 213-14, sec. 9).

Thus, where a person arrested is taken to a jail or sheriff's office and detained there, with no warrant issued before or after the arrest, it is false imprisonment. The one arresting has "a duty to immediately seek a magistrate," and that the failure to do so, "makes a case of false imprisonment, as a matter of law, is held by all the authorities."[8]

In a case involving an indictment for assault and false imprisonment, the Supreme Court of North Carolina held that in the process of a lawful arrest, the one arrested is to be taken immediately to a judge:

---

5   *Garnier v. Squires,* 62 Kan. 321, 62 Pac. 1005, 1007 (1900).

6   *Kominsky v. Durand,* 64 R.I. 387, 12 Atl.2d 652, 655 (1940).   Authorities cited.

7   *Kirk v. Garrett,* 84 Md. 383, 406-07, 35 Atl. 1089, 1091 (1896).

8   *Heath v. Boyd,* 175 S.W.2d 214, 217, (Tex.–1943);   *Brock v. Stimson,* 108 Mass. 520 (1871).

[T]he question occurs, what is the officer to do with the offender when he shall have been arrested without warrant. All the authorities agree that he should be carried, as soon as conveniently may be, before some justice of the peace.[9]

Though this case involved an arrest without warrant, the Court said it is the duty of the arresting officer upon making an arrest, "whether with a warrant or without one," to carry the offender at once before a justice.

To take an arrested person to a jail to be detained and fingerprinted is a violation of his rights. It is proof the officer had no intent to bring the accused directly to a judge. In Anderson's *Treatise on the Law of Sheriffs*, the subject of an officer's duty after arrest was examined with this conclusion:

It is the undoubted right on the part of a prisoner, on being arrested by a public officer or private citizen, and un-questionably a corresponding duty on the part of the one making the arrest, to take the prisoner before a court or magistrate for a hearing or examination and this must be done without unnecessary delay. The object of this right and corresponding duty is that the prisoner may be examined, held, or dealt with as the law directs and the facts of the case require. * * * It is highly improper and an invasion of the lawful rights of the prisoner to take him to any other place than to a proper court or magistrate.[10]

In deciding the proper duty and action of an arresting officer after making an arrest, the Supreme Court of Appeals for Virginia stated that the right of the accused to prompt judicial examination does not depend upon their statute law:

But even if the circumstances of the arrest were not within the purview of this particular statute, it was the duty of the arresting officer to have taken the defendant within a reasonable time, or without unnecessary delay, before a judicial officer in order that the latter might inquire into the matter and determine whether a warrant should be issued for the detention of the defendant, or whether he should be released.[11]

And, in speaking on what manner of arrests were lawful at common law, and what are the procedures under the common law when an arrest is made, the Supreme Court of Rhode Island held that:

Coupled with the authority to arrest went an imperative obligation on the officer to bring the arrested person before a magistrate without un- reasonable delay. Especially was this true where the arrest had been made without a warrant. * * * When an officer makes an arrest, without warrant, it is his duty to take the person arrested, without unnecessary delay, before a magistrate or other proper judicial officer having jurisdiction, in order that he may be examined and held or dealt with as the case requires; but to detain the person arrested in custody for any purpose other than that of taking him before a magistrate is illegal.[12]

This rule of law requiring an officer or person arresting to bring the party arrested before a magistrate is the same in all states and cannot be abrogated by statute. The same rule has been upheld in Federal courts, and is prescribed under Title 18 in the Rules of Criminal Procedure:

An officer making an arrest under a warrant issued upon a complaint, or any person making an arrest without a warrant, shall take the arrested person without unnecessary delay before the nearest

---

9   *State v. Freeman*, 86 N.C. 683, 685-86 (1882).

10   Walter H. Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables*, Vol. I, § 179-80 (1941).

11   *Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611, 615 (1948). Authorities cited therein.

12   *Kominsky v. Durand*, 64 R.I. 387, 12 Atl.2d 652, 654, (1940). Authorities cited therein.

available federal magistrate, or in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041.[13]

In a Federal case where a man was arrested by two F.B.I. agents assisted by two local policeman on an outstanding warrant for bank robbery, the agents placed the man in a police vehicle, drove a few blocks, and then parked on the street under a street lamp. The officers interviewed the man con- cerning the crime and within a few minutes he confessed to the crime. The Federal Court of Appeals said the confession was inadmissible and reversed his conviction, as the momentary parking of the police vehicle en route from the place of arrest was a detour from the path toward a prompt presentment before a magistrate. The Court stated:

> The law requires an arresting officer to bring an accused before a magistrate "as quickly as possible." (Cases cited).[14]

The rights of the accused were violated as he was not "promptly taken before a judicial officer as the law required," but instead was questioned while held in custody. It is said that police are guilty of oppression and neglect of duty when they willfully detain a prisoner without arraigning him before a magistrate within a reasonable time.[15]

In a case where a person sued for being arrested without warrant and confined in a jail without examination before a court or magistrate, it was found on appeal that such action was unlawful, and the Supreme Court of Illinois held:

> We are of opinion, the arrest of the plaintiff was illegal, and the verdict contrary to the law and the evidence. And if the arrest was legal, they did not proceed according to law, and take him before a magistrate for examination, but conveyed him to another county, and there imprisoned him in the county jail, in a filthy cell, thus invading one of the dearest and most sacred rights of the citizen, secured to him by the great charter of our land. *Kindred v. Stitt*, 51 Ill. 401, 409 (1869).

The requirement of bringing an arrested person directly to a court or judge is due process of law, and as such this procedure cannot be abrogated by statute.[16]

### As a Trespasser Ab Initio

It is a familiar rule of law that one who abuses an authority given him by law becomes a trespasser *ab initio*.[17] That is, he becomes a wrongdoer from the beginning of his actions.

Where one fails to take a prisoner he has arrested to a proper judge, or where he causes an unreasonable delay in doing so, the officer becomes a trespasser *ab initio*.[18] The unlawful confinement by an officer makes the entire transaction, including the arrest, unlawful and a trespass.

Thus even in cases where an executive officer had made a lawful arrest, if he fails to

---

13 18 U.S.C.A. "Rules of Criminal Procedure," Rule 5, p. 29.

14 *Greenwell v. United States*, 336 Fed.2d 962, 965 (1964).

15 *People v. Mummiani*, 258 N.Y. 394, 180 N.E. 94, 96 (1932); *Peckham v. Warner Bros. Pictures*, 36 Cal. App.2d 214, 97 Pac.2d 472, 474 (1939).

16 For other cases on this matter see: *Judson v. Reardon*, 16 Minn. 387 (1871); *Long v. The State*, 12 Ga. 293, 318 (1852); *Moses v. State*, 6 Ga. App. 251, 64 S.E. 699 (1909); *Hill v. Smith*, 59 S.E. 475 (Va.–1907); *Folson v. Piper*, 192 Iowa. 1056, 186 N.W. 28, 29 (1922); *Edger v. Burke*, 96 Md. 715, 54 Atl. 986, 988 (1903); *Bryan v. Comstock*, 220 S.W. 475.

17 *Leger v. Warren*, 62 Ohio St. 500, 57 N.E. 506 , 508 (1900).

18 *Great American Indemnity Co. v. Beverly*, 150 F.Supp. 134, 140 (1956).

53

bring the arrested person to a magistrate he becomes a trespasser *ab initio* and liable:

> An officer, who has lawfully arrested a prisoner, may be guilty of false imprisonment if he holds him for an unreasonable length of time without <u>presenting him for hearing</u> or procuring a proper warrant for his detention. [19]

The New York Supreme Court of Appeals stated the correct exposition of the law in a case where it said that "even though the arrest, when made, was legal and justified," the officers "became trespassers *ab initio* and so continued to the time of plaintiff's release because of their failure to take him before a Magistrate as required."[20] And the Court of Claims of New York, in a case where the officers delayed in the claimant's arraignment, held that:

> If there was an unnecessary delay [in arraigning the claimant before a Justice of the Peace], then the arrest itself became unlawful on the theory that the defendants were trespassers ab initio and so continued down to the time when the plaintiff was lawfully held under a warrant of commitment, regardless of whether or not the plaintiff was guilty of any crime (numerous cases cited). In Pastor v. Regan, supra, it is said that: "The rule laid down in the Six Carpenters' case, 8 Coke, 146, that if a man abuses an authority given him by the law he becomes a trespasser ab initio, has never been questioned."[21]

Where one was arrested for being intoxicated and confined in a prison without judicial inquiry, it was held to be a wrongful imprisonment. On this matter the Supreme Court of Washington stated:

> Nor is a police officer authorized to confine a person indefinitely whom he lawfully arrested. It is his duty to take him before some court having jurisdiction of the offense and make a complaint against him. * * * Any undue delay is unlawful and wrongful, and renders the officer himself and all persons aiding and abetting therein <u>wrongdoers from the beginning</u>.[22]

Thus when one fails to perform part of his duty and it impinges upon the rights of a citizen, he is said to be a trespasser from the beginning because his whole justification fails, and he stands as if he never had any authority at all to act.[23]

### Detainment Is Not A Decision Of Arresting Officer

The basis of the well established procedure in law of taking a person arrested directly to a judge or court, is to avoid having the liberty of the citizen unjustly dealt with by extra-judicial acts of executive officers.

