UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

v.

SHAWNDALE CHILCOAT
and
DONALD CHILCOAT,

Defendants.

Criminal Action No. 22-299 (CKK)

**MEMORANDUM OPINION**
(January 10, 2023)

For their actions as members of the riot at the United States Capitol on January 6, 2021,

Defendants Shawndale Chilcoat and Donald Chilcoat were charged by indictment with six

counts, including felony counts.  Although represented by counsel, Defendants have moved *pro*

*se* to dismiss this case, raising a host of arguments broadly connected to the "sovereign citizen"

movement.  After giving Defendants' arguments full consideration, and upon consideration of

the briefing,[1] the relevant legal authorities, and the entire record, the Court **DENIES** Defendants'

[37], [38], [39], and [40] motions, treated collectively as their Motion to Dismiss.

## I. BACKGROUND

### A.  Charged Offenses

Defendants are charged by indictment with: (1) Obstruction of an Official Proceeding and

Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2; (2) Entering and Remaining

in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly and

---

[1] The Court's consideration has focused on the following: Complaint, ECF No. 1 ("Compl."); Indictment, ECF No. 20 ("Indictment"); Defendants' filings, ECF Nos. 37, 38, 39, 40 (collectively, "Motion to Dismiss" or "Motion"); and United States' Opposition, ECF No. 42 ("U.S. Opp'n").  In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motion.

Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2);

(4) Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A);

(5) Disorderly Conduct on Capitol Grounds and in any of the Capitol Buildings, in violation of

40 U.S.C. § 5104(e)(2)(D); and (6) Parading, Demonstrating, or Picketing in any of the Capitol

Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G).

**B. Certification of the 2020 Presidential Election and Capitol Riot**

The Twelfth Amendment of the United States Constitution provides that, after the

members of the Electoral College "meet in their respective states and vote by ballot for President

and Vice-President," they "shall sign and certify [their votes], and transmit [them] sealed to the

seat of government of the United States, directed to the President of the Senate."  U.S. Const.

amend. XII.  The Vice President of the United States, as President of the Senate, must then, "in

the presence of the Senate and House of Representatives, open all the certificates[,], and the

votes shall then be counted."  *Id.*  To count the votes and "declar[e] the result" of the Electoral

College, federal law mandates that "Congress shall be in session on the sixth day of January

succeeding every meeting of the electors" and that "[t]he Senate and House of Representatives

shall meet in the Hall of the House at the hour of 1 o'clock in the afternoon on that day."  3

U.S.C. §§ 15-16.

Pursuant to the Constitution and federal law, Congress convened in a joint session on

1:00 PM on January 6, 2021, to count the votes of the Electoral College and certify the results of

the 2020 Presidential Election that had taken place on November 3, 2020.  *See* Compl.,

Statement of Facts ("SOF") at 1, ECF No. 1-1.  With then-Vice President Michael R. Pence

presiding, proceedings began and continued until 1:30 PM, when the United States House of

Representatives and the United States Senate adjourned to separate chambers within the Capitol

to debate and consider an objection to the Electoral College vote from the State of Arizona.  *Id.*

Vice President Pence continued to preside in the Senate chamber.  *Id.*

Shortly before noon, then-President Donald J. Trump took the stage at a rally of his

supporters staged just south of the White House.  *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir.

2021).  Then-President Trump declared that the election was "rigged" and "stolen," and urged

the crowd to "demand that Congress do the right thing and only count the electors who have

been lawfully slated."  *Id.* at 18 (cleaned up).  During and after then-President Trump's speech, a

mass of attendees marched on the Capitol.  *See id.*

As they gathered outside the Capitol, the crowd faced temporary and permanent

barricades and Capitol Police positioned to prevent unauthorized entry to the Capitol.  SOF at 1.

Around 2:00 p.m., "individuals in the crowd forced entry into the U.S. Capitol, including by

breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd

encouraged and assisted those acts."  *Id.*  These violent acts caused members of the Senate and

House of Representatives to evacuate the chambers of the Capitol and suspend the certification

process of the presidential election results.  *Id.*  The violent riot "desecrated [the Capitol], blood

was shed, and several individuals lost their lives."  *Thompson*, 20 F.4th at 19.  All told, "[t]he

events of January 6, 2021 marked the most significant assault on the Capitol since the War of

1812."  *Id*. at 18–19 (footnote omitted).

