**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

UNITED STATES OF AMERICA

v.

SHAWNDALE CHILCOAT and
DONALD CHILCOAT,

      Defendants.

---

Criminal Action No. 22-299 (CKK)

---

**MEMORANDUM OPINION**
(January 12, 2024)

Pending before the Court are Defendant Donald Chilcoat's [81] Motion for Release from Custody and Defendant Shawndale Chilcoat's [83] Motion for Release from Custody. The two defendants are currently detained at the District of Columbia Jail following violations of their conditions of release that began in September 2023. For the following reasons, the Court shall **GRANT** both motions.

## I. BACKGROUND

### A. Charged Offenses

Defendants are charged by indictment with: (1) Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2; (2) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A); (5) Disorderly Conduct on Capitol Grounds and in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(D); and (6) Parading, Demonstrating, or Picketing in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G).

1

### B.  Certification of the 2020 Presidential Election and Capitol Riot

The Twelfth Amendment of the United States Constitution provides that, after the members of the Electoral College "meet in their respective states and vote by ballot for President and Vice-President," they "shall sign and certify [their votes], and transmit [them] sealed to the seat of government of the United States, directed to the President of the Senate."  U.S. Const. amend. XII.  The Vice President of the United States, as President of the Senate, must then, "in the presence of the Senate and House of Representatives, open all the certificates[,], and the votes shall then be counted."  *Id.*  To count the votes and "declar[e] the result" of the Electoral College, federal law mandates that "Congress shall be in session on the sixth day of January succeeding every meeting of the electors" and that "[t]he Senate and House of Representatives shall meet in the Hall of the House at the hour of 1 o'clock in the afternoon on that day."  3 U.S.C. §§ 15–16.

Pursuant to the Constitution and federal law, Congress convened in a joint session on 1:00 PM on January 6, 2021, to count the votes of the Electoral College and certify the results of the 2020 Presidential Election that had taken place on November 3, 2020.  *See* Compl., Statement of Facts ("SOF") at 1, ECF No. 1-1.  With then-Vice President Michael R. Pence presiding, proceedings began and continued until 1:30 PM, when the United States House of Representatives and the United States Senate adjourned to separate chambers within the Capitol to debate and consider an objection to the Electoral College vote from the State of Arizona.  *Id.* Vice President Pence continued to preside in the Senate chamber.  *Id.*

Shortly before noon, then-President Donald J. Trump took the stage at a rally of his supporters staged just south of the White House.  *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021).  Then-President Trump declared that the election was "rigged" and "stolen," and urged

the crowd to "demand that Congress do the right thing and only count the electors who have

been lawfully slated." *Id.* at 18 (cleaned up).  During and after then-President Trump's speech, a

mass of attendees marched on the Capitol.  *See id.*

        As they gathered outside the Capitol, the crowd faced temporary and permanent

barricades and Capitol Police positioned to prevent unauthorized entry to the Capitol.  SOF at 1.

Around 2:00 p.m., "individuals in the crowd forced entry into the U.S. Capitol, including by

breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd

encouraged and assisted those acts." *Id.*  These violent acts caused members of the Senate and

House of Representatives to evacuate the chambers of the Capitol and suspend the certification

process of the presidential election results.  *Id.*  The violent riot "desecrated [the Capitol], blood

was shed, and several individuals lost their lives." *Thompson*, 20 F.4th at 19.  All told, "[t]he

events of January 6, 2021 marked the most significant assault on the Capitol since the War of

1812." *Id.* at 18–19 (footnote omitted).

   **C. Events Specific to Defendants**

        According to the allegations in the Affidavit by a Federal Bureau of Investigation ("FBI")

Special Agent included in the Criminal Complaint, *see* ECF No. 1-1,[1] Defendants were

unlawfully present on restricted U.S. Capitol grounds on January 6, 2021.  SOF at 2.  A variety

of videos taken by Shawndale Chilcoat and posted to Facebook show that Defendants climbed

scaffolding and were present in the mob on Capitol Grounds.  *Id.* at 3–4.  Donald Chilcoat also

posted videos to Facebook, in one of which he discusses climbing scaffolding and going into the

Capitol building.  *Id.* at 10.  U.S. Capitol Police CCTV and Senate TV recordings depict

---

[1] "It is appropriate if not necessary to rely on other official documents for the specific factual allegations underlying the [] Indictment, as the indictment itself contains few, if any, details about [Defendant's] alleged conduct." *United States v. McHugh*, 583 F Supp. 3d 1, 8 n.2 (D.D.C. 2022) (JDB); *United States v. Grider*, 585 F. Supp. 3d 21, 26 n.2 (D.D.C. 2022).

Defendants entering the U.S. Capitol building through a fire door located on the Northwest side of the Capitol, climbing stairs, entering the Senate Chambers, and walking through the Brumidi Corridor inside the Capitol building. *Id.* at 5–9.  While on the Senate Floor, Defendants took photos of themselves, which they later shared via Facebook messages. *Id.* at 8–9.  Defendant Shawndale Chilcoat sent messages on Facebook stating that, regarding "breaking windows and storming congress," "it was us I was with them and couldn't be more proud." *Id.* at 2.  She also wrote "We were just trying to stop them from certifying the votes" and "Honestly we should burn the fucker down." *Id.* at 10.

### D. Procedural History

On August 10, 2022, the Government filed its criminal complaint. *See generally* Compl. Defendants first appeared before Magistrate Judge Robin M. Meriweather on August 18, 2022, *see* Minute Entry, Aug. 18, 2022; the Government did not file the Indictment until September 9, 2022, *see* Indictment.  Defendants have pleaded "not guilty" to the charges in the Indictment. *See* Minute Order, Sept. 26, 2022.

Both Defendants were released on personal recognizance and were being courtesy supervised by the Northern District of Ohio, where they resided. *See* Order, ECF No. 12; Order, ECF No. 15.  Donald Chilcoat was originally placed under home detention with location monitoring. *See* ECF No. 15 at 2.  However, based on his compliance and without opposition from the Government, the Court granted one of his motions to modify conditions of release and lifted the condition of home detention; he remained subject to location monitoring, and the Court added a curfew from 9:00 pm to 5:00 am. *See* Order, ECF No. 31.

Both Defendants have rejected plea offers extended by the Government, *see* Minute Order, July 28, 2023, and the parties have been in discussions regarding proceeding to trial, with

the Court holding routine status conferences.

### E. Violations Giving Rise to Arrests

At a status hearing on July 28, 2023, the Court ordered both Shawndale and Donald

Chilcoat to appear for a status hearing via Zoom videoconference on September 5, 2023. *See*

Minute Order, July 28, 2023. On August 31, 2023, the Court received a [70] Motion to Vacate

filed by Shawndale Chilcoat *pro se*, in which she stated, among other arguments, that the Court

does not have power to hold a remote hearing because "[t]he court does not have jurisdiction"

and that she did not consent to a teleconference hearing because, at least in part, the platform

"can be hacked." *See* ECF No. 70 at 2–3. On September 1, 2023, despite Shawndale Chilcoat's

previous consent to appear via Zoom, and in light of her [70] Motion, the Court converted the

hearing from Zoom to in person in Courtroom 28A. *See* Minute Order, Sept. 1, 2023. The same

day, the Court also denied Shawndale Chilcoat's [70] Motion to Vacate in the [72] Order,

rejecting her sovereign citizen ideology and affirming the Court's jurisdiction over both

Defendants.[2] *See* Order, ECF No. 72. The Court also ordered that both orders referenced

above—the Minute Order instructing Defendants to appear in person, as well as the [72] Order

denying Shawndale Chilcoat's [70] Motion to Vacate, which again referenced the change from

Zoom to in-person, *see id.* at 2—be delivered to Defendants via FedEx priority overnight with

Saturday delivery. Although Saturday delivery was requested, FedEx tracking information

erroneously shows "deliver weekday." As a result, the package was picked up at 6:35 pm on

Friday, September 1, but delivery was not attempted until 11:36 am on Tuesday, September 5.[3]

The Court was informed that Defendants refused to sign for delivery. Delivery was again

---

[2] The Court previously addressed and denied Shawndale Chilcoat's sovereign citizen theories
and challenges to jurisdiction, among other issues, in an earlier opinion. *See* Mem. Op., ECF
No. 44.

[3] September 4 was a federal holiday.

attempted the following day; FedEx tracking information indicates that Donald Chilcoat signed

for delivery of the orders on September 6, 2023 at 12:33 pm.

At the status hearing on September 5, 2023 at 9:00 am, neither Defendants were present

in Courtroom 28A. Attorneys for both Shawndale and Donald Chilcoat indicated that they were

not able to connect with their clients about the change from Zoom to in person. And as was

noted above, delivery was not attempted until after the 9:00 am status hearing took place. The

Court checked the Zoom videoconference link, but Defendants were not present on Zoom either.

Due to Defendants' failure to appear for the status hearing in either format, the Court indicated

that it would be issuing a bench warrant for both Defendants but would hold the warrants in

abeyance for forty-eight hours. *See* Minute Order, Sept. 5, 2023.

Later in the day on September 5, 2023, the Court ordered priority overnight delivery of

the orders to Shawndale and Donald Chilcoat—separately, as two packages addressed to each of

them—without signature required. FedEx tracking information indicates that both packages

were shipped on September 6 and delivered September 7 at 12:26 PM.

The Court also heard from a Pretrial Services Agency ("PSA") officer in D.C. that a PSA

officer in Ohio had successfully contacted and spoken with Donald Chilcoat, who indicated that

they were unwilling to appear before the Court. Late in the day on September 7, 2023, counsels

indicated that they had still been unable to get in contact with their clients.

Accordingly, due to Defendants' failure to appear at the September 5, 2023 status

hearing, and after waiting more than forty-eight hours (the time period the Court indicated it

would hold the bench warrant in abeyance), the Court issued an order and bench warrant for

Defendants Shawndale and Donald Chilcoat on September 8, 2023. *See* Order, ECF No. 73.

The order was sent to both Defendants on September 8, 2023; FedEx tracking information

indicates that the packages were signed for by Donald Chilcoat on September 12, 2023. That order, which, again, Defendant Donald Chilcoat signed for, also ordered both Defendants to appear for a status hearing on October 5, 2023. *See* ECF No. 73.

As the Government explains, the Defendants did not turn themselves in nor get in contact with their attorneys about the bench warrant nor the scheduled October 5 hearing. *See* ECF No. 82 ("Gov.'s Resp. to Donald") at 1. The bench warrant was not yet executed on October 5 and Defendants were therefore not yet in custody. Despite Defendants having received notice about the scheduled hearing, the Defendants did not appear at said hearing on October 5. *See* Minute Order, Oct. 5, 2023.

On October 6, 2023, the Court received information from PSA that Donald Chilcoat had cut off and removed his ankle bracelet for location monitoring, which was a required condition of his release, at 5:50 PM on October 5. *See* Minute Order, Oct. 6, 2023; Pretrial Violation Report, ECF No. 77. PSA also informed the Court that their last telephone check-in with both Donald and Shawndale Chilcoat was on September 21, 2023, and they had tried to contact Donald Chilcoat numerous times since then but were unsuccessful. Minute Order, Oct. 6, 2023; ECF Nos. 76 (Pretrial Violation Report on Shawndale Chilcoat), 77 (Pretrial Violation Report on Donald Chilcoat). PSA indicated that they were no longer conducting home visits because of Defendants' continued noncompliance and wanting to ensure officer safety on the property. ECF Nos. 76, 77. As a result of these violations and updates, PSA considered Donald Chilcoat a "loss of contact" and requested removal from PSA supervision. ECF No. 77 at 3. Based on this information, the Court considered Shawndale and Donald Chilcoat to be potential flight risks. Minute Order, Oct. 6, 2023.

Despite repeated efforts and due diligence, the FBI was not able to apprehend Donald and

Shawndale Chilcoat until October 11, 2023, when they executed the bench warrant in Ohio. *See*

Notice of Execution of Bench Warrant, ECF No. 80. Donald Chilcoat was arrested at his

residence. *See* ECF No. 81 ("Donald's Mot.") at 2. When Shawndale Chilcoat learned of his

arrest, she drove to the local sheriff's department, who contacted the FBI, who then arrested her.

ECF No. 90 ("Gov.'s Resp. to Shawndale") at 9. Defendants were subsequently transferred to

custody in the District of Columbia, ECF No. 80; they arrived at the D.C. Jail on November 13,

2023.

### F. Pending Motions

Donald Chilcoat filed the pending Motion for Release on December 15, 2023. *See*

*generally* Donald's Mot. Shawndale Chilcoat filed the pending Motion for Release on December

18, 2023. *See generally* ECF No. 83 ("Shawndale's Mot."). Both motions are now briefed and

ripe for the Court's review. The Court notes that Defendant Donald Chilcoat raised issues in his

Reply that were not raised in his original Motion, despite the fact that such information was

knowable at the time of the original filing. *See* ECF No. 84 ("Donald's Reply") at 4. The Court

therefore gave the Government the opportunity to file an additional response. *See* Minute Order,

Jan. 3, 2024; ECF No. 93 ("Gov.'s Second Resp. to Donald").

The Court held a status hearing on January 5, 2024, at which Defendants were present in

person. *See* [94] Order. The parties briefly discussed the two Motions for Release. Defendants

currently remain in custody at the D.C. Jail.

## II. DISCUSSION

### A. Donald Chilcoat

Defendant Donald Chilcoat asks that he be released on the same conditions of release that

he was under prior to his arrest on October 11, 2023. Donald's Mot. at 1. He argues that "other

than this failure to appear," he has been in "perfect compliance with his conditions of release." *Id.* at 2. He states that after missing the September 5, 2023 status hearing, "[h]e never fled and continued to reside at this location and continued his employment." *Id.* He was at his home when he was arrested on October 11, 2023. *Id.* at 3. He continues that if released, he will resume his employment as well as taking care of twin nephews and his sick mother. *Id.* The Government opposes Defendant's motion. *See generally* Gov.'s Resp. to Donald.

The Court begins by discussing Defendant's violations, beginning on September 5, 2023. The date for the September 5 hearing was set by the Court at a status hearing on July 28, 2023 that both Donald and Shawndale Chilcoat attended via Zoom videoconference. *See* Minute Order, July 28, 2023. The Court later converted the hearing from Zoom to in person in Courtroom 28A in light of the [70] Motion filed by Shawndale Chilcoat. *See* Minute Order, Sept. 1, 2023. Defendant states that his "counsel was not able to contact Mr. Chilcoat to advise him of th[e] change" from Zoom to in-person for the September 5, 2023 hearing. Donald's Mot. at 2. Although the Court ordered a copy of the order changing the status hearing to in-person to be sent via overnight mail, delivery was not attempted until a few hours after that hearing took place. Nevertheless, Defendant did not appear either on Zoom or in person. Defendant also mentioned that during the week of September 5, he appeared in Mercer County Court in Ohio before a family court judge regarding custody of his nephews. *Id.* at 3. Both Donald and Shawndale Chilcoat raised this at the January 5 hearing, seeming to make the argument that they believed that this family court matter excused their presence at the status hearing before this Court. As this Court made clear, failing to appear before this Court is inexcusable for any reason without notice and prior Court approval.

Next, counsel indicates that he was not able to contact Donald Chilcoat about "the fact

that the Court had issued a bench warrant following the hearing." Donald's Mot. at 2. However, the Court mailed the bench warrant and Court orders to Defendant. At the status hearing held on January 5, 2024, Defendant claimed that he did not sign for the packages that included the bench warrant and Court orders. FedEx tracking information rebuts this claim, as a signature was requested and provided by Donald Chilcoat at his home address on September 12, 2023.

The Court made repeated efforts to notify Defendant about the original change in status hearing format, the various orders posted, the bench warrants issued, and the scheduled status conference. The record reflects that Defendant received a copy of the bench warrant and order, yet did not turn himself in, nor did he then reach out to make contact with his counsel, nor did he appear for the October 5, 2023 status hearing of which he was aware.

Next, Defendant Donald Chilcoat evaded contact from PSA, who attempted to reach him numerous times after his last telephone check-in on September 21, 2023. ECF No. 77 at 3. He then cut off and removed his ankle bracelet for location monitoring at 5:50 PM on October 5, 2023. *Id.*; Minute Order, Oct. 6, 2023. PSA therefore declared him a loss of contact, ECF No. 77, and the Court found both Donald and Shawndale Chilcoat to be potential flight risks, *see* Minute Order, Oct. 6, 2023. It was not until October 11, 2023 that the FBI were able to execute the warrant, when they arrested Donald Chilcoat at his home. *See* ECF No. 80.

The Court has just described a period of extreme noncompliance for just over one month, from September 5, 2023 to October 11, 2023. However, the Court also acknowledges that Donald Chilcoat was in complete compliance with his conditions of release for nearly one year, from August 2022 to September 2023. *See* ECF Nos. 25 (Pretrial Compliance Report reporting compliance); 36 (same); 47 (same); 52 (same); 54 (same); 56 (same); 59 (same); 68 (same). In fact, as noted earlier, the Court previously lifted one of his conditions of release (home

detention) in light of his compliance and without opposition from the Government.  *See* Order, ECF No. 31.

At this point, Donald Chilcoat has served ninety-three days of detention.  He explains that this period of detention has deterred any future noncompliance, Donald's Reply at 2, and that he is "committed to appearing before this Court for all future proceedings," Donald's Mot. at 3. Both in his motion, *id.* at 3, and at the January 5, 2024 status hearing, Donald Chilcoat expressed remorse for his actions.  He also explains that he has been caring for his "sick mother who he believes will succumb to her illness soon," and that he is worried that if "incarcerated when she passes… he will not be able to see her prior to that and attend her funeral as well as take care of her affairs." *Id.*

Pretrial detention is the exception, not the norm, under the Bail Reform Act.  *See* United *States v. Salerno*, 481 U.S. 739, 755 (1987).  However, the Bail Reform Act also provides that a person released pending trial who has violated a condition of release is "subject to a revocation of release" and "an order of detention."  18 U.S.C. § 3148(a).  Revocation of release and detention occur if the court finds that there is either no condition or combination of conditions of release that will assure that the defendant will not flee or pose a danger to the safety of other people or the community, based on the factors set forth in § 3142(g), or that the defendant is unlikely to abide by any condition or combination of conditions of release.  *Id.* § 3148(b).

Here, the Court finds that Defendant Donald Chilcoat is likely to abide by the conditions of release that it shall now impose.  Defendant was compliant with his conditions of release for nearly one year followed by a one-month period of noncompliance.  Defendant has expressed remorse to the Court for his noncompliance, and both he and his attorney have indicated that he will remain in compliance with any conditions set up until trial. Although PSA recommended

program removal, *see* ECF No. 92 at 3, the Court has communicated with PSA regarding imposing a set of conditions to ensure compliance.

The Court shall **GRANT** Defendant Donald Chilcoat's [81] Motion for Release and **ORDER** that Defendant Donald Chilcoat shall be released from detention following the status hearing on January 18, 2024 at 9:00 am EST, subject to the conditions of release set forth in a forthcoming order to include home detention and location monitoring, in addition to other more standard conditions of release (e.g., not obtain a passport, stay out of D.C., not possess a firearm, etc.). Defendant's location will be known at all times, and he will be able to leave his residence only for limited activities, including employment. Defendant will be required to report to PSA via phone once per week. The Court also encourages Defendant to maintain communication with his counsel to be notified of future scheduled hearings and Court orders; the Court shall also send copies of all orders, signed in ink, to Defendant's address of residence moving forward.

The Motion before the Court presents a close question, but the Court is extending a second chance for Defendant Donald Chilcoat to comply with the new conditions of release and remain in the community. Any violation of these conditions of release will trigger revocation and detention pending trial. *See* 18 U.S.C. § 3148(a).

The Court now turns to address other issues raised in Defendant's briefing. In his Reply, Donald Chilcoat mentions the pending Supreme Court review in *United States v. Fischer*, 64 F.4d 329 (D.C. Cir. 2023), *cert. granted*, No. 23-5572, 2023 WL 8605748 (Dec. 13, 2023) concerning the scope of 18 U.S.C. § 1512(c)(2), which prohibits the obstruction of an official proceeding. Defendant is charged with violation of 18 U.S.C. § 1512(c)(2). *See* Indictment. He argues that the "resolution of *Fischer* will directly impact the validity of the most serious charge against Mr. Chilcoat," and, as relevant here, "if Mr. Chilcoat remains incarcerated pending trial,

and *Fischer* is resolved in his favor, he will have served potentially more time on misdemeanor charges than the Court's sentence after a guilty plea on misdemeanor charges." Donald's Reply at 4.

A panel of the United States Court of Appeals for the District of Columbia Circuit, as well as every district court but one, has held that 18 U.S.C. § 1512(c)(2) covers "acts unrelated to investigations and evidence" and, therefore, encompasses the offense charged here. That the Supreme Court decided to grant certiorari does not mean that those cases were wrongly decided. And currently, *Fischer* is the binding law of this circuit.

However, the Court does consider that, while Defendant's ninety-three days of detention is currently "nowhere near the maximum term of incarceration" if he pled guilty to his misdemeanor charges, Gov.'s Second Resp. to Donald, the parties are still months away from trial, *see* ECF No. 65 (Donald Chilcoat's proposed pretrial schedule suggesting a potential trial date on June 10, 2024); ECF No. 94 (Order explaining Donald Chilcoat's current 70-day deadline as March 29, 2024, and 90-day deadline as April 18, 2024). The parties are set to submit another proposed pretrial schedule on January 17, 2024, which will provide further insight into their readiness for trial. Given the time that will elapse before any scheduled trial, the Court acknowledges Defendant's argument that *if* the Supreme Court overturns *Fischer*, there is a possibility that he could serve more time in pretrial detention than would be warranted if he only faced the outstanding misdemeanor charges. The Court will not speculate on Defendant's potential conviction at trial, nor on what sentence the Court would impose should Defendant plead to or be found guilty of the misdemeanor charges he currently faces, nor, for the time being, how much time will elapse before any trial takes place. Rather, the Court notes Donald Chilcoat's argument regarding the potential consequences of the Supreme Court's

consideration of *Fischer* as it relates to his current detention and Motion for Release.

Similarly, the Court briefly addresses another issue raised by Defendant Donald Chilcoat. In his Reply brief, Defendant states that he "does not wish to set a speedy trial date in light of the pending Supreme Court review." Def.'s Reply at 4. This is a quick remark, not a request or a motion for continuance or stay of proceedings, and the Court has since ordered the parties to confer and submit a proposed pretrial schedule. *See* Order, ECF No. 94. However, in light of Defendant's comment about not wanting to set a speedy trial, the Court calls attention to rulings in which numerous courts in this district have denied motions to stay or continue proceedings pending the Supreme Court's resolution of *Fischer*. *See, e.g.*, *United States v. Warnagiris*, No. 21-cr-00382 (PLF), 2023 WL 6926491, at *2 (D.D.C. Oct. 19, 2023) (denying request to hold case in abeyance pending resolution of *Fischer*); *see* Minute Entry, *United States v. Nichols*, No. 21-cr-117 (RCL) (D.D.C. Dec. 21, 2023) (denying motion to continue trial pending resolution of *Fischer*); Motion Hearing Tr. at 43:16–19, *United States v. Dunfee*, No. 23-cr-36 (RBW), ECF No. 60 (D.D.C. Dec. 14, 2023) (denying motion to delay trial pending resolution of *Fischer* where "we are approaching almost three years since these events took place[,] [a]nd . . . there is an interest on the part of the people and the government to have these matters resolved as expeditiously as possible"); *see also* Minute Order, *United States v. Crowl*, No. 21-cr-28 (APM) (D.D.C. Dec. 20, 2023) (denying motion to stay sentencing pending *Fischer*); Minute Order, *United States v. Carpenter*, No. 21-cr-305 (JEB) (D.D.C. Dec. 15, 2023) (same); Mem. Op., *United States v. Carnell*, No. 23-139 (BAH) (D.D.C. Jan. 4, 2024), ECF No. 75. The Court's order today—remarking on *Fischer* in the context of Defendant's Motion for Release—should not be construed as an indication of how it would rule on any future motion requesting a continuance or stay pending resolution of *Fischer*.

**B.  Shawndale Chilcoat**

Defendant Shawndale Chilcoat asks that she be released on the same conditions of release that she was under prior to her arrest on October 11, 2023.  Shawndale's Mot. at 1.  She argues that if released, she will "abide by all restrictions this Court imposes, and will appear at all future court appearances."  *Id.* at 3.  The Government opposes Defendant's motion.  *See generally* Gov.'s Resp. to Shawndale.

The Court now addresses Defendant's violations beginning on September 5, 2023.  The date for the September 5 hearing was set by the Court at a status hearing on July 28, 2023 that both Donald and Shawndale Chilcoat attended via Zoom videoconference.  *See* Minute Order, July 28, 2023.  The Court later converted the hearing from Zoom to in person in Courtroom 28A in light of Shawndale Chilcoat's [70] Motion.  *See* Minute Order, Sept. 1, 2023.  Defense counsel indicated that he was not able to contact Defendant Shawndale Chilcoat regarding the change from Zoom to in-person.  *See* Minute Order, Sept. 5, 2023.  As discussed earlier, the Court ordered a copy of the order changing the status hearing to in-person to be sent via overnight mail, but delivery was not attempted until a few hours after that hearing took place.  Nevertheless, Defendant did not appear on Zoom either.  As was also discussed above, Shawndale Chilcoat's argument about her appearance in family court Mercer County, Ohio the week of September 5 excusing her presence from this Court's hearing is baseless.

Next, FedEx tracking information indicates that Donald Chilcoat received and signed for packages that included the Court's bench warrant and order setting a status conference for October 5, 2023.  The Court assumes that Donald Chilcoat shared this information with Shawndale Chilcoat, his wife with whom he lived and who resided at the same address to which the packages were sent.  However, Defendant Shawndale Chilcoat did not appear for this status

conference on October 5 either.

Accordingly, as with Donald Chilcoat, and despite significant effort to notify Defendant of various orders, including a bench warrant, Defendant Shawndale Chilcoat failed to make herself available to her attorney, failed to turn herself in, failed to appear in Court, and ignored Court orders delivered and signed for at her address.

When Shawndale Chilcoat learned of Donald Chilcoat's arrest on October 11, 2023, she drove to the local sheriff's department.  Gov's Resp. to Shawndale at 9.  As the Government explains, this is likely due to her sovereign citizen ideology, which embraces the idea that the county sheriff is the superior law enforcement officer, above even federal officials.  *Id.* at 9 n.2. The sheriff's department then contacted the FBI, who arrested Defendant Shawndale Chilcoat. *Id.* at 9; *see also* ECF No. 80 (Notice of Shawndale Chilcoat's arrest on October 11, 2023).

As with Donald Chilcoat, Shawndale Chilcoat was in flagrant noncompliance for just over one month, from September 5, 2023 to October 11, 2023.  However, she was in complete compliance with her conditions of release for nearly one year, from August 2022 to September 2023.  *See* ECF Nos. 26 (Pretrial Compliance Report reporting compliance); 35 (same); 55 (same); 58 (same); 67 (same).

To date, Shawndale Chilcoat has served ninety-three days of detention.  She argues that her confinement "has been extremely difficult and a shocking eye-opener" and that if released, "she will abide by this Court's orders.  Shawndale's Mot. at 3.  At the January 5, 2024 status hearing, Shawndale Chilcoat expressed remorse to the Court for her actions.  She explained that during her period of noncompliance, she and "her family were experiencing personal hardships, including an unexpected death in the family and caring for her husband's elderly mother." *Id.* at 2–3.

For the same reasons as stated above with respect to Donald Chilcoat, the Court finds that Defendant Shawndale Chilcoat is likely to abide by conditions of release that it shall now impose. Defendant was compliant with her conditions of release for nearly one year followed by a one-month lapse into noncompliance. Defendant has expressed remorse for her noncompliance, and both she and her attorney have indicated that she will remain in compliance with any conditions set up until trial. Although PSA recommended program removal, *see* ECF No. 91 at 2, the Court has communicated with PSA regarding imposing a set of conditions to ensure compliance.

The Court shall **GRANT** Defendant Shawndale Chilcoat's [83] Motion for Release and **ORDER** that Defendant Shawndale Chilcoat shall be released from detention following the status hearing on January 18, 2024 at 9:00 am EST, subject to the conditions of release set forth in a forthcoming order to include home detention and location monitoring, in addition to other more standard conditions of release (e.g., not obtain a passport, stay out of D.C., not possess a firearm, etc.). Defendant's location will be known at all times, and she will be able to leave her residence only for limited activities, including employment. Defendant will be required to report to PSA via phone once per week. The Court also encourages Defendant to maintain communication with her counsel to be notified of future scheduled hearings and Court orders; the Court shall also send copies of all orders, signed in ink, to Defendant's address of residence moving forward.

The Motion before the Court presents a close question, but the Court is extending a second chance for Defendant Shawndale Chilcoat to comply with the new conditions of release and remain in the community. Any violation of these conditions of release will trigger revocation and detention pending trial. *See* 18 U.S.C. § 3148(a). Any violation of these

conditions of release will trigger revocation and detention pending trial. *See* 18 U.S.C. §

3148(a).

### III. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant Donald Chilcoat's [81]

Motion for Release from Custody and Defendant Shawndale Chilcoat's [83] Motion for Release

from Custody, subject to the conditions of release set forth in forthcoming orders.

An appropriate Order accompanies this Memorandum Opinion.


Date: January 12, 2024

**COLLEEN KOLLAR-KOTELLY**
United States District Judge

18