UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | CASE NO. 22-cr-299-CKK |
| v. : | |
| : | |
| SHAWNDALE CHILCOAT, and : | |
| DONALD CHILCOAT, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S STATUS REPORT REGARDING THE
IMPACT OF *UNITED STATES V. FISCHER*, 144 S.Ct. 2176 (2024), ON COUNT ONE**

The United States, through undersigned counsel, files this status report describing its view of the impact of *United States v. Fischer*, 144 S.Ct. 2176 (2024), on Count One of the Superseding Indictment, which charges the defendants with a violation of 18 U.S.C. §§ 1512(c)(2) and 2. As discussed below, *Fischer* does not bar this prosecution. To be sure, *Fischer* will require an updated jury instruction regarding the elements of a violation of § 1512(c)(2), and below, the government proposes such language. But the government expects that its evidence of the defendants' conduct, and the inferences to be drawn from that conduct, will be sufficient to submit this case to the jury and to sustain a conviction. At this time, the government intends to proceed to trial on Count One of the Superseding Indictment.

**I.    Procedural History**

On April 3, 2024, a grand jury returned a superseding indictment charging the defendants with a violation of 18 U.S.C. §§ 1512(c)(2) and 2 (Count One), among other offenses. On April 4, 2024, Donald Chilcoat filed a motion to dismiss Count One, ECF 114; that same day, Shawndale Chilcoat moved to join Donald Chilcoat's Motion. ECF 119. On April 11, 2024, the government

filed a response to the motion to dismiss Count One. ECF 124.[1] The Court has not yet ruled on this motion, which—in any event—was filed before the Supreme Court decided *Fischer*. By a minute order on August 7, 2024, the Court ordered the parties to file a status report describing the effect, if any, of *Fischer* on Count One. By a minute order on August 14, 2024, the Court extended the deadline for submission of such a report.

**II.     Legal Analysis**

    **a. The Government's Proposed Jury Instruction, in light of *Fischer*, as to the Elements of a Violation of Section 1512(c)(2)**

In *Fischer*, the Supreme Court held that "to prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." *Fischer*, 144 S. Ct. at 2190. Given this decision, the jury must be instructed accordingly on the elements of the offense. The government proposes the following instruction as to the elements:

> *First*, the defendant committed or attempted to commit an act that impaired the integrity of or rendered unavailable records, documents, or other things to be used in an official proceeding;
>
> *Second*, the defendant intended to impair the integrity of or render unavailable such records, documents, objects, or other things to be used in an official proceeding; and
>
> *Third*, the defendant acted corruptly.[2]

---

[1] This procedural history does not address the defendants' various *pro se* motions.
[2] This instruction differs from prior jury instructions which did not focus on impairing the integrity of, or rendering unavailable, records, documents, or other things to be used in an official proceeding. The prior instruction articulated the elements as follows:

This articulation of the elements tracks the Supreme Court's holding in *Fischer*. If the jury is presented with sufficient evidence, is instructed in this way, and finds the defendants guilty, *Fischer* will allow their convictions to stand.

### b. The Superseding Indictment Sufficiently Alleges an Offense

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*." Fed. R. Crim. P. 12(b)(1) (emphasis added). Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). A criminal defendant may move for dismissal based only on a defect in the indictment, such as a failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B). Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *See United States v. Bingert*, 605 F. Supp. 3d 111, 117 (D.D.C. 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed); *McHugh*, 2022 WL 1302880 at *2 (a motion to dismiss involves the Court's determination of the legal sufficiency of the indictment, not the sufficiency of the evidence);

---

> First, the defendant attempted to or did obstruct or impede an official proceeding.
> Second, the defendant acted with the intent to obstruct or impede an official proceeding.
> Third, the defendant acted knowingly, with awareness that the natural and probable effect of his conduct would be to obstruct or impeded the official proceeding.
> Fourth, the defendant acted corruptly.

*E.g. United States v. Groseclose*, 21-cr-311-CRC, ECF No. 79. The balance of the prior § 1512(c)(2) instruction is not affected by *Fischer* and need not change.

*United States v. Puma*, No. 21-CR-454 (PLF), 2022 WL 823079 at *4 (D.D.C. Mar. 19, 2022) ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and, more specifically, the <u>language used</u> to charge the crimes") (emphasis in original, quotation marks and citation omitted).

A charging document may also fail to state an offense if the statutory provision at issue does not apply to the charged conduct or if the statutory provision at issue is unconstitutional. *See, e.g., United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017) ("The defense of failure of an indictment to charge an offense includes the claim that the statute apparently creating the offense is unconstitutional." (citation omitted)), *vacated on other grounds*, 898 F.3d 36 (D.C. Cir. 2018). In considering a motion to dismiss, a court must accept the allegations in the indictment as true. *See United States v. Ballestas*, 795 F.3d 138, 149 (D.C. Cir. 2015).

Here, the Superseding Indictment sufficiently alleges a violation of 18 U.S.C. § 1512(c)(2), and the Supreme Court's decision in *Fischer* is no bar to a trial on the merits. The text of Count One mirrors the statutory language defining the offense. *Compare* 18 U.S.C. § 1512(c)(2) *with* ECF 109 at 1-2. Beyond this, an assessment of the defendants' conduct, and of the government's proof, will require a trial on the merits. Accordingly, there is no basis to dismiss Count One for failure to state an offense, even after *Fischer*, and the Court should allow trial to proceed on this count, along with the others.

### c. The Government's Proof Will Establish a Violation of Section 1512 Under the Standard Established in *United States v. Fischer*

Although the Court should not dismiss Count One of the Superseding Indictment before trial, the government understands that the Court wants to have confidence that the facts here give rise to a triable case. Accordingly, the government presents this synopsis of the evidence it will

present to meet its burden of proof in light of *Fischer*. This synopsis does not purport to be a full proffer of the evidence that the government will present at trial.

The defendants traveled together from Celina, Ohio to Washington, D.C., to attend the former President's rally on January 6, 2021. After the rally, the defendants traveled to the Capitol grounds, where they illegally entered the restricted area around the Capitol building. During their time on the Capitol grounds, both demonstrated their intent to invade the Capitol building. As he climbed scaffolding to ascend to the Upper West Terrace, Donald Chilcoat recorded a video which captured the size of the crowd behind him, and narrated, "Getting ready to go into the Capitol building here . . . We're going into the Capitol building now." After they reached the Upper West Terrace, but before they entered the building, Shawndale Chilcoat recorded a video in which she stated "I'm so freaking excited, look, I'm right at the top of the Congress. We're going to show them how they need to vote today."

Thereafter, at approximately 2:46 p.m., the defendants watched rioters attempt to break open windows, then entered the Capitol building itself through a broken-open door on the building's northwest side. A cell phone video shows that, after they learned of the breach, Donald Chilcoat cautioned Shawndale Chilcoat that they should let other rioters enter first. That way, if the police deployed pepper spray, those other rioters, and not the Chilcoats, would bear the brunt of it. In other words, the defendants knew they were not welcome, and they knew their entry might be met with force. After the defendants entered the building, they traveled to the Senate Chamber – the very place where the proceeding was taking place – and joined other rioters in occupying it. There, they took photographs and remained in the chamber while other rioters searched desks belonging to the former Vice President and to Senators.

Through their conduct, the defendants demonstrated an intent to invade and occupy the Capitol building and to stop the certification of the electoral college vote. And, critically, they were aware that this proceeding involved records, documents, or other things—specifically, the electoral votes that Congress was to consider. On January 4, 2021, via Facebook, a friend of Shawndale Chilcoat told her to "give Rob Portman a call and let him know what you think of him not rejecting the fraudulent votes." Shawndale Chilcoat affirmed "just did." Then, late on January 5 or early on January 6, Shawndale Chilcoat posted a message to Facebook saying that "[Vice President] Pence is stating he can not reject the votes." On January 7, 2021, after the riot, Shawndale Chilcoat admitted "we were just trying to stop them from certifying the votes and didn't know they were already gone." On the same day, she also bragged, "[o]k so antifa is being blamed for breaking windows and storming congress. Um no, it was us I was with them and couldn't be more proud." From this evidence, the jury certainly will be able to infer that Shawndale Chilcoat attempted to impair the availability of the electoral college votes which Congress was to consider. The jury can also infer, based on the defendants' joint conduct and their relationship, that Donald Chilcoat did, too.  Coupled with their conduct – entering the Senate chamber and aiding and abetting the occupation of the chamber by rioters obviously interfering with documents and records related to the proceeding itself – a jury considering this evidence will be able to find, beyond a reasonable doubt, that the defendants acted to obstruct the certification of the electoral vote: that they intended to, and attempted to, impair the integrity or availability of the votes under consideration by the Joint Session of Congress on January 6, 2021. Accordingly, the government intends to proceed to trial on Count One.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        DC Bar No. 481052

By:       */s/ Michael J. Romano*
        Michael J. Romano
        Deputy Chief, Capitol Siege Section
        IL Bar No. 6293658
        michael.romano2@usdoj.gov
        (202) 252-7154

        */s/ Ashley Akers*
        ASHLEY AKERS
        Trial Attorney (Detailed)
        MO Bar No. 69601
        Ashley.akers@usdoj.gov
        (202) 353-0521