UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        v.<br><br>SHAWNDALE CHILCOAT and<br>DONALD CHILCOAT,<br><br>        Defendants. | Criminal Action No. 22-299 (CKK) |

MEMORANDUM OPINION
(November 4, 2024)

Defendants Shawndale Chilcoat (1) and Donald Chilcoat (2) face trial on six felony and misdemeanor charges for their alleged conduct during the riot at the United States Capitol on January 6, 2021.  *See* Superseding Indictment, ECF No. 109.[1]  Three pretrial motions are ripe for this Court's review: Defendants' [114] Motion to Dismiss Counts Two and Three of the Superseding Indictment; Defendants' [115] Motion to Dismiss Count Six of the Superseding Indictment; and Defendants' [116] Motion to Change Venue.[2]  Having considered the pleadings, the parties' briefing, the relevant legal authority, and the entire record, the Court shall **DENY** all three of those motions.[3]  An appropriate Order accompanies this Memorandum Opinion.

---

[1] Mrs. Chilcoat faces an additional felony charge for her alleged conduct during the course of litigation in this matter. *See* Superseding Indictment, ECF No. 109 at 4 (Count Seven alleging Failure to Appear, in violation of 18 U.S.C. § 3146(a)(1)).  Mr. Chilcoat faces two such additional charges.  *Id.* (Counts Seven and Eight alleging the same).

[2] All three motions were originally filed only by Mr. Chilcoat.  Mrs. Chilcoat—who at the time was represented by separate counsel—moved to join and adopt those motions.  ECF No. 119.  Before the Court ruled on Mrs. Chilcoat's motion, Defendants retained new counsel and sought to have that counsel represent them jointly.  *See* ECF Nos. 127, 128, 129, 130.  After conducting an inquiry under Fed. R. Crim. P. 44(c), the Court approved that joint representation.  Order, ECF No. 135.  Defendants then jointly moved to adopt and withdraw certain then-pending motions.  ECF No. 144.  The Court granted that motion from the bench.  Min. Order, June 20, 2024.  As a result, all of ECF Nos. 114, 115, and 116 are now joint motions by both Defendants.

[3] The Court's consideration has focused on:
- the Superseding Indictment, ECF No. 109;
- the Statement of Facts in support of the Government's Criminal Complaint, ECF. No. 1-1 (the "SOF");
- Defendants' three motions, ECF Nos. 114, 115, 116;
- and the Government's responses thereto, ECF Nos. 122, 123, 126.

1

## I. BACKGROUND

The factual background of this matter is set forth more fully elsewhere. *See* Mem. Op., ECF No. 43 at 1–4. And the Court assumes familiarity with the complex procedural history of this litigation. *See* ECF Nos. 73, 136, 178, 219. For present purposes, it suffices to say that Defendants Shawndale and Donald Chilcoat are two of the hundreds of individuals charged with federal crimes for their alleged conduct at the United States Capitol on January 6, 2021. As relevant here, both Defendants are charged with: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C.§ 1752(a)(1) (Count Two); Disorderly Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2) (Count Three); and Parading, Demonstrating, or Picketing in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Six). *See* Superseding Indictment, ECF No. 109 at 2–3.

In support of those charges, the Government alleges that both Defendants "were unlawfully present on restricted U.S. Capitol grounds on January 6, 2021." SOF at 2. That allegation is substantiated by a litany of social media posts allegedly authored by Defendants. For example, one post allegedly authored by Mrs. Chilcoat states: "OK so antifa is being blamed for breaking windows and storming [C]ongress. Um no, it was us[;] I was with them and couldn't be more proud. Please stop giving them credit . . . ." *Id.* Photos and videos obtained from Defendants and CCTV footage from the Capitol are alleged to show Defendants joining the mob, entering the Capitol near the Parliamentary Door, and posing for pictures on the Senate floor. *Id.* at 3–9. Other social media posts allegedly depict Defendants encouraging rioters to break windows, planning to climb the scaffolding surrounding the Capitol, and admitting to entering the Capitol. *Id.* at 10. According to a message allegedly obtained from Mrs. Chilcoat's phone, Defendants "were just trying to stop them from certifying the votes" when committing these acts on January 6, 2021. *Id.*

## II. ANALYSIS

Now before the Court are Defendants' [114] Motion to Dismiss Counts Two and Three of the Superseding Indictment ("Defs.' 1st Mot."); [115] Motion to Dismiss Count Six of the Superseding Indictment ("Defs.' 2d Mot."); and [116] Motion to Change Venue ("Defs.' 3d Mot."). Taking each motion in turn, the Court will deny all three of Defendants' motions.

### A. Motion to Dismiss Counts Two and Three

Before trial, a criminal defendant may move to dismiss an indictment, or specific counts thereof, for "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment fails to state an offense if "the statutory provision at issue does not apply to the charged conduct." *United States v. McHugh*, 583 F. Supp. 3d 1, 10 (D.D.C. 2022) (JDB). "The operative question" when a defendant moves to dismiss on this basis "is whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Sanford, Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012) (BAH).

Counts Two and Three of the Superseding Indictment charge violations of 18 U.S.C. § 1752(a). ECF No. 109 at 2. As relevant here, Section 1752(a) criminalizes certain conduct in (or in proximity to) "any restricted building or grounds." 18 U.S.C. § 1752(a)(1)–(2). And Section 1752(c) further defines "restricted building or grounds" to mean—among other places— "any posted, cordoned off, or otherwise restricted area" of "a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." *Id.* § 1752(c)(1)(B). Mirroring this language, Counts Two and Three charge Defendants with engaging in prohibited conduct "in a restricted building or grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President was and would be temporarily visiting." Superseding Indictment, ECF No. 109 at 2.

3

Defendants argue that these allegations are insufficient to state an offense for two reasons. First, Defendants argue that Counts Two and Three fail to state an offense because the Government "does not allege that the [U.S. Secret Service] designated [the Capitol] as being restricted" on January 6, 2021. Defs.' 1st Mot. at 3.[4] Defendants argue this omission is fatal to Counts Two and Three because the text and legislative history of Section 1752 reveal that only the Secret Service has the authority to designate areas as "restricted" within the meaning of the statute. *Id.* at 4. They further argue that a contrary reading would be absurd. *Id.* at 4–5.

But as Defendants concede, courts in this District have rejected this argument at every turn. *See id.* at 1 n.1 (collecting cases); *see also* Gov't's 1st Opp'n, ECF No. 123 at 7 n.2 (same). This Court has joined that consensus. *United States v. Grider*, 617 F. Supp. 3d 42, 53–54 (D.D.C. 2022) (CKK). And Defendants offer the Court no reason to reverse course now. "The text [of Section 1752] plainly does not require that the Secret Service be the entity to restrict or cordon off a particular area." *United States v. Mostofsky*, 579 F. Supp. 3d 9, 28 (D.D.C. 2021) (JEB). Indeed, "the only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must do the restricting." *United States v. Griffin*, 549 F. Supp. 3d 49, 55 (D.D.C. 2021) (TNM), *aff'd on other grounds*, 2022 WL 4536993 (D.C. Cir. Oct. 22, 2024). Faced with this unambiguous text, the Court will not delve into the legislative history of Section 1752 in search of an additional, implicit requirement. *See Babb v. Wilkie*, 589 U.S. 399, 413 (2020). Nor will the Court accept Defendants' invitation to apply the absurdity canon. As other courts in this District have concluded, "there is nothing absurd about criminalizing the breach of any barrier around a Secret Service protectee." *McHugh*, 583 F. Supp. 3d at 32.

---

[4] Defendants contend the Government has conceded in other cases that the U.S. Capitol Police rather than the Secret Service restricted the Capitol on January 6, 2021. Defs.' Mot. 114 at 3. Perhaps. But this Court has concluded elsewhere that the two agencies worked "[i]n partnership" to restrict the Capitol. *United States v. Rivera*, 607 F. Supp. 3d 1, 4 (D.D.C. 2022) (CKK). In any event, the factual distinction is immaterial to the present motion.

4

Second, Defendants argue that Counts Two and Three fail to state an offense because the Government's allegation that former Vice President Pence was "temporarily visiting" the Capitol on January 6 is incorrect as a matter of law. Defs.' 1st Mot. at 5–7. That is so, Defendants contend, because the phrase "temporarily visiting" connotes "temporary travel to a location where the person does not normally live or work on a regular basis." *Id.* at 6. And Vice President Pence lived in the District of Columbia (where the Capitol is located), maintained a permanent office in the Capitol in his capacity as President of the Senate, and was present at the Capitol on January 6 to work (rather than visit) by presiding over a congressional proceeding. *Id.*

This imaginative argument has also been roundly rejected by courts in this District. *E.g.*, *United States v. Oliveras*, No. 21-cr-738, 2023 WL 196746, at *2 (D.D.C. Jan. 17, 2023) (BAH) (rejecting "these exercises in wordsmithing and fabricating ambiguity"); *United States v. Bingert*, 605 F. Supp. 3d 111, 132 (D.D.C. 2022) (RCL) ("The semantic games defendants play here are laughable."); *United States v. Puma*, 596 F. Supp. 3d 90, 112–14 (D.D.C. 2022) (PLF) ("Mr. Puma's interpretation is not supported by the statutory text and is out of step with the statutory context."). And this Court has previously rejected similar arguments out of hand. *United States v. Spencer*, No. 21-cr-417-1, 2023 WL 6795858, at *5–6 (D.D.C. Oct. 13, 2023) (CKK).

Defendants make no effort to address the reasoning of any of these decisions. And while the opinions of other courts in this District are not binding, this Court finds them eminently persuasive. Then-Chief Judge Beryl A. Howell's opinion in *United States v. Oliveras*, No. 21-cr-738, 2023 WL 196746, at *2 (D.D.C. Jan. 17, 2023), is particularly illuminating:

> Common sense easily resolves these challenges to Counts [charging violations of Section 1752]. Despite having a limited role as President of, and tiebreaker for, the Senate, U.S. Const. art. I, § 3, cl. 4, the Vice President is generally regarded as an executive branch officer, *see id.* art II, § 1, cl. 1, and generally works in locations other than the Capitol. The fact that the Vice President has a space set aside in the Capitol for occasional use—notably, not the location where Vice President Pence

5

was working inside the Capitol on January 6, 2021—makes this official no less a "visitor" and no less "temporary" when making an occasional appearance on the premises of the Capitol. *See United States v. Williams*, No. 21-cr-618, 2022 WL 2237301, at *19–20 (D.D.C. June 22, 2022) (ABJ). Likewise, the Vice President's ordinary residence in the District of Columbia cannot have the repercussions that defendant suggests: namely, that the Vice President cannot be deemed to "temporarily visit" any place within the District of Columbia. Nor does the Vice President's presence for official duties by presiding over a session of Congress make him any less of a temporary visitor because a government official can clearly appear somewhere temporarily and still be doing official work in the process. Defendant cites to several cases where a President or Vice President was deemed to be "temporarily visiting" at rallies or out-of-town functions . . . but the fact that those situations clearly qualify does not mean that the situation on January 6 does not likewise count.

With this and other thorough opinions from courts in this District in mind, the Court agrees with the Government that the allegation in Counts Two and Three of the Superseding Indictment that "the Vice President was and would be temporarily visiting" the Capitol on January 6, 2021 is legally sufficient.

Because the Capitol was a properly designated restricted building or grounds where the former Vice President was temporarily visiting on January 6, 2021, Counts Two and Three state an offense. The Court shall **DENY** Defendants' [114] motion to dismiss those counts.

### B. Motion to Dismiss Count Six

As explained, criminal defendants may move to dismiss an indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment fails to state an offense when "the statute apparently creating the offense is unconstitutional." *United States v. Eshetu*, 863 F.3d 946, 952 (D.C. Cir. 2017) (quoting *United States v. Seuss*, 474 F.2d 385, 387 n.2 (1st Cir. 1973)), *vacated on other grounds*, 898 F.3d 36 (D.C. Cir. 2018). Here, Defendants argue that Count Six of the Superseding Indictment, which charges violations 40 U.S.C. § 5104(e)(2)(G), fails to state an offense because Section 5104(e)(2)(G) is unconstitutional. Defs.' 2d Mot. at 1. The Court disagrees—as binding precedent requires.

Title 40 of the U.S. Code concerns the administration of federal public buildings and works. Chapter 51 thereof zeroes in on the U.S. Capitol building and its grounds. Section 5104 defines certain "[u]nlawful activities" in that building and on those grounds, including varied forms of "[v]iolent entry and disorderly conduct." And Section 5104(e)(2)(G) makes it a crime to "willfully and knowingly . . . parade, demonstrate, or picket in any of the Capitol Buildings." Count Six of the Superseding Indictment mirrors this language and alleges Defendants "willfully and knowingly paraded, demonstrated, and picketed in any United States Capitol Building." ECF No. 109 at 3.

Defendants argue Section 5104(e)(2)(G) is unconstitutional for two reasons. First, they contend the statute is facially overbroad. Defs.' 2d Mot. at 2–6. Second, they argue Section 5104(e)(2)(G) is "unconstitutionally vague on its face." *Id.* at 6–10. Defendants concede that those arguments are the same as those rejected by Judge John D. Bates in *United States v. Nassif*, 628 F. Supp. 3d 169 (D.D.C. 2022). *See id.* at 2 n.1. And they also concede that their vagueness challenge to Section 5104(e)(2)(G) is exclusively facial—that is, they do not argue the statute is vague as applied to their own conduct in the Capitol on January 6. *See id.* at 6.

Those concessions are fatal to Defendants' motion because the U.S. Court of Appeals for the District of Columbia Circuit has now affirmed Judge Bates's ruling. *United States v. Nassif*, 97 F.4th 968 (D.C. Cir. 2024). The Court of Appeals concluded that "the potential unconstitutional applications of [S]ection 5104(e)(2)(G) are not so disproportionate 'to the statute's plainly legitimate sweep' as to merit facial invalidation" on grounds of overbreadth. *Id.* at 981 (quoting *United States v. Williams*, 553, U.S. 285, 292 (2008)).[5] That holding binds this Court.

---

[5] In doing so, the Court of Appeals held that "the Capitol buildings are a nonpublic forum." *Nassif*, 97 F.4th at 978. The Court of Appeals reserved "the possibility that a future case might find that there is a designated public forum somewhere inside the Capitol buildings" and cabined its ruling to "the present record" in which "Nassif never claimed that any portion of the Capitol buildings was a public forum." *Id.* But this carveout is of no use to Defendants who—like Nassif—have made no argument that the interior of the Capitol is a public forum. *See generally* Defs.' 2d Mot.

7

Next, the Court of Appeals held that Nassif was barred from mounting a facial vagueness challenge because Section 5104(e)(2)(G) "clearly proscribed his own conduct" and "an individual 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Id.* at 981–82 (quoting *Holder v. Humanitarian L. Project*, 561 U.S. 1, 20 (2010)). Like Nassif, Defendants do not claim the statute is vague as applied to their conduct. Nor could they. "Under any plausible definition of the term," Defendants were "demonstrating" when they "joined a crowd of hundreds of people, many carrying signs, banners, or flags, who shouted or chanted as they descended on and entered into the Capitol seeking to halt the certification of the 2020 election." *Id.* at 981. So as in *Nassif*, Defendants' "own conduct forecloses [their] vagueness challenge." *Id.*

Because the Court of Appeals has conclusively resolved both of Defendants' facial challenges, this Court must also hold that Section 5104(e)(2)(G) is not unconstitutional on those grounds. Accordingly, the Court shall **DENY** Defendants' [115] Motion to Dismiss Count Six.

**C. Motion to Change Venue**

Finally, Defendants move to transfer this case to another venue, arguing that no impartial jury can be seated in the District of Columbia. *See* Defs.' 3d Mot. at 1. Criminal defendants have a right to trial by "an impartial jury of the State and district wherein the crime [was allegedly] committed." U.S. Const. amend. VI. "The Constitution's place-of-trial prescriptions, however, do not impede transfer of the proceeding to a different district at the defendant's request if extraordinary local prejudice will prevent a fair trial . . . ." *Skilling v. United States*, 561 U.S. 358, 378 (2010). This Court "must transfer the proceeding against [a] defendant to another district" when "so great a prejudice against [that] defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed. R. Crim. P. 21(a).

8

Defendants concede that their Motion to Change Venue "is largely similar" to motions that "have been denied by other district court judges in this jurisdiction." Defs.' 3d Mot. at 1 n.1. That is an understatement. Defendants' Motion is functionally identical to those filed in other cases before this Court and other courts in this District.[6] As the Government observes, these motions have been "consistently and uniformly rejected." Gov't's 3d Opp'n, ECF No. 126 at 1. Indeed, requests for venue transfer are perhaps the most litigated issue in this District's ever-growing corpus of January 6 jurisprudence. As of last year, "[e]very single court of this jurisdiction ha[d] rejected at least one such request." *United States v. Mackrell*, No. 21-cr-276-1, 2023 WL 2755564, at *1 (D.D.C. Apr. 3, 2023) (CKK) (collecting cases). And since Defendants filed their motion, the Court of Appeals has joined the fray, affirming the denial of a pre-*voir dire* motion for venue transfer relying on the same arguments Defendants marshal here. *See United States v. Webster*, 102 F.4th 471, 479–481 (D.C. Cir. 2024).

Because this Court has already rejected all of Defendants' arguments for venue transfer in other cases, it shall simply incorporate by reference its prior reasoning here. *See United States v. Eicher*, No. 22-cr-38, 2022 WL 11737926 (D.D.C. Oct. 20, 2022) (CKK); *United States v. Chwiesiuk*, No. 21-cr-536, 2023 WL 2562517 (D.D.C. Mar. 17, 2023) (CKK); *Mackrell*, 2023 WL 2755564; *United States v. Vaglica*, No. 23-cr-429, ECF No. 37 (D.D.C. Sept. 9, 2024) (CKK). As in other cases, "nothing in the record suggests that the District's jury pool ha[s] any preconceived notions about [Defendants] or [their] guilt or innocence, or even who" they are. *Webster*, 102 F.4th at 479.

The Court will continue to follow "this circuit's well[-]established procedure" of refusing defendants' "pre-*voir dire* requests for . . . a change of venue." *United States v. Haldeman*, 559

---

[6] *Compare* Defs.' 3d Mot., *with United States v. Gisewein*, No. 21-cr-24, ECF No. 64 (EGS), *United States v. Mackrell*, 21-cr-276-1, ECF No. 53 (CKK), *and United States v. McHugh*, 21-cr-453, ECF No. 55 (JDB).

9

F.2d 31, 63–64 (D.C. Cir. 1976). "[I]f an impartial jury actually cannot be selected in this District, "that fact should become evident at the *voir dire*," at which time Defendants will be "entitled to any actions necessary to ensure that [they] receive[] a fair trial." *Id.* at 63. The Court will address the exact scope of *voir dire* at a later date. For now, the Court shall **DENY** Defendants' [117] Motion to Change Venue.

### III. CONCLUSION

For the foregoing reasons, the Court shall **DENY** Defendants' [114] Motion to Dismiss Counts Two and Three of the Superseding Indictment, [115] Motion to Dismiss Count Six of the Superseding Indictment, and [116] Motion to Change Venue. An appropriate Order accompanies this Memorandum Opinion.

**Date:** November 4, 2024

*/s/ Colleen Kollar-Kotelly*
**COLLEEN KOLLAR-KOTELLY**
United States District Judge