UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 22-cr-299-CKK |
| v. : | |
| : | |
| SHAWNDALE CHILCOAT, and : | |
| DONALD CHILCOAT, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S OMNIBUS MOTION**

The United States of America, by and through its undersigned counsel, hereby responds to the defendants' Omnibus Motion. (ECF No. 218.)[1] For the reasons stated herein, the motion should be denied in its entirety.

During the pendency of this case, and despite being represented by counsel, the defendants have repeatedly sought to file various *pro* se motions, often in violation of Court orders. Although the Court has previously recognized some of these pleadings as based upon sovereign citizen ideology and has denied them out of hand (ECF No. 72 at 1-2), the Court has now, "to facilitate the clear presentation of Defendants' arguments amid a planned change in representation and to foster efficiency and judicial economy" (ECF No. 215 at 2), ordered the defendants to file one single omnibus motion, consolidating their claims, and has ordered the government to respond to most of the arguments raised in that motion. *Id.* at 5.

---

[1] Throughout, page number citations relate to the page number stamped on the document through the ECF system, not the page number at the bottom of the defendants' omnibus motion. Due to cover materials and an appendix, these two numbers differ throughout the document. The actual arguments begin, in earnest, on page 15 of the filing.

The defendants have filed that Omnibus Motion. (ECF No. 218.) That motion primarily seeks dismissal of the case, but also seek "judicial and military review" of this matter. *Id.* at 5, 93.[2] The defendants advance a variety of arguments to support these requests, but none of them have any merit, and many of them are inscrutable nonsense. The Court should deny the defendants' request for relief and should hold them to the commitment the Court negotiated with them. That is: the defendants should not be permitted to file any more *pro se* motions, and the Court should not consider any similar motions in the future, nor force the government to respond to them. After all, as other Courts have recognized, the true purpose of pleadings like the defendants' Omnibus Motion is not to resolve legal disputes, but to attempt to delay judicial proceedings. *See United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019) (sovereign citizens raise frivolous arguments in an effort to "clog the wheels of justice" and "delay proceedings so justice won't ultimately be [d]one").

Below, the government responds to the defendant's arguments in the order in which they appear in their Omnibus Motion. Many of these arguments overlap or bleed together, but the government follows this approach for clarity, and to ensure that all arguments, other than those which the Court already has resolved (*see* ECF No. 219), receive a response.

---

[2] The defendants raise other arguments that do not merit lengthy discussion. They seek to have pretrial conditions lifted (ECF No. 218 at 93), which would happen automatically if the case against them were dismissed. They also seek to compel the government to produce certified copies of court records. *Id.* But there is no rule requiring the government to get Court records for the defendants—they may do that themselves. And they seek unrestricted access to discovery, *id.*, but if the case against them were dismissed, the defendants would no longer be entitled to any discovery.

2

1. **The Defendant's Claims about National Security and Capitol Building Security Are Nonsensical.**

To begin their motion, the defendants present a confusing set of arguments about national security and capitol building security. (ECF No. 218 at 15-20.)[3] The defendants' arguments seem to be premised on the idea that if their case had involved national security, then that case—which is a criminal proceeding, unrelated to the military—could be removed to a military court. That is obviously incorrect. Neither the military nor its courts are implicated here. The defendant points to Executive Order 13526, which relates to classified documents (*i.e.*, documents identified as Secret, Top Secret, and so forth). This case does not involve any classified documents, so the Classified Information Procedures Act (CIPA) is not at issue. And while the defendant's motion gestures at other legal authority—the Military Justice Act, Law of War Manual, and so forth—they don't explain why those documents have any import in this case.

The defendant's motion also presumes that there is some distinction between the phrases "national security" and "capitol building security," and the decision to use one, or the other, represents a nefarious shift to evade military review of this case. *Id.* at 17. This argument makes little sense. Beyond the fact that this case does not implicate the military, the protection of the Capitol building is a matter of national security, especially during a joint session of Congress, when the Vice President is present, and the certification of a presidential election is taking place. The defendants' fixation on language, here, amounts to a semantic distinction without a substantive difference.

---

[3] This argument responds to Sections I and II of the defendant's brief. Section II is really a continuation of the argument in Section I, in which the defendants continue to argue (absurdly) about the idea that the military should review this case.

### 2. The Defendant's Supposed Lack of Criminal Intent Is a Factual Issue for Trial, Unrelated to the Relief They Now Seek.

Next, in a section titled "Defendants' Peaceful Intent and Entrapment by Government Actors," the defendants provide a narrative description of their experience on January 6, 2021. (ECF No. 218 at 20-23.) The thrust of their argument is that they lacked the intent to commit a crime. This is, of course, not a legal basis for a motion to dismiss an indictment. Rather, the defendants' claims represent factual issues to be resolved at trial. If the defendants wish to share their experiences with the jury, they will have to do so through testimony, and would subject themselves to cross-examination. Additionally, the defendants should understand that the jury would not be required to accept their narrative account as if it is the truth. Rather, the jury would judge each defendant's credibility just like it would with any other witness, and may choose to credit their testimony, to believe some things and disbelieve others, or to reject it all.

In the title of this section, the defendants refer to "entrapment by government actors" (ECF No. 218 at 20); their narrative suggests that portions of what they saw at the Capitol were suspicious. *Id.* at 20-23. This understanding of the defendants' motion is supported by their argument in the next section, discussed further below. Taken together, the claims in the Omnibus Motion suggest the defendants are raising arguments which are not supported by the facts and which would be irrelevant and confusing if offered at trial. In light of their arguments, the government plans to file a motion in limine to restrict improper defense arguments and will ask the Court for a briefing schedule at the next hearing.

### 3. Of Course, the Government Agrees It Will Have to Prove Criminal Intent at Trial.

Next, the defendants argue that in order to prove that they are guilty, the government will have to prove that they acted with criminal intent. (ECF No. 218 at 23-26.) The government agrees, and again, this will be an issue for trial—not to be resolved in a motion. The defendants discuss

4

reliance on statements by the former president, *id.* at 23; they also allude to supposed action by confidential human sources and claim that they were entrapped by government actors. *Id.* at 26. The government will address this in a forthcoming motion in limine.

### 4. The Defendants Should Not Be Permitted to Argue an Entrapment-by-Estoppel Defense.

The defendants then argue, specifically, that they were entrapped by government actors into committing criminal conduct because "law enforcement officers did not attempt to stop or disperse the crowd, further leading the Defendants to reasonably believe their actions were lawful." (ECF No. 218 at 26.) They claim, without evidence, that police officers passively observed rioters' conduct and in some cases encouraged it. *Id.* They claim, then, that confidential human sources also appeared to encourage their behavior. *Id.* at 26-27.[4] They do not develop a factual basis for this argument, but perhaps intend for the narrative, earlier in their pleading, to support it. *Id.* at 20-23.

Although this argument is incorporated as part of a motion to dismiss the case, it would be appropriate for the Court to treat it as a motion in limine to allow the defendant to present such evidence at trial. Even under that framing, though, the Court should reject it. This argument has been made by many January 6 defendants and has been roundly rejected by the Courts. *E.g. United States v. Eicher*, 2023 WL 3619417, Case No. 22-38 (BAH), at *6 (D.D.C. May 23, 2023) (explaining that the defendant must offer some evidence showing the applicability of such a defense, and rejecting the argument that such a defense is appropriate in the January 6 context);

---

[4] In a portion of their pleading that is undeveloped, and appears to stray into an odd first-person narration, the defendants claim that the protective order has interfered with their ability to mount a defense. ECF No. 218 at 26-27. Given the Court's instructions (ECF No. 219 at 3-4), the government does not address this specific argument. The record is well-developed, however, that the defendants have been given ample opportunity, and many months of continuances, to review discovery to the fullest extent.

*United States v. Grider*, 2022 WL 3030974, Case No. 21-022 (CKK) (D.D.C. August 1, 2022) (declining to instruct the jury on an entrapment-by-estoppel defense and finding that the former president's statements "did not in any way address the *legality* of the actions he urged his supporters to take") (citing *United States v. Chrestmann*, 525 F. Supp. 3d 14, 31 (D.D.C. 2021)). Rather than respond in detail here, the government will file a separate motion in limine regarding such arguments.

5. **The Defendants' Conduct is Not Protected by the First Amendment, Nor Was it Authorized as Service in a Militia.**

In a section titled "First Amendment Protection and Lawful Assembly," the defendants argue that the First Amendment protects their right to peacefully assemble and protest. ECF No. 218 at 19-20. Of course, the government agrees. But the defendants are not being prosecuted for peacefully assembling and protesting: they are being prosecuted for their unlawful presence within a restricted area; their disorderly and disruptive conduct; their decision to parade, demonstrate, and picket in the Capitol building (which is not a public forum); their efforts to obstruct the certification of the Electoral College vote; and their failures to appear in Court after having been directed to do so. The First Amendment does not protect any of this conduct, nor do the defendants cite to any case law suggesting it does. The defendants also do not appear to be raising a vagueness or overbreadth challenge as to any of the statutes here and, even if they were, such challenges have been routinely rejected. *See, e.g.*, *United States v. Nassif*, 628 F. Supp. 3d 169 (D.D.C. 2022); *United States v. Sheppard*, 2022 WL 17978837, Case No 21-203 (JDB) (Oct. 16, 2024).[5]

The defendants also make a troubling, and wholly unsupported, argument that their conduct was authorized by then-President Trump pursuant to his authority to call forth the militia to

---

[5] The defendants' entrapment by estoppel arguments bleed into this section as well. ECF No. 218 at 29.

suppress civil disorders. (ECF No. 218 at 28.) This argument, which is based *solely* on the then-President Trump's request that his supporters march to the Capitol, is shocking in its breadth. The defendants do not purport to be members of the military, nor to serve in a militia. Nevertheless, they claim that a political speech somehow transformed them (and, presumably, other members of the crowd) into a militia, activated this newly formed militia, and should shield them from prosecution. Simply put, this argument not only lacks legal support, but makes no sense. The defendants' argument also overlooks the fact that they, and others responding to this call, weren't helping to restore order or quell a riot, but were the ones who caused it in the first place.

6. **The Defendant's Supposed Expert Evidence is Irrelevant, Confuses the Issues, and Fails to Satisfy the Expert Witness Rules.**

The defendants seek to present testimony from a supposed expert named Terpsichore Maras, dealing with alleged problems affecting the legitimacy of the 2020 election, as well as a document called the Halderman Report, which discusses supposed vulnerabilities with the systems used in the 2020 election. ECF No. 218 at 29-36. They attempt to tie these items to their case by arguing that the so-called expert testimony "forms a compelling narrative that the Defendants were justified in their action, as they were responding to legitimate threats to the integrity of the evidence" and that "these pieces of evidence provide a strong foundation for the Defendants' belief that their protest was necessary to address critical election security concerns." *Id.* at 36. Their argument fails for several reasons.

For the sake of argument, the government assumes that Exhibits C and D, cited in this section, amount to expert witness notices as to Ms. Maras and the author of the Halderman report. First, it is not clear that the author of either document qualifies as an expert and may offer opinion testimony at all, Fed. R. Evid. 702, much less that either document complies with the rules governing the disclosure of expert witness reports. Fed. R. Crim. P. 16(b)(1)(C)(iii). But setting

7

that aside, the defendants' proffered purpose for this evidence certainly does not support dismissal of the case—which is the remedy they request—and raises serious concerns of confusing the issues and misleading the jury. *See* Fed. R. Evid. 403. Simply put, this case is about the defendants' behavior on January 6, 2021, not about alleged election security issues. The jury will be asked to consider the defendants' *mens rea* as to the charges against them, not whether their behavior was (in their minds) morally justified. With this evidence, the defendants would essentially be asking for jury nullification, and the Court should not countenance that.

7. **The Defendant's Arguments About the FBI Handling of the January 6, 2021 Investigations Are Irrelevant to the Issue of Dismissal.**

Next, the defendants complain, on various grounds, that the FBI has inappropriately handled the investigations of people who joined the riot at the Capitol on Jan. 6, 2021. ECF No. 218 at 36-42. To summarize, they claim that the Washington Field Office instructed the Boston Field Office to investigate people who attended the former President's rally, *id.* at 36-37, that the FBI pressured agents to reclassify cases as involving domestic violent extremism, *id.*,[6] that Bank of American provided information to the FBI without legal process, *id.* at 38-39, that FBI SWAT teams were deployed where they were not warranted, *id.* at 38, and that the FBI embedded confidential human sources to manipulate the crowd. *Id.* at 40.

None of these complaints are relevant to the cases against the defendants. The defendants breached the Capitol building and illegally occupied the Senate Chamber. They were not investigated for political reasons, nor for attendance at a political event. And as they live in Ohio, the FBI's Boston Field Office had no involvement in their case. The defendants do not make any claim that their behavior was influenced by any bad actor manipulating the crowd. And while an

---

[6] These two claims appear twice, once on page 36 and again on page 37.

FBI SWAT team was involved in the defendants' arrest, this was with good cause: they had failed to appear in court as required, and probation had evidence that Donald Chilcoat had cut off his ankle monitor.

These claims, in context, amount to an effort by the defendants to deflect attention from the charges against them by pointing fingers at other supposed bad action by the government, but their allegations have nothing to do with their case. At trial, the Court should limit their ability to present issues that are of no probative value, and that risk confusing the issues and misleading the jury. *See* Fed. R. Evid. 403.

**8. The Defendants' Arguments about Inspector General Horowitz's Statement are Irrelevant to the Issue of Dismissal.**

The defendants also discuss, at some length, a statement by the Department's Inspector General to the Committee on the Judiciary for the U.S. House of Representatives. ECF No. 218 at 42-46 and Exhibit F. It is hard to know what to make of these pages, which make no claims. The FBI's process for handling of whistleblower complaints has nothing to do with the defendants or their case. They are not, and never have been, FBI employees and they are not FBI whistleblowers. Instead they are charged with crimes related to their conduct on January 6, 2021, offenses which have nothing to do with the FBI's treatment of its employees. The defendants' argument, such as it is, appears to boil down to this: "FBI employees were mistreated, and so are we, so the Court should take our claims of 'government overreach and procedural violations' more seriously." (ECF No. 218 at 43.) But they make no effort to explain how the FBI's handling of whistleblower complaints have anything to do with their case, and their claims of government misconduct can be resolved on their own merit (or lack thereof), without reference to this extraneous information.

9

9. **The Defendants' Complaints about "Extradition" (but Really, Their Arrests) are Irrelevant to the Issue of Dismissal.**

Next, the defendants complain at length about their initial arrest on August 11, 2022; their arrest on October 11, 2023, after failing to appear for Court hearings; and their transport to Washington, D.C., which they refer to, incorrectly, as "extradition." (ECF No. 218 at 46-54.) They seek dismissal on this basis, *id.* at 53, but they cite to no authority supporting the idea that dismissal is an appropriate remedy for improper conduct by law enforcement officers during an arrest.

In any event, the arrests of the defendants were not improper. The first arrest, on August 11, 2022, was made the day after a law enforcement office swore out a Complaint and Statement of Facts before a magistrate judge in this district. (ECF No. 1.) The second, on October 11, 2023, was made pursuant to a bench warrant issued by this Court. (*See* ECF No. 80.) The defendants are clearly upset that they were arrested, but the first arrest was a consequence of their decision to commit criminal offenses at the United States Capitol on January 6, 2021, and the second arrest was a consequence of their decision to violate this Court's order to appear at a hearing. Their anger does not provide any basis for a remedy.[7]

The defendants also complain about alleged procedural defects in the warrants (*e.g.*, ECF No. 218 at 47), but even accepting their claims as true, they do not explain why typos and stamping errors should matter at all, much less why they support dismissal. Nor is it clear what DNA collection, *id.* at 47, 52, has to do with this case, or why any alleged errors in DNA collection should warrant dismissal. DNA collection upon arrest is routine, and in any event, this case will

---

[7] The defendants repeatedly refer to their arrest as "swatting" or a "swatting incident." (ECF No. 218 at 46, 47, 50, 53.) "Swatting" is the act of falsely reporting a crime at a specific address to prompt armed law enforcement action against an innocent person. *See* https://www.britannica.com/topic/swatting (last accessed November 15, 2024.) Plainly, that is not what happened here: the arrests in this case were made pursuant to warrants.

not feature evidence or testimony about DNA. Finally, the defendants appear to misunderstand the term "extradition," which simply does not apply to them. Extradition is the process by which one state, upon request of another, transfers the person for trial on crimes punishable by laws of the requesting state.[8] But here, the defendants were arrested on a federal warrant, taken into federal custody, then transferred to Washington, D.C., to appear before this Court. That they passed through various locations on their way to this jurisdiction does not mean they were extradited.

**10. The Defendants' Arguments About Various Legal Documents and Attorney Representation are Irrelevant to the Issue of Dismissal.**

Next, the defendants raise a variety of intertwined complaints about supposed deficiencies in documents and their attorneys' failure to raise such challenges. (ECF No. 218 at 54-59.) They complain about documents not being stamped, not being properly signed, and containing inaccurate dates. But they do not point to any actual error in any single document. *See id.* Nor do they cite any rule or case that actually clarifies what they are addressing. They cite the Ohio Code and the Federal Rules of Civil Procedure, neither of which bear on this federal criminal case. They also cite a number of cases, some of which are discussed at too high of a level of generality to be useful here. (*E.g.* ECF No. 218 at 56, discussing *Strickland v. Washington*, 466 U.S. 668 (1984), which establishes the constitutional standard for the effective assistance of counsel, but does not provide any legal analysis which actually helps resolve the defendants' claims.) Several of the cases they cite are decisions in civil matters, too, which are also unhelpful.

The defendants also move to compel the government to produce to them certified copies of various court documents. (ECF No. 218 at 58.) They seem to be under the misimpression that providing court documents is among the government's discovery obligations. To be clear, the

---

[8] *See* https://www.britannica.com/topic/extradition (last accessed November 15, 2024).

government has no obligation to do this, and the defendant cites no law to suggest it does. If the defendants would like court documents, they should register for a CM/ECF account or contact the Clerk's office themselves. If they would like court documents that are embossed with an official seal, they may need to obtain those in person during a trip to Washington, D.C. And in any event, even if there were technical deficiencies in various court documents, which the defendants have not established, they cite no law to justify the large logical leap that those technical deficiencies amount to constitutional violations which merit dismissal.[9]

Lastly, the defendants complain that their lawyers would not raise their claims. But by virtue of their law license, their attorneys were bound by ethical rules restricting them from filing frivolous motions. *E.g.*, D.C. Bar Rules of Professional Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."). The refusal by defense counsel to file such motions was not ineffective assistance of counsel and does not warrant any relief.

---

[9] One of the defendants' complaints—that the indictment is not signed (ECF No. 218 at 58-59)—is especially perplexing. The foreperson's signature is typically withheld from the publicly-filed indictment to protect the foreperson's identity. *See, e.g.*, *Hall v. Fed. Bureau of Prisons*, 132 F. Supp. 3d 60, 68 (D.D.C. 2015). It appears there is some sort of graphical glitch recorded on the original indictment where the prosecuting attorney's signature should be. (ECF No. 20 at 4.) This is likely a scanning error, and does not warrant relief. And in any event, the prosecuting attorney's signature is present on the filed copy of the Superseding Indictment. (ECF No. 109 at 4.) Indeed, by coincidence, it is the undersigned's signature. As a Deputy Chief of the Capitol Siege Section, the undersigned is authorized to sign indictments on behalf of the U.S. Attorney.

11. **The Defendants' Claims Regarding the Protective Order and Document-Management Orders are Irrelevant to the Issue of Dismissal.**

The defendants make various claims about the protective order and the Court's docket-management orders. ECF No. 218 at 59-65, Sections XII and XIII. The Court has ordered that the Government need not respond to these claims. ECF No. 219 at 3-4.[10]

12. **The Defendants' Claims About So-Called "Entrapment," by their Attorneys, are Irrelevant to the Issue of Dismissal and Do Not Warrant Relief.**

Next, the defendants address what they call "Entrapment Argument Clarification," in which they argue that they were "entrapped" by appointed counsel into waiving their legal rights. (ECF No. 218 at 65-74.) This section is largely a rehash of arguments raised elsewhere. The arguments about raised seals make no more sense, and carry no more weight, here than they do earlier in the defendants' omnibus motion. The Court has instructed the government that it need not respond to arguments about the protective order (ECF No. 219 at 3-4), and their arguments here simply duplicate arguments made in those sections. And in any event, throughout this section, it appears that the defendants fail to understand what the word "entrapment" means. In short, the Court need not spend much time here; there is plainly no grounds for dismissal.

13. **The Defendants' Claims Ineffective Assistance of Counsel are Meritless and Irrelevant to the Issue of Dismissal.**

The defendants make various claims about ineffective assistance of counsel. (ECF No. 218 at 74-85, Section XVI.) The Court has ordered that the Government need not respond to these claims. (ECF No. 219 at 3-4.)

---

[10] The defendants also briefly address this argument again in section XVII of their motion, as numbered in the body of the motion and not in the table of contents. (ECF No. 218 at 87-88.) This section simply repeats arguments addressed elsewhere, and given the Court's instruction that such arguments need not be addressed, the government likewise does not respond to this one.

13

### 14. The United States of America Has Standing to Prosecute Violations of Its Laws.

The defendants allege that the Department of Justice lacks standing to bring this case. (ECF No. 85-87.) Of course, this is nonsense. The United States of American has standing to prosecute violations of its laws. It is the responsibility of the Executive Branch to enforce those laws, *see* U.S. Const. Art. II, Section 3 ("[the President] shall take Care that the Laws be faithfully executed"). And the Department of Justice is an Executive Branch department of the United States. 28 U.S.C. § 501. Within the Department, each United States Attorney—and through them, each Assistant United States Attorney—is given statutory authority, within their district, to prosecute offenses against the United States. 28 U.S.C. §§ 541, 542, 547(1). The offenses charged here are, of course, offenses against the United States, which occurred in Washington, D.C. This office may prosecute them, and this Court has jurisdiction to hear the case. 18 U.S.C. § 3231.

The defendants cite to *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) as establishing a test for standing. But *Lujan* is a case in which wildlife conservation organizations sued the Secretary of the Interior to contest a new interpretation of the Endangered Species Act, 504 U.S. at 557-59, and the holding—about what is needed to establish standing "when . . . a plaintiff's asserted injury arises from the government's allegedly unlawful regulation . . . of *someone else* . . ."—simply does not apply here. *Id.* at 562. The United States was harmed by a violation of its laws, and has an interest in enforcing them; the redress is an adjudication of the defendant's violation of the laws of the United States. Nothing more is needed.

### 15. The Supreme Court's Decisions in *Fischer* and *Loper Bright* Do Not Compel Dismissal.

Finally, the defendants seek dismissal pursuant to the Supreme Court's decisions in *Fischer v. United States*, 144 S. Ct. 2176 (2024), and *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). (ECF No. 90-92.) To begin, *Loper Bright* has nothing to do with this case. In *Loper*

14

*Bright*, the Supreme Court overruled a longstanding decision about deferring to a permissible agency interpretation of statutes they administer. *Loper Bright*, 144 S. Ct. at 2273. The case against the defendants is a criminal prosecution which does not involve agency interpretation of any law. The inclusion of *Loper Bright* in their argument suggests that the defendants really should be listening to their attorneys about legal strategy, rather than filing *pro se* pleadings. But it is no basis for dismissal.

*Fischer*, likewise, does not compel dismissal. Here, the United States incorporates by reference its filing on the impact of *Fischer* on Count One. ECF No. 159. In brief, the indictment sufficiently alleges a violation of 18 U.S.C. § 1512(c)(2) by tracking the statutory language, and there is no basis to claim that the indictment fails to state an offense. *Id.* at 3-4. The government has explained how its proof will allow a jury to find, beyond a reasonable doubt, that the defendants did intend to interfere with the documents and tangible objects—specifically, the Electoral College ballots—to be used in the certification proceeding. *Id.* at 5-6. The defendants now argue that they are not alleged to have tampered with, destroyed, or manipulated evidence, missing the point that 18 U.S.C. § 1512 also criminalizes *attempts* to take actions with respect to documents and *attempts* to obstruct official proceeding. Their other arguments amount to factual disputes to be raised at trial.[11]

                                          Respectfully submitted,

                                          MATTHEW M. GRAVES
                                          United States Attorney
                                          DC Bar No. 481052

---

[11] Since the United States' filing on the impact of *Fischer* (ECF No. 159), it has, in other cases, brought a charge under 18 U.S.C. § 1512(c) that incorporates the language of (c)(1) and (c)(2) in a single offense. After the Court sets a trial date, the United States may do so here, as well.

By:         */s/ Michael J. Romano*
             Michael J. Romano
             Deputy Chief, Capitol Siege Section
             IL Bar No. 6293658
             michael.romano2@usdoj.gov
             (202) 252-7154

             */s/ Ashley Akers*
             ASHLEY AKERS
             Senior Trial Counsel (Detailed)
             MO Bar No. 69601
             Ashley.akers@usdoj.gov
             (202) 353-0521