UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>    v.<br><br>SHAWNDALE CHILCOAT and<br>DONALD CHILCOAT,<br><br>               Defendants. | Criminal Action No. 22-299 (CKK) |

**MEMORANDUM OPINION**
(December 6, 2024)

Defendants Shawndale Chilcoat (1) and Donald Chilcoat (2) face trial on six felony and misdemeanor charges for their alleged conduct during the riot at the United States Capitol on January 6, 2021. *See* Superseding Indictment, ECF No. 109.[1] Together, and *pro se*, Defendants filed a [218] "Motion to Dismiss or, in the Alternative, for Judicial and Military Review" (the "Motion"). Having considered the pleadings, the parties' briefing, the relevant legal authority, and the entire record, the Court shall **DENY** the Motion by separate Order.[2]

**I. BACKGROUND**

The factual background and procedural history of this matter are set forth more fully elsewhere. *See* Mem. Op., ECF No. 43 at 1–4; Mem. Op. ECF No. 96 at 2–8. And the Court assumes familiarity with the complex procedural history of this litigation. *See* ECF Nos. 73, 136, 178, 219. Only some of that procedural history is relevant here.

---

[1] Mrs. Chilcoat faces an additional felony charge for her alleged conduct during the course of litigation. *See* Superseding Indictment, ECF No. 109 at 4 (Count Seven alleging Failure to Appear, in violation of 18 U.S.C. § 3146(a)(1)). Mr. Chilcoat faces two such additional charges. *Id.* (Counts Seven and Eight alleging the same).

[2] The Court's consideration has focused on:
- the Superseding Indictment, ECF No. 109;
- the Statement of Facts in support of the Government's Criminal Complaint, ECF. No. 1-1 (the "SOF");
- Defendants' Motion, ECF No. 218 ("Defs.' Mot.");
- and the Government's Response thereto, ECF No. 226 ("Gov't Resp.").

1

In August and September 2024, the Court received from Defendants—who were then represented by counsel—more than thirty *pro se* requests for leave to file "assorted pretrial motions arguing, in effect, that their prosecution is unlawful and that the entire case against them must be dismissed." Order, ECF No. 178 at 4. Defendants then informed the Court that they were unwilling to proceed with their counsel—who had refused to file their pretrial motions—and that they were actively seeking new counsel. *Id.* at 4–5.

The Court explained to Defendants that "parsing the largely overlapping arguments" in their dozens of leave-to-file requests "would be inefficient" for all involved. *Id.* at 4. "Accordingly, to facilitate the clear presentation of Defendants' arguments amid a planned change in representation and to foster efficiency and judicial economy," Order, ECF No. 215 at 2, "the Court proposed allowing Defendants to file one consolidated motion that advances all arguments Defendants muster for disposing of the case in its entirety," Order, ECF No. 178 at 4. Defendants agreed to that proposal and orally withdrew their then-pending requests for leave to file. Order, ECF No. 178 at 4. And the Court set a briefing schedule for Defendants' consolidated motion, *id.*, and denied their leave-to-file requests based on their oral withdrawal, ECF Nos. 179–205.

Soon thereafter, Defendants began filing piecemeal requests for leave to file individual dispositive motions yet again. Order, ECF No. 215 at 3. The Court denied leave to file those motions and reminded Defendants of its earlier order that they file one consolidate motion. *Id.* Simultaneously, Defendants informed the Court that they no longer intended to retain new counsel and would assert their right to self-representation. *Id.* at 4. So the Court set a hearing to conduct the requisite inquiry under *Faretta v. California*, 422 U.S. 806 (1975). *Id.*

Prior to that hearing, Defendants filed their consolidated Motion. *See* Order, ECF No. 219 at 3. Then, at the hearing, Defendants "reported that they no longer intend[ed] to waive their right

to counsel" and would engage appointed counsel from Ohio. *Id.* In short, "Defendants initially intended to proceed *pro se* so they could file certain pretrial motions that their counsel would not file; Defendants were not and are not interested in representing themselves at trial; and now that Defendants have filed their [consolidated] *pro se* motion (ECF No. 218), they no longer want to proceed *pro se*." *Id.* Defendants are now represented by new counsel. *See* ECF Nos. 220, 221. Defendants' new counsel take no position on the instant motion. *See* Order, ECF No. 231 at 3.

The Government has responded to Defendants' consolidated *pro se* Motion. *See* Gov't's Resp. And the deadline for Defendants to file their *pro se* reply has passed. *See* Order, ECF No. 219 at 5. The Motion is now ripe for this Court's review.

## II. ANALYSIS

Defendants' Motion spans nearly eighty pages and proceeds in nineteen parts. For the sake of clarity, the Court treats Defendants' arguments in the order they are presented. Defendants are not attorneys, and the Court construes their Motion liberally. *See United States v. Class*, 38 F. Supp. 3d 19, 23 (D.D.C. 2014) (GK). Nonetheless, the Court will **DENY** the Motion in full.

**A. Parts I and II: The Military and National Security**

The first two parts of Defendants' Motion focus largely on the [208] Amended Protective Order governing this matter. *See* Defs.' Mot. at 15–20. The Court has clarified for Defendants the nature and significance of protective orders repeatedly, and at length, elsewhere. *See* ECF Nos. 178, 207, 215, 219. Further commentary is unnecessary here.

Defendants also appear to argue that—because of stray references to "national security" in discussions about the Amended Protective Order—they are entitled to remove their prosecution to a military tribunal. Defs.' Mot. at 18–20. No authority requires or allows that result. Defendants' request for such removal, or any other form of military intervention in this case, will be **DENIED**.

3

**B. Parts III, IV, and V: State-of-Mind Defenses**

Taken together, the next three parts of Defendants' Motion advance various state-of-mind defenses. *See* Defs.' Mot. at 20–28.[3] Essentially, Defendants tell the story of their day in Washington on January 6, 2021, and argue that they lacked the necessary *mens rea* to commit some of the charged offenses. *See id.* Naturally, the Government will have to prove beyond a reasonable doubt that Defendants possessed the requisite *mens rea* to secure convictions at trial. And Defendants may rebut the Government's presentation through cross-examination or offer contrary evidence of their own at trial.

For now, the Court construes these portions of Defendants' Motion as an attack on the sufficiency of the Government's proof. Absent extraordinary circumstances not present here, the alleged insufficiency of the Government's evidence is not a basis for dismissal. *See United States v. Yakou*, 428 F.3d 241, 246–47 (D.C. Cir. 2005); *see also United States v. Oseguera Gonzalez*, No. 20-cr-40, 2020 WL 6342948, at *5 (D.D.C. Oct. 29, 2020) (BAH) (denying a similar motion). To the extent Defendants request such relief, their Motion will be **DENIED**.

Additionally, as Defendants present their narrative, they invoke various legal defenses to some of the charged offenses, including entrapment-by-estoppel, public-authority, and First Amendment defenses. But these affirmative defenses are inappropriate for treatment in a pretrial motion. Indeed, they are likely inappropriate for treatment at trial. *See United States v. Fuller*, No. 23-cr-209, 2024 WL 4880497, at *8–10 (D.D.C. Nov. 25, 2024) (CKK) (reserving the possibility that similar arguments may be raised on a motion for acquittal). The Court need not assess them further here. The Government has filed a motion in limine addressing these arguments, and the Court will rule on that motion in due course. *See* ECF No. 227.

---

[3] Defendants also restate their misunderstandings about the Amended Protective Order. Defs.' Mot. at 26–27. The Court need not address those matters here. *See* Part II.A, *supra*.

### C. Parts VI, VII, VIII, and IX: Purported "Expert Evidence"

The next four parts of Defendants' Motion describe reports and statements by third parties—characterized at times as expert witnesses—about the 2020 election and the FBI. *See* Defs.' Mot. at 29–46. The Government reads this portion of the Motion as a series of witness and exhibit notices. *E.g.*, Gov't's Resp. at 7. And the Government responds that none of this testimony or evidence should be admitted at trial because it is procedurally deficient, irrelevant, prejudicial, confusing, and designed to encourage jury nullification. *See id.* at 7–9.

For present purposes, it suffices to say that nothing in Parts VI though IX of Defendants' Motion bears on pretrial dismissal of the Superseding Indictment. To the extent Defendants request that relief, the Court will **DENY** their request. To the extent Defendants request a ruling on the admissibility of their purported expert evidence, the Court will **DENY** that request without prejudice. The Motion was filed before Defendants' new counsel entered their appearance; that counsel will alert the Court to the evidence they intend to adduce at trial at the appropriate time.

### D. Part X: Defendants' Arrest, "Extradition," and Detention

Part X of the Motion contends that Defendants' arrest, "extradition," and detention "were all conducted in violation of federal and state extradition laws, as well as their constitutional rights" and seeks dismissal of the Superseding Indictment on that basis. Defs.' Mot. at 53.[4] Defendants' arguments in support of that position are unpersuasive.

In various forms, Defendants contend that their arrests, and the warrants supporting those arrests and other searches, were flawed. Defs.' Mot. at 47–53. As the Court has explained, *see* Mem. Op., ECF No. 44 at 9 n.3, the legality of Defendants' arrests or arrest warrants is not a basis

---

[4] Defendants also challenge the sufficiency of the Government's proof for Count Seven charging Failure to Appear, 18 U.S.C. § 3146(a)(1). *See* Defs.' Mot. at 50. As the Court explained above, arguments about the sufficiency of the Government's evidence are appropriate at trial or in a motion for acquittal, but they are not a basis for dismissal of Count Seven.

5

for dismissing the charges against them.  "An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction." *United States v. Crews*, 445 U.S. 463, 474 (1980); *accord United States v. Brown*, 602 F.2d 1073, 1077 (2d Cir. 1979) ("[T]he proper remedy [for a defective arrest] would be suppression of the evidence rather than dismissal of the indictment.").  For that reason, the Court need not and will not reach Defendants' theories regarding the validity of their arrests here.

Defendants also argue that their "extradition" was unlawful.  Defs.' Mot. at 47–50.  But Defendants were never extradited at all.  They were arrested on a federal warrant, taken into federal custody in Ohio, then transferred to Washington, D.C. to appear before a federal court.  Ohio state law and the Uniform Criminal Extradition Act have no bearing on that arrest and transfer. *See Martin v. Pittman*, 244 F. App'x 597, 602 (5th Cir. 2007) ("[T]he UCEA facially has no application to transfers involving the federal government . . . ."); *see also* U.S. Const. art. VI, cl. 2.

Finally, Defendants argue that they were detained for too long without a hearing following their second arrest.[5]  Defs.' Mot. at 49–50.  In support of that contention, they rely on *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).  *Id.*  But *McLaughlin*, which concerned a Section 1983 civil suit for alleged Fourth Amendment violations following warrantless arrests, is inapposite: Defendants were arrested on a warrant supported by probable cause.

Accordingly, the Court will **DENY** Defendants' motion to dismiss the indictment on the grounds that their arrests, "extradition," or detention were unlawful.

**E. Part XI: Certified Copies**

Part XI of the Motion is difficult to decipher.  At times, Defendants restate their earlier arguments that their arrest warrants were invalid.  Defs.' Mot. at 56–59.  At others, they contend

---

[5] For a fuller history of that arrest, see Order, ECF No. 73 and Mem. Op., ECF No. 96 at 5–8.

that courtesy copies of this Court's orders mailed to them while represented by counsel did not comply with Ohio procedural rules or the Federal Rules of Civil Procedure. *Id.* at 55 (discussing a courtesy copy of this Court's Memorandum Opinion, ECF No. 44).

At bottom though, Defendants "request certified copies" of various documents and "request that the case be dismissed" in its entirety "[s]hould the [G]overnment fail to produce" them. Defs.' Mot. at 58–59. As the Government observes, Defendants appear to be operating under the "misimpression that providing court documents is among the [G]overnment's discovery obligations." Gov't's Resp. at 11. The Government has no such obligation. All documents in this matter are available to Defendants through their attorneys and the CM/ECF system—as they have been throughout the history of this litigation. Defendants can also obtain certified paper copies of any documents from the Clerk's office. To the extent Defendants request an order compelling production of such documents, the Court will **DENY** that request.

Even assuming, *arguendo*, that Defendants have identified technical defects in documents in this case (for example, a scanning error on the original [20] Indictment appears to have smudged a signature), they point to no authority suggesting such defects would require dismissal of the charges against them. And the Court is aware of no such authority.[6] Accordingly, the Court will **DENY** Defendants' motion to dismiss on that basis.

### F. Parts XII, XIII, XVI, XV, and XVII: Resolved Issues

Five of the remaining parts of Defendants' Motion concern matters this Court has already resolved. Part XII informs the Court that Defendants will refuse to work with a paralegal to view

---

[6] *See, e.g., United States v. Smith*, 424 F.3d 992, 1008 (9th Cir. 2005) ("[N]either suppression nor reversal of Smith's conviction is warranted by this technical violation of 28 U.S.C. § 1691."); *United States v. McClain*, 280 F. App'x 425, 428 (5th Cir. 2008) (holding presentation of warrants without seals did not merit reversal of conviction); *United States v. Eklund*, No. 18-cr-35, 2020 WL 870221, at *1–2 (D. Alaska Feb. 21, 2020) (rejecting similar arguments about seals, electronic signatures, and 28 U.S.C. § 1691); *Snyder v. Perry*, No. 14-cv-2090, 2015 WL 1262591, at *1 n.1 (E.D.N.Y. Mar. 18, 2015) (rejecting challenge to electronic signature on court order).

discovery subject to the Amended Protective Order. Defs.' Mot. at 59–63. The Court addressed this matter in an earlier [207] Memorandum Opinion and at a recent status hearing. *See* Order, ECF No. 219 at 1–2. Part XIII objects to the Court's order that Defendants file their *pro se* Motion in consolidated form. Defs.' Mot. at 63–65. The Court has already rejected Defendants' request that it reconsider that order. Order, ECF No. 215 at 3. And Defendants' objection is now moot, as Defendants have complied with the Court's order. Parts XIV, XV,[7] and XVII all relitigate Defendants' objections to proceeding under the Amended Protective Order. Defs.' Mot. at 65–85, 87–88. Again, the Court has already addressed those objections at length elsewhere. *See* ECF Nos. 178, 207, 215, 219. Part XIV also restates the same objections Defendants raised in Part XI of their Motion. Defs.' Mot. at 66–67. The Court treated those arguments above. To the extent Defendants request reconsideration of this Court's earlier rulings, their request will be **DENIED**.

### G. Parts XIII, XIV, and XV: Ineffective Assistance of Counsel

At various places throughout Parts XIII, XIV, and XV of their Motion, Defendants assert that they have received ineffective assistance from prior counsel in this case. *See* Defs.' Mot. at 63–85. Defendants' ineffective-assistance-of-counsel (IAC) complaints are threefold: (1) their counsel refused to file motions making the arguments Defendants raise in their consolidated, *pro se* Motion; (2) their counsel focused on plea negotiations rather than filing such motions; and (3) their counsel restricted their access to discovery.

The Court need not determine whether any of Defendants' counsel were ineffective because their IAC claim is premature and inappropriate at this stage of litigation. Indeed, the standard for prevailing on an IAC claim appears to preclude such claims before conviction. The leading case on IAC issues, *Strickland v. Washington*, 466 U.S. 668, 694 (1984), requires an IAC

---

[7] Defendants' Motion labels both Part XV and the Part that follows it as "Part XVI." To be clear, the Part the Court describes as Part XV is the one that follows Part XIV on page 74 of the Motion.

claimant to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." But this proceeding has not yet culminated in a "result," in the relevant sense, because Defendants have not been convicted or acquitted. As such, they cannot meet *Strickland*'s prejudice requirement at this stage. *See United States v. Carmichael*, 372 F. Supp. 2d 1331, 1332–34 (M.D. Ala. 2005) (concluding defendant's pre-conviction IAC claim was premature for the same reason); *cf. Griffith v. Gibson*, No. 21-cv-10032, 2021 WL 3080450, at *2 (S.D. Fla. June 1, 2021) ("[The IAC] claim is premature because Plaintiff is currently a pre-trial detainee that has not accepted any plea agreement and has not been tried or convicted."). And Defendants now have the benefit of new counsel to assist them in securing a favorable outcome in this matter. *See* Order, ECF No. 231. To the extent Defendants seek dismissal for IAC, the Court will **DENY** that request.

**H. Part XVI: Standing**

Next, citing the familiar standard for Article III standing set out in *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992), Defendants argue the charges against them must "be dismissed due to the Department of Justice's (DOJ) lack of standing to bring this case." Defs.' Mot. at 85–86. This argument fails to persuade. As many courts have recognized, the elements of standing articulated in civil cases do not pose any barrier to the United States prosecuting violations of federal criminal statutes.[8] Several courts have explained why that is so in a particularly thoughtful and persuasive form. *See Thomas v. United States*, No. 18-cv-2772, 2020 WL 12483803 (S.D.N.Y. Mar. 16, 2020); *Rice v. Farley*, No. 14-cv-31, 2014 WL 2441260 (E.D. Ky. May 30,

---

[8] *E.g.*, *United States v. Daniels*, 48 F. App'x 409 (3d Cir. 2002); *United States v. Galletta*, No. 14-cr-603, 2023 WL 4565477 (E.D. Pa. July 17, 2023); *Sessum v. United States*, No. 18-cv-6222, 2020 WL 1243783 (S.D.N.Y. Mar. 16, 2020); *United States v. Hakim*, No. 18-cr-126, 2018 WL 6184796 (N.D. Ga. Aug. 22, 2018); *United States v. Girod*, No. 05-cr-87, 2016 WL 3568163 (E.D. Ky. June 24, 2016); *United States v. Owens*, 13-cr-213, 2014 WL 2600082 (E.D. Ky. June 10, 2014); *United States v. Uloa*, 10-cr-321, 2011 WL 13128610 (N.D.N.Y. May 13, 2011).

2014); *United States v. Ellis*, No. 06-cr-390, 2007 WL 2028908 (W.D. Pa. July 12, 2007).

In short, "the injury to [the United States's] sovereignty arising from a violation of its laws . . . suffices to support a criminal lawsuit by the Government . . . ." *Vermont Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771 (2000). And the Office of the United States Attorney has had authority to bring those criminal lawsuits for hundreds of years. Judiciary Act of 1789, Pub. L. No. 1-20, § 32, 1 Stat. 73, 92; *see also* 28 U.S.C. § 547(1). Accordingly, Defendants' motion to dismiss for lack of standing will be **DENIED**.

### I. Part XVIII and XIX: *Loper Bright* and *Fischer*

Finally, Defendants seek dismissal of Count One of the Superseding Indictment (which charges violations of 18 U.S.C. §§ 1512(c)(2) and 2) in light of the Supreme Court's recent decisions in *Fischer v. United States*, 144 S. Ct. 2176 (2024), and *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024). *See* Defs.' Mot. at 88–92.

Defendants have a pending [113] Motion to Dismiss Count One of the Superseding Indictment. The Court has ordered supplemental briefing on that motion regarding the effect of *Fischer*, which Defendants' counsel will undertake. *See* Min. Order (Aug. 7, 2024); Status Report, ECF No. 159; Min. Order (Nov. 11, 2024). Accordingly, the Court will **DENY** without prejudice Defendants' *pro se* attack on Count One under *Fischer* and treat the issue when the motion is ripe.

*Loper Bright* clarifies the appropriate judicial standard of review of agency actions under the Administrative Procedure Act. 144 S. Ct. at 2273. The holding in that case does not bear on Defendants' prosecution. The Court assures Defendants that it will interpret the law in this case without deference to the Department of Justice or any other agency. To the extent Defendants' request any relief under *Loper Bright*, the Court will **DENY** their request.

## III. CONCLUSION

For the foregoing reasons, the Court shall **DENY** Defendants' [218] "Motion to Dismiss or, in the Alternative, for Judicial and Military Review" in full. An appropriate Order accompanies this Memorandum Opinion.

**Date**: December 6, 2024

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge