UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAWNDALE CHILCOAT (1) and<br>DONALD CHILCOAT (2),<br><br>       Defendants. | Criminal Action No. 22-299 (CKK) |

**MEMORANDUM OPINION & ORDER**
(February 3, 2025)

**I.**

In September 2022, a grand jury indicted Defendants Shawndale Chilcoat and Donald Chilcoat on six felony and misdemeanor charges each for their conduct during the riot at the United States Capitol on January 6, 2021:

- Count One: Obstruction of an Official Proceeding and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2;

- Count Two: Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1);

- Count Three: Disorderly and Disruptive Conduct in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(2);

- Count Four: Entering and Remaining on the Floor of Congress, in violation of 40 U.S.C. § 5104(e)(2)(A);

- Count Five: Disorderly Conduct on Capitol Grounds and in any of the Capitol Buildings, in violation of 40 U.S.C. § 5104(e)(2)(D);

- Count Six: Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G).

Indictment, ECF No. 20.  At their arraignment, each Defendant entered a plea of "not guilty" as to all charges.  Min. Order (Sept. 26, 2022).  And each Defendant was released on personal

1

recognizance subject to the supervision of the Pretrial Services Agency. *See* Orders Setting Conditions of Release, ECF Nos. 12, 13.

By December 2022, the Government had produced discovery to Donald Chilcoat and his counsel without incident. *See* Min. Order (Dec. 9, 2022). But Shawndale Chilcoat "indicated that she [did] not want a lawyer and want[ed] to proceed *pro se*." *Id.* At a status hearing and acting *pro se*, Shawndale Chilcoat also "demanded that the Court provide proof of jurisdiction." *Id.* The Court construed this as a request for leave to file a motion to dismiss for lack of jurisdiction and set a briefing schedule. *Id.*

Shawndale Chilcoat filed her motion. *See* Def.'s Letter Mot., ECF No. 38 ("I am man the U.S[.] Government is and [*sic*] entity/Corporation (Title 28 USC 3002 Section 15 – States That THE UNITED STATES is a CORPORATION and Not a Government . . . ."). She then submitted two additional filings, which largely "contained duplicative material." Mem. Op., ECF No. 44 at 4. One such filing also "contained over 140 pages photocopied from various legal textbooks, treatises, and other materials." *Id.* "Nevertheless, in the interest of allowing Defendant to be heard, the Court accepted all three filings" and construed them as one motion. *Id.* After the Government responded, the Court denied Shawndale Chilcoat's motion, observing that it "appear[ed] to rest on 'sovereign citizen' ideology" and rejecting various other meritless arguments along the way. *Id.* at 6.

Days later, Donald Chilcoat reported that he too intended to waive his right to counsel and proceed *pro se*. *See* Mot. to Withdraw, ECF No. 45. And the Court scheduled separate *Faretta* hearings for each of Shawndale and Donald Chilcoat. Min. Order (Jan. 18, 2023). At her *Faretta* hearing, Shawndale Chilcoat reported that she no longer wanted to proceed *pro se* and intended to

be represented by attorney Michael Lawlor.  Min. Order (Feb. 2, 2023).  Donald Chilcoat also reported that wanted to proceed with counsel.  Min. Order (Feb. 6, 2023).

By May 2023, the parties reported that, with the exception of "one small piece of discovery" for Donald Chilcoat, discovery had been completed.  Min. Order (May 25, 2023).  In July 2023, the parties reported that plea negotiations had ended and that each Defendant had rejected the Government's plea offers.  Min. Order (July 28, 2023).  In response, the Court ordered the parties to submit a proposed pretrial schedule and to appear for a status hearing on September 5, 2023 via Zoom videoconference.  *Id.*

On August 31, 2023, Shawndale Chilcoat—who was represented by counsel—filed a *pro se* motion to vacate that status hearing.  Def.'s Mot. to Vacate, ECF No. 70.  Although she had repeatedly consented to proceeding via Zoom in the past, Shawndale Chilcoat argued that the Court "does not have the power to order a 'Remote Hearing' as per the Administrative Procedure[] Act of 1946."  *Id.* at 2.  In response, the Court ordered the parties to appear in person and mailed its order overnight to Defendants.  Min. Order (Sept. 1, 2023); Min. Order (Sept. 5, 2023).

On September 5, the Government, a court reporter, and counsel for both Defendants appeared in Courtroom 28A as ordered.  Min. Order (Sept. 5, 2023).  Neither Defendant was present in person.  *Id.*  Because overnight delivery of the Court's order had apparently failed,[1] and because both defense counsel reported that Defendants were not responding to their outreach, the Court checked whether Defendants appeared via Zoom as previously ordered.  *See id.*  Neither Defendant had appeared virtually either.  *Id.*

The Court informed the Government and defense counsel that it would "be issuing a bench warrant for both Defendants but [would] hold [the warrants] in abeyance for forty-eight hours" to

---

[1] The Court was later informed that Defendants had refused to sign for delivery.  *See* Order, ECF No. 73.

3

allow defense counsel an opportunity to reach their clients. *Id.* The Court arranged for its Minute Order memorializing these events to be mailed to Defendants and received confirmation from FedEx that "both packages were shipped on September 6 and delivered September 7 at 12:26 PM." Order, ECF No. 73 at 2–3. Around that time, Pretrial Services reported "that a PSA officer in Ohio had successfully contacted and spoken with Donald Chilcoat, who indicated that [both Defendants] were unwilling to appear before the Court." *Id.* at 3. On September 8, the Court issued a bench warrant and ordered the parties to appear for a status hearing on October 5, 2023. *Id.*

The Court mailed its September 8 Order to Defendants and received confirmation that it had been "signed for by Donald Chilcoat on September 12, 2023." Min. Order (Oct. 5, 2023). Nevertheless, on October 5, 2023, neither Defendant appeared in Court as ordered. *Id.* On October 6, 2023, Pretrial Services reported that Donald Chilcoat had "removed his ankle bracelet for location monitoring" and that he was considered "a loss of contact." Min. Order (Oct. 6, 2023); *see also* Pretrial Violation Report, ECF No. 77. On October 11, both Defendants were arrested in Ohio and ordered transferred to Washington, D.C. Notice, ECF No. 80.[2]

Defendants were then detained at the D.C. Jail. In January 2024, after Defendants had served ninety-three days of pretrial detention, the Court granted their motions for release over the Government's objection. Order, ECF No. 95. Although the Court viewed the issue as a "close question" given Defendants' "extreme noncompliance," the Court decided to "extend[] a second

---

[2] The Government later provided more detail regarding the circumstances of Defendants' arrests. According to the Government, Donald Chilcoat was arrested at his home. Gov't's Resp., ECF No. 90 at 9. The Government further alleged that—after learning of Donald Chilcoat's arrest—Shawndale Chilcoat called 911 and "requested to speak to the [Mercer County, Ohio Sheriff Jeff Grey] to prevent her arrest." *Id.* at 14. When this effort failed, Shawndale Chilcoat then allegedly "fled to the Sheriff's Office." *Id.* This allegation is consistent with court filings authored by Shawndale Chilcoat in a now-dismissed civil suit she filed against Sheriff Grey in the Northern District of Ohio in which she argued that Sheriff Grey, "being the third highest executive authority in the State" of Ohio, violated a duty "to keep [Defendants] safe from the overreaching arm of the Federal Government" when he failed to prevent their initial arrest by the FBI in 2022. *See* Memorandum (ECF No. 1-2), *Chilcoat v. Grey*, No. 23-cv-14 (N.D. Ohio Jan. 4, 2023). But instead of obstructing the execution of a lawfully issued arrest warrant as Shawndale Chilcoat allegedly hoped, the Sheriff's Office called the FBI, and Shawndale Chilcoat was arrested.

4

chance" to Defendants, who expressed remorse for their actions and explained that their experience had been a "shocking eye-opener" that would deter future noncompliance. Mem. Op., ECF No. 96.

In April 2024, a grand jury returned an eight-count Superseding Indictment against Shawndale Chilcoat and Donald Chilcoat. *See* Superseding Indictment, ECF No. 109. Counts One through Six charged both Defendants with the same offenses as the original Indictment. *See id.* at 1–3. Count Seven charged Shawndale Chilcoat and Donald Chilcoat with Failure to Appear, in violation of 18 U.S.C. § 3146(a)(1). *Id.* at 4. This offense allegedly occurred "[o]n or about September 5, 2023," the date of the status hearing Defendants did not attend. *Id.* Count Eight charged Donald Chilcoat with an additional Failure to Appear offense that allegedly occurred "[o]n or about October 5, 2023," around the time that Pretrial Services reported that Donald Chilcoat had removed his ankle monitor. *Id.*

Also in April 2024, the parties were engaged in pretrial briefing, and a jury trial in this matter was scheduled to begin on July 15, 2024. *See* Pretrial Scheduling Order, ECF No. 107. On April 16, 2024, all defense counsel moved to withdraw from this matter, and attorney Joseph McBride entered appearances on behalf of both Shawndale Chilcoat and Donald Chilcoat. *See* Min. Order (Apr. 16, 2024). In response, the Court conducted an inquiry under Federal Rule of Criminal Procedure 44(c) regarding any potential conflict of interest arising from Joseph McBride representing both Defendants. Min. Entry (Apr. 30, 2024).

After the Rule 44(c) inquiry, the Court concluded that there were no conflicts that would prevent Joseph McBride's joint representation of both Defendants. *See* Mem. Op., ECF No. 136 at 5. But Joseph McBride was not ready to proceed to trial as scheduled. Notice, ECF No. 131. And the Court noted that in other cases in this District, "Attorney McBride requested numerous continuances, caused otherwise unexpected and unwelcome delays, or entered and then withdrew

5

his appearance." *Id.* at 10 n.4. Nevertheless, over the Government's strenuous objection, and in recognition of Defendants' Sixth Amendment rights, the Court granted prior defense counsel's motions to withdraw and rescheduled trial for October 4, 2024 so that Joseph McBride could prepare to represent both Defendants. *See* Order, ECF No. 135.

In June 2024, the Government reported that Shawndale Chilcoat had "sent various motions" to its offices. Min. Order (June 20, 2024). Those motions were drafted *pro se*, and the Court granted Joseph McBride's oral motion to withdraw her filings. *Id.*

A deluge of *pro se* filings followed soon thereafter. Throughout August and September 2024, the Court received from Defendants more than thirty *pro se* requests for leave to file "assorted pretrial motions arguing, in effect, that their prosecution is unlawful and that the entire case against them must be dismissed." Order, ECF No. 178 at 4. Taken together, these filings were hundreds of pages long. Joseph McBride reported that these leave-to-file requests were sent to the Clerk of Court "without [his] knowledge and against [his] advice." Min. Order (Aug. 19, 2024). Some of the *pro se* filings insinuated that Defendants had terminated their attorney-client relationship with McBride and his co-counsel Brad Geyer. *See id.* In response, McBride and Geyer moved to withdraw from this matter "because the defendants appear[ed] to have fired them." Joint Mot. to Withdraw, ECF No. 158 at 1. The Court ordered the parties to appear in person for a status hearing. Min. Order (Aug. 19, 2024).[3]

At the status hearing, the Court discussed with Defendants the status of their attorney-client relationship *ex parte* and under seal. *See* Min. Order (Aug. 29, 2024). Following that discussion,

---

[3] Despite having previously argued that the Court lacked authority to hold virtual hearings, *see* Def.'s Mot. to Vacate, ECF No. 70, Shawndale Chilcoat filed a *pro se* "Motion for Virtual Hearing Accommodation," ECF No. 162, which the Court denied, Order, ECF No. 163. Neither Defendant appeared in person for the status hearing. *See* Min. Order (Aug. 29, 2024). Donald Chilcoat explained that he had experienced "a medical emergency that prevented him from travelling." *Id.* And Shawndale Chilcoat explained that "she needed to remain with [Donald Chilcoat] during his period of ill health." *Id.*

6

the defense team represented that "they would confer further" regarding their differences, and the parties reported that they would all "confer further regarding a potential plea agreement for both" Defendants. *Id.* The Court held McBride and Geyer's pending Motion to Withdraw in abeyance and ordered the parties to appear again on September 12, 2024. *Id.*

On September 11, 2024, the Court received yet another *pro se* request for leave to file from Defendants. *See* Def.'s Mot., ECF No. 173. Defendants requested that the Court continue the status hearing scheduled for the next day because—among other reasons—they had filed a petition for a writ of prohibition in the U.S. Court of Appeals for the D.C. Circuit and a petition for a writ of habeas corpus in the Northern District of Ohio.[4] *Id.* at 1–2. The Court denied Defendants' motion and reminded them of its order to appear in person on September 12. Order, ECF No. 174.

At the status hearing on September 12, Defendants "informed the Court that they intended to accept the Government's plea offer." Min. Order (Sept. 12, 2024). The Court ordered the parties to provide signed plea agreements on September 19, 2024 and to appear for a change of plea hearing on September 20, 2024. *Id.*

But the Court "did not receive plea paperwork from the parties on September 19 as ordered." Order, ECF No. 178 at 2. Instead, Joseph McBride "informed the Court via email that Defendants had changed their minds and intended to reject the Government's plea offer." *Id.* On September 20, minutes before the plea hearing was scheduled to begin, "the Court received three requests for leave to file motions and a letter from Defendants." *Id.* "Those communications confirmed Defendants' intent to reject the plea offer." *Id.*

During the hearing, Defendants reported that they had "refused to engage with [their] attorneys Joseph McBride and Brad Geyer] to review discovery" in advance of the plea hearing.

---

[4] Both petitions were summarily denied. *See* Per Curiam Order, *In re Chilcoat*, No. 24-3112 (D.C. Cir. Oct. 17, 2024); Op. & Order (ECF No. 4), *Chilcoat v. Torres*, No. 24-cv-1566 (N.D. Ohio Nov. 22, 2024).

7

*Id.* at 4. But on further inquiry, both Defendants represented that they understood the terms of the Government's offer, had reviewed the offer with their counsel, and decided to reject the offer and proceed to trial. *Id.* at 3. Defendants explained that "the reason they intended to reject the plea offer was that it would require their pleading guilty to a felony charge." *Id.* at 4.

The Court then turned toward the more than thirty *pro se* requests for leave to file pretrial motions that were then pending from Defendants. "Because parsing the largely overlapping arguments in Defendants' requests would be inefficient, the Court proposed allowing Defendants to file one consolidated motion" advancing their arguments for pretrial dismissal. *Id.* Both Defendants orally withdrew their pending requests for leave to file, and the Court set a briefing schedule. *Id.* Defendants filed their motion, ECF No. 218, the Government responded, ECF No. 226, and the Court issued a Memorandum Opinion, ECF No. 233, denying Defendants' motion in full. While the parties briefed Defendants' consolidated *pro se* motion, the Court also denied three pretrial motions filed by Defendants' prior counsel seeking dismissal of Counts Two, Three, and Six and requesting a change of venue. *See* Mem. Op., ECF No. 223.

During this period of pretrial briefing, the Court also endeavored to resolve outstanding issues regarding Defendants and their counsel. At the September 20 hearing, Defendants reported that they were "actively seeking new counsel." Order, ECF No. 178 at 5. The Court held in abeyance attorneys McBride and Geyer's pending motion to withdraw, ordered that if Defendants had not secured new counsel by October 18, 2024, the Court would appoint counsel for them, and ordered parties to appear for a status hearing on October 25, 2024. *Id.* at 4–6.

By October 10, the Court had received multiple communications from Defendants "suggesting that they [would] not be securing new counsel and intend[ed] to waive their right to counsel and defend themselves at trial." Order, ECF No. 215 at 4. But on inquiry from the Court

8

at the October 25 status hearing, "neither Defendant indicated interest in representing themselves at trial apart from their inability to retain counsel." Order, ECF No. 219 at 2. Accordingly, the Court arranged for Defendants to meet with First Assistant Federal Public Defender Michelle Peterson to discuss securing appointed counsel. *Id.* at 3. This meeting proved fruitful. The Court granted Joseph McBride and Brad Geyer's motion to withdraw. Min. Order (Oct. 25, 2024). And on October 30, 2024, counsel from the Federal Public Defender for the Northern District of Ohio noticed their appearance on behalf of both Defendants. *See* ECF Nos. 220, 221. The Court then conducted Rule 44(c) inquires of both Defendants and concluded that no apparent conflicts of interest would prevent the joint representation of both Defendants. Order, ECF No. 230.

The Court scheduled this matter for trial on May 5, 2025 and ordered the parties to appear for a status hearing on February 19, 2025. Pretrial Scheduling Order, ECF No. 239.

## II.

On January 21, 2025, the Government moved to dismiss the Superseding Indictment with prejudice and in its entirety under Federal Rule of Criminal Procedure 48(a). Gov't's Mot. to Dismiss, ECF No. 241. As the "reason for this dismissal," the Government cited a presidential Proclamation titled "Granting Pardons and Commutation of Sentences for Certain Offenses Relating to the Events at or Near the United States Capitol on January 6, 2021." *Id.* That Proclamation, in relevant part, "direct[s] the Attorney General to pursue dismissal with prejudice to the Government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025). Defendants have reported that they consent to the Government's motion. Defs.' Resp., ECF No. 242.

The Court addresses the Government's motion with respect to two groups of charges.

9

### A. Counts One, Two, Three, Four, Five and Six

By its terms, Rule 48(a) allows the Government, "with leave of court," to "dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a). The Court must therefore consider whether to grant its leave to dismiss this case. *See United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (noting that the "requirement of judicial leave" in Rule 48 "gives the court a role in dismissals following indictment," even when "the defendant concurs in this dismissal"); *United States v. Flynn*, 507 F. Supp. 3d 116, 126–31 (D.D.C. 2020) (EGS) (analyzing the scope of a trial court's discretion under Rule 48(a)); *see also Rinaldi v. United States*, 434 U.S. 22, 30 n.15 (1977) (noting that Rule 48 "obviously vest[s] some discretion in the court" without deciding whether that discretion extends to cases in which the defendant consents to dismissal). To inform this analysis, the Court may "require a statement of reasons and underlying factual basis" for the Government's motion to dismiss. *See Ammidown*, 497 F.2d at 620.

Here, the Government's only stated reason for pursuing dismissal with prejudice is that the President has ordered the Attorney General to do so. *See* Gov't's Mot. (citing Proclamation No. 10887, 90 Fed. Reg. 8331 (Jan. 20, 2025)). On the present record, the Court does not discern any defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal. But recognizing that "the Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case," the Court shall not require a further explanation here. *See United States v. Nixon*, 418 U.S. 683, 693 (1974). Accordingly, the Court will **GRANT** the Government's motion and **DISMISS** Counts One, Two, Three, Four, Five, and Six of the Second Superseding Indictment with prejudice.

### B. Counts Seven and Eight

Count Seven of the Superseding Indictment charges Shawndale Chilcoat and Donald Chilcoat with Failure to Appear, in violation of 18 U.S.C. § 3146(a)(1). Superseding Indictment, ECF No. 109 at 4. Count Eight of the Superseding Indictment charges Donald Chilcoat with an additional Failure to Appear count, in violation of 18 U.S.C. § 3146(a)(1). *Id.* As it had with Counts One through Six, the Government moved to dismiss Counts Seven and Eight on the basis of the President's directive to "pursue dismissal with prejudice to the Government of all pending indictments against individuals for their conduct related to the events at or near the United States Capitol on January 6, 2021." Proclamation No. 10887.

But unlike Counts One through Six, Counts Seven and Eight charge Defendants for alleged conduct that occurred well after January 6, 2021. The offense conduct underlying Count Seven allegedly occurred "[o]n or about September 5, 2023," the date of a status hearing Defendants did not attend. Superseding Indictment at 4. Similarly, the Superseding Indictment alleges that Count Eight occurred "[o]n or about October 5, 2023," around the time Pretrial Services reported that Donald Chilcoat had removed his ankle monitor. *Id.*

Exercising its discretion under Rule 48(a) to "require a statement of reasons" for dismissal, *Ammidown*, 497 F.2d at 620, the Court ordered the Government to clarify "whether it regards Defendants Shawndale Chilcoat's and Donald Chilcoat's alleged failures to appear in 2023 as 'conduct related to events at or near the United States Capitol on January 6, 2021' [or] whether it has some other basis for seeking dismissal of Count Seven," Min. Order (Jan. 23, 2025) (quoting Proclamation No. 10887). The Court also noted that, in another case in this District, "the Government 'is not moving to dismiss [counts of a superseding indictment] which charge Olivia Pollock and Joseph Hutchinson with Failure to Appear, in violation of 18 U.S.C. § 316(a)(1), for

11

conduct that occurred in 2023.'" *Id.* (quoting Mot. to Dismiss (ECF No. 409), *United States v. Pollock*, 21-cr-447 (D.D.C. Jan. 23, 2025) (CJN)).

A week later, the Government submitted its response:

> The United States' Attorney's Office for the District of Columbia filed a motion to dismiss the Failures to Appear in the matter of *United States v. Pollock*, 21-cr-447, ECF 412. The government similarly moves to dismiss these charges here, and cites to the Executive Order dated January 20, 2025 as the reason for this dismissal.

Gov't's Resp., ECF No. 243. Other than noting that it had reversed course in *Pollock*, the Government provides no explanation. It does not explain whether it regards Failure to Appear charges allegedly occurring in 2023 as "related to events at or near the Capitol on January 6, 2021." Nor does it offer any insight into how it will construe the term "related to" in other cases implicating Proclamation No. 10887.[5]

This paucity of explanation from the Government is concerning. As is the message the Government's motion might send to other defendants facing prosecution in this District. But at least in this Circuit, Rule 48(a) gives the Court "no power" to second-guess "the prosecution's exercise of charging authority." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) (Srinivasan, J.). Rather, as this Court has recognized repeatedly, the authority to decide whether to pursue charges "remains with the Executive." *Id.* And the "principal object" of

---

[5] Consider, for example, the case of Edward Kelley. Following a bench trial, this Court found Kelley guilty of eleven felony and misdemeanor offenses for his conduct at the Capitol on January 6, 2021. *See* Min. Entry (Nov. 8, 2024), *United States v. Kelley*, No. 22-cr-408. On the Government's motion, those charges have now been dismissed. *See* Mem. Op. & Order (ECF No. 88), *United States v. Kelley* (D.D.C. Jan. 22, 2025). Kelley was also indicted for conduct during the Government's investigation into his actions on January 6. *See* Indictment (ECF No. 17), *United States v. Kelley*, No. 22-cr-118 (E.D. Tenn. Dec. 21, 2022). A jury in the Eastern District of Tennessee found Kelley guilty of Conspiracy to Murder Employees of the United States (the FBI agents investigating him), Solicitation to Commit a Crime of Violence, and Influencing a Federal Official by Threat. *See* Jury Verdict (ECF No. 85), *United States v. Kelley* (E.D. Tenn. Nov. 20, 2024). Like the Government here, Kelley has moved to dismiss those charges under Proclamation No. 10887. *See* Def.'s Mot. to Dismiss (ECF No. 93), *United States v. Kelley*, (E.D. Tenn. Jan. 27, 2025). But unlike the Government, Kelley has articulated a theory of the meaning of "related to" in Proclamation No. 10887. *See* Def.'s Mem. (ECF No. 94), *United States v. Kelley* (E.D. Tenn. Jan. 27, 2025) ("But for the Washington D.C. indictment, this case would have never been investigated, charged and prosecuted. The cases are clearly related to one another."). At the time of writing, Kelley's motion remains unanswered.

Rule 48(a)'s leave-of-court requirement is "to protect a defendant against prosecutorial harassment." *Rinaldi*, 434 U.S. at 29 n.15.

Here, the Court discerns no defect in either the legal merits of, or the factual basis for, the Government's case that would require dismissal of Counts Seven and Eight. But neither does the Court suspect that the Government's motion "is part of a scheme of prosecutorial harassment." *Fokker*, 818 F.3d at 742. Recognizing the Government's exclusive authority to exercise prosecutorial discretion, the Court will **GRANT** the Government's motion and **DISMISS** Counts Seven and Eight of the Superseding Indictment with prejudice.

The Court's resolution of this matter is confined to the unique circumstances of this case. The Government's motion for dismissal will have no bearing on the Court's future interpretation of 18 U.S.C. § 3146(a)(1). Nor will it alter the way that this Court assesses the Bail Reform Act, administers conditions of release, or relies on the diligent work of the Pretrial Services Agency.

### III.

Dismissal of charges, pardons after convictions, and commutations of sentences will not change the truth of what happened on January 6, 2021. What occurred that day is preserved for the future through thousands of contemporaneous videos, transcripts of trials, jury verdicts, and judicial opinions analyzing and recounting the evidence through a neutral lens. Those records are immutable and represent the truth, no matter how the events of January 6 are described by those charged or their allies.

What role law enforcement played that day and the heroism of each officer who responded also cannot be altered or ignored. Present that day were police officers from the U.S. Capitol Police and those who came to their aid when called: the D.C. Metropolitan Police Department, Montgomery County Police Department, Prince George's County Police Department, Arlington

County Police Department, and Fairfax County Police Department. Grossly outnumbered, those law enforcement officers acted valiantly to protect the Members of Congress, their staff, the Vice President and his family, the integrity of the Capitol grounds, and the Capitol Building—our symbol of liberty and a symbol of democracy around the world. For hours, those officers were aggressively confronted and violently assaulted. More than 140 officers were injured. Others tragically passed away as a result of the events of that day. But law enforcement did not falter. Standing with bear spray streaming down their faces, those officers carried out their duty to protect.

All of what I have described has been recorded for posterity, ensuring that what transpired on January 6, 2021 can be judged accurately in the future.

* * *

In light of the foregoing, it is hereby **ORDERED** that:

- The Government's [241] Motion to Dismiss is **GRANTED**;

- The [109] Superseding Indictment is **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Criminal Procedure 48(a);

- All scheduled proceedings and deadlines in this matter, including the February 19, 2025 status hearing and May 5, 2025 trial, are **VACATED**;

- The [100] [101] Orders Setting Conditions of Release are **VACATED**; and

- Any other pending motions are **DENIED AS MOOT**.

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: February 3, 2025

_____
COLLEEN KOLLAR-KOTELLY
United States District Judge