> We believe that fundamental fairness to the accused requires that he should with reasonable promptness be taken before a magistrate in order to prevent the application of methods approaching what is commonly called the "third degree." "Fundamental fairness" prohibits the secret inquisition in order to obtain evidence.[24]

Other reasons for the purpose of this rule requiring that the arrested accused "be taken before a magistrate as quickly as possible, is to

---

19  Thomas Cooley, *A Treatise on the Law of Torts*, Vol. 1, § 114, p. 374 (numerous authorities cited therein).

20  *Farina v. Saratoga Harness Racing Assn.*, 246 N.Y.S.2d 960, 961 (1964). *Seguin v. Myers*, 108 N.Y.S.2d 28, 30 (1951).

21  *Bass v. State*, 92 N.Y.S.2d 42, 46-47, 196 Misc. 177 (1949).

22  *Ulvestad v. Dolphin et al*, 152 Wash. 580, 278 Pac. 681, 684 (1929).

23  *Brock v. Stimson*, 108 Mass. 520 (1871), authorities cited; *Hefler v. Hunt*, 129 Me. 10, 112 A. 675, 676 (1921).

24  *State v. Schubert*, 15 N.W.2d 585, 588 (Minn. 1944). Also: *Floyd v. Chesapeake & O. Ry. Co*, 164 S.E. 28, 30 (W.Va. 1932); *U.S. v. Middleton*, 344 Fed.2d 78, 82 (1965).

54

make certain that the person arrested is advised by a judicial officer of his constitutional rights."[25] This is not a duty of the officer through the erroneous "Miranda Warning." The only reason such warnings are being used is because police are not doing their duty in bringing the person arrested to a judicial officer, but instead are unlawfully taking them to a jail to have them "booked."

The detainment of a person after he is arrested is a judicial question.    A judicial officer must decide if there are grounds for holding the person arrested, or whether he must be further examined by trial, or if he is to be bailed and released.  To allow the executive department such powers of decision making is the epitome of despotism.

In a suit for false imprisonment where several officers arrested the plaintiff on grounds he committed a felony, the Supreme Judicial Court of Massachusetts held the officers had no right to decide to detain the plaintiff to enable them to make a further investigation of the charge against him.  The Court declared that:

> But having so arrested him, it was their [the officers'] duty to take him before a magistrate, who could determine whether or not there was ground to hold him. It was not for the arresting officers to settle that question (authorities cited). * * * The arresting officer is in no sense his guardian, and can justify the arrest only by bringing the prisoner before the proper court, that either the prisoner may be liberated or that further proceedings may be instituted against him.[26]

In a case where one was accused by another of stealing a watch, and subsequently arrested

and put in jail for one hour and then released, the sheriff was found guilty of false imprisonment as he "failed to take the person arrested before a magistrate."  The Supreme Court of Indiana upheld the conviction stating that:

> [T]he power of detaining a person arrested, or restraining him of his liberty, is not a matter within the discretion of the officer making the arrest.[27]

The Court further stated that the sheriff cannot legally hold the person arrested in custody for a longer period of time than is reasonably necessary, under all the circumstances of the case, without possessing a proper warrant or taking him before a magistrate.  If he does it is false imprisonment.  Thus where a sheriff had arrested two prisoners and detained them for five hours without making any effort to take them before a magistrate, he was guilty of false imprisonment.  In this case the Supreme Court of Idaho said:

> The rule seems to be that an officer arresting a person on criminal process who omits to perform a duty required by law, such as taking the prisoner before a court, becomes liable for false imprisonment.[28]

The law never allows an officer at his discretion to imprison the person arrested or detain him in a jail after arrest:

> We have no doubt that the exercise of the power of detention does not rest wholly with the officer making the arrest, and that he should, within a reasonable time, take the prisoner before a circuit, criminal, or other judicial court. * * * In a case where the arrest is made under a warrant, the officer must take the prisoner, without any unnecessary delay, before the magistrate issuing it, in

25 *Greenwell v. United States*, 336 Fed.2d 962, 966.  119 U.S.App.D.C. 43 (1964).

26 *Keefe v. Hart*, 213 Mass. 476, 100 N.E. 558, 559 (1913).

27 *Harness v. Steele*, 64 N.E. 875, 878  (1902).  Also, *Stromberg v. Hansen*, 177 Minn. 307,  225 N.W. 148, 149 (1929).

28 *Madsen v. Hutchison, Sheriff, et al.*, 49 Idaho 358,  290 Pac. 208, 209 (1930),  numerous cases cited.

order that the party may have a speedy examination, if he desires it; and in the case of an arrest without warrant the duty is equally plain, and for the same reason, to take the arrested party before some officer who can take such proof as may be afforded.[29]

Executive officers or clerks are not to determine if a person arrested is to be held or released upon bail, or fix the amount of bail, since the power to do so is judicial.[30]

In a case where a person was lawfully arrested for driving an automobile while intoxicated, the arresting officer delivered him to the jailer at 4:30 p.m., with the instruction that he be held there until nine o'clock p.m., at which time he was to be brought before the judicial officer. The Supreme Court of Appeals of Virginia condemned this act asserting that the officer usurped the functions of a judicial officer:

> But the actions of the arresting officer and the jailer in denying the defendant this opportunity [to judicial review] by confining him in jail because they concluded that he was not in such condition to be admitted to bail, had the effect of substituting their discretion in the matter for that of the judicial officer. Under the circumstances here, the defendant was clearly entitled to the benefit of a judicial opinion and judgment upon the question of his eligibility for bail. This right was arbitrarily denied him.[31]

Executive officers cannot hold a person in order to complete paperwork or make out reports. Thus where a man was arrested

without warrant and confined in the county jail without a commitment, the sheriff could not justify the confinement of the man by awaiting the pleasure of a deputy, or any one else, to file a complaint.[32]   The power of the executive officer over a person's liberty ends with the lawful arrest, and he never has a discretionary power to detain the person without judicial authority.

> If the plaintiff was being detained for the purpose of arrest, it was the duty of the arresting officer to take him before an examining magistrate as soon as the nature of the circumstances would reasonably permit. The power to arrest does not confer upon the arresting officer the power to detain a prisoner for other purposes.[33]

### Arresting And Releasing Without Bringing Before a Judge

While most of the emphasis on this type of false imprisonment deals with the *delay* in presenting a prisoner to a judge, the real duty and requirement is the actual bringing, carrying or presenting the prisoner before a judge. Thus a complete *failure* to do this is obviously unlawful, and this most often occurs when the officer releases the person he arrested without judicial presentment.

An officer who arrests an individual, does not have the authority to place such person in a jail, or other holding place, and then later release him.   As was revealed in the case of *Harness v. Steele*,[34] where the sheriff placed the person arrested in jail for an hour and then

---

29  *Simmons v. Vandyke*, 138 Ind. 380, 37 N.E. 973, 974 (1894); citing: *Ex parte Cubreth*, 49 Cal. 436 (1875); *Pratt v. Hill*, 16 Barb. (N.Y.) 303, 307 (1853); et al.

30  *Bryant v. City of Bisbee*, 28 Ariz. 278, 237 Pac. 380, 381 (1925); *State v. Miller*, 31 Tex. 564, 565 (1869).

31  *Winston v. Commonwealth*, 188 Va. 386, 49 S.E.2d 611, 615 (1948).

32  *Bowles v. Creason et al*, 156 Ore. 278, 66 Pac.(2d) 1183, 1188 (1937).

33  *Geldon v. Finnegan et al.*, 213 Wis. 539, 252 N.W. 369, 372 (1934).

34  64 N.E. 875, 878 (1902).

56

released him without bringing him before a Justice of the Peace, he was thus guilty of false imprisonment.

It has become a common practice for arrested persons to be taken to a jail or police station to be "booked" fingerprinted, photographed, measured, questioned, imprisoned and then released after paper work is completed.   This wicked and oppressive procedure is so far removed from what due process of law requires, it is shocking that such measures could be widely accepted as "legal."   The process of imprisonment and release at the discretion of the executive officer was condemned by the Supreme Court of Illinois in stating:

> When officers assume the power to imprison without authority of law, or without any forms or processes usual and necessary to be employed, they become liable for false imprisonment.  The liberty of the citizen cannot be so far trifled with, that any constable in the land may <u>of his own volition, commit and hold him in custody until it suits his convenience or pleasure to release him.</u>[35]

When a constable or sheriff decides to release the person arrested without taking him before a magistrate, he assumes judicial powers upon himself and is liable.    Thus where a town constable arrested a person who was intoxicated, and imprisoned him in "lock-up" until he became sober and then released him without taking him before a magistrate, he acted unlawfully and is liable. In this case the Supreme Court of North Carolina stated:

> Men may not be arrested, imprisoned and <u>released</u> upon judgment or <u>at the discretion</u>

<u>of a constable or any one else.</u> If the alleged offense be criminal in its character * * * the officer may arrest and take the offender before a magistrate for trial. * * * The constable arrested and imprisoned him, not for safe keeping until he could be tried before a competent tribunal, but he imprisoned him until he became sober, according to his judgment, and then released him.  <u>The constable thus constituted himself the judge, jury and executioner.  This is the best description of despotism.</u>[36]

When an officer institutes an arrest, he now has undertaken the duty to bring the arrested party to a magistrate.  The person can only be released by judicial, not executive, authority.

> The duty of the one making an arrest to bring the prisoner before a proper magistrate that proceedings for the trial of the prisoner may be instituted and that he may have an opportunity to give bail or otherwise procure his release, is even more imperative than if a warrant had been issued before arrest; and <u>if the prisoner is released without being brought before such magistrate,</u> the officer or private person who made the arrest becomes a <u>trespasser</u> ab initio. [37]

Arresting a person is a step in prosecution, and if he is released not according to law it is an "escape." Such an escape is a departure of a prisoner from custody before he is discharged by due process of law.[38]  If a person is arrested pursuant to a warrant, he "must be taken to a magistrate before he can be released" (1 Wharton, Cr. Proc., 195).

In deciding if a chief of police acted properly when he put two individuals he

---

35 *People v. McGurn,* 341 Ill. 632, 173 N.E. 754, 757 (1930).

36 *State v. Parker,* 75 N.C. 249, 250  (1876).

37 11 *Ruling Case Law,* "False Imprisonment," § 15, pp. 801-02.  See also, *Williams v. Zelzah Warehouse,* 126 Cal.App. 28, 14 Pac.(2d) 177, 178 (1932).

38 *Hefler v. Hunt,* 120 Me. 10,  112 A. 675, 677 (1921).

arrested in jail over night, and releasing them on their depositing bail, the Federal Court of Appeals said "the actions of the officer in this case were arbitrary and unjust." The police chief had no right to determine bail and then release the prisoners without a hearing before a judge, the Court said:

> In an able opinion (*Ex parte Harvell*, 267 F. 997, 1003), Judge Conner said: "The imprisonment in jail of a citizen without warrant, without opportunity for a hearing or to give bail, is a serious matter. * * * The duty in every case is imperative upon the officer 'to forthwith carry the person arrested before the nearest judicial officer having jurisdiction to hear and determine the legality of such arrest.' *Ex parte Van Hoven*, Fed. Cas. No. 16,858. * * * In 25 C.J. 491 and 493 the general rule is stated as follows: "One making an arrest may be liable in an action for false imprisonment where he <u>fails</u> to take the person arrested before the officer designated in the warrant, or, if the arrest is made without warrant, to the nearest committing magistrate.[39]

If a prisoner accepts his release or is released at his request or with his consent, he does not waive his right of action. To say he has no right to sue under such conditions, is allowing a situation that is "susceptible of working great injustice." Where a person is unlawfully detained, "he has a right of action irrespective of his release." [40]

## Defenses

Just as "good faith does not excuse an unauthorized arrest," likewise, it does not "justify an unreasonable detention and deprivation of one's liberty" caused by a failure or delay in bringing one arrested "before a magistrate." [41]

It has been a common practice for officers to drop off persons they have arrested at a "police station" or "county jail" and leave the prisoner in the custody of others. This is a very dangerous and irresponsible act for an officer to follow. In doing so the arresting officer relinquishes his duty and at his risk relies on others to lawfully deal with the arrested party. No officer can claim exemption from liability when he relies on others to take the arrested person before a judge without delay. He is responsible for the arrested person and cannot rely on others to perform his duty:

> Orders from a superior do not excuse the arresting party from his duty [to bring the prisoner before a judge], nor does delivery of the prisoner into the custody of another person; all those who take part in so detaining a person an unreasonable length of time are liable.[42]

The Supreme Court of Ohio had stated a similar rule:

> The delivery of the plaintiff, after his arrest, into custody of another person, to be by him taken to prison, could not, we think, absolve the arresting officers from the duty required of them to obtain the writ necessary to legalize his further imprisonment. * * * If the arresting officers choose to rely on some other person to perform that required duty, they take upon themselves the risk of its being performed; and, unless it is done in proper time, their liability to the person imprisoned is in no wise lessened or affected[43]

---

39 *Moran v. City of Beckley*, 67 Fed.(2d) 161, 164 (1933). See also, *United States v. Janus*, 30 F.(2d) 530 (1929).

40 *Stromberg v. Hansen*, 177 Minn. 307, 225 N.W. 148, 149 (1929).

41 *Oxford v. Berry*, 204 Mich. 197, 170 N.W. 83, 89 (1918).

42 *Moran v. City of Beckley*, 67 Fed.(2d) 161, 164 (1933).

43 *Leger v. Warren*, 62 Ohio St. 500, 57 N.E. 506 (1900).

One of the most common defenses raised in suits of false imprisonment of this nature, involve arguments of whether the delay in bringing one to a court was reasonable or necessary. In Virginia it was said that in determining whether an arrested person has been brought before a magistrate "with all practicable speed," or without unnecessary delay, depends upon the circumstances of the particular case. "Ordinarily, this is a question for the jury unless the facts are disputed."[44]

The Common Law principle is that an officer is to present the person arrested "without delay" to a magistrate. This means no delay of time is allowed which is not incident to the act of bringing the accused to a magistrate. The cause of this breach of duty arises from the officer's total failure to act, or failure to act timely. If he does not act diligently, he may not act timely.

A reasonable time is not when the officer has free time, but means promptly, immediately, and without delay, as soon as the circumstances permit. It was stated in an earlier case in New York that:

> [I]t was the duty of the officer making the arrest to convey the prisoner immediately before the nearest magistrate. [45]

In determining whether or not an officer's failure to take an arrested man before a magistrate immediately after his arrest was an unnecessary delay, the Supreme Court of Texas stated:

> The accused has the right to be presented without delay, but the question of what is delay must be determined by all the facts and circumstances. Necessarily some time must elapse between the arrest and the presentment before the magistrate. [46]

It has been the practice of legislatures and courts to establish set times of 24, 36, or 48 hours for the delay allowed from the time of arrest until presented to a magistrate. Such measures are blatant acts of tyranny, as anyone can see that if such power exists to allow a delay of 24 hours, then the power also exists to delay in 72 hours or 168 hours. The Common Law Rule nullifies the exercise of such arbitrary power.

Thus the only defense of this breach of duty is to account for the time in a delay.

It has been held that a delay of from 1 1/2 to 4 hours in failing to take a prisoner before the magistrate, arrested without a warrant, constitutes false imprisonment. [47]

If an officer delays 36 hours in bringing one arrested to a magistrate, but can account for the delay of time by such reasons as bad weather, the judge was not immediately available, the one arrested needed medical attention, etc., he is not then liable for false imprisonment. But if an officer detains one he arrested for ten minutes to see if he will confess, the officer becomes a trespasser and is liable.

The liberty of citizens is too sacred to be interfered with without established sanctions by which the law guards it. But it is clear that the trend over the past 50 years has been to give police more arbitrary discretion in stopping people, making arrests, and imprisoning people. One thing history teaches us is that governments never restore lost rights and freedoms. Only citizens have ever done this.

44 *Mullins v. Sanders*, 189 Va. 624, 54 S.E.2d 116, 120 (1949); *Brown v. Meier & Frank Co.*, 86 P.2d 79, 83 (Ore. 1939).

45 *Green v. Kennedy*, 48 N.Y. Rep. 653, 654 (1871).

46 *Hicks v. Matthews*, 266 S.W.2d 846, 849 (Tex. 1954).

47 *Williams v. Zelzah Warehouse*, 126 Cal.App. 28, 14 Pac.(2d) 177, 178.

8

# DISTORTION OF FUNDAMENTAL LAW

As we look at the common law principles and procedures for arrests which have existed for hundreds of years, as compared with the law enforcement methods employed by most tyrannical forms of government, it is evident that we are closer to the latter. There are several reasons for this trend towards oppressive control over the citizen.

### Due Process Neglected

Due process, or the law of the land, is to act a shield against arbitrary activity of government. Since the days of King John and Magna Carta, history shows it is the first thing violated by over-bearing rulers. In America the due process provision embraces common law maxims and principles. In fact there are many cases where the courts would cite the common law requirements for an arrest without warrant, but then would cite and follow some statute on arrest which was contrary to the common law principle.

In nearly all of these cases where statutes contrary to the common law were upheld, we fail to find arguments asserting the requirement of due process of law. And in very few of them was the arrest treated as a deprivation of liberty, which cannot be done except by due process of law.

This departure from the common law rule on arrest is not all the fault of the courts, but also of those unlawfully arrested for failing to raise the proper arguments in court. While there are many cases in which the arrested party has asserted the common law rule on arrest, in most

they have failed to also claim the due process clause. Without such a constitutional plea, the statute prevails.

Since the time this country was founded there have been hundreds of cases involving false imprisonment or unlawful arrest. Yet the proper due process argument is scarcely to be found among them. It is amazing that in 200 years of our country's history, so few have argued this most basic and important provision of constitutional law in defense of liberty in such cases.

This failure to claim due process in arrest cases over this period of time certainly does not say much about those in the legal profession. The incompetency of most lawyers was express by Chief Justice Warren Burger when he stated that "nine out of ten lawyers are incompetent." Most lawyers are not independent thinkers; instead they are nothing more than programmed robots who follow the path laid down by the prevailing system—whether it be just or corrupt. When it becomes corrupt, they will follow corrupt rules and statutes above fundamental law.

This failure on the part of lawyers is especially remarkable when we consider the ancient existence of this due process guarantee, and that it is prominently found not only in our constitutions, but in *Magna Carta*, which proclaims:

> No free man shall be taken or imprisoned or dispossessed, * * * except by the legal judgment of his peers or by the law of the land.

The word "taken" has sometimes been translated as "seized" and "arrested." The phrase "law of the land" means the same as "due process of law," and refers to the law already established in the land. Thus no one could be arrested except by the established common law that prevailed in the land. It does not mean some new law that the legislature might devise.[1]

The due process argument in false imprisonment cases will nullify the statutes, rules and ordinances that are contrary to the common law rule on arrest. No legislative act can abrogate what is the law of the land, otherwise there is no such thing as due process. Government has encroached upon the citizen's liberty by ignoring due process.

The common law allowed arrests without warrant only for known felonies and breaches of the peace. This is a required condition under "due process of law" in order to arrest someone. Thus it has been said that:

> Arrest without warrant, where a warrant is required, is not due process of law; and arbitrary or despotic power no man possesses under our system of government.[2]

It should be quite obvious that if the legislature can say that arrests can be made without warrants for all misdemeanors committed in the presence of an officer, it can say that such arrests can be made when the misdemeanor is not in the presence of the officer. It also could say that such warrantless arrests can be made for mere suspicion, or because someone might break a law. All would be subject to summary arrests without question or warrant.

One of the main reasons that a sword was put to King John to sign Magna Carta, and why the American colonists took up guns against King George III and his army, was to prevent the arbitrary acts of government in depriving people of their rights and liberties. Human nature as it is, such arbitrary action is the natural tendency of those having power in government; and without the due process provision, government is free to encroach upon the rights and liberties of citizens with immunity.

The term "due process of law" had a well settled meaning when the constitution was adopted. The framers thereof intended to perpetuate and secure the many principles, laws and rights, all of which could not be listed, against abrogation. Subsequent legislation cannot change the meaning or effect of this constitutional provision, and thus cannot change the procedure by which one is to be deprived of his liberty by way of arrest. An arrest cannot be done except by the law of the land, or due process of law.

## Fourth Amendment Argument

Another reason for the distortion that has prevailed in the matter of arrests is the frequent misuse or misapplication of the Fourth Amendment in the U.S. Constitution, or similar provision in the State Constitution, used as a defense to arrests without warrant.

The Fourth Amendment, which guarantees "the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures," generally does not apply to arrests made without warrants, but only those made with

---

[1]  For more information on this principle of law refer to *"Life, Liberty and Property"* by the author.

[2]  *Muscoe v. Commonwealth*, 86 Va. 443, 10 S.E. 534, 536 (1890).

warrants.[3]   The provision regulates how warrants are to be issued: "no warrant shall issue, but upon probable cause, supported by oath . . ." If an arrest was made with a warrant, it must follow the criteria of the Fourth Amendment otherwise it is an unlawful arrest, as the warrant would be illegal. But where there was no warrant, this provision is not applicable, rather we would apply the standards of due process of law.

In one case in Illinois where a person was arrested without warrant pursuant to a statute, the person arrested questioned whether the statute is in violation of the search and seizure section of the State Constitution, similar to the 4th Amendment. The State Supreme Court said:

> But this [section] has application only to warrants. It does not abridge the right to arrest without warrant in cases where such arrests could be lawfully made at common law before the adoption of the present constitution.[4]

It is perhaps due to the ignorance of so many in the legal profession that we so often find this Fourth Amendment argument used as a defense against a warrantless arrest.

The Fourth Amendment argument in cases involving arrests without warrant have been the most common defense raised, and the distortion in law it has created has been all too great. Due to this erroneous argument, the courts have developed the concept that any and all arrests are lawful as long as there was "probable cause." But under the common law, unless there is a felony,

probable cause has no bearing on an arrest without warrant. Probable cause is to be a criteria in issuing warrants, but it now has been used as a means to get around using them in misdemeanor arrests. This is now adopted policy and many modern court decisions reflect this distorted argument.[5]

## Highway Traffic Laws

Traveling down the road today in an automobile through most any town, a citizen can become subject to hundreds of laws, rules, ordinances and regulations which a citizen traveling in a wagon in 1900 never experienced. In fact, the bulk of these laws and regulations never could have been applied to the citizen traveling in 1900.

Because of the exposure to "traffic violations," the general public has been affected by many aspects of law enforcement that they would not otherwise experience. This experience includes arrests, searches, seizures, stopping to check for licenses, registrations, or seat belts, drunk driver tests, all kinds of automobile inspections, tickets, arraignments, and court trials.

In examining the court cases over the years involving these "traffic violations," there is a clear struggle and conflict between the fundamental rights of citizens and an extraordinary system of law enforcement. It is a system which is oppressive and despotic in nature, and which can summarily and arbitrarily deprive a citizen of his liberty.

---

3   1 Am. Law Rep., Annotation, 586; 5 Amer. Juris. 2d, "Arrest," § 2, p. 697.

4   *North v. People,* 139 Ill. 81, 28 N.E. 966, 972 (1891); see also *Burroughs v. Eastman,* 101 Mich. 419, 59 N.W. 817.

5   An example of this inaccurate argument of law was stated by the Supreme Court of Minnesota which said: "The Test, then, for the lawfulness of plaintiff's arrest is whether it was made with 'probable cause'." *Lundeen v. Renteria,* 224 N.W.2d 132, 136 (1974). This distorted and inept argument, as applied to misdemeanor arrests, has been pulled out of the air. There is no foundation for this to be found anywhere in law, but much to the contrary exists (see pg. 34).

62

How did such a system get a footing in America? This extraordinary control over the liberty of the citizen was established by having people sign up for a "driver's license." As with any license, those who accept one agree to be bound by the terms and rules under the license. They consent to its rules.

As an example, when a person consents to a search of his premises, that consent acts as a waiver of the right to assert that the search was unlawful, or that a search warrant was needed; and any evidence found in such a search can be used against that person.[6]

In a similar manner, when citizens have accepted a "driver's license" to do what they already have a fundamental right to do—travel down the roads—they have in effect consented to a law enforcement system that is contrary to that known at common law or under our Bill of Rights. They have consented to the rules and regulations of this system and cannot argue the common law or the Bill of Rights for they are not controlling when doing things under the license.

One of the rules under the driver's license is that a licensee can be stopped at any time by a police officer and be required to display his license to him. As it is stated in a Minnesota statute:

> Every licensee shall have his license in his immediate possession at all times when operating a motor vehicle and shall display the same, upon demand * * * by an officer authorized by law to enforce the laws relating to the operation of motor vehicles on public streets and highways.[7]

Note who is required under this statute to submit to a 'stop and check' by police officers and display their license. It is not every citizen traveling in his automobile, but "every licensee," that is, those who have accepted a driver's license. The *State v. Fish* case also said that "police officials may set up highway roadblocks for the purpose of requiring motorists to display their driver's license," and that such a practice "does not constitute an unlawful arrest."

It was firmly held at common law, as stated by Blackstone, that one would be guilty of "false imprisonment" by the act of "forcibly detaining one in the public streets."[8] It even has been recognized in modern courts that officers stopping persons on the road is an arrest:

> When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case was complete.[9]

However, such arrests or detentions are regarded as being "reasonable," and don't need to fall within the "common law exceptions." Why? Because the people stopped had driver's licenses.

Since the vast majority of the people have voluntarily accepted the driver's license without objection, the courts have taken this as universal compliance with the licensing laws. Thus where one does not have a license it is regarded as public policy that they have no authority to drive the car upon the roads, despite the fact that they always had an inherent right to do so.[10] Thus the courts

---

6   *City of St. Paul v. Stovall,* 225 Minn. 309, 30 N.W.2d 638, 641 (1948).

7   Minn. Stat. § 171.08, cited in *State v. Fish,* 280 Minn. 163, 167 (1968).

8   3 Blackstone, *Commentaries on the Laws of England,* 127; citing *Coke's Institutes,* 2 Inst. 589.

9   *State v. Fish,* 280 Minn. 163, 166; citing: *Henry v. United States,* 361 U.S. 98, 103 (1959).

10   For information on this point see *The Right To Travel,* by the author.

have treated all citizens as being required to be license holders, and subject to the corresponding rules and regulations under the license, including being subject to arbitrary stops, arrests and seizures without warrant.

In a case in New Jersey, where two people were traveling in an automobile through Jersey City, they were stopped and arrested by police officers because they did not have a driver's license. The two were taken to the station house where they were "held for investigation." The Court held this oppressive procedure to be valid. It even cited the "common law rule" on arrest, asserting that other than to apprehend a felon or prevent a breach of peace, "the law did not allow an officer to exercise the function of determining whether there was a sufficient cause for an arrest." While this law on arrest had long been recognized in the State, the Court excepted by stating:

> But the <u>authority to arrest</u>, in the circumstances here presented, is <u>derived from chapter 208</u> of the Laws of 1921, as amended by chapter 171 of the Laws of 1931. This act requires the registration of all automobiles driven in this state, whether owned by residents or nonresidents, and <u>the licensing of operators</u> of such vehicles. It directs that * * * this license and the registration certificate shall be in the possession of the driver or operator at all times. * * * A further <u>requirement</u> is that the driver shall, when so requested by a police officer * * * exhibit his operator's license. * * Section 31 (1) of Act 1921, vests in any constable or police officer <u>authority to arrest</u>, <u>without warrant</u>, any person violating * * * any of the provisions of the act, and bring the defendant before any magistrate.[11]

Even though the common law on arrests was frequently upheld by the high court of this state in the past, when the driver's license law was enacted, the people were tricked into becoming subject to a new system of law enforcement. One that could arbitrarily stop and arrest citizens without warrant who had committed no felony or breach of peace.

It is to be noted that there was no due process of law argument which would have nullified the driver's licensing statute that allows arrest contrary to the common law. In like manner, there was no argument that the officers failed to take the two persons to a magistrate after the arrest, which even the statute required. Failing to raise the proper argument is always a fatal mistake.

In a case in Tennessee, which involved a misdemeanor, a man was arrested while he was traveling in the state. The State Supreme Court laid down several good principles of law, and related them to the American Revolution. It stated that "the stopping of a car by an officer for the inspection of a driver's license, or for any purpose where it is accomplished by the authority of the officers, is in fact an arrest, even though it be a momentary one in some cases." This is a true point of law and anyone can see that such a stop is an arrest. But such an arrest is consented to by way of the driver's license, as the court further stated:

> One of the few <u>exceptions</u> of the law relating to arrests without a warrant is the authority of highway patrol officers to <u>stop a car</u> and demand to see the license of the operator. This authority in itself is <u>not known to the common law</u> and is <u>of statutory origin only</u>. In fact, the authority is implicatively given in provisions of the laws relating to the issuance of <u>licenses to drive automobiles</u>.[12]

---

11 *Pine v. Okzewski,* 112 N.J.L. 429, 170 A. 825, 827 (1934).

12 *Robertson v. State,* 198 S.W.2d 633, 635-36 (Tenn., 1947).

64

This statement makes clear the reason for the "exceptions" to the common law rule to arrest— it is the acceptance of a driver's license. The terms of the license allow on the spot arrests to check for valid licenses and what ever else the legislature or the courts may decide is necessary.[13]

When one accepts such a license, then all of the sound and just principles of law, all of the constitutional safeguards, and all of the rights at common law no longer apply to them. Thus the decision here is not actually contrary to fundamental law because the licensee waived his right to that law. The people, of course, were never told that such a license would remove certain protections of the law and suppress certain inalienable rights, nor will they ever be told this by the government.

### Resisting Arrest

There are many cases on record involving actions against persons for assault of an officer or for resisting arrest. These cases are important in that they reveal the limitations of the executive officers in making arrests, and they reveal the high regard the law places upon individual liberty.

It must be remembered that an unlawful arrest is in itself an assault and a trespass, and the law regards such arrests as any other assault which may be resisted by the party being assaulted. As a result it is imperative that officers adhere to the law, as revealed by the Supreme Court of South Carolina:

Common as the event may be, it is a serious thing to arrest a citizen, and it is a more serious thing to search his person; and he who accomplishes it, must do so in conformity to the laws of the land. There are two reasons for this: one to avoid bloodshed, and the other to preserve the liberty of the citizen. Obedience to law is the bond of society, and the officers set to enforce the law are not exempt from its mandates.[14]

Where officers do not conform to the "law of the land" they have no authority and the right to resist them exists. A public officer, as with a citizen, who unlawfully threatens life or liberty, is susceptible to be injured or killed; for by such acts *they draw their own blood upon themselves.*" As stated in some cases, "where a peace officer has no right to make an arrest without warrant, he is a trespasser and acts at his own peril."[15]

Due to this, resisting unlawful arrests is another area that has been distorted by modern courts. This is because police today are constantly making unlawful arrests, and if people ever become aware of their right to resist such arrests, a majority of police would end up dead or quitting their jobs. Without a police force the corrupt government cannot enforce its corrupt system and could conceivably fall apart or die itself. Thus distortions of law are declared from the modern courts on this matter, as was stated by a recent Minnesota decision:

This court has, however, rejected the argument that defendant has an additional constitutional right to resist an illegal arrest.[16]

---

13 It has been erroneously held that a state trooper can make an "investigative stop" for nothing more than "suspicion" of "criminal wrongdoing" *State v. Johnson,* 444 N.W.2d 824 (Minn., 1989). Such despotic measures are not to be found in the common law and have no place in a free nation.

14 *Town of Blacksburg v. Beam,* 104 S.C. 146, 88 S.E. 441 (1916); *Allen v. State,* 197 N.W. 808, 810-11 (Wis. 1924).

15 6A *C. J. S.,* "Arrest," § 16, p. 30. A sheriff who "acts without process," or "under a process void on its face, in doing such act, he is not to be considered an officer but a personal trespasser." *Roberts v. Dean,* 187 So. 571, 575 (Fla. 1939).

16 *City of St. Louis Park v. Berg,* 433 N.W.2d 87, 91 (Minn. 1988).

A corrupt government would naturally not want people opposing its unlawful and corrupt measures. To show how judicially corrupt and invalid this decision is, let us look at some earlier decisions on this matter.

Where an officer without a warrant attempted to make an arrest for a misdemeanor, and the person sought to be arrested had no notice that an attempt to arrest was being made by lawful authority, it was held that such person had the right to resist the attempted arrest.[17] The Supreme Court of Georgia later upheld this principle by saying:

> A citizen unlawfully arrested has a right to resist force with force in proportion to that being used to detain him. An unlawful arrest is an assault; the manner in which it is made may make it an assault and battery or a graver offense. If no more than proper force is used by the person sought to be illegally arrested in resistance thereof, he is guilty of no offense. * * * Generally, to slay a person who without authority of law is seeking to make an arrest for a misdemeanor, where the motive of the slayer is merely to avoid arrest, would be manslaughter, and not murder.[18]

In a case where there was transfer of an automobile, the new owner had called a police officer who, without warrant, arrested a woman involved because she refused to comply with his request to transfer the automobile, keys and certificate. The woman resisted the arrest and was convicted of resisting arrest. On appeal the Court of Appeals of Ohio said there was no offense committed by the woman in the presence of the officer, and there was no authority to make the arrest, and the woman was entitled to refuse to comply and to resist the officer. The Court held:

> What of the resistance to the arrest? The authorities are in agreement that since the right of personal property is one of the fundamental rights guaranteed by the Constitution, any unlawful interference with it may be resisted and every person has a right to resist an unlawful arrest. * * * and, in preventing such illegal restraint of his liberty, he may use such force as may be necessary.[19]

The law that allows one to resist an unlawful arrest is the same law that allows them to repel an attack or an assault upon them — it is the law of self defense and self preservation. One has an inalienable right to protect his life, liberty or property from unlawful attack or harm.

This law allows another person to come to the aid of one being unlawfully arrested, just as it does where one is being assaulted, molested, raped or kidnaped. Thus it is not an offense to liberate one from the unlawful custody of an officer, even though he may have submitted to such custody without resistance.[20]

In a case in Maine a man had resisted an officer trying to arrest him, and both parties claimed that the other was the unprovoked aggressor and struck the first blow. The Supreme Judicial Court of Maine held:

> An illegal arrest is an assault and battery. The person so attempted to be restrained of his liberty has the same right, and only the same right, to use force in defending himself as he would have in repelling any other assault and battery.[21]

---

17 *Franklin v. Amerson,* 118 Ga. 860, 45 S.E. 698 (1903).

18 *Graham v. State,* 143 Ga. 440, 85 S.E. 328, 331 (1915).

19 *City of Columbus v. Holmes,* 152 N.E.2d 301, 306 (Ohio App. 1958).

20 *Adams v. State,* 121 Ga. 163, 48 S.E. 910 (1904).

21 *State v. Robinson,* 145 Me. 77, 72 Atl.2d 260, 262 (1950).

66

The Court went on to say that the person illegally arrested "cannot initiate the use of force," and that "words alone do not justify an assault." Thus a mere statement by an officer that a person is under arrest, even if there is no authority to arrest, "does not justify an attack by him on the officer before any physical attempt is made to take him into custody." This is basic law based on common sense which would apply to any two persons who would have a dispute between them. But where the officer initiates the assault by physical contact, which is usually the case, and there is an unlawful arrest, the citizen has the right to protect his liberty to the extent of killing the officer, as stated by the Supreme Court of Appeals of West Virginia:

> What rights then has a citizen in resisting an unlawful arrest? An arrest without warrant is a <u>trespass</u>, an unlawful assault upon the person, and how far one thus unlawfully assaulted may go in resistance is to be determined, as in other cases of assault. Life and liberty are regarded as standing substantially on one foundation; life being useless without liberty. And the authorities are uniform that where one is about to be unlawfully deprived of his liberty he may resist the aggressions of the offender, whether of a private citizen or a public officer, <u>to the extent of taking the life of the assailant</u>, if that be necessary to preserve his own life, or prevent infliction upon him of some great bodily harm.[22]

This case was cited and supported by the Supreme Court of Washington, who stated that the rule to follow is that the force used in resisting an unlawful arrest must be reasonable and proportional to the injury attempted. The Court held that:

> It is the law that a person illegally arrested by an officer may resist that arrest, even <u>to the extent of the taking of life</u> if his own life or any great bodily harm is threatened.* * *Every man, however guilty, has a right to shun an illegal arrest by flight. The exercise of this right should not, and would not, subject him to be arrested as a fugitive.[23]

Where an arrest is unlawful, the officer becomes a wrongdoer, and the basic concept of resisting him cannot be denied, as said by the Supreme Court North Carolina:

> The offense of resisting arrest, both at common law and under the statute, presupposes a lawful arrest. It is <u>axiomatic</u> that every person has the <u>right to resist an unlawful arrest</u>. In such case the person attempting the arrest stands in the position of a wrongdoer and may be resisted by the use of force, as in self-defense.[24]

Thus in a case involving a charge of "resisting arrest" in which there was a struggle and fight, and it was found that the officer had no authority to make the arrest, it was the officer who was regarded as the aggressor, not the person resisting, as the Supreme Court of Mississippi said:

> The courts generally hold that the right to <u>resist an unlawful arrest is a phase of the right of self-defense</u>; * * * the officer attempting to make an unlawful arrest is simply the aggressor in the difficulty, and stands in the shoes of any other aggressor in a like difficulty. * * * These courts hold that a person has as much right to resist such an invasion of his personal liberty as he has to resist death or serious bodily harm.[25]

The subject of "Resistance to Illegal Arrest," is dealt with in detail in *American Jurisprudence,* where it states:

---

22 *State v. Gum,* 68 W.Va. 105, 69 S.E. 463, 464 (1910).

23 *State v. Rousseau,* 40 Wash.2d 92, 241 P.2d 447, 449 (1952); *Porter v. State,* 124 Ga. 297, 52 S.E. 283, 287 (1905).

24 *State v. Mobley,* 240 N.C. 476, 83 S.E.2d 100, 102 (1954), authorities cited therein.

25 *Wilkinson v. State,* 143 Miss. 324, 108 So. 711, 712-13 (1926).

Plummer told the marshal to keep back from him and walked away from him. The dialog was repeated. The marshal dodged behind trees and crept up to Plummer and struck him on the head with his billy club, and again on the back and arm, which knocked the revolver out of Plummer's hand, and thereupon the marshal fired on Plummer, missing him. Immediately thereafter Plummer fired at the marshal missing him. Several more shots were fired between them when Plummer fired the fatal shot that killed the marshal. Plummer was charged with six different counts of murdering the marshal. A trial resulted in a verdict finding him guilty of voluntary manslaughter. The Supreme Court of Indiana said the verdict was contrary to the evidence, and that Plummer was justified in his actions, holding that:

> The law does not allow a peace officer to use more force than is necessary to effect an arrest. An if he does use such unnecessary force, he thereby becomes a trespasser from the beginning, and may be lawfully resisted.

> If the officer is resisted before he has used needless force and violence, he may press forward and overcome such resistance, even to the taking of the life of the person arrested, if absolutely necessary. * * * But here the evidence wholly fails to show any necessity for the marshal's act in striking Plummer on the head with his club. He was therefore a trespasser in doing so, and was guilty of an aggravated assault and batter on Plummer.

> He did not stop at that, but he shot at Plummer with his revolver immediately after he struck him on the head, and before Plummer had fired at him. This gave Plummer a clear right to defend himself, even to the taking of the life of his assailant.[31]

In understanding this law on resisting arrest it is clear to see why a corrupt government, such as prevails today, would not want this fact of law to be readily known or accepted. As a government becomes more despotic, militant and totalitarian, so does the armed police forces of that government. Liberal and unlawful arrests are now the norm rather than the exception. If people upheld their rights in this matter, it would upset such a corrupt system.

The United States Supreme Court, and every other court in the past deciding upon the matter, has recognized that "at common law," a person had the right to "resist the illegal attempt to arrest him."[32] But the corrupt, modern day courts, such as the Minnesota Supreme Court, has attempted to deny that right, a right which all acknowledge that any animal has in defense of itself.

In a corrupt government as we see today, the police forces are taught and trained by the corrupt system, conveying to them false concepts of what is lawful. They are told not to trust any citizen, only another officer. As a result many patriots have ended up assaulted or killed by this armed force of the corrupt government. The citizen in a confrontation with this hostile and oppressive police force, now has a justifiable right to resist it out of fear of their lives. It has been held that a person can resist any arrest where he "has reasonable grounds to believe that the officer is not acting in good faith," and that "by submitting to arrest and being disarmed he will, by reason of this fact, be in danger of great bodily harm or of losing his life."[33]

31 *Plummer v. The State*, 135 Ind. 308, 313, 34 N.E. 968 (1893).

32 *John Bad Elk v. United States*, 177 U.S. 529, 534-35 (1899).

33 *Caperton v. Commonwealth*, 189 Ky. 652, 655, 225 S.W. 481, 483 (1920).

### Handcuffing

The people's lack of understanding of the law, or lack of concern for it, has allowed government to establish many unlawful and oppressive procedures in making arrests, etc. The use of handcuffs is a typical example of this.

The practice of physical restraint by handcuffing, leg irons, rope, straight-jackets and the like has historically been limited to those who had committed the most serve crimes, such as felonies, or have exhibited a violent temperament.   In book 51 of the *Lawyers Reports Annotated,* p. 216, are listed several cases which show that the rule pertaining to handcuffing procedures "must depend upon the circumstances of each particular case."  In citing and older English case it was held that the right to handcuff one in custody may exist "by reason of violence of language or conduct" of that person, however:

> There cannot be any general rule that will
> justify a constable in resorting to the
> extreme measure of handcuffing a person, in
> custody for a misdemeanor, to a felon, and
> marching them through the public streets
> from the police station to the magistrate's
> office.[34]

One who is accused of or guilty of a misdemeanor cannot be lawfully handcuffed while in the custody of an officer, and in some cases the prohibition extends to a felon. Usually handcuffing is justified only where one has attempted escape or has exercised violence toward the officer:

> But a constable cannot justify handcuff- fing
> a prisoner unless he has attempted to
> escape, or unless it be necessary in order to
> prevent his doing so. [35]

There thus can be no general law which requires or allows the handcuffing of every one arrested, as is the rule police now follow.

In the English case of *Osborn v. Veitch,* 1 Foster & Fin. Eng. Rep. 317, where a lawful arrest was made for a misdemeanor, it was held that "the handcuffing was utterly unlawful."   When the person handcuffed sued the officer, a verdict was rendered for the plaintiff.

Thus the unwarranted use of handcuffs is regarded as an assault and battery and the person doing the handcuffing can be sued for the trespass.

### Post-arrest Booking Procedures (Fingerprinting, etc.)

The entire concept of proper procedure of dealing with one in custody after arrest has been further corrupted by the liberal "booking procedures" and post-arrest tests. This includes such acts as finger printing, measuring, photographing, blood, urine and breath tests, dexterity tests, etc. This subject needs to be covered here as it is not only directly connected with the procedure of arrest, but involved the right of liberty as does the subject of arrest.

In an early New York case, a man named Gow was charged and indicted by a grand jury with the crimes of grand larceny and forgery. Before his release on bail pending trial, a member of the police force of New York instructed Gow that he must come to police headquarters where he was to be measured, photographed, and fingerprinted.   The Supreme Court of New York said:

---

34  51 L.R.A. 216, citing: *Leigh v. Cole,* 6 Cox's English Criminal Cases 329.

35  51 L.R.A. 216, citing: *Wright v. Court,* 4 Barnewall & Cresswell's English King's Bench Reports.

70

Was the act of the officers of the police department in compelling the petitioner to submit to having his photograph taken and these measurements and imprints [fingerprints] made a lawful or an unlawful act? * * * To subject a citizen, never before accused, to such indignities, is certainly unnecessary in order to 'detect and arrest' him; for he must have been detected and arrested before he can be so dealt with. It is unnecessary to 'prevent crime,' for the acts for which indictment has been found, if criminal, have already been committed. * * * The exercise of any <u>such extreme police power</u> as is here contended for <u>is contrary to the spirit of Anglo-Saxon liberty.</u> * * * The acts of the police department here criticized were not only a gross outrage, not only perfectly lawless, but they were criminal in character. Every person concerned therein is not only liable to a civil action for damages, but to criminal prosecution for assault.[36]

The Court also made it known that it was "the duty of every member of the police force under penalty of a fine or dismissal from the force, immediately upon arrest, to convey the offender, not to police headquarters to be photographed and measured, but 'before the nearest sitting magistrate that he may be dealt with according to law'" (p. 1016). This was not only required by the city charter, but by fundamental law.

The *Gow* case was upheld several years later by the Supreme Court, in a case where it was acknowledged "that the taking of the plaintiff's picture before conviction was an illegal act."[37]  In 1926, a law was passed whereby all person charged with a felony, specified misdemeanors, and one species of disorderly conduct, shall forthwith, upon arrest, be submitted to fingerprinting, a practice before permitted only after conviction.   The law prohibited anyone being admitted to bail until they were fingerprinted to ascertain whether he has previously been convicted of a crime.  A New York Court stated that the new law "involved a serious invasion upon the liberty of our people," and gave several reasons why such a law was not constitutional:

Article 1, section 5, of the Constitution of the state of New York, provides: *"Excessive bail shall not be required."* The prohibition against excessive bail necessarily includes the denial of all bail. * * * A defendant is arraigned, in fact innocent, and refuses to submit to finger printing. A recoilment from it is not unnatural. It cannot be said that the refusal is unreasonable or unjustified. Yet he is denied bail. The requirement for finger printing is oppressive and unreasonable. It contravenes article 1, section 5, of the Constitution of the state of New York, and in my judgment is unconstitutional.

There are other grounds upon which the unconstitutionality of the law must be declared. Article 1, section 6, of he Constitution of the state of New York provides: *"No person shall * * * be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty or property without due process of law."* Finger printing is an encroachment on the liberty of a person. It is justifiable, as is imprisonment, upon conviction for crime, in the exercise of the police powers of the state, for the purpose of facilitating future crime detection and punishment. What can be its justification when imposed before conviction?

To charge that one's fingerprint records have been taken would ordinarily convey an imputation of crime, and very probably support a complaint for libel *per se*. In my judgment, compulsory finger printing before conviction is an unlawful encroachment upon a person, in violation of the state c.

---

36 *Gow v. Bingham*, 107 N.Y. Supp. 1011, 1014-15, 1018,  57 Misc. 66 (1907).

37 *Hawkins v. Kuhne*, 137 N.Y. Supp. 1090,  153 App. Div. 216 (1912).

Constitution. Lastly, fingerprinting before conviction involves prohibited compulsory self-incrimination.[38]

The very idea of booking and making a record of one's fingerprints, photographs etc., are acts commonly done to convicted criminals, and thus implies one is a criminal. Corrupt governments are inclined to treat all citizens as criminals who break the smallest law it has passed, and process them as such without due process of law. All must be regarded as guilty until proven otherwise.

Some cases in Louisiana were decided which asserted that the power to fingerprint, etc., is constitutionally restricted to the "identification of the harden criminal." Such measures upon an accused were held to be "unnecessary to prove his guilt or for the identification of his person" or to "guard against his escape."[39]

A Federal District Court held that there is "no right given [to government] by the common law to take finger prints."[40] The principles of Anglo-Saxon government certainly would not have sanctioned such intrusive and oppressive measures.

In New Jersey, the Superior Court stated that the police cannot lawfully fingerprint an accused person against his will.[41] But later, in the case of *Bartletta v. McFeeley,* 107 N.J.Eq. 141, 152 Atl. 17, a New Jersey court went contrary to this position. The merits of that case have often been questioned and criticized, as one text writer asserts:

The chancery court of New Jersey, it is submitted, reached a most unjust conclusion and utterly devoid of all reason wherein it was held that an arrested person charged with crime could be lawfully fingerprinted, measured, and photographed without his consent and against his will. Such unreasonable decisions, as this, go a long way to strike down personal liberty and invade rights that have been thought, ever since this government was established, to be inviolate.[42]

The *Bartletta* case had indeed gone a "long way to strike down personal liberty," as modern cases that allow such measures find their authority traced back to this unjust and frivolous case. When one bad case is decided, another follows it, then another, and all because the act or measure supported is more convenient for government, not because it is pursuant to fundamental law.

In 1945, the Court of Chancery of New Jersey made an exhaustive study into the law and cases surrounding the act of fingerprinting etc., and reached the conclusion that "there is no justification for the taking of fingerprints, photographs and other measurements in advance of conviction."[43]

Closely related to these measures is the act of compelling one to submit to blood tests, urine tests, etc., after arrest and before trial, to be used as evidence at trial against the person arrested or accused of a crime. In considering the act of compulsory blood tests, a New Jersey court based its decision on the "constitutional right to personal privacy and

---

38 *People v. Hevern,* 127 Misc. Rep. 141, 215 N.Y. Supp. 412, 417, 418 (1926).

39 *Schulman v. Whitaker,* 42 So. 227, 117 La. 704 (1906); *Itzkovitch v. Whitaker,* 42 So. 228, 117 La. 708 (1906).

40 *United States v. Kelly,* 51 Fed.2d 263, 266 (1931).

41 *State v. Cerciello,* 86 N.J.L. 309, 90 Atl. 1112, 1115 (1914).

42 Walter Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables,* vol. 1, §186, p. 193. (1941).

43 *McGovern v. Van Riper,* 43 A.2d 514, 524, 137 N.J.Eq. 24 (1945).

security." The right of privacy, being derived from natural law, prevents such compulsory acts, as the court said:

> To subject a person against his will to a blood test is an assault and battery, and clearly an invasion of his personal privacy.[44]

This is another area which has been corrupted in order to satisfy the convenience of government at the sacrifice of the inherent or constitutional rights of the individual. The modern trend of the corrupt courts are to limited the protection of self-incrimination to evidence obtained by oral utterances, and not any physical evidence.

There are, however, other good cases which have held that a compulsory physical examination of a person accused of a crime is inadmissible, as it is a denial of the right against self-incrimination.[45]

We thus can conclude that there are at least five reasons why the acts of compulsory fingerprinting, blood tests, etc., are unlawful: 1) They are an evasion of the right of privacy, 2) Compels evidence to be used as self incriminating evidence, 3) Is an assault and/or battery, 4) Violates due process of taking one arrested first to a magistrate, 5) Prohibits bail and infringes on one's liberty.

### Limitations Upon Arrests

The common law drew certain limitations upon how and when an arrest can be made, and thus all arrests are to be grounded on such standards. But the ignorant and corrupt in government have always been bent towards broadening the causes and reasons for making arrests. One limitation often transcended is the sufficient cause required for a felony arrest or breach of peace:

> No one, whether private person or officer, has any right to make an arrest without warrant in the absence of actual belief, based on actual facts creating probable cause of guilt. Suspicion without cause can never be an excuse for such action. The two must both exist, and be reasonably well founded.[46]

The word "suspicion" is found more frequently in statutes and codes to authorize arrests that the common law prohibited. In a case where a man was arrested for belief he possessed stolen goods, a felony charge, the arrest was held to have been unlawful. However, the police sought to justify the arrest upon the fact that, although there may have been no reasonable cause to believe that the man was guilty of a felony, yet he was in fact guilty of the misdemeanor of carrying a concealed weapon. They claimed that, although the weapon was concealed, the offense was committed in their presence, and it was suspected that he did have a concealed pistol, which was found after the arrest. The Supreme Court of New York held that there arguments were groundless:

> [An officer] cannot arrest a man for one cause, and when that cause is exploded [defeated] justify for another. Such a doctrine would be an incentive to the loosest practices on the part of police officers, and a dangerous extension of their sufficiently great powers. They cannot be too firmly told that there is no such lawful thing as an arrest without an apparent or disclosed cause, to be justified thereafter by whatever may turn up. * * * You cannot arrest a man merely because, if all were known, he would be arrestable. You must arrest him for some

---

44 *Bednarik v. Bednarik*, 16 A.2d 80, 90, 18 N.J.Misc. 633 (1940).

45 *State v. Height*, 117 Iowa 650, 91 N.W. 935 (1902); *People v. Corder*, 244 Mich. 274, 221 N.W. 309; *Bednarik v. Bednarik*, supra (citing cases); *Boyd v. United States*, 116 U.S. 616 (1885); *State v. Newcomb*, 220 Mo. 54, 119 S.W. 405 (1909).

46 *People v. Burt*, 51 Mich. 199, 202, 16 N.W. 378 (1883).

73

specified cause, and you must justify for that cause.[47]

The court cited an early case in which there was an arrest under a warrant, but it was unlawfully executed in the nighttime. It was held that there was a false imprisonment the moment the officers took the plaintiff into custody under the warrant. When the officers demanded admittance to the plaintiff's house, he fired off a revolver. They defended their action upon the ground that, as the revolver was then used in their presence, under circumstances which constituted a crime, they were justified in arresting the plaintiff. But the court— Justice Haight writing—held that they were bound by the arrest under the warrant, and could not offer another cause, sufficient to warrant the plaintiff's apprehension, in justification of their action.[48]

This leads us to another point on arrests, and that is what ever reason or justification an arrest is based upon, it must not occur at a time when an arrest is not allowed. The common law set limitations on when an arrest could be made. Arrests were not allowed at nighttime, and warrants were of no effect at that time. An arrest for felony, treason or breach of peace could, however, be made at any time of the day.

> The general rule of law is that an arrest made on Sunday or other holiday, or at night, except in cases of pressing necessity, * * * is regarded as oppressive and without justification. The reason underlying this principle of law is due to the difficulty in making bail at such times. So an arrest made on Sunday, legal holiday, or at night, upon either civil process or a criminal warrant for

a misdemeanor which said warrant does not involve a breach of peace [still in progress], subjects the officer to liability as for false imprisonment.[49]

In *American Law Reports, Annotated* (vol. 9, p. 1352), it states that "arrests should not be made at night or on Sunday," citing *Bryan v. Comstock*, 220 S.W. 475; et. al. As this is a common law concept, it is also due process, and cannot be abrogated by statute.

It has been said that the constitutional protection regarding arrests and searches is to be applied to all alike, the completely innocent and the completely guilty. If an arrest and search can be made without warrant because of known guilt alone of any misdemeanor, then the one barrier designed to protect persons from unlawful invasions of their persons and property would be destroyed.[50] An arrest cannot be justified by the concept that the end justifies the means.

> No one who properly appreciates the sacredness of personal liberty, and the jealousy of the law in guarding the same, can doubt that, as a general rule, the law requires a warrant in order to render an arrest legal, whether it be made by a policeman or any public officer.[51]

In order that government might deviate from the common law, it was necessary to eliminate common law officer, sheriffs, constables and watchmen, and replace them with the "policeman."

> A police officer, unknown to the common law, is a creature of statute, and as such can only exercise such powers as are given by the legislature, expressly or derivatively.[52]

---

47  *Snead v. Bonnoil*, 63 N.Y. Supp. 553, 555, 97 N.Y. State Rep. (1900).

48  *Murphy v. Kron*, 8 N.Y. St. Rep. 230.

49  Anderson, *Treatise on Sheriffs, Coroners and Constables*, vol. 1, § 131, p. 126 (1941).

50  *People v. Fischetti*, 273 Ill. App. 215, 222 (1933).

51  *Thomas v. State*, 91 Ga. 204, 18 S.E. 305, 306 (1892).

52  *Wilson v. Town of Mooresville*, 222 N.C. 283, 22 S.E.2d 907, 910 (1942).

Case 1:22-cr-00299-CKK   Document 37   Filed 12/22/22   Page 147 of 150

# 8
## CONCLUSIONS

The wisdom of the ages which brought about the law on arrests was boldly declared in *Magna Carta* — "No one shall be arrested or imprisoned but by the law of the land." This is called the common law and it is made constitutional law by the due process clause.

While this fundamental law appeals to individual liberty, it does not appeal to despots who express their will via corrupt statutes and judicial opinions. It comes down to the question of whether fundamental law is going to be controlling in this matter, or if legislative statutes and the will of despots are to be the prevailing law. Between these conflicting alternatives there is no middle ground, one or the other must be paramount.

In considering the matter of arrests in Anderson's *Treatise on the Law of Sheriff's,* is this noteworthy comment:

*Heed should ever be paid to the voice of common law as it has echoed down through the ages, loudly proclaiming in the interests of the rights of the citizen, that it must not be forgotten that there can be no arrests without due process of law. An arrest without warrant has never been lawful except in those cases where the public security required it, and this has been confined to felonies and to cases of breach of the peace committed in the presence of the officer.*[1]

People today are obviously not being arrested or imprisoned "by the law of the land." Those in the governmental "system" fail to see the logic in the common law principles, and find them to be an annoying restriction in their task of getting the "crooks" or "bad guys." What they fail to understand is that this is exactly the point of the common law, to be restrictive upon those in government, to make them follow set procedures, and to make it difficult to deprive people of their rights. The common law prescribes that in order to safeguard the rights of the innocent, the guilty must on occasion go free. This sentiment was expressed by Sir William Blackstone when he said: *"It is better that ten guilty persons escape than that one innocent suffer."*[2]

In this country constitutions were written to "restrict" the actions of those in government. But it is daily being violated by judges, legislators, and police on the topic of arrests which makes them lawbreakers, as Justice Campbell said in the famed *Sarah Way* case:

Official illegality is quite as reprehensible as private violations of law. The law of the land must be accepted by every one as the only rule which can be allowed to govern the liberties of citizens, whatever may be their ill desert.[3]

These officials should be asked, why is it we have less liberty today than did subjects living under a monarchy? It is because the subjects of the King had the benefit of the common law—the ancient principles and maxims that have been acknowledged for the security of life, liberty and property.

1   Walter Anderson, *A Treatise on the Law of Sheriffs,* Coroners and Constables, vol. 1, § 166, p. 160 (1941).

2   And as the U.S. Supreme Court said: "It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest." *Henry v. United States,* 361 U.S. 98, 104 (1959).

3   *Sarah Way's Case,* 41 Mich. 299, 305, 1 N.W. 1021 (1879); *People v. McGurn,* 341 Ill. 632, 173 N.E. 754, 759. (1930).

# ADDENDUM                                    75

The author had been involved in two different cases which precipitated this material. The events that occurred stand as a testimony to the corrupt and oppressive times we now live in.

**Case # 1.** This case was brought about when a Highway Patrolman stopped me as I was traveling on the freeway, and arrested me for no driver's license, and "evading a tax," (motor vehicle tax).

The fact that no breach of the peace occurred or felony charged is prima facie evidence that the Highway Patrolman was guilty of false imprisonment. Further, no one can be arrested for a tax (or have property taken) who has not been accessed or given notice of the tax, and had no opportunity to be heard to contest the tax.

When the Highway Patrolman received the Summons and Complaint against him, he went to the State Attorney General's office. An assistant Attorney General submitted a *Motion to Dismiss* with the court. The basis for the motion to dismiss the action was that, "the complaint fails to state a claim against the Defendant upon which relief can be granted." This is a general, catch-all argument raised by incompetent lawyers who don't know the law or know the law is not on their side.

The complaint did state a claim for which relief can be granted — that being false imprisonment and also assault and battery. If I had claimed that the officer stuck his tongue out at me and that was the basis for a tort, then the complaint would fail to state a claim upon which relief could be granted and it could be dismissed. But false imprisonment and assault have for hundreds of years been valid claims by which a remedy could be had.

The assistant Attorney General, in support of his motion, cites several Minnesota cases, but when I had looked them up I found that the decisions were all favorable to my position. His motion was most damaging to the State. For instance, in his memorandum in support of the motion to dismiss, he cites a case that says:

"Dismissal under Rule 12.02 is only appropriate if it appears to a certainty that no facts, which could be introduced consistent with the pleading, exist which would support granting the relief demanded." Yet he had just previously stated and agreed to the fact that I was arrested or deprived of my liberty! This is the only fact a Plaintiff need show to have a prima facie case. Thus a charge such as false imprisonment cannot be dismissed by a judgment of dismissal.[1] Another case he cites says that:

"Allegations of constitutional error in the complaint preclude dismissal under Rule 12.02." Under well-settled principles of law, allegations of constitutional infirmities deserve a judicial forum. * * * the court is required to accept as true the allegations in the complaint when ruling on a Rule 12.02 motion. *Elzie v. Commissioner of Public Safety,* 298 N.W.2d 29, 32 (1980).

In the *Elzie* case, the Plaintiffs had "raised serious due process questions" in their complaint, as I did in mine! Thus the case is "precluded" from being dismissed! But all that this government lawyer could say is, "Here Plaintiff's claims are legally deficient on their face and should be dismissed." It is just a statement with no support!

The assistant Attorney General also stated the law for felony arrest, which is not at all applicable to this case. He also claimed that "the test for the lawfulness of Plaintiff's arrest is whether is was made with 'probable cause'." This of course is not the law, and two early Minnesota Supreme Court cases even state that this is not a valid argument. He made the claim of "collateral estoppel," thinking that these issues were already adjudicated at the criminal trial. But there was no adjudication, he only claims there was. He concludes by saying that the "legal theories advanced by the Plaintiff" are "novel and somewhat bizarre." There was a time in this country that the legal arguments I stated were

---

1   It should be noted that this type of pretrial "judgment of dismissal was unknown at the common law." It came into existence only by statutes or codes. 16 Dunnell Minn. Dig. 41, citing, *Boom v. St. Paul Foundry,* 22 N.W. 538.

Case 1:22-cr-00299-CKK   Document 37   Filed 12/22/22   Page 149 of 150

elementary.   This proves how incompetent government lawyers have become.

The judge was even more incompetent (a black woman). All she did was merely repeat the contents of the Attorney General's memorandum. The erroneous nature of the decision was compounded by bring up issues and arguments that neither party had raised! At the end she said:

"Even if there was false imprisonment and assault and batter during the booking, fingerprinting, and arrest of Plaintiff, this seems to be a classic case of that type of exercise of discretion giving rise to official immunity."

Do you believe this absurd statement? She is saying that a police offer can unlawfully arrest you, commit assault and battery upon you, and they are immune from suit! In other words, they can do what ever they want and you have no remedy!

This case was appealed to the State Supreme Court. I was informed by the Clerk that I could not directly appeal to the Supreme Court. When I asked where this was stated, they looked in vain and could find nothing. The appeal was accepted by the Court (# C0-93-2086). However, a week later (Oct. 25, 1993) the Court issued an "Order" stating that the case is "dismissed." The Court thus did what it said only a few years earlier could not be done! Also, a dismissal of an appeal is unheard of, as it was not a petition or a writ. This was the first time I have known this to happen.

**CASE # 2.**   On July 5, 1993, a deputy sheriff and a city policeman knocked on my door and said they had a warrant for my arrest. When I asked "what for?" they said it was for "evading a tax." I told them that I had already been in court on that matter. When they called to confirm the warrant they said it was still valid (the warrant was actually for an unpaid fine). I then asked to see the warrant. They said they didn't have the warrant as it was issued in another county. I told them that due process of law requires the warrant to be in their possession and to display it so I could see if it was valid. They said that such a measure would be ridiculous as it would seriously restrict police

procedure in such matters. They said that they had 40 years of experience between them (20 years each) in making such arrests and knew what they were doing. They thus arrested me and took me to the county jail.

When I filed the suit against them, the deputy sheriff ran to the county attorney, but the city policeman had to go to a private attorney. The usual "motion to dismiss" was filed by each attorney, for "failure to state a claim. . ."

When I went to court for the motion hearing I was assigned to a judge whom I knew was fairly good and honest. But after sitting in the courtroom for about an hour my name was not called. Unknown to me at the time the county attorney (who had the disposition of a weasel) had my file removed from the stack on the judge's desk and reassigned the case to another judge. After a while a clerk came into the courtroom and said my case had been moved to another courtroom. I went to that room and sat there for about 12 minutes, then the two attorneys came out of the judge's chambers followed by the judge. They had been plotting and conspiring against me and convincing the judge to dismiss my case. This was because they came to realize that the law was not on their side, and even the statutes prohibited the officers from doing what they did. The system would be in jeopardy if this case went to trial.

Thus this corrupt, spineless and bias judge (Harvey A. Holtan) ignored the law and his duty and dismissed the case. But the attorneys and the policeman were still afraid of what might happen in an appeal since the officers were guilty as sin. They thus agreed to "waive attorney's fees and court costs" if I dropped the suit. Knowing the past experience with the corrupt appeals court I agreed to do so. The policeman had to pay over two hundred dollars in attorney fees.

Those who work for a corrupt government do all sorts of unlawful acts to protect the "system" which feeds them. They must resort to lies, cover ups or distortions of the law. But there is one thing that they can never do, and that is give a just and lawful reason for their actions.

It is said that life and liberty stand essentially upon the same ground, life being useless without liberty. Thus the law allows people to protect liberty as they would their life.

Any person who wants to protect and preserve liberty, and to check the arbitrary acts of government, will find this material critically important towards such ends.

When one is unlawfully deprived of his liberty he has suffered a "false imprisonment," whether it be by arrest, imprisonment, or improper procedure.

Throughout history the most common violation committed by governments against the rights of citizens is that of arbitrary and summary arrests. Such measures have long been the earmarks of a corrupt and despotic government.

To safeguard liberty, the Common Law has for over a thousand years established certain rules and procedures that must be followed before one can be deprived of their liberty by way of arrest or imprisonment.

These rules and procedures are part of "due process of law," and any officer or person that does not follow them can be sued for "false imprisonment."

This material details the limitations and requirements of government officers in making arrests, issuing warrants, imprisoning persons, and in enforcing the different types of laws — misdemeanors, breaches of the peace, and felonies.

The fundamental law on these matters will strike at the base of the corrupt police state system that is so prevalent today.

It is often said that the liberty of a citizen is too sacred to be interfered with without established sanctions by which the law guards it.

Individual liberty is being violated hundreds of times every day because the people have forgotten the law which protects that liberty.

This book explains that law which was once regarded as elementary.

ISBN  1-929205-08-2