### C.  Events Specific to Defendants

According to the allegations in the Affidavit by a Federal Bureau of Investigation ("FBI")

Special Agent included in the Criminal Complaint, *see* ECF No. 1-1,[2] Defendants were

---

[2]  "It is appropriate if not necessary to rely on other official documents for the specific factual allegations underlying the [] Indictment, as the indictment itself contains few, if any, details about [Defendant's] alleged conduct."  *United States v. McHugh*, 583 F Supp. 3d 1, 8 n.2 (D.D.C. 2022) (JDB); *United States v. Grider*, 585 F. Supp. 3d 21, 26 n.2 (D.D.C. 2022).

unlawfully present on restricted U.S. Capitol grounds on January 6, 2021.  SOF at 2.  A variety

of videos taken by Shawndale Chilcoat and posted to Facebook show that Defendants climbed

scaffolding and were present in the mob on Capitol Grounds.  *Id.* at 3–4.  In the pending Motion,

Shawndale Chilcoat admits to having video footage from the Capitol grounds.  *See* ECF No. 39

at 36–37.  Donald Chilcoat also posted videos to Facebook, in one of which he discusses

climbing scaffolding and going into the Capitol building.  SOF at 10.  U.S. Capitol Police CCTV

and Senate TV recordings depict Defendants entering the U.S. Capitol building through a fire

door located on the Northwest side of the Capitol, climbing stairs, entering the Senate Chambers,

and walking through the Brumidi Corridor inside the Capitol building.  *Id.* at 5–9.  While on the

Senate Floor, Defendants took photos of themselves, which they later shared via Facebook

messages.  *Id.* at 8–9.  Defendant Shawndale Chilcoat sent messages on Facebook stating that,

regarding "breaking windows and storming congress," "it was us I was with them and couldn't

be more proud."  *Id.* at 2.  She also wrote "We were just trying to stop them from certifying the

votes" and "Honestly we should burn the fucker down."  *Id.* at 10.

### D.  Procedural History

On August 10, 2021, the Government filed its criminal complaint.  *See generally* Compl.

Defendants first appeared before Magistrate Judge Robin M. Meriweather on August 18, 2022,

*see* Minute Entry, Aug. 18, 2022; the Government did not file the Indictment until September 9,

2022, *see* Indictment.  Defendants have pleaded "not guilty" to the charges in the Indictment.

*See* Minute Order, Sept. 26, 2022.  Both Defendants are released on personal recognizance.  *See*

Order, ECF No. 12; Order, ECF No. 15.

During a status hearing on December 9, 2022, Defendant Shawndale Chilcoat objected to

jurisdiction and demanded that the Court provide proof of jurisdiction.  *See* Minute Order, Dec.

9, 2022.  The Court ordered her to file such objection as a motion by December 16, 2022.  *Id.*

Shawndale Chilcoat submitted three separate filings, only one of which was sent prior to the

December 16 deadline.  Many of the filings contained duplicative material.  *E.g.*, *compare* ECF

No. 39 at 36–39 *with* ECF No. 40 at 4–7.  One such filing contained over 140 pages photocopied

from various legal textbooks, treatises, and other materials.  *See* ECF No. 37 at 8–150.

Nevertheless, in the interest of allowing Defendant to be heard, the Court accepted all three

filings, which together constitute her motion.  *See* Minute Order, Dec. 22, 2022; *see also* ECF

Nos. 37, 38, 39.  The Court then received an additional filing from Shawndale Chilcoat and

Donald Chilcoat indicating that Donald Chilcoat was a signatory to the previously filed motion.

*See* ECF No. 40.  The Court instructed that the Government should consider the [40] filing as

well in preparing its opposition to the Motion to Dismiss.  *See* Minute Order, Dec. 28, 2022.  The

Government submitted its response on January 3, 2023.  *See* ECF No. 42.  The Court treats the

[37], [38], [39], and [40] filings collectively as the Motion to Dismiss on behalf of both

Shawndale Chilcoat and Donald Chilcoat.  With the Motion now fully briefed, the Court turns to

its resolution.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(2), a criminal defendant may, at

any time, move to dismiss an indictment for lack of jurisdiction.  When considering a challenge

to the indictment, "a district court is limited to reviewing the face of the indictment;" the Court

must "presume the allegations [in the] indictment to be true."  *United States v. Sunia*, 643 F.

Supp. 2d 51, 60 (D.D.C. 2009) (RBW) (internal quotation marks removed).  Nevertheless, the

burden is on the Government to establish jurisdiction by a preponderance of the evidence.

*United States v. Carvajal*, 924 F. Supp. 2d 219, 230 (D.D.C. 2013) (RMC).

**III. DISCUSSION**

Defendants' Motion is difficult to follow at times, but the crux of their argument appears

to rest on "sovereign citizen" ideology.  *See Mells v. Loncon*, No. CV418-296, 2019 WL

1339618, at *2 (S.D. Ga. Feb. 27, 2019) (collecting sovereign citizen cases); *see also Perkinson*

*v. Georgia*, No. 5:19-CV-00113-MTT-CHW, 2019 WL 2583513, at *2 (M.D. Ga. June 24, 2019)

("A so-called 'sovereign citizen' generally relies on the Uniform Commercial Code, admiralty

laws, and other commercial statutes to argue that, because he has made no contract with the court

or government, neither entity can foist any agreement upon him." (cleaned up)).  Although not

frequently seen in this jurisdiction, this ideology has been roundly rejected by scores of federal

courts.  *See Reed v. Cushwa*, 2021 WL 2894736, at *2 (D.D.C. June 29, 2021) (CRC); *see also*

*United States v. Nissen*, 555 F. Supp. 3d 1173, 1202 (D.N.M. 2021) (collecting cases).

Sovereign citizen challenges to criminal actions generally center on a confused distinction

between a "living" person and a "corporate" or "artificial" person, premised on the mistaken

belief that the Fourteenth Amendment creates the latter class of citizenship and releases the

former from the jurisdiction of the federal government and the governments of the several States.

*See Nissen*, 55 F. Supp. 3d at 1202; Caesar Kalinowski IV, *A Legal Response to the Sovereign*

*Citizen Movement*, 80 Mont. L. Rev. 153, 157–60 (2019).  Defendants advance the same sort of

theory; for example, in Defendants' [37] filing, Shawndale Chilcoat characterizes herself as "a

competent natural born woman upon the land" and states that "I am man the U.S. Government is

and [sic] entity/Corporation."  ECF No. 37 at 2, 6.  At least one federal Court of Appeals has

directed the district courts within its Circuit to "reject[] summarily [these arguments], however

they are presented."  *United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011).  Although the

Court would be inclined to join the Seventh Circuit in this regard, it shall exercise its discretion

to review each of Defendants' arguments in more detail.

In one filing, Defendants move to dismiss the case based on lack of subject matter jurisdiction, lack of personal jurisdiction, insufficient service of process, and speedy trial grounds.  *See* ECF No. 38 at 2.  In another filing, they make their Motion to Dismiss only pursuant to lack of subject matter jurisdiction and lack of personal jurisdiction.  *See* ECF No. 39 at 19.  They also later raise a claim of "fraud, contracts, torts."  *See* ECF No. 40 at 9.  Despite these inconsistencies, the Court will discuss each of the grounds articulated by Defendants throughout their various filings.

### A. Jurisdiction

Defendants argue that the Court lacks subject matter jurisdiction.  Although the exact grounds for their argument are unclear, it appears that Defendants contend that the Indictment is invalid because it does not charge a crime or otherwise charges a crime based on invalid laws and therefore the Court lacks subject matter jurisdiction.  *See* ECF No. 37 at 3, 5–6; ECF No. 39 at 5.

As explained above, the Indictment charges Defendants with violating provisions of Titles 18 and 40 of the United States Code.  These are valid criminal statutes.  For example, the argument that Title 18 "is unconstitutional [or invalid] because of supposed irregularities in its enactment" is "unbelievably frivolous" and has been rejected by scores of federal courts.  *United States v. Collins*, 510 F.3d 697, 398 (7th Cir. 2007); *see also Cardenas-Celestino v. United States*, 552 F. Supp. 2d 962, 966 (W.D. Mo. 2008) (collecting cases).  Per the United States Court of Appeals for the District of Columbia Circuit's instructions, "'if an indictment or information alleges the violation of a crime set out in Title 18 or in one of the other statutes defining federal crimes, that is the end of the jurisdictional inquiry.'"  *United States v.*

*Fahnbulleh*, 752 F.3d 470, 476 (D.C. Cir. 2014) (cleaned up) (quoting *United States v. George*, 676 F.3d 249, 259 (1st Cir. 2012)).  "No more is necessary to establish subject matter jurisdiction."  *Id.*; *see also United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992) ("The sufficiency of a criminal indictment is determined from its face.  The indictment is sufficient if it charges in the language of the statute.").

Defendants also claim that the Court lacks personal jurisdiction, arguing there is "no standing in Law inside the borders of a State/state."  ECF No. 39 at 5, 22.  They also claim that they "were not extradited but they are forced by the Federal Court to appear via Zoom for court procedures outside of their state borders," that being the state of Ohio.  ECF No. 38 at 7.  Similar claims have been widely rejected by a number of federal courts.  *See United States v. Underwood*, 726 F. App'x 945, 948 (4th Cir. 2018).  Because "there can be no doubt that Article III permits Congress to assign federal criminal prosecutions to federal courts," the mere fact that the defendant was within the territory of the United States at the time of the alleged criminal action is "the beginning and the end of the jurisdictional inquiry."  *Id.* (internal quotation marks removed) (quoting *Huigi v. United States*, 164 F.3d 378, 380 (7th Cir. 1999)).

In sum, Defendants have failed to show that this Court lacks subject matter or personal jurisdiction over them.

## B.  Insufficient Service of Process

Defendants also move to dismiss the case based on insufficient service of process.  *See* ECF No. 38 at 2.  Their filings do not elucidate this argument, but the Court believes it to hinge on Defendants' contentions that the Indictment was invalid, the arrest warrants were invalid, and their arrests were illegal.  *See* ECF No. 38 at 6–8; ECF No. 37 at 3, 5–6; ECF No. 39 at 6–9.

The Court previously addressed Defendants' argument that the Indictment was invalid,

finding it to be meritless.  *See supra* Section III.A.  To the extent that Defendants claim their

arrest warrants were improperly issued or otherwise invalid, that argument also fails.  The arrest

warrants were supported by probable cause.  *See Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)

(explaining standard for probable cause to issue an arrest warrant); *Adams v. Williams*, 407 U.S.

143, 149 (1972); *see also* ECF No. 1-1 (affidavit of FBI Special Agent, finding probable cause to

arrest Defendants Shawndale Chilcoat and Donald Chilcoat).  Furthermore, Defendants have not

shown any defect in the warrants so as to invalidate them.  *See* Fed. R. Crim. P. 4 (establishing

rules for "Arrest Warrant or Summons on a Complaint").[3]

Finally, to the extent Defendants claim their arrests were illegal, that, too, fails.

Defendants argue that "[o]nly the FBI came to the Respondent's home to arrest her at gun point.

The Sheriff would be the proper officer of the county and the Sheriff was not once at the

Respondent's home."  ECF No. 38 at 7; *see also* ECF No. 39 at 8.  However, a federal arrest

warrant may be executed within the jurisdiction of the United States by any authorized person.

Fed. R. Crim. P. 4(c).  An FBI agent is authorized by law to make arrests.  *See* 18 U.S.C. § 3052

("… agents of the Federal Bureau of Investigation of the Department of Justice may… serve

warrants… issued under the authority of the United States…"); *id.* § 3107 ("… agents[] and

inspectors of the Federal Bureau of Investigation of the Department of Justice are empowered to

make seizures under warrant for violation of the laws of the United States.").[4]

---

[3] If Defendants' claims that the arrest warrants were invalid had any merit—which they do not—
that would still not result in dismissal of this case.  "An illegal arrest, without more, has never
been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United
States v. Crews*, 445 U.S. 463, 474 (1980); *United States v. Brown*, 602 F.2d 1073, 1077 (2d Cir.
1979) (noting that, even if the officers lacked probable cause to support the defendant's arrest,
"the proper remedy would be suppression of the evidence rather than dismissal of the
indictment").

[4] Even if Defendants' claims of an illegal arrest had merit—which they do not—dismissal of the
charges would not be the appropriate remedy. *Crews*, 445 U.S. at 474 ("Respondent himself is
not a suppressible 'fruit' and the illegality of his detention cannot deprive the Government of the

Therefore, Defendants have failed to show insufficient service of process giving rise to dismissal of the case against them.

### C. Speedy Trial

Defendants also move to dismiss the case based on "Speedy Trial." ECF No. 38 at 2; ECF No. 39 at 2. This argument—that their case should be dismissed because their right to a speedy trial pursuant to the Sixth Amendment of the United States has been violated—also fails.

"The Speedy Trial Act requires that a criminal trial must commence within 70 days of the latest of a defendant's indictment, information, or appearance, barring periods of excludable delay." *Henderson v. United States*, 476 U.S. 321, 326 (1986). The Speedy Trial Act excludes from this seventy-day limit certain periods of pretrial delay. *See* 18 U.S.C. § 3161(h). This includes "[a]ny period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." *Id.* § 3161(h)(7)(A).

Defendants' only reference to Speedy Trial is in reference to the Notice of Speedy Trial Exclusion filed on September 19, 2022 as to Shawndale Chilcoat. *See* ECF No. 38 at 8. In that [24] Notice, Attorney Steven Kiersh—who represented Shawndale Chilcoat until his withdrawal on November 22, 2022,[5] *see* Minute Order, Nov. 22, 2022—stated that Defendant Shawndale Chilcoat "does consent to the exclusion of time" from September 20, 2022 to September 26, 2022 and that "[t]he parties believe this exclusion of time is appropriate pursuant to 18 U.S.C.

---

opportunity to prove his guilt…."). 
[5] Defendant Donald Chilcoat is represented by Attorney Maria Jacob. *See* Minute Entry, Aug. 23, 2022 (first appearance by Donald Chilcoat, represented by Attorney Maria Jacob).

Sec. 3161, et seq.," ECF No. 24 at 1.  Now, in their Motion, Defendants argue that Shawndale

Chilcoat did not consent to the exclusion of time in the [24] Notice.  Their Motion states that

Shawndale Chilcoat "fired Attorney Steven Kiersh… and directed him not to waive the speedy

trial" but that "3 days later, Steven Kiersh, on September 19, 2022, sent an email saying 'I filed

the Notice of Speedy Trial Exclusion' against the Respondents [sic] consent."  ECF No. 38 at 8.

Even assuming that Defendant Shawndale Chilcoat did not consent to the [24] Notice, her

Speedy Trial rights have not been violated.  At Shawndale Chilcoat's initial appearance before

Magistrate Judge Robin M. Meriweather, the Government made an oral motion for Speedy Trial

exclusion, which was heard and granted; the Court excluded her Speedy Trial time between

August 18, 2022 and September 6, 2022.  *See* Minute Entry, Aug. 18, 2022.  At the September

26, 2022 status hearing, Shawndale Chilcoat consented to the exclusion of time from September

26, 2022 to December 9, 2022.  *See* Minute Order, Sept. 26, 2022.  Then, at the December 9

status hearing, although Defendants did not consent to the exclusion of time from December 9,

2022 through the date of the next status hearing on February 6, 2023, the Court excluded the

time.  *See* Minute Order, Dec. 9, 2022.  The Court did so pursuant to 18 U.S.C. § 3161(h)(7)(A),

which states that a court may exclude time "on [its] own motion or at the request of the attorney

for the Government, if the judge granted such continuance on the basis of [its] findings that the

ends of justice served by taking such action outweigh the best interest of the public and the

defendant in a speedy trial"; the Court found that a continuance of Defendants' Speedy Trial

rights between December 9, 2022 and February 6, 2023 would serve the "ends of justice" and

outweigh the best interests of both the community and Defendants because the continuance

would allow Defendants to obtain and review discovery and determine how they intend to

proceed with the case.  *Id.*  Accordingly, the time period between August 18, 2022 and

September 20, 2022 was properly excluded, as was the time period between September 26, 2022

and February 6, 2022.  Again, Defendants only contest the [24] Notice excluding time between

September 20, 2022 and September 26, 2022.

Defendant Shawndale Chilcoat's current seventy-day deadline is April 17, 2023.  *Id.*

After striking the [24] Notice, her new seventy-day deadline is April 11, 2023.  Accordingly,

Defendant's seventy-day window has yet to expire and therefore there is no violation of the

Speedy Trial Act.

### D.  Tort Claim

Finally, Defendants appear to tack on a claim for "fraud, contracts, torts," ECF No. 40 at

9, although it is unclear against whom they try to state these claims.  To the extent Defendants

assert a contract claim against the United States, they must do so under the Contract Disputes

Act, 41 U.S.C. § 71.  Similarly, Defendants must bring tort claims in an independent action

pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346 *et seq.*  Even had

Defendants properly instituted an action under the FTCA, the Court would lack jurisdiction over

such claims because Defendants have yet to exhaust them before the appropriate federal agency.

*See Simkins v. District of Columbia*, 108 F.3d 366, 371 (D.C. Cir. 1997).  In any event, an

attempted civil claim against the federal government is irrelevant for jurisdictional purposes.

And any fraud claim—which the U.S. considers to be a claim against Shawndale Chilcoat's

attorney for his efforts to have her sign a protective order governing discovery, *see* U.S. Opp'n at

7—would also not warrant dismissal.

### IV. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, *see* ECF Nos. 37, 38, 39, 40,

is **DENIED**.  An appropriate Order accompanies this Memorandum Opinion.

*The Clerk of Court is instructed to send a copy of the Memorandum Opinion and Order overnight to Defendants' addresses of record.*

Dated: January 10, 2023

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